UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[1] | Case No. __-____ (__) |
| Debtors. | Joint Administration Requested |

**MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE RETENTION OF THE GARDEN CITY GROUP, INC. AS OFFICIAL CLAIMS, NOTICING AND BALLOTING AGENT AS OF THE PETITION DATE**

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (the "Motion") for entry of an order pursuant to 28 U.S.C. § 156(c), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2002-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") approving the Debtors' agreement (the "Agreement") with The Garden City Group, Inc. ("GCG"), attached hereto as Exhibit A, pursuant to which GCG would be retained as of the date hereof (the "Petition Date") as the official claims, noticing and balloting agent in these chapter 11 cases, to: (i) perform certain noticing functions, (ii) assist the Debtors in analyzing and reconciling proofs of claim filed against the Debtors' estates, and (iii) assist the Debtors in balloting in connection with any proposed chapter 11 plan. In support of this Motion, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

Debtors rely upon the affidavit of Karen B. Shaer (the "Shaer Affidavit") attached hereto as Exhibit B. In further support of the Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On February 3, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" orders, including an order to have these cases jointly administered.

2. The Debtors have continued in possession of their respective properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are 28 U.S.C. § 156(c), Rule 2002 of the Bankruptcy Rules and Local Rule 2002-1(f).

## BACKGROUND OF THE DEBTORS

4. The Debtors are one of the largest independent foundry companies in the United States and are one of the leading suppliers of castings to the domestic municipal products market. The Debtors produce a broad range of municipal castings, including manhole covers and frames, storm sewer frames and grates, heavy-duty airport castings, specialized trench drain castings, and ornamental tree grates. The Debtors sell these products to state and local governments throughout the United States, utility companies, producers of precast concrete manhole structures, and contractors for both new construction and infrastructure replacement.

The Debtors are also a leading manufacturer of a wide range of complex industrial iron castings and steel forgings, including specialized castings and forgings for the heavy-duty truck industry, a broad range of iron castings and steel forgings for the construction equipment and farm equipment industries, and iron castings used in heating, ventilation and air conditioning systems.

5. Neenah Enterprises, Inc. ("NEI") is the ultimate parent company of each of the other Debtors. The Debtors' corporate headquarters are located in Neenah, Wisconsin. The Debtors operate (i) nine manufacturing or machining facilities in Wisconsin, Indiana, Nebraska, Pennsylvania and Ohio and (ii) and fifteen sales and distribution centers across the United States. The Debtors currently employ approximately 1,650 employees, of whom approximately 1,250 are hourly and approximately 400 are salaried. For the fiscal year ended September 30, 2009, the Debtors recorded $333.0 million in net sales, compared to $510.8 million in net sales for the fiscal year ended September 30, 2008. The Debtors' overall sales volume, as measured in tons sold, was down 35.0% for the year ended September 30, 2009.

6. Metal casting has historically been a cyclical industry with performance generally correlated with overall economic conditions. The recent dramatic declines in some of the Debtors' most significant industrial markets, including heavy-duty truck, construction and farm equipment, have negatively impacted the Debtors' operating performance. In addition, the Debtors' municipal business has suffered as a result of the slowdown in infrastructure spending associated with new commercial and residential developments along with a reduction in public sector spending in anticipation of lower tax revenue and continued softness in the housing markets. The resulting decline in sales into these end-markets has adversely impacted the Debtors' profitability and cash flows. Because of these factors, the Debtors found it necessary to commence these chapter 11 cases in order to address their immediate liquidity needs.

7. Prior to the filing of these chapter 11 cases, the Debtors entered into a Restructuring & Lock-Up Agreement (the "Lock-Up Agreement")[2] with the holders (the "Consenting Holders") of (i) approximately 55% of the aggregate outstanding principal amount of the 9½% Senior Secured Notes due 2017 (the "Secured Notes") issued by Neenah Foundry Company ("Neenah Foundry") and guaranteed by each of the other Debtors and (ii) 100% of the aggregate outstanding principal amount of the 12½% Senior Subordinated Notes due 2013 (the "Subordinated Notes") issued by Neenah Foundry and guaranteed by each of the other Debtors. Pursuant to the Lock-Up Agreement, the Consenting Holders have agreed (subject to the terms and conditions of the Lock-Up Agreement) to accept and support the confirmation of a plan of reorganization (the "Plan") that is materially consistent with the plan term sheet attached as Exhibit A to the Lockup Agreement (the "Plan Term Sheet").

8. The Plan Term Sheet provides, among other things, that (i) the Debtors' obligations under that certain Amended and Restated Loan and Security Agreement, dated as of December 29, 2006 (as in effect on the date hereof, the "Prepetition Working Capital Loan Agreement"), will be repaid in full or reinstated on such terms as are acceptable to the prepetition lenders thereunder (such lenders in such capacities, the "Prepetition Working Capital Lenders") and the ad hoc committee (the "Ad Hoc Committee") of the holders of the Secured Notes; (ii) the Secured Notes will be exchanged for (a) 97% of the new common stock to be issued by NEI (subject to dilution by a management equity incentive plan and the warrants described below) and (b) $50 million in principal amount of new senior secured notes, the material terms of which are summarized in the Plan Term Sheet, (iii) the Subordinated Notes will be exchanged for (a) 3% of NEI's new common stock and warrants to acquire another 10% of

---

[2] The Debtors have filed an executed copy of the Lock-Up Agreement as Exhibit C to the Ostendorf Affidavit.

such new common stock on the terms set forth in the Plan Term Sheet; (iv) the claims of general unsecured creditors will either be reinstated or paid in full in cash; and (v) the claims and interests of NEI's existing equity holders will be cancelled and extinguished.

