UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[1] | Case No. 10-____ (___) |
| Debtors. | Joint Administration Requested |

## MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE PAYMENT OF PREPETITION SALES, USE, PROPERTY, FRANCHISE AND OTHER TAXES AND GOVERNMENTAL CHARGES

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (the "Motion") pursuant to sections 105(a) and 507(a)(8) of title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order (i) authorizing the Debtors, in their discretion and in the ordinary course of their business operations, to pay certain accrued and outstanding prepetition sales, use, real and personal property, franchise and other taxes and governmental charges, as the Debtors deem necessary, and (ii) authorizing banks and other financial institutions to honor and process all checks and wire transfers related to the payment of such prepetition taxes and governmental charges. The facts and circumstances supporting this Motion are set forth in the concurrently filed Affidavit of Robert E. Ostendorf, Jr., President and Chief Executive Officer of Neenah Enterprises, Inc., in Support of First Day Motions (the "Ostendorf Affidavit"). In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

## STATUS OF THE CASE AND JURISDICTION

1.    On February 3, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief, including an order to have these cases jointly administered.

2.    The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 507(a)(8) of the Bankruptcy Code.

## BACKGROUND OF THE DEBTORS

4.    The Debtors are one of the largest independent foundry companies in the United States and are one of the leading suppliers of castings to the domestic municipal products market. The Debtors produce a broad range of municipal castings, including manhole covers and frames, storm sewer frames and grates, heavy-duty airport castings, specialized trench drain castings, and ornamental tree grates. The Debtors sell these products to state and local governments throughout the United States, utility companies, producers of precast concrete manhole structures, and contractors for both new construction and infrastructure replacement. The Debtors are also a leading manufacturer of a wide range of complex industrial iron castings and steel forgings, including specialized castings and forgings for the heavy-duty truck industry, a broad range of iron castings and steel forgings for the construction equipment and farm equipment industries, and iron castings used in heating, ventilation and air conditioning systems.

5.      Neenah Enterprises, Inc. ("NEI") is the ultimate parent company of each of the other Debtors. The Debtors' corporate headquarters are located in Neenah, Wisconsin. The Debtors operate (i) nine manufacturing or machining facilities in Wisconsin, Indiana, Nebraska, Pennsylvania and Ohio and (ii) and fifteen sales and distribution centers across the United States. The Debtors currently employ approximately 1,650 employees, of whom approximately 1,250 are hourly and approximately 400 are salaried. For the fiscal year ended September 30, 2009, the Debtors recorded $333.0 million in net sales, compared to $510.8 million in net sales for the fiscal year ended September 30, 2008. The Debtors' overall sales volume, as measured in tons sold, was down 35.0% for the year ended September 30, 2009.

6.      Metal casting has historically been a cyclical industry with performance generally correlated with overall economic conditions. The recent dramatic declines in some of the Debtors' most significant industrial markets, including heavy-duty truck, construction and farm equipment, have negatively impacted the Debtors' operating performance. In addition, the Debtors' municipal business has suffered as a result of the slowdown in infrastructure spending associated with new commercial and residential developments along with a reduction in public sector spending in anticipation of lower tax revenue and continued softness in the housing markets. The resulting decline in sales into these end-markets has adversely impacted the Debtors' profitability and cash flows. Because of these factors, the Debtors found it necessary to commence these chapter 11 cases in order to address their immediate liquidity needs.

7.      Prior to the filing of these chapter 11 cases, the Debtors entered into a Restructuring & Lock-Up Agreement (the "Lock-Up Agreement")[2] with the holders (the "Consenting Holders") of (i) approximately 55% of the aggregate outstanding principal amount of the 9½% Senior Secured Notes due 2017 (the "Secured Notes") issued by Neenah Foundry

---

[2] The Debtors have filed an executed copy of the Lock-Up Agreement as Exhibit C to the Ostendorf Affidavit.

Company ("Neenah Foundry") and guaranteed by each of the other Debtors and (ii) 100% of the aggregate outstanding principal amount of the 12½% Senior Subordinated Notes due 2013 (the "Subordinated Notes") issued by Neenah Foundry and guaranteed by each of the other Debtors. Pursuant to the Lock-Up Agreement, the Consenting Holders have agreed (subject to the terms and conditions of the Lock-Up Agreement) to accept and support the confirmation of a plan of reorganization (the "Plan") that is materially consistent with the plan term sheet attached as Exhibit A to the Lockup Agreement (the "Plan Term Sheet").

