# EXHIBIT B

PREMIUM FINANCE AGREEMENT
DISCLOSURE STATEMENT
AND SECURITY AGREEMENT

**AICCO, Inc.**

101 Hudson Street, Jersey City, NJ 07302 (201) 631-5400 or (877) 902-4242
80 Pine Street, 6th Fl., New York, NY 10005 (212) 770-2900 or (877) 902-4242
2777 Allen Parkway, Suite 1130, Houston, TX 77019 (713) 831-2006 or (877) 902-4242
1200 Abernathy Road, NE, Suite 500, Bldg. 600, Atlanta, GA 30328 (770) 671-2219 or (877) 902-4242
300 South Riverside Plaza, Suite 2100, Chicago, IL 60606 (312) 559-1410 or (877) 902-4242
45 East River Park Place West, Suite 308, Fresno, CA 93720 (559) 256-3300 or (877) 902-4242
1001 Winstead Drive, Suite 500, Cary, NC (919) 234-2700 or (877) 902-4242

| | | | | BORROWER / INSURED (The "Insured") (Name, Address and Telephone Number) | Acct. No. |
|---|---|---|---|---|---|
| A | TOTAL PREMIUMS | $ | 346,688.00 | Neenah Enterprises Inc | |
| B | CASH DOWN PAYMENT REQUIRED | $ | 88,148.75 | 2121 Brooks Ave | |
| C | AMOUNT FINANCED (The Amount of Credit Provided to Insured or on its behalf) | $ | 258,539.25 | Neenah  WI  54957 | |
| | | | | E-Mail Address (optional): | 920-725-7000 |
| D | FINANCE CHARGE (Dollar amount credit will cost) | $ | 4,828.02 | ANNUAL PERCENTAGE RATE 4.46 % (Cost of Credit figured as a yearly rate) | |

| | | | | PAYMENT SCHEDULE | | | | |
|---|---|---|---|---|---|---|---|---|
| E | TOTAL PAYMENTS (Amounts which will have been paid after making all scheduled payments) | $ | 263,367.27 | Amount of Each Payment | Number of Payments | | | 1st Payment Due | Final Payment Due |
| | | | | | Annual | Qtrly | Mthly | | |
| | | | | 29,263.03 | | | 9 | 02/01/2010 | 10/01/2010 |

## SEE PAGE 3 FOR SCHEDULE OF FINANCED POLICIES

AGREEMENT OF INSURED (JOINT AND SEVERAL, IF MORE THAN ONE)

THE UNDERSIGNED INSURED:

1. In consideration of the premium payments being financed, and if applicable, down payment being advanced by LENDER to the Insurance companies listed on the SCHEDULE OF FINANCED POLICIES, or their representative, promises to pay to the order of LENDER the TOTAL OF PAYMENTS to be made in accordance with the PAYMENT SCHEDULE and if applicable, the amount of any down payment advanced by LENDER subject to the provisions set forth in this Agreement.

2. Irrevocably appoints LENDER Attorney-in-Fact with full authority, in the event of default, to (i) cancel the said policies in accordance with the provisions herein, (ii) receive all sums assigned to LENDER and (iii) execute and deliver on behalf of the undersigned all documents, forms and notices relating to the insurance policies listed on the SCHEDULE OF FINANCED POLICIES in furtherance of this Agreement.

IMPORTANT NOTICE TO INSURED

NOTICE: 1. Do not sign this Agreement before you read it or if it contains any blank spaces. 2. You are entitled to a complete filled-in-copy of this Agreement. 3. Keep your copy of this Agreement to protect your legal rights.

NOTICE: See Pages 2 and 3 Additional Important Information.

THE INSURED AGREES TO THE PROVISIONS
ABOVE AND ON PAGES 2 AND 3

AGENT OR BROKER    Associated Financial Group
BUSINESS ADDRESS
12600 Whitewater Drive Ste 100

Minnetonka    MN    55343

TEL. NO./E-MAIL ADDRESS    952-945-0200

The Undersigned Agent or Broker

1. Represents and warrants as follows: (a) to the best of the undersigned's knowledge and belief, the insured's signature is genuine or, to the extent permitted by applicable Law, the undersigned Agent or Broker has been authorized by the insured to sign this Agreement on their behalf, (b) the insured has received a copy of this Agreement, (c) the scheduled Policies are in full force and effect and the premiums indicated therefore are correct, (d) the insured may cancel all scheduled policies immediately upon request, (e) none of the Policies scheduled in the agreement are non-cancelable, and (f) the down payment as indicated in Box "B" and installments totaling _____ have been collected and are being retained by us.

2. Upon cancellation of any of the scheduled Policies, the undersigned Agent or Broker agrees upon demand to pay to LENDER or its assigns their commission on any unearned premiums applicable to the cancelled Policies.

