# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[1] | Case No. 10-____ (___) |
| Debtors. | Joint Administration Requested |

## MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING THE FILING UNDER SEAL OF CERTAIN FEE LETTERS RELATING TO THE PROPOSED POST-PETITION FINANCING FACILITIES

The debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby move the Court (the "Motion") for entry of an order authorizing the Debtors to file under seal certain Fee Letters (as defined below) relating to the Debtors' proposed post-petition financing facilities. In support of this Motion, the Debtors respectfully state as follows:

### STATUS OF THE CASE AND JURISDICTION

1.      On February 3, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief, including an order to have these cases jointly administered.

2.      The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 107(b) of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND OF THE DEBTORS

4.      The Debtors are one of the largest independent foundry companies in the United States and are one of the leading suppliers of castings to the domestic municipal products market.  The Debtors produce a broad range of municipal castings, including manhole covers and frames, storm sewer frames and grates, heavy-duty airport castings, specialized trench drain castings, and ornamental tree grates.  The Debtors sell these products to state and local governments throughout the United States, utility companies, producers of precast concrete manhole structures, and contractors for both new construction and infrastructure replacement. The Debtors are also a leading manufacturer of a wide range of complex industrial iron castings and steel forgings, including specialized castings and forgings for the heavy-duty truck industry, a broad range of iron castings and steel forgings for the construction equipment and farm equipment industries, and iron castings used in heating, ventilation and air conditioning systems.

5.      Neenah Enterprises, Inc. ("NEI") is the ultimate parent company of each of the other Debtors.  The Debtors' corporate headquarters are located in Neenah, Wisconsin. The Debtors operate (i) nine manufacturing or machining facilities in Wisconsin, Indiana, Nebraska, Pennsylvania and Ohio and (ii) and fifteen sales and distribution centers across the United States.  The Debtors currently employ approximately 1,650 employees, of whom approximately 1,250 are hourly and approximately 400 are salaried.  For the fiscal year ended

September 30, 2009, the Debtors recorded $333.0 million in net sales, compared to $510.8

million in net sales for the fiscal year ended September 30, 2008. The Debtors' overall sales

volume, as measured in tons sold, was down 35.0% for the year ended September 30, 2009.

6.    Metal casting has historically been a cyclical industry with performance

generally correlated with overall economic conditions. The recent dramatic declines in some of

the Debtors' most significant industrial markets, including heavy-duty truck, construction and

farm equipment, have negatively impacted the Debtors' operating performance. In addition, the

Debtors' municipal business has suffered as a result of the slowdown in infrastructure spending

associated with new commercial and residential developments along with a reduction in public

sector spending in anticipation of lower tax revenue and continued softness in the housing

markets. The resulting decline in sales into these end-markets has adversely impacted the

Debtors' profitability and cash flows. Because of these factors, the Debtors found it necessary to

commence these chapter 11 cases in order to address their immediate liquidity needs.

7.    Prior to the filing of these chapter 11 cases, the Debtors entered into a

Restructuring & Lock-Up Agreement (the "Lock-Up Agreement")[2] with the holders (the

"Consenting Holders") of (i) approximately 55% of the aggregate outstanding principal amount

of the 9½% Senior Secured Notes due 2017 (the "Secured Notes") issued by Neenah Foundry

Company ("Neenah Foundry") and guaranteed by each of the other Debtors and (ii) 100% of the

aggregate outstanding principal amount of the 12½% Senior Subordinated Notes due 2013 (the

"Subordinated Notes") issued by Neenah Foundry and guaranteed by each of the other Debtors.

Pursuant to the Lock-Up Agreement, the Consenting Holders have agreed (subject to the terms

and conditions of the Lock-Up Agreement) to accept and support the confirmation of a plan of

---

[2]  The Debtors have filed an executed copy of the Lock-Up Agreement as Exhibit C to the Ostendorf Affidavit.

reorganization (the "Plan") that is materially consistent with the plan term sheet attached as

Exhibit A to the Lockup Agreement (the "Plan Term Sheet").

8.      The Plan Term Sheet provides, among other things, that (i) the Debtors'

obligations under that certain Amended and Restated Loan and Security Agreement, dated as of

December 29, 2006 (as in effect on the date hereof, the "Prepetition Working Capital Loan

Agreement"), will be repaid in full or reinstated on such terms as are acceptable to the

prepetition lenders thereunder (such lenders in such capacities, the "Prepetition Working Capital

Lenders") and the ad hoc committee (the "Ad Hoc Committee") of the holders of the Secured

Notes; (ii) the Secured Notes will be exchanged for (a) 97% of the new common stock to be

issued by NEI (subject to dilution by a management equity incentive plan and the warrants

described below) and (b) $50 million in principal amount of new senior secured notes, the

material terms of which are summarized in the Plan Term Sheet, (iii) the Subordinated Notes will

be exchanged for (a) 3% of NEI's new common stock and warrants to acquire another 10% of

such new common stock on the terms set forth in the Plan Term Sheet; (iv) the claims of general

unsecured creditors will either be reinstated or paid in full in cash; and (v) the claims and

interests of NEI's existing equity holders will be cancelled and extinguished.

