**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES INC., et al.,[1] | Case No. 10-10360 (MFW) |
| Debtors. | Jointly Administered |
| | Waiver of Local Rule Requested |
| | **Hearing Date: March 9, 2010 at 1:00 p.m. (ET)**<br>**Objection Deadline: March 2, 2010 at 4:00 p.m. (ET)** |

**APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS AND DEBTORS-IN-POSSESSION TO EMPLOY AND RETAIN ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328(a), *NUNC PRO TUNC* TO THE PETITION DATE, AND GRANTING WAIVER OF COMPLIANCE WITH DEL. BANKR. L.R. 2016-2(d) IN ACCORDANCE WITH DEL. BANKR. L.R. 2016-2(g)**

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), hereby submit this application (the "Application") for entry of an order authorizing the Debtors to employ and retain Rothschild Inc. ("Rothschild") as financial advisor and investment banker to the Debtors pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *nunc pro tunc* to the Petition Date (as defined below),

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

and granting a waiver of compliance with the information requirements relating to compensation requests set forth in Local Rule 2016-2(d), in accordance with Local Rule 2016-2(g), to the extent requested herein. The facts and circumstances supporting this Application are set forth in the Affidavit of Neil A. Augustine in Support of the Application for an Order Authorizing the Debtors and Debtors-in-Possession to Employ and Retain Rothschild Inc. as Financial Advisor and Investment Banker Pursuant to 11 U.S.C. §§ 327(a) and 328(a), *nunc pro tunc* to the Petition Date, and Granting Waiver of Compliance with Del. Bankr. L.R. 2016-2(d) in Accordance with Del. Bankr. L.R. 2016-2(g) (the "Augustine Affidavit"), attached hereto as Exhibit B and incorporated herein by reference. In further support of this Application, the Debtors respectfully represent as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On February 3, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief. On February 4, 2010 the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 2015(b).

2. The Debtors continue in possession of their respective properties and continue to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. An official committee of unsecured creditors was formed on February 12, 2010.

3. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This

matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The statutory and legal predicates for the relief requested herein are sections 327(a), 328(a) and 1107 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and Local Rule 2016-2.

## RELIEF REQUESTED

4. By this Application, the Debtors seek entry of an order, in substantially the form attached hereto as Exhibit A, authorizing the Debtors to employ and retain Rothschild pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014, *nunc pro tunc* to the Petition Date, to perform financial advisory and investment banking services for the Debtors pursuant to the terms and conditions of that certain engagement letter dated May 22, 2009 (the "Engagement Letter"), [2] a copy of which is attached hereto as Exhibit C and incorporated herein by reference, and granting a waiver to Rothschild of compliance with the informational requirements relating to compensation requests set forth in Local Rule 2016-2(d), to the extent requested herein.

5. The terms of this Application, as well as the terms of the order requested by this Application and entered pursuant thereto, shall apply to any and all affiliates of the Debtors that have not yet filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code as of the Petition Date, but which subsequently file such a petition during the pendency of these chapter 11 cases.

## BASIS FOR RELIEF

6. Rothschild is a member of one of the world's leading independent investment banking groups, with more than forty (40) offices in more than thirty (30) countries,

---

[2] Any references to, or summaries of, the Engagement Letter in this Application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the summaries provided herein. Additionally, any initially capitalized terms used in this Application and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

including an office located at 1251 Avenue of the Americas, 51st Floor, New York, New York 10020. Rothschild has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other financial advisory services, and with particular experience in providing high-quality financial advisory services to financially troubled companies. Rothschild is an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes, and secured creditors in a variety of industries. Rothschild is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operating restructurings. Rothschild is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

7. Rothschild and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out-of-court and in chapter 11 cases. Rothschild's business reorganization professionals have served as financial and strategic advisors in numerous cases, including, among others: In re Trident Resources Corp., 09-13150 (MFW) (Bankr. D. Del. Jan 28, 2010); In re Fairpoint Communications, Inc., No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2010); In re MIG, Inc., No. 09-12118 (KG) (Bankr. D. Del. Sept. 4, 2009); In re Sea Launch Co., LLC, No. 09-12153 (BLS) (Bankr. D. Del. Aug. 8, 2009); In re Visteon Corp., No. 09-11786 (CSS) (Bankr. D. Del. July 1, 2009); In re Sun-Times Media Group, Inc., No. 09-11092 (CSS) (Bankr. D. Del. May 11, 2009); In re Tronox Inc., No. 09-10156 (ALG) (Bankr. D. Del. Apr. 7, 2009); In re PPI Holdings, Inc., No. 08-13289 (KG) (Bankr. D. Del. Feb. 4, 2009); In re Recycled Paper Greetings Inc., No. 09-10002 (KG) (Bankr. D. Del. Jan. 2, 2009); In re Milacron Inc., No. 09-11235 (JVA) (Bankr. S.D. Ohio Apr. 6, 2009); In re Circuit City Stores, Inc., No. 08-35653

(KRH) (Bankr. E.D. Va. Nov. 10, 2008); In re VeraSun Energy Corp., No. 08-12606 (BLS) (Bankr. D. Del. Oct. 31, 2008); In re Motor Coach Industries International, Inc., No. 08-12136 (BLS) (Bankr. D. Del. Sept. 15, 2008); In re BHM Technologies, No. 08-04413 (SWD) (Bankr. W.D. Mich. May 19, 2008); In re Hilex Poly Co. LLC, No. 08-10890 (KJC) (Bankr. D. Del. May 6, 2008); In re Werner Holding Co. (DE), Inc., No. 06-10578 (KJC) (Bankr. D. Del. June 12, 2006) In re Delphi Corp., No. 05-44481 (RDD) (Bankr. S.D.N.Y. Nov. 30, 2005); In re Northwest Airlines Corp., No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 14, 2005); In re Solutia Inc., No. 03-17949 (PCB) (Bankr. S.D.N.Y. Mar. 11, 2005); In re Int'l Wire, No. 04-11991 (BRL) (Bankr. S.D.N.Y. July 1, 2004); In re James River Coal Co., No. 03-04095 (MFH) (Bankr. M.D. Tenn. May 23, 2003); In re Superior TeleCom Inc., et al., No. 03-10607 (KJC) (Bankr. D. Del. Apr. 10, 2003); In re WestPoint Stevens, Inc., No. 03-13532 (RDD) (Bankr. S.D.N.Y. June 6, 2003); In re UAL Corp., No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 9, 2002); In re Viasystems Group, Inc., No. 02-14867 (ALG) (Bankr. S.D.N.Y. Nov. 21, 2002); In re Guilford Mills, Inc., No. 02-40667 (BRL) (Bankr. S.D.N.Y. June 26, 2002).

8. In light of the size and complexity of these chapter 11 cases, the Debtors require the service of a seasoned and experienced financial advisor and investment banker, and one that is familiar with (i) the Debtors' businesses and operations and (ii) the chapter 11 process. Additionally, the Debtors believe that by having a financial advisor and investment banker provide these services in these bankruptcy cases, other professionals in these cases—and company officers who might otherwise handle complex financial and financing matters—will be able to focus better on their respective competencies and their core tasks: to efficiently and effectively manage the Debtors' business operations and to facilitate a successful chapter 11 process.

9. Rothschild has provided prepetition services to the Debtors in connection with the Debtors' restructuring efforts, including assisting the Debtors' management in developing a long-term business plan, conducting an extensive out-of-court financing effort, conducting extensive negotiations with various parties in interest, discussing various recapitalization alternatives with key stakeholders, negotiating the terms of the Debtors' post-petition financing facilities, negotiating the terms of the prenegotiated plan of reorganization, and providing additional investment banking services in preparation for the filing of these chapter 11 cases. As a result, Rothschild has developed a reserve of institutional knowledge related to, and an intimate understanding of, the Debtors' business operations, capital structure, creditors, and other material information. The Debtors believe that Rothschild is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner. Rothschild has indicated a willingness to act on behalf of the Debtors and subject itself to the jurisdiction and supervision of the Court.

## SERVICES TO BE RENDERED

10. Subject to further order of this Court, and consistent with the Engagement Letter, the Debtors request the employment and retention of Rothschild to render to the Company the following financial advisory and investment banking services as necessary, appropriate and feasible and as requested by the Company (the "Services"):[3]

a) review and analyze the Debtors' assets and the financial strategies of the Debtors;

b) review and analyze the business plans and financial projections prepared by the Debtors including, but not limited to, testing assumptions and comparing those

[3] Capitalized terms not defined herein shall have the meaning set forth in the Engagement Letter.

assumptions to historical trends in the Debtors' business as well as in the industry;

c)     evaluate the Debtors' debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Debtors;

d)     advise the Debtors' on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Debtors;

e)     determine a range of value for the Debtors and any securities that the Debtors offers or proposes to offer in connection with a Transaction;

f)     assist the Debtors and their other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

g)     assist in soliciting financing to replace the existing revolving credit facility and/or provide junior lien / last out financing within the revolving credit facility;

h)     assist in soliciting, reviewing and analyzing any proposals the Debtors receive from third parties in connection with a Transaction or other transaction;

i)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives or any acquirer of the Debtors or any of their assets in connection with a Transaction;

j)     assist in soliciting debtor-in-possession and/or exit financing;

k)     advise the Debtors with respect to, and attend, meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

l)     participate in hearings before the Court and provide relevant testimony with respect to the matters described in

the Engagement Letter and issues arising in connection with any proposed Plan; and

m) render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Debtors.

**DISINTERESTEDNESS OF PROFESSIONALS**

11. In reliance on the Augustine Declaration, the Debtors believe that, except as set forth herein and in the Augustine Declaration: (i) Rothschild has no connection with the Debtors, their creditors, the United States Trustee for the District of Delaware (the "United States Trustee"), any person employed in the office of the United States Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; (ii) Rothschild is not a creditor, equity security holder or insider of the Debtors; (iii) Rothschild is not and was not, within two years of the Petition Date, a director, officer or employee of the Debtors; and (iv) Rothschild does not have an interest materially adverse to the Debtors, their respective estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with or interest in the Debtors, or for any other reason. Accordingly, the Debtors believe that Rothschild is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

12. In the 90 days prior to the Petition Date, the Debtors paid Rothschild $543,750.00 in fees and $37,661.84 for reimbursement of expenses. Prior to the Petition Date, Rothschild received approximately $1,562,228.79 from the Debtors for prepetition services rendered and expenses incurred in advising the Debtors. Rothschild has informed the Debtors that it will hold any amounts it received prepetition in excess of fees and expenses that

Rothschild accrued prepetition, if any, and will apply such excess towards its fees and expenses that accrue after the Petition Date.

13. Rothschild has indicated that, to the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Rothschild's retention are discovered or arise, Rothschild will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## PROFESSIONAL COMPENSATION

14. In consideration of the services to be provided by Rothschild, and as set forth more fully in the Engagement Letter, Rothschild will be paid in cash by the Debtors for the Services, subject to this Court's approval, in the following manner (the "Fee Structure"):

a) A monthly advisory fee of $175,000 per month (the "Monthly Fee");

b) A new capital fee (the "New Capital Fee") equal to (i) 1.5% of the face amount of any secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.5% of the face amount of any junior secured or second lien debt raised; (iii) 3.5% of the face amount of any unsecured debt raised; and (iv) 5.0% of any equity capital, or capital convertible into equity, raised (a "New Capital Raise"); provided that in no event shall the New Capital Fee with respect to any New Capital Raise be less than $500,000. (Any new capital provided by Tontine Partners and/or its affiliates or any other current creditors of the Debtors is not, in each case, in and of itself, a New Capital Raise.)

c) A fee of $2,750,000 payable upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of a Transaction (the "Recapitalization Fee").

15. Rothschild has agreed to credit (to the extent not otherwise credited) (i) 50% of the paid Monthly Fees in excess of $525,000 (the "Monthly Fee Credit") against any

Recapitalization Fee or New Capital Fee and (ii) 50% of any paid New Capital Fees in excess of $500,000 (after application of any available Monthly Fee Credit) against the Recapitalization Fee; provided that in no event shall the Recapitalization Fee be reduced below zero nor shall the New Capital Fee be reduced below $500,000.

16. Notwithstanding the terms of the Engagement Letter, including the foregoing, Rothschild and the Debtors agreed prior to the Petition Date that, subject to the Court's approval of Rothschild's engagement by the Debtors on the terms set forth in this Application, Rothschild's aggregate fees under the Engagement Letter (including the fees Rothschild earned prior to the Petition Date) shall not exceed $3.85 million.

17. Subject to approval of this Court and the terms of the Engagement Letter, the Debtors agree to reimburse Rothschild for all of Rothschild's reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, including, without limitation, reasonable fees, disbursements, and other charges by Rothschild's counsel. Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research, and courier services.

18. The Debtors believe that the Fee Structure is comparable to those generally charged by investment banking firms of similar stature to Rothschild for comparable engagements, both in and out of bankruptcy proceedings, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and Rothschild in the Engagement Letter.

19. The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by Rothschild in connection with this engagement may vary and

the Debtors have taken these factors into account in negotiating the Fee Structure. In order to induce Rothschild to do business with the Debtors, the fees were set with consideration of the difficulty of the assignment and the challenging nature of the engagement, among other things.

20. Rothschild's restructuring capabilities, mergers and acquisitions expertise as well as its capital markets knowledge and financing skills, some or all of which may be required by the Debtors during the term of Rothschild's engagement, were important factors to the Debtors in determining the Fee Structure and the Debtors believe that the ultimate benefit to the Debtors of Rothschild's services cannot be measured merely by reference to the number of hours to be expended by Rothschild's professionals in the performance of such services.

21. The Debtors also acknowledge that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Rothschild and its professionals, and in light of the fact that such commitment may foreclose other opportunities for Rothschild and that the actual time and commitment required of Rothschild and its professionals to perform the Services may vary from week to week or month to month, creating "peak load" issues for Rothschild.

22. In light of the foregoing, the Debtors believe that the Fee Structure is both fair and reasonable under the circumstances of this engagement.

23. In accordance with section 504 of the Bankruptcy Code, Rothschild has informed the Debtors that there is no agreement or understanding between Rothschild and any other entity, other than an employee of Rothschild, for the sharing of compensation received or to be received by Rothschild for services rendered in connection with these cases.

## REQUEST FOR WAIVER OF LOCAL RULE 2016-2(d)

24. Rothschild has informed the Debtors that it is not the general practice of investment banking firms, including Rothschild, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(g), the Debtors respectfully seek a waiver excusing Rothschild from compliance with such requirements and permitting Rothschild to maintain time records in half-hour (0.50) increments setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

25. Rothschild will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Rothschild's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with the procedures established by the Court.

26. Rothschild intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the Office of the United States Trustee for the District of Delaware and the Local Rules and orders of this Court, and pursuant to any additional procedures that may be or have already been established by the Court.

## INDEMNITY PROVISION

27. As part of the overall compensation payable to Rothschild under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification and contribution

obligations as described in the Engagement Letter and Exhibit A thereto (the "Indemnification Provisions"). More specifically, the Indemnification Provisions provide that the Debtors will indemnify and hold Rothschild harmless against liabilities arising out of or in connection with its retention by the Debtors, except for any liability for losses, claims, damages, or liabilities incurred by the Debtors that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, willful misconduct, or fraud of Rothschild.

28. The Debtors and Rothschild believe the Indemnification Obligations are customary and reasonable for financial advisory and investment banking engagements, both out of court and in Chapter 11 Cases. See, e.g., In re Trident Resources Corp., 09-13150 (MFW) (Bankr. D. Del. Jan 28, 2010); In re Fairpoint Communications, Inc., No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2010); In re Charter Commc'ns, Inc., Case No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009); In re Movie Gallery, Inc., Case No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007); In re New Century TRS Holdings, Inc., No. 07-10416 (KJC) (Bankr. D. Del. Apr. 25, 2007); In re Calpine Corp., No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006); In re Delphi Corp., Case No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); In re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005); In re Collins & Aikman Corp., No. 05-55927 (SWR) (Bankr. E.D. Mich. July 18, 2005); In re Republic Engineered Prods. Holdings, Inc., Case No. 03-55118 (Bankr. N.D. Ohio Dec. 3, 2003); In re Snyders Drug Store, Inc., Case No. 03-44577 (Bankr. N.D. Ohio Sept. 30, 2003 and Oct. 8, 2003); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003); In re NTELOS, Inc., No. 03-32094 (DOT) (Bankr. E.D. Va. Apr. 16, 2003); In re U.S. Airways, Inc., No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); In re Phar-Mor, Inc., Case No. 01-44007 (Bankr. N.D. Ohio Oct. 11, 2001); In re LTV Steel, Inc.,

Case No. 00-43866 (Bankr. N.D. Ohio Feb. 20, 2001); In re United Artists Theatre Co., No. 00-3514 (SLR) (Bankr. D. Del. Nov. 14, 2000); In re Motor Coach Industries International, Inc., Case No. 08-12136 (Bankr. D. Del. September 15, 2008); In re VeraSun Energy Corporation, Case No. 08-12606 (Bankr. D. Del. October 31, 2008); In re Recycled Paper Greetings Inc., No. 09-10002 (KG) (Bankr. D. Del. Jan. 2, 2009).

29. The terms and conditions of the Engagement Letter, including the Provisions contained therein, were negotiated by the Debtors and Rothschild at arms' length and in good faith. The Debtors respectfully submit that the Indemnification Provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Rothschild's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and all parties in interest. Rothschild and the Debtors believe that the Indemnity Provisions are comparable to those generally obtained by investment banking firms of similar stature to Rothschild and for comparable engagements, both in and out of court. Accordingly, as part of this application, the Debtors request that this Court approve the Indemnification Provisions.

**Basis for Relief**

30. The Debtors seek approval of the Fee Structure and Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions, which is a significant departure from prior

bankruptcy practice relating to the compensation of professionals. As the United States Court of Appeals for the Fifth Circuit recognized in In re Nat'l Gypsum Co., 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present section 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present section 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (citations omitted) cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC), 83 B.R. 869, 874 (S.D.N.Y. 2008). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. See, e.g., In re U.S. Airways, Inc., 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); see also In re J.L. French Auto. Castings, Inc., No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

31. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). This amendment makes clear the ability of the Debtors to retain, with court approval, a professional on a fixed percentage fee basis or on a contingent fee basis such as the Fee Structure set forth in the Engagement Letter.

32. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large Chapter 11 Cases. See, e.g., In re Trident Resources Corp., 09-13150 (MFW) (Bankr. D. Del. Jan 28, 2010); In re Fairpoint Communications, Inc., No. 09-16335 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2010); In re Tronox Inc., No. 09-10156 (Bankr. S.D.N.Y. January 12, 2009); In re Recycled Paper Greetings Inc., No. 09-10002 (KG) (Bankr. D. Del. Jan. 2, 2009); In re VeraSun Energy Corporation, Case No. 08-12606 (Bankr. D. Del. October 31, 2008); In re Motor Coach Industries International, Inc., Case No. 08-12136 (Bankr. D. Del. September 15, 2008); In re Dura Auto. Sys., Inc., No. 06-11202 (Bankr. D. Del. Dec. 7, 2006); In re J.L. French Auto. Castings, Inc., No. 06-10119 (Bankr. D. Del. Mar. 24, 2006); In re FLYi, Inc., No. 05-20011 (Bankr. D. Del. January 17, 2006); In re Delphi Corp., No. 05-44481 (Bankr. S.D.N.Y. Nov. 30, 2005); In re Foamex Int., Inc., No. 05-12685 (Bankr. D. Del. October 17, 2005); In re Solutia Inc., No. 03-17949 (Bankr. S.D.N.Y. April 13 2003); In re Superior TeleCom Inc., No. 03-10607 (Bankr. D. Del. Apr. 10, 2003); In re UAL Corp., No. 02-48191 (Bankr. N.D. Ill. February 21, 2003); In re Guilford Mills, Inc., No. 02-40667 (Bankr. S.D.N.Y. June 26, 2002); In re Kaiser Aluminum Corp., No. 02-10429 (Bankr. D. Del. Mar. 9, 2002); In re Federal-Mogul Global Inc., No. 01-10578 (Bankr. D. Del. Feb. 5, 2002); In re Trans World Airlines, Inc., No. 01-0056 (Bankr. D. Del. Jan. 26, 2001).

33. The Debtors believe the Fee Structure and Indemnification Provisions set forth in the Engagement Letter are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee Structure and Indemnification Provisions adequately reflect: (i) the nature of the services to be provided by Rothschild; and (ii) fee structures and indemnification provisions typically utilized by Rothschild and other leading financial advisory and investment banking firms, which do not bill their time

on an hourly basis and generally are compensated on a transactional basis. In particular, the Debtors believe the proposed Fee Structure creates a proper balance between fixed, monthly fees, and contingency fees based on the successful consummation of certain sales of the Debtors' assets, raises of new capital and the overall success of these chapter 11 cases. Moreover, Rothschild's substantial experience with respect to financial advisory and investment banking services, coupled with the nature and scope of work already performed by Rothschild before the Petition Date, further suggest the reasonableness of the Fee Structure and Indemnification Provisions.

## BANKRUPTCY COURT APPROVAL

34. Section 3 of the Engagement Letter provides that Rothschild shall have no obligation to provide services to the Debtors unless the order approving the Debtors' retention of Rothschild and the terms of the Engagement Letter (i) authorizes the Debtors to retain Rothschild *nunc pro tunc* to the Petition Date, (ii) incorporates all of the terms and conditions of the Engagement Letter, and (iii) provides that Rothschild's compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review under section 330 of the Bankruptcy Code.

35. The Debtors believe that the provisions set forth above are reasonable terms and conditions of Rothschild's engagement. Furthermore, the Debtors and Rothschild negotiated the Fee Structure in contemplation of approval by this Court of the provisions of the Engagement Letter in their entirety.

## NOTICE

36. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel the Official Committee of Unsecured Creditors; (iii) counsel to the agent for the lenders under the prepetition credit facility; (iv) counsel to the agents for the lenders under the proposed post-petition credit facilities; (v) counsel to the Ad Hoc Committee of the holders of lenders of 9.5% secured notes; (vi) the indenture trustee for the 9.5% secured notes; (vii) counsel to the holders of the 12.5% subordinated notes; and (viii) all other parties required to receive service under Local Rule 2002-1(b). Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

## No Prior Request

37. No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, in substantially the form attached hereto as Exhibit A, (i) authorizing the Debtors to employ and retain Rothschild pursuant to the terms of the Engagement Letter, *nunc pro tunc* to the Petition Date, (ii) granting a waiver of compliance with the information requirements relating to compensation requests as set forth in Local Rule 2016-2(d), to the extent requested herein, and (iii) granting such other and further relief as is just and proper.

Dated: February 19, 2010

NEENAH ENTERPRISES, INC.
(~~for itself~~ and on behalf of its Debtor subsidiaries)

Robert E. Ostendorf, Jr.
President and Chief Executive Officer

-and-

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Brett H. Myrick
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION