# **EXHIBIT C**

As of May 22, 2009

Robert E. Ostendorf, Jr.
President and Chief Executive Officer
Neenah Enterprises, Inc.
2121 Brooks Avenue
P.O. Box 729
Neenah, Wisconsin 54957



Dear Mr. Ostendorf:

This letter (the "<u>Agreement</u>") will confirm the terms and conditions of the agreement among Neenah Enterprises, Inc. (collectively with its direct and indirect subsidiaries, the "<u>Company</u>") and Rothschild Inc. ("<u>Rothschild</u>") regarding the retention of Rothschild as financial advisor and investment banker to the Company in connection with possible capital raising activities and a potential restructuring of its businesses and/or certain liabilities of the Company.

<u>Section 1</u>    <u>Services to be Rendered.</u>  In connection with the formulation, analysis and implementation of various options for capital raising and/or a restructuring, reorganization or other strategic alternative relating to the Company, whether pursuant to a Transaction (as defined below) or any series or combination of Transactions, Rothschild will perform the following services as reasonably requested by the Company:

(a)    review and analyze the Company's assets and the financial strategies of the Company;

(b)    review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

(c)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(d)    advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(e)    determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction;

(f)    assist the Company and its other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(g)    assist in soliciting financing to replace the existing revolving credit facility and/or provide junior lien / last out financing within the revolving credit facility;

Rothschild Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschild.com

Neil A. Augustine
Managing Director
Telephone 212 403-5411
Facsimile 212 403-3734
Email neil.augustine@rothschild.com

Neenah Enterprises, Inc.
As of May 22, 2009
Page 2



(h) assist in soliciting, reviewing and analyzing any proposals the Company receives from third parties in connection with a Transaction or other transaction;

(i) assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives or any acquirer of the Company or any of its assets in connection with a Transaction;

(j) assist in soliciting debtor-in-possession ("DIP") and/or exit financing should the Company seek protection under the Bankruptcy Code (as defined below);

(k) advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(l) in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(m) render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

As used herein, the term "Transaction" shall mean any one or more of the following: (a) whether pursuant to a plan of reorganization (a "Plan") confirmed in connection with any case or cases commenced by or against Neenah Enterprises, Inc., any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code") or otherwise, any transaction or series of transactions that effects or proposes to effect material amendments to, or other material changes in, the Company's 9.5% Secured Notes due 2017 (the "Secured Notes"), including, without limitation, any exchange, conversion, repurchase, extension of maturity, or forgiveness of any material portion thereof; (b) pursuant to the Bankruptcy Code (i) any merger, consolidation, reorganization, recapitalization, financing, refinancing, business combination or other transaction pursuant to which the Company (or control thereof) is acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer") or (ii) any acquisition, directly or indirectly, by an Acquirer (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), through a credit bid or otherwise, whether in a single transaction, multiple transactions or a series of transactions for the purpose of effecting a recapitalization or change of control of the Company; (c) any restructuring, reorganization, exchange offer, tender offer, or similar transaction which results in a material change to the Secured Notes, whether or not pursuant to a Plan; (d) any transaction similar to any of the foregoing. For the avoidance of doubt, none of (i) the consummation of a rights offering

Neenah Enterprises, Inc.
As of May 22, 2009
Page 3



substantially similar to the offering previously proposed by Tontine Partners in February 2009, (ii) any transaction between the Company and Tontine Partners or any of its affiliates or (iii) a refinancing of any portion of the Secured Notes shall, in any case, in and of itself be deemed to be a Transaction hereunder.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Rothschild is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction. Rothschild shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

Section 2    Information Provided by the Company.

(a)    The Company will cooperate with Rothschild and furnish to, or cause to be furnished to, Rothschild any and all information as Rothschild deems reasonably appropriate to enable Rothschild to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Rothschild (i) will use and rely solely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently the same; (ii) does not assume responsibility for the accuracy or completeness of the Information and such other information, and (iii) will not act in the official capacity of an appraiser of specific assets of the Company or any other party. The Company confirms that the information to be furnished by the Company will be prepared in good faith and, when delivered, to the best of its knowledge will be true and correct in all material respects and not contain any material misstatement of fact or omit to state any material fact. The Company will use reasonable efforts to promptly notify Rothschild if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild.

(b)    The Company and Rothschild acknowledge that in the course of this engagement it may be necessary for the parties to communicate electronically. Each party further acknowledges that although the other party will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees that the other party shall have no liability to such party with respect to any error or omission arising from or in connection with technical transmission deficiencies in the electronic communication of information to such party or such party's reliance on information affected by any such technical transmission deficiencies.



        Section 3    Application for Retention of Rothschild. In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) this Agreement and (b) Rothschild's retention by the Company under the terms of this Agreement (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild's counsel pursuant to Section 6 hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), *nunc pro tunc* to the date the Chapter 11 case was commenced, and shall use its reasonable best efforts to obtain Bankruptcy Court authorization thereof. The Company shall use its reasonable best efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild and its counsel with a draft of such application and any proposed order authorizing Rothschild's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild and its counsel to review and comment thereon. Rothschild shall have no obligation to provide any services under this Agreement unless Rothschild's retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Rothschild in all respects (it being understood that the matters set forth in the immediately following paragraph shall be deemed acceptable to Rothschild).

        Rothschild acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section 3, payment of Rothschild's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Rothschild's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Rothschild hereunder as promptly as practicable in accordance with the terms hereof and the orders governing interim and final fee applications, and after obtaining all necessary further approvals from the Bankruptcy Court, if any.

        In agreeing to seek Rothschild's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Rothschild's general restructuring experience and expertise, its knowledge of the industry in which the Company operates and its capital markets and its merger and acquisition capabilities will inure to the benefit of the Company, that the value to the Company of Rothschild's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fee, the Recapitalization

Neenah Enterprises, Inc.
As of May 22, 2009
Page 5



Fee and the New Capital Fee (each as defined below) are reasonable regardless of the number of hours expended by Rothschild's professionals in performance of the services provided hereunder.

Section 4    Fees of Rothschild. As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay Rothschild (via wire transfer or other mutually acceptable means) the following fees in cash:

(a)    Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $175,000 per month. The initial Monthly Fee shall be pro-rated based on the commencement of services as of the date hereof. The initial Monthly Fee shall be payable by the Company upon the execution of this Agreement by the Company, and thereafter the Monthly Fee shall be payable by the Company in advance on the first day of each month.

(b)    A fee (the "Recapitalization Fee") of $2,750,000 payable upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of a Transaction.

(c)    A new capital fee (the "New Capital Fee") equal to (i) 1.5% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.5% of the face amount of any junior secured or second lien debt raised; (iii) 3.5% of the face amount of any unsecured debt raised; and (iv) 5.0% of any equity capital, or capital convertible into equity, raised (a "New Capital Raise); provided that, in no event shall the New Capital Fee with respect to any New Capital Raise be less than $500,000. The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company. Except as provided below, the refinancing of any portion of the Secured Notes which includes new capital shall be deemed to be a New Capital Raise hereunder. Notwithstanding the foregoing, any new capital (including any agreement to allow additional securities to be issued in lieu of cash interest payments owed to such creditors) provided by Tontine Partners and/or its affiliates or any other current creditors of the Company shall not, in each case, in and of itself, be deemed to be a New Capital Raise hereunder.

(d)    To the extent the Company requests that Rothschild perform additional services not contemplated by this Agreement, such additional fees shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild have taken such factors into account in setting the fees hereunder.

Neenah Enterprises, Inc.
As of May 22, 2009
Page 6



Section 5  Credit.  Rothschild shall credit to the extent not otherwise credited hereunder: (a) 50% of the paid Monthly Fees in excess of $525,000 (the "Monthly Fee Credit") against any Recapitalization Fee or New Capital Fee and (b) 50% of any paid New Capital Fees in excess of $500,000 (after application of any available Monthly Fee Credit) against the Recapitalization Fee; provided that in no event shall the Recapitalization Fee be reduced below zero or the New Capital Fee be reduced below $500,000.

Section 6  Expenses.  Without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement hereunder, and the enforcement of this Agreement, including, without limitation, the reasonable fees, disbursements and other charges of Rothschild's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court). Reasonable expenses shall also include, but not be limited to, reasonable expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. If a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail.

Section 7  Indemnity.  The Company agrees to the provisions of Exhibit A hereto which provide for indemnification by the Company of Rothschild and certain related persons. Such indemnification is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification shall survive any termination, expiration or completion of this Agreement or Rothschild's engagement hereunder.

Section 8  Term.  The term of Rothschild's engagement shall commence on the date hereof and shall extend until the consummation of a Transaction. This Agreement may be terminated by either the Company or Rothschild after sixty (60) days from the date hereof by providing thirty (30) days advance notice in writing. If terminated, (a) Rothschild shall be entitled to reimbursement of any and all reasonable expenses described in Section 6 and (b) Rothschild shall be entitled to payment of any fees which are due and owing to Rothschild upon the effective date of termination (including, without limitation, any additional Monthly Fees required by Section 4(a) hereof); provided, that the final Monthly Fee will be pro-rated for any incomplete monthly period of service. Termination of Rothschild's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Rothschild and certain related persons as provided in Exhibit A. Without limiting any of the foregoing, the Recapitalization Fee and New Capital Fee(s) shall be payable in the event that (a) as applicable, a Transaction or a New Capital Raise, is consummated at anytime prior to the expiration of 12 months after such termination, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to 12 months after such termination (which letter of intent or definitive agreement subsequently results in the consummation of a Transaction or New Capital Raise, as applicable, at any time), in each case, which involves a party which the Company or Rothschild had material discussions concerning a

Neenah Enterprises, Inc.
As of May 22, 2009
Page 7



Transaction or New Capital Raise, as the case may be, during the term of Rothschild's engagement hereunder.

Section 9   Miscellaneous.

(a)   *Administrative Expense Priority.*  In a Bankruptcy Case of Neenah Enterprises, Inc. or any of its direct or indirect subsidiaries, the Company agrees that Rothschild's post-petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly to Rothschild the compensation and expense reimbursement contemplated hereby taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its reasonable best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case permits the use of cash collateral and financing proceeds for the full and prompt payment of Rothschild's fees and expenses contemplated hereby.

(b)   *Survival, Successors & Assigns.*  Sections 4 through 9 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Rothschild and certain related persons contained in Exhibit A hereto shall inure to the respective successors and assigns of the parties hereto and thereto and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the parties hereto and thereto shall be binding upon their respective successors and assigns. In a Chapter 11 proceeding, the Company shall use its reasonable best efforts to cause any purchaser of all or substantially all of the Company's assets to assume the Company's obligations hereunder.

(c)   *Benefit of Agreement; No Reliance by Third Parties.*  The advice (oral or written) rendered by Rothschild pursuant to this Agreement is intended solely for the benefit and use of the Company and its professionals in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Rothschild or as required by legal or regulatory authority (provided that the Company shall use its reasonable best efforts to provide Rothschild with an opportunity to review and provide reasonable comments on any such reproduction, dissemination, quote or reference prior thereto). In addition, the Company agrees that it will not, and will not permit any of its affiliates to, make any public reference to Rothschild except with the prior consent of Rothschild or as otherwise provided in this Agreement or as required by legal or regulatory authority (provided that the Company shall use its reasonable best efforts to provide

Neenah Enterprises, Inc.
As of May 22, 2009
Page 8



Rothschild with an opportunity to review and provide reasonable comments on any such reference prior thereto). Notwithstanding the foregoing, the Company may publicly disclose Rothschild's engagement as a financial advisor hereunder (provided that the Company shall use its reasonable best efforts to provide Rothschild with an opportunity to review and provide reasonable comments on any such disclosure prior thereto).

(d) *Nature of Relationship.* The relationship of Rothschild to the Company hereunder shall be that of an independent contractor and Rothschild shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Rothschild have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing the services contemplated hereunder, Rothschild will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including, without limitation, security holders, creditors or employees of the Company.

(e) *Rothschild Affiliates.* Rothschild, through the equity owners of its parent company, Rothschild North America Inc., has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities"). None of the Affiliated Entities is being retained hereunder nor will any professionals or employees of the Affiliated Entities provide services to the Company in connection with the matters contemplated hereby. The Affiliated Entities are involved in a wide range of investment banking and other activities. Rothschild can make no representation as to the "disinterestedness" (as defined in the Bankruptcy Code) of the professionals or employees of the Affiliated Entities. Information that is held by the Affiliated Entities will not for any purpose be taken into account in determining Rothschild's responsibilities to the Company hereunder. None of the Affiliated Entities will have any duty to disclose to the Company or any other party, or utilize for the Company's benefit, any non-public information acquired in the course of providing services to any other person engaging in any transaction or otherwise carrying on its business.

(f) *Public Announcements.* Rothschild agrees that it will not, and will not permit any of its affiliates to, make any public reference to the Company except with the prior consent of the Company; provided that Rothschild may at its option and expense, upon the earlier of (i) public disclosure by the Company of Rothschild's retention hereunder or (ii) the receipt by Rothschild of consent by the Company, place announcements and advertisements or otherwise publicize Rothschild's retention in such financial and other newspapers and journals as it may choose, stating that Rothschild acted as financial advisor to the Company in connection with such transaction and use or display the Company's logo, symbol or trademark as part of its general marketing or promotional activities.

(g) *CHOICE OF LAW: JURISDICTION.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED

Neenah Enterprises, Inc.
As of May 22, 2009
Page 9



BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES HERETO PERTAINING TO THIS AGREEMENT OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT IN (A) ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE STATE OF NEW YORK OR (B) THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HERETO HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY CONSENTS TO THE SERVICE OF PROCESS IN ACCORDANCE WITH NEW YORK LAW, AND AGREES THAT THE COMPANY'S CHIEF EXECUTIVE OFFICER SHALL BE AUTHORIZED TO ACCEPT SERVICE ON ITS BEHALF.

(h)  *Waiver of Jury Trial.*  Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or any Transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented, expressly or otherwise, that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(i)  *Entire Agreement.*  This Agreement, including the exhibit(s) hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(j)  *Authority.*  Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and Exhibit A and the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Rothschild will assume that any instructions, notices or requests have

Neenah Enterprises, Inc.
As of May 22, 2009
Page 10



been properly authorized by the Company if they are given or purported to be given by, or is reasonably believed by Rothschild to be a director, officer, employee or authorized agent.

(k) *Counterparts*. This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopier shall be effective as delivery of a manually executed counterpart to this Agreement.

(l) *Notices*. Any notice given pursuant to, or relating to, this Agreement shall be in writing and shall be mailed or delivered by courier (a) if to the Company, at the address set forth above, Attn: Chief Executive Officer, with a copy to Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Attention: Robert Verigan, and (b) if to Rothschild, to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: Stephen Antinelli, Managing Director, with a copy to Rothschild Inc., 1251 Avenue of the Americas, 51st Floor, New York, New York 10020, Attention: General Counsel.

If the foregoing correctly sets forth the understanding and agreement between Rothschild and the Company, please so indicate by signing the enclosed copy of this Agreement, whereupon it shall become a binding agreement between the parties hereto as of the date first above written.

Very truly yours,

ROTHSCHILD INC.

By: _____
Neil Augustine
Managing Director

Accepted and Agreed to as of
the date first written above on
behalf of itself and its direct
and indirect subsidiaries:

NEENAH ENTERPRISES, INC.

By: _____
Robert E. Ostendorf, Jr.
President and Chief Executive Officer

370466v11

## Exhibit A

The Company shall indemnify and hold harmless Rothschild and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Rothschild and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to this Agreement, the retention of and services provided by Rothschild under this Agreement, or any Transaction or New Capital Raise; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or conduct in connection therewith, provided that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the bad faith, gross negligence, willful misconduct or fraud of such Indemnified Party.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any reasonable legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the bad faith, gross negligence, willful misconduct or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such Action or (b) unless and only to the extent that such failure results in the forfeiture by or prejudice to the Company of substantial rights and defenses. The Company shall, if requested by Rothschild, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Rothschild and will not, without the prior written consent of Rothschild, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise,

Neenah Enterprises, Inc.
As of May 22, 2009
Exhibit A - Page 2

consent or termination (i) contains an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of Rothschild under this Agreement and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Agreement for the reasonable fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Rothschild under this Agreement. Benefits received by Rothschild shall be deemed to be equal to the compensation paid by the Company to Rothschild in connection with this Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Rothschild on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen primarily because of the breach of Section 9(f) of this Agreement or the bad faith, gross negligence, willful misconduct or fraud of such Indemnified Party in

Neenah Enterprises, Inc.
As of May 22, 2009
Exhibit A - Page 3

connection with any such advice, actions, inactions or services. In the event the Company commences a Chapter 7 or Chapter 11 case, the Company shall use its reasonable best efforts to require, as a condition of the Company releasing from liability any creditor or other party-in-interest in the case, that such creditor or other party-in-interest release all Indemnified Parties from all claims or other liabilities directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under this Agreement or any transaction or conduct in connection therewith, provided that the Company shall not be required to obtain such release with respect to the bad faith, gross negligence, willful misconduct or fraud of any Indemnified Party.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.