### RELIEF REQUESTED

9. By this Motion, the Debtors seek authority to employ and retain GCG to act as the official claims, noticing, solicitation and balloting agent (the "Claims Agent") in these chapter 11 cases as of the Petition Date, pursuant to 28 U.S.C. § 156(c), Rule 2002 of the Bankruptcy Rules and Local Rule 2002-1(f).

### BASIS FOR RELIEF

10. Pursuant to Section 156(c),[3] this Court is authorized to utilize facilities other than the office of the Clerk of the Bankruptcy Court (the "Clerk") for the administration of bankruptcy cases, including such matters as giving notice of hearings and orders filed in these chapter 11 cases, the meeting of creditors pursuant to section 341 of the Bankruptcy Code and claims bar dates and providing record keeping and claims docketing assistance.

11. In addition, Local Rule 2002-1(f) requires a debtor to file an application to retain a notice and/or claims clerk within ten (10) days of the Petition Date in all cases with more than 200 creditors. The Debtors believe that the number of creditors in these cases will greatly exceed that number. Thus, pursuant to Local Rule 2002-1(f) and for the reasons set forth below, the Debtors believe it is necessary and in the best interests of their creditors and estates to engage GCG to act as Claims Agent in order to assume full responsibility for, among other things, the distribution of notices and proof of claim forms and the maintenance, secondary processing and

---

[3] 28 U.S.C. § 156(c) provides, in relevant part, that "[a]ny court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the cost of such facilities or services are paid for out of the assets of the estate and are not charged to the United States."

5

docketing of all proofs of claim filed in the Debtors' chapter 11 cases. In addition, in connection with any plan proposed by the Debtors, the Debtors have determined that they will require the services of GCG to act as Claims Agent with respect to, inter alia, the mailing of the Debtors' disclosure statement, the plan and ballots and maintaining and tallying ballots in connection with the voting on such plan.

12. Although the Debtors have not yet filed their schedules of assets and liabilities (the "Schedules"), they anticipate that there will be hundreds of entities that the Debtors will be required to serve with the various notices, pleadings and other documents filed in these chapter 11 cases. In consideration of the number of anticipated claimants and other parties-in-interest and the nature of the Debtors' business, the Debtors respectfully submit that the appointment of GCG will expedite the distribution of notices and relieve the Clerk's office of the administrative burden of processing such notices. Accordingly, the Debtors' estates and creditors will benefit as a result of GCG's experience and cost-effective methods.

13. As Claims Agent, GCG will undertake the actions and procedures provided in the Agreement including, but not limited to, the following:

    a. Notifying all potential creditors of the filing of the chapter 11 petitions discussed herein and of the setting of the first meeting of creditors, pursuant to section 341(a) of the Bankruptcy Code;

    b. Filing affidavits of service for all mailings, including a copy of each notice, a list of persons to whom such notice was mailed, and the date mailed;

    c. Maintaining an official copy of the Debtors' Schedules, listing creditors and amounts owed;

    d. Furnishing a notice of the last date for the filing of proofs of claim and a form for filing a proof of claim to creditors and parties-in-interest;

    e. Docketing all claims filed and maintaining the official claims register on behalf of the Clerk and providing to the Clerk an exact duplicate thereof;

    f.  Specifying in the claims register for each claim docket (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant, (iv) the filed amount of the claim, if liquidated and (v) the allowed amount of the claim;

    g.  Recording all transfers of claims and providing notices of the transfer as required pursuant to Bankruptcy Rule 3001(e);

    h.  Maintaining the official mailing list for all entities who have filed proofs of claim;

    i.  Mailing the Debtors' disclosure statement, plan, ballots and any other related solicitation materials to holders of impaired claims and equity interests;

    j.  Receiving and tallying ballots and responding to inquiries respecting voting procedures and the solicitation of votes on the plan; and

    k.  Providing any other distribution services as are necessary or required.

14.    Based on GCG's considerable experience in providing similar services in large chapter 11 cases, the Debtors believe that GCG is eminently qualified to serve as Claims Agent in these chapter 11 cases and that the retention of GCG as the Claims Agent is in the best interests of the Debtors' estates and creditors.

15.    The Shaer Affidavit represents that, to the best of Ms. Shaer's knowledge, GCG is not connected with the Debtors, their creditors, other parties-in-interest, the United States Trustee or any person employed by the Office of the United States Trustee, and that to the best of Ms. Shaer's knowledge, after due inquiry, GCG does not, by reason of any direct or indirect relationship to, connection with or interest in the Debtors, hold or represent any interest adverse to the Debtors, their estates or any class of creditors or equity interest holders with respect to the matters upon which it is to be engaged. Based upon the Shaer Affidavit, GCG is a "disinterested person" as that term is defined in section 101(4) of the Bankruptcy Code.

16.    GCG's compensation is set forth on Schedule A, annexed to the Agreement that is attached hereto as Exhibit A. The Debtors respectfully submit that such

compensation is reasonable in light of the services to be performed by GCG as Claims Agent. Furthermore, the Debtors request authorization to compensate GCG for services rendered, without further order of this Court, upon the submission of monthly invoices by GCG summarizing, in reasonable detail, the services for which compensation is sought.

## NOTICE

17. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) counsel to the administrative agent for the Prepetition Working Capital Lenders; (vii) counsel to the agents for the proposed post-petition lenders; (viii) counsel to the Ad Hoc Committee; and (ix) counsel to the holders of the Subordinated Notes. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request the entry of an order, in substantially the form attached hereto as Exhibit C, granting the relief requested herein and granting such further relief as is just and proper.

Dated: Wilmington, Delaware
February 3, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Brett H. Myrick
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS-IN POSSESSION