8.  The Plan Term Sheet provides, among other things, that (i) the Debtors' obligations under that certain Amended and Restated Loan and Security Agreement, dated as of December 29, 2006 (as in effect on the date hereof, the "Prepetition Working Capital Loan Agreement"), will be repaid in full or reinstated on such terms as are acceptable to the prepetition lenders thereunder (such lenders in such capacities, the "Prepetition Working Capital Lenders") and the ad hoc committee (the "Ad Hoc Committee") of the holders of the Secured Notes; (ii) the Secured Notes will be exchanged for (a) 97% of the new common stock to be issued by NEI (subject to dilution by a management equity incentive plan and the warrants described below) and (b) $50 million in principal amount of new senior secured notes, the material terms of which are summarized in the Plan Term Sheet, (iii) the Subordinated Notes will be exchanged for (a) 3% of NEI's new common stock and warrants to acquire another 10% of such new common stock on the terms set forth in the Plan Term Sheet; (iv) the claims of general unsecured creditors will either be reinstated or paid in full in cash; and (v) the claims and interests of NEI's existing equity holders will be cancelled and extinguished.

## RELIEF REQUESTED

9.  In the ordinary course of business, the Debtors incur certain sales, use, real and personal property, franchise, and other taxes and governmental charges (collectively, the

"Taxes") that are payable directly to various state and local taxing authorities (collectively, the "Taxing Authorities"). The Debtors operate facilities and sell products throughout the United States, and therefore pay Taxes to numerous Taxing Authorities located throughout the country.

10. Although the Debtors believe they are current on the payment of all Taxes that were due and payable as of the Petition Date, many of the Debtors' obligations to the Taxing Authorities are paid periodically and in arrears. As a result, there is frequently a lag between the date on which the Debtors incur an obligation to pay Taxes and the date on which such Taxes actually become due and payable. Various Taxing Authorities may therefore hold claims against the Debtors for Taxes that have accrued but remain unpaid as of the Petition Date, and for other Taxes that will come due during the pendency of these cases but relate to the prepetition period.

11. By this Motion, the Debtors seek the authority, to be exercised in the Debtors' discretion and in the ordinary course of the Debtors' business operations, to pay to the relevant Taxing Authorities (i) any prepetition Taxes that have accrued, but were not yet due and owing or were not paid in full, as of the Petition Date and (ii) any prepetition Taxes that arose prior to the Petition Date and that become due and owing, in the ordinary course of business, while these chapter 11 cases are pending. The Debtors estimate that, as of the Petition Date, their accrued and unpaid liabilities for Taxes total approximately $2,100,000.

12. To implement the relief requested in this Motion, the Debtors further request that the order approving this Motion authorize banks and other financial institutions to honor and process all transfers, deposits, or checks issued by any of the Debtors on account of prepetition Taxes and to rely on the representations of the Debtors as to which checks have been issued and are authorized to be paid in accordance with the relief requested in this Motion, without any duty of further inquiry and without liability for following the Debtors' instructions.

## BASIS FOR RELIEF

13.     This Court should grant the relief requested herein for the following reasons. First, a portion of the Taxes may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code and would therefore have to be paid in full under any plan of reorganization. See 11 U.S.C. § 1123(a)(9)(c) (2009). Furthermore, in some or all of the states in which the Debtors do business, the Taxing Authorities may attach liens to real and personal property on which the Debtors have unpaid property taxes, thus potentially entitling the relevant Taxing Authorities to a secured claim against property of the relevant Debtor's estate. Payment of such Taxes should therefore affect only the timing of such payments and not the amounts that the Debtors would ultimately pay to the applicable Taxing Authorities and may, in some instances, allow the Debtors to avoid the payment of unnecessary interest, fees and penalties.

14.     In addition, certain Taxing Authorities may assert that sales, use and other similar Taxes are so-called "trust fund" taxes that the Debtors are required to collect from third parties and hold in trust for the benefit of such Taxing Authorities. To the extent the Debtors collect sales, use, and other similar Taxes from their customers on behalf of the Taxing Authorities, such Taxes may not constitute property of the Debtors' bankruptcy estates. See Begier v. Internal Revenue Serv., 496 U.S. 53, 57-60 (1990) (holding any prepetition payment of trust fund taxes is not an avoidable preference because such funds are not property of the debtor's estate). As a consequence, the Debtors may not have an equitable interest in such Taxes and, assuming that such Taxes could be adequately identified and traced, such amounts would not constitute property of the Debtors' estates. See City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir. 1994); see also 11 U.S.C. § 541(d) (2009) (limiting property of the estate to property over which debtors hold legal title). Accordingly, because the Debtors may have no

equitable interest in any so-called "trust fund" Taxes, the Debtors should be authorized to pay any Taxes that may constitute "trust fund" taxes as they become due and payable.

15. Even if a particular jurisdiction may not ordinarily consider some of the Taxes to be "trust fund" taxes, the Court should nevertheless authorize the Debtors to pay such Taxes because some Taxing Authorities may audit the Debtors if the Taxes are not timely paid. Such audits would needlessly divert the Debtors' attention from their reorganization efforts. In addition, as in the case of unpaid property taxes, some Taxing Authorities may seek to impose liens on the Debtors' assets on account of unpaid Taxes, which liens would force the Debtors to expend time, effort, and expense to challenge and remove the liens. Imposition of an improper lien, or the Debtors' failure to pay certain Taxes, might also affect the Debtors' good standing in a particular state, which may potentially affect the Debtors' ability to continue operating their businesses in the ordinary course. It is necessary that the Debtors pay their Taxes in a timely manner to avoid such distractions, and to serve the best interest of the Debtors and their estates.

16. Finally, some Taxing Authorities may seek to hold responsible officers of the Debtors personally liable for unpaid sales and use taxes. See, e.g., John F. Olson et al., Director & Officer Liability: Indemnification & Insurance § 3:21 (2003) ("[S]ome states hold corporate officers personally liable for any sales tax and penalty owed and not paid by the corporation, regardless of cause . . . .") (citing W. Va. Code § 11-15-17; Ohio Rev. Code Ann. § 5739.33). To the extent any of the Debtors' "trust fund" Taxes remain unpaid, officers of those Debtors could be subject to individual liability while these chapter 11 cases are pending. The possibility of such liability may needlessly distract the Debtors and their officers from their efforts to implement a successful reorganization for the Debtors in a timely manner.

17.     Under Fed. R. Bankr. P. 6003, any motion seeking to use property of the estate pursuant to section 363 of the Bankruptcy Code, or seeking to satisfy prepetition amounts within 21 days of the Petition Date, requires the debtor to demonstrate that the requested relief would prevent "immediate and irreparable harm." As described more fully in the Ostendorf Affidavit, the Debtors believe that, among other things, their successful reorganization will require good standing within the state in which they do business and a complete devotion of effort to these cases by the Debtors' officers. Given that the Debtors operate in five states, sometimes with more than one facility in each state, and sell products in all fifty states, there are a number of state and local Taxing Authorities with which the Debtors interact. If any Taxing Authority attempts to exercise certain remedies against the Debtors, it could have the detrimental effect of diverting the attention of the Debtors' management from the tasks required to complete the Debtors' reorganization. For these reasons, the Debtors submit that the relief requested herein is necessary to allow the Debtors' estates to avoid immediate and irreparable harm.

18.     In numerous chapter 11 cases, bankruptcy courts in this District have exercised their equitable powers under sections 105(a) and 507(a)(8) of the Bankruptcy Code to authorize debtors to pay their prepetition tax obligations. See, e.g., In re R.H. Donnelley Corp., No. 09-11833 (KG) (Bankr. D. Del. May 28, 2009) (order authorizing debtors to pay prepetition tax obligations); In re Pliant Corp., No. 09-10443 (MFW) (Bankr. D. Del. Feb. 12, 2009) (same); In re Smurfit-Stone Container Corp., No. 09-10235 (BLS) (Bankr. D. Del. Jan. 27, 2009) (same); In re Merisant Worldwide, Inc., No. 09-10059 (PJW) (Bankr. D. Del. Jan. 13, 2009) (same); In re Tribune Co., No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008) (same); In re Hilex Poly Co., LLC, No. 08-10890 (KJC) (Bankr. D. Del. May 7, 2008) (same); In re Pliant Corp., No. 06-10001 (Bankr. D. Del. Jan. 4, 2006) (MFW) (same).

19. Nothing in this Motion or any order entered with respect hereto should be construed as affecting the Debtors' ability to contest the amount or basis of any Taxes that may be due to the various Taxing Authorities, or as requiring the Debtors to pay any of the applicable Taxes. The Debtors expressly reserve all rights and defenses with respect to any such Taxes.

## NOTICE

20. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) counsel to the administrative agent for the Prepetition Working Capital Lenders; (vii) counsel to the agents for the proposed post-petition lenders; (viii) counsel to the Ad Hoc Committee; and (ix) counsel to the holders of the Subordinated Notes. Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

DB02:9225101.1                                                                                                                                                     069152.1001

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form of the order attached hereto as <u>Exhibit A</u>, (i) authorizing the Debtors, in their discretion, to pay any accrued and outstanding Taxes in the ordinary course of business, as such Taxes become due and payable, (ii) authorizing banks and other financial institutions to honor and process all checks and wire transfers involving the payment of such Taxes, and (iii) granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: Wilmington, Delaware<br>February 3, 2010 | Respectfully submitted,<br>SIDLEY AUSTIN LLP<br>Larry J. Nyhan<br>Bojan Guzina<br>Kerriann S. Mills<br>Alison L. Triggs<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br><br>-and-<br><br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>/s/ Robert S. Brady<br>_____<br>Robert S. Brady (No. 2847)<br>Edmon L. Morton (No. 3856)<br>Donald J. Bowman, Jr. (No. 4383)<br>Kenneth J. Enos (No. 4544)<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, Delaware 19899-0391<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>PROPOSED ATTORNEYS FOR THE<br>DEBTORS AND DEBTORS IN POSSESSION |

DB02:9225101.1                                                                                                                                 069152.1001