THE AGENT OR BROKER AGREES TO THE
PROVISIONS ABOVE AND ON PAGE 3

1/5/10      _____ VP-Corp. Controller
DATE        SIGNATURE (AND TITLE) OF INSURED(S) OR AGENT OR
            BROKER ON THEIR BEHALF (to extent permitted by Law)

_____    _____
DATE         SIGNATURE AND TITLE OF AGENT OR BROKER

Page 1 of 3

(AICCEH (8/09))

### ADDITIONAL AGREEMENTS OF INSURED (JOINT AND SEVERAL, IF MORE THAN ONE)

3. **Cancellation.** After the occurrence of a default in the payment of any money due the LENDER or a default consisting of a transfer to a third party of any of the scheduled policies, LENDER may request cancellation of the insurance policies listed in the schedule upon expiration of 10 days written notice of intent to cancel (13 days in Iowa), provided said default is not cured within such period, and LENDER may proceed to collect the entire unpaid balance due hereunder or any part thereof by appropriate legal proceedings. If any default results in the cancellation of the Policy, insured agrees to pay a cancellation charge in accordance with applicable law (Kentucky and Texas - None).
4. **Money Received After Cancellation.** Any payment received after policy cancellation may be credited to the indebtedness due hereunder without any liability or obligation on the part of LENDER to request reinstatement of such cancelled policy. Any sum received from an insurance company shall be credited to the balance due hereunder; any surplus shall be paid over to the insured; in case of deficiency, the insured shall pay the same.
5. **Application of Payments.** If applicable law permits, all payments received by LENDER will be applied to the oldest invoice first. Any remaining amounts will be applied to late fees and other charges (if applicable), the remainder (if any) would be applied to any other outstanding amounts.
6. **Returned Check Charge.** If any payment made by check is returned because the insured had no account or insufficient funds in the payor bank, insured will be charged the maximum fee, if any, permitted under applicable law (not applicable in Kentucky).
7. **Default.** If any of the following happens: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the insured makes in this Agreement. Insured will be in default; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. Clauses (b) and (c) not applicable in Kentucky.
8. **Security.** To secure payment of all amounts due under this Agreement, insured assigns LENDER a security interest in all right, title and interest to the Policy, including (but only to the extent permitted by applicable law): (a) all money that is or may be due insured because of a loss under the Policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any return of the premium for the Policy, and (c) dividends which may become due insured in connection with the Policy. Clause ( c) not applicable in Kentucky.
9. **Right to Demand Immediate Payment in Full.** At any time after default, LENDER can demand and have the right to receive immediate payment (except to the extent otherwise provided by applicable law, in which case LENDER will have the right to receive such payment in accordance with such law) of the total unpaid balance due under this Agreement even if LENDER has not received any refund of unearned premium.
10. **Warranties.** Insured warrants to LENDER (a) to have received a copy of this Agreement and (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured. The insured represents that it is not presently the subject of or in contemplation of a proceeding in bankruptcy, receivership, or insolvency, or if it is a debtor in bankruptcy, the Bankruptcy Court has authorized this transaction.
11. **Early Payment.** At any time, insured may pay the whole amount still unpaid. If insured pays the full amount before it is due, insured will be given a refund for the unearned Finance Charge computed by the method of refund as required by applicable law. (Rule of 78th method of refund in Texas after deducting fully earned charge of $10 on finance amounts of $1,000 or less, $25 on finance amounts exceeding $1,000.)
12. **Assignments.** Insured may not assign the Policy or this Agreement without LENDER's written consent. However, insured does not need LENDER's written consent to add mortgagees or other persons as loss payees. LENDER may transfer its rights under this Agreement to anyone without insured's consent. All of LENDER's rights shall inure to the benefit of LENDER's successors and assigns.
13. **Collection.** If money is due and insured fails to pay, LENDER may collect the unpaid balance from insured without recourse to the security interest granted under this Agreement.
14. **Late Charges.** Upon default in payment of any installments for not less than five days (or such greater number of days required by applicable law), insured agrees to pay a late charge in accordance with applicable law. In no event shall such late charge exceed a maximum of 5% of such installment ($5 plus an amount not to exceed 2% in Kansas; and 5% of installment in Texas).
15. **Finance Charge.** The finance charge begins to accrue from the effective date of this Agreement or the earliest inception date of the insurance policy(ies) listed on the Schedule of Policies, whichever is earlier. In Texas, the finance charge begins to accrue from each policy effective date or the date on which LENDER made payment to the insurer for the financed policy, whichever is earlier. If LENDER terminates this Agreement due to a default, insured will pay interest on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation and from said date until insured pays the outstanding indebtedness in full to LENDER. To the extent permitted by applicable law, the Finance charge may include a nonrefundable Agreement charge not to exceed $20 ($10 in KS; $15 in KY; $18 in MI).
16. **Attorney's Fees.** If LENDER hires an attorney (which is not a salaried employee) to collect any money insured owes under this Agreement, insured will pay that attorney's fees and other collection costs (including collectors' fee) if and to the extent permitted by applicable law (not applicable in Kentucky).
17. **Agent or Broker.** The Agent or Broker named on the front of this Agreement is neither authorized by LENDER to receive installments payable under this Agreement nor is authorized to make any representations to insured on LENDER's behalf (except to the extent expressly required by applicable law).
18. **Amendments.** If the insurance contract has not been issued at the time of the signing of this Agreement, and if the policies being financed are assigned risk policies or policies listed in a state fund, the policy numbers, if omitted herein, may be inserted in this Agreement after it has been signed.
19. **Effective Date.** This Agreement will not go into effect until it is accepted by LENDER in writing, except in the State of Texas. In the State of Texas, any unacceptable premium finance agreement received by LENDER must be returned within three (3) working days of LENDER'S receipt. LENDER's failure to return such Agreement will be deemed acceptance.
20. **Limitation of Liability.** Insured recognizes and agrees that LENDER is a lender and not an insurance company and that LENDER assumes no liability as an insurer hereunder. LENDER's liability for breach of any of the terms of this Agreement or the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of LENDER's gross negligence or willful misconduct.
21. **Wisconsin Insureds.** For Wisconsin insureds, this contract is governed by the laws of the State of Wisconsin.
22. **Governing Law.** The law of the State of the insured's residence shall govern this Agreement, except for AR, IN, IA, LA, MN, NE, OK, SD and WV Insureds this contract is governed by the laws of the State of New York.
23. **Signature and Acknowledgement.** Insured has signed and received a copy of this Agreement. If the insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of the insured. All the insureds listed in any Policy have signed. Insured acknowledges and understands that insurance premium financing law does not require an insured to enter into a premium financing agreement as a condition of the purchase of any insurance policy.
24. **Additional Insured.** There is nothing in any Policy that would require Lender to notify or get the consent of any third party to effect cancellation of such Policy.
25. **Privacy Notice.** Information regarding our privacy policies and compensation arrangements with your agent/broker may be found at http://www.iaicc.com/privacy.html.

## SCHEDULE OF POLICIES (Continue Schedule on Attachment If Necessary)

Place (X) If Not Authorized (See #3 below)

| Policy Number and Prefix (itemized) | X | Full Name of Insurance Company and Name and Address of Policy Issuing Agent or Company Office To Which Premium is Paid and Notices are Sent | Type of Policy Premium | Audit Info | Earn % Minimum | Term in Mos. Cov. By Prem. | Effective Date M/ D/ Y | Policy Premiums |
|---|---|---|---|---|---|---|---|---|
| CA0934578 | | C: National Union Fire Ins Co PA | AUT :0 Surcharge Fee | | 0.00 | 12 | 01/01/2010 | 251,759.00 40.00 |
| GL4573135 | | C: National Union Fire Ins Co PA | GNL :0 | | 0.00 | 12 | 01/01/2010 | 94,889.00 |

*(AR=ASSIGNED RISK), (A=AUDITABLE) (LS=LOSS SENSITIVE)

| TOTAL PREMIUMS (Record in "A") | 346,688.00 |
|---|---|

### ADDITIONAL REPRESENTATIONS & WARRANTIES OF BROKER OR AGENT

3. Warrants that this is the authorized Policy issuing agent of the insurance companies or the broker placing the coverage directly with the insurance company on all the Policies scheduled except those indicated with an "X" above.
4. Warrants that there are no policies included in this Agreement which are subject to audit, report of values, retrospective rating, or minimum earned premium, except as indicated below, and that, if there are any, the deposit or provisional premium thereon is not less than the anticipated premium to be earned for the full term of the policy.
   Policy No.(s):_____ Minimum earned premium, if any: $_____
5. Warrants that there are no assigned risk policies in the Schedule of Policies except as indicated in the Schedule of Policies.
6. The Agent or Broker will hold in trust for LENDER any payments made or credited to the insured through the Agent or Broker directly, indirectly, actually or constructively, by any of the insurance companies listed in the Schedule of Policies and will pay the monies to LENDER upon demand to satisfy the then outstanding balance hereunder.
7. The Agent or Broker will promptly notify LENDER in writing if any information on this Agreement becomes inaccurate.
8. Warrants that all material information concerning the insured and the Policies necessary for Lender to cancel the policies and receive the unearned premium has been disclosed to Lender.
9. There is nothing in any Policy that would require Lender to notify or get the consent of any third party to effect cancellation of such Policy.