## THE PROPOSED POST-PETITION FINANCING

9.      Contemporaneously with the filing of this Motion, the Debtors have filed a

motion (the "DIP Financing Motion") seeking authorization to obtain post-petition financing

consisting of (i) a multiple draw secured term loan facility in an aggregate principal amount not

to exceed $50 million (the "Term Loan DIP Facility") and (ii) a revolving loan facility with

aggregate commitments in an amount equal to $90 million (the "Working Capital DIP Facility"

and, together with the Term Loan DIP Facility, the "DIP Facilities"). Capitalized terms used but

not defined herein have the meanings assigned to such terms in the DIP Financing Motion, which contains a detailed summary of the proposed terms and conditions of the DIP Facilities.

## RELIEF REQUESTED

10.     In connection with the negotiation of the proposed DIP Facilities, the Debtors have, as is customary, agreed to pay certain fees and expenses to the Term Loan DIP Lenders, the Term Loan DIP Agent, the Working Capital DIP Lenders, and the Working Capital DIP Agent (collectively, the "DIP Fee Parties") pursuant to certain separate, and confidential, fee letters (the "Fee Letters") executed by the Debtors and the applicable DIP Fee Parties.  Pursuant to the terms of the commitment letters with respect to the DIP Facilities and the Fee Letters themselves, the Debtors have agreed to keep the terms of the Fee Letters confidential. Maintaining the confidential nature of the Fee Letters is an essential condition of the DIP Fee Parties' commitment to provide the DIP Facilities to the Debtors.  Accordingly, the Debtors respectfully request entry of an order, pursuant to section 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018, authorizing the Debtors to file the Fee Letters under seal.

## BASIS FOR RELIEF

11.     Pursuant to section 107(b) of the Bankruptcy Code, the Court may authorize the Debtors to file the Fee Letters under seal.  Section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b) (2010).

12.     Bankruptcy Rule 9018 sets forth the procedure by which a party-in-interest may obtain a protective order authorizing the filing of a document under seal. Bankruptcy Rule 9018 provides, in relevant part:

> On any motion or its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development or commercial information . . .

Fed. R. Bankr. P. 9018 (2010).

13.     Once the Court determines that a party-in-interest is seeking protection of information that falls within one of the categories enumerated in section 107(b) of the Bankruptcy Court, "the court is required to protect a requesting interested party and has no discretion to deny the application. <u>Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)</u>, 21 F.3d 24, 27 (2d Cir. 1994). Courts have also found that such relief should be granted if the information sought to be protected is "commercial information." <u>See In re Global Crossing</u>, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (finding the purpose of Bankruptcy Rule 9018 is to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury."). Courts have also stated that commercial information need not rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code. <u>See Orion</u>, 21 F.3d at 28 (finding that section 107(b)(1) creates an exception to the general rule that court records are open to examination by the public and, under this exception, an interested party has to show only that the information it wishes to seal is "confidential and commercial" in nature).

14.     The Debtors respectfully request that this Court permit them to file the Fee Letters under seal pursuant to section 107(b) of the Bankruptcy Code and Rule 9018 of the Bankruptcy Rules. The Debtors believe that the Fee Letters contain commercial information that

is entitled to protection under section 107(b).  More importantly, maintaining the confidential

nature of the Fee Letters is an essential condition to the DIP Fee Parties' agreement to provide

the DIP Facilities to the Debtors.  For these reasons, the Debtors believe the Court should grant

the relief requested in this Motion.

## NOTICE

15.    Notice of this Motion has been provided to: (i) the Office of the United

States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the

United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the

Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (vi) counsel to the

administrative agent for the Prepetition Working Capital Lenders; (vii) counsel to the agents for

the proposed post-petition lenders; (viii) counsel to the Ad Hoc Committee; and (ix) counsel to

the holders of the Subordinated Notes.  Notice of this Motion and any order entered hereon will

be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested

herein, the Debtors believe no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request the Court enter an order, in substantially the form attached hereto as Exhibit A, (a) authorizing the Debtors to file the Fee Letters under seal; and (b) granting such other and further relief as the Court deems appropriate.

Dated: Wilmington, Delaware
      February 3, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Alison L. Triggs
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

- and -

YOUNG CONAWAY STARGATT & TAYLOR, LLP


_____
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION