UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[1] | Case No. 10-10360 (MFW) |
| Debtors. | Jointly Administered |
| | Hearing Date: March 9, 2010 at 1:00 p.m. (ET)<br>Objection Deadline: March 2, 2010 at 4:00 p.m. (ET) |

## APPLICATION FOR AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF HURON CONSULTING SERVICES LLC AS FINANCIAL ADVISORS TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE, AND (II) DESIGNATING RICHARD D. CARUSO AS THE CHIEF RESTRUCTURING ADVISOR TO THE DEBTORS

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors") hereby submit this application (the "Application") pursuant to section 327(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, in substantially the form attached hereto as Exhibit A, (i) authorizing the Debtors to employ and retain Huron Consulting Services LLC, together with its wholly owned subsidiaries, agents, and independent contractors (collectively, "Huron"), as financial advisors to the Debtors, *nunc pro tunc* to the Petition Date (as defined below), and (ii) designating Richard D. Caruso, a Managing Director of Huron, as the Chief Restructuring Advisor (the "CRA") to the Debtors on the terms set forth in the Engagement Letter (as defined below) and herein. In support of this Application, the Debtors submit the Declaration of Richard D. Caruso (the "Caruso Declaration"), a copy of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

which is attached hereto as <u>Exhibit B</u> and incorporated by reference herein. In further support of this Application, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On February 3, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief. On February 4, 2010 the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 2015(b).

2. The Debtors continue in possession of their respective properties and continue to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On February 12, 2010, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors (the "<u>Committee</u>"). No request has been made for the appointment of a trustee or examiner.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## RELIEF REQUESTED

5. By this Application, the Debtors seek the entry of an order, in substantially the form attached hereto as <u>Exhibit A</u>, pursuant to section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), (i) authorizing the Debtor to employ and retain Huron as their financial advisors in these chapter 11 cases upon the terms and conditions contained in that certain engagement letter dated August 14, 2009, by and between Huron and Neenah Enterprises,

2

Inc. (as supplemented pursuant to the First Addendum and the Second Addendum (each term as defined below), the "Engagement Letter"), a copy of which is included in Exhibit C hereto and incorporated by reference herein, and (ii) designating Richard D. Caruso as the CRA to the Debtors in these chapter 11 cases on the terms set forth in the Engagement Letter and herein.

## BASIS FOR RELIEF

6. In light of the size and complexity of these chapter 11 cases, the Debtors require the services of an experienced financial advisor that is familiar with the Debtors' business operations and the chapter 11 process. The Debtors have reviewed the qualifications and experience of Huron' personnel and believe that such personnel have considerable experience in advising debtors and assisting various parties-in-interest in restructuring matters, both inside and outside of chapter 11 proceedings. For example, Huron's personnel have advised debtors, secured creditors, unsecured creditors, and equity holders in numerous bankruptcy cases and out-of-court restructurings and have acted as financial advisors to both buyers and sellers in numerous business combination transactions. Huron is a highly qualified professional services firm whose reorganization professionals have experience in matters of this type. Huron's depth of experience and breadth of service capabilities render it particularly well-qualified and able to provide services to the Debtors during the pendency of these chapter 11 cases.

7. The Debtors have selected Huron, subject to the Court's approval, to serve as their financial advisors in these chapter 11 cases. The Debtors engaged Huron on August 14, 2009 to provide certain financial advisory and consulting services to the Debtors, as more fully set forth in the Engagement Letter. Huron and the Debtors have supplemented the terms of the Engagement Letter pursuant to that certain addendum dated December 14, 2009 (the "First Addendum") and that certain addendum dated February 9, 2010 (the "Second Addendum"),

3

copies of which are included in Exhibit C hereto. Since the Engagement Letter was executed, Huron's professionals have worked closely with the Debtors' management team and other professionals and have become well acquainted with the Debtors' business operations. As a result, Huron has developed significant institutional knowledge and expertise regarding the Debtors' business operations and capital structure that will assist Huron in providing effective and efficient services in these cases. Such experience and knowledge will be valuable to the Debtors in their efforts to maximize the value of their estates and to successfully reorganize. Furthermore, the Debtors believe that Huron is well qualified and able to represent the Debtors in a cost-effective, efficient, and timely manner. Accordingly, the Debtors wish to retain Huron to provide financial advisory services during these chapter 11 cases.

8. Pursuant to the terms of the post-petition financing facilities which the Court approved on an interim basis on February 4, 2010 (the "DIP Facilities"), the Debtors are required to retain, on or prior to the date on which the DIP Facilities are approved on a final basis, Richard D. Caruso of Huron (or such other individual as may be reasonably acceptable to the post-petition lenders) as the CRA in these chapter 11 cases. The DIP Facilities further provide that the CRA will report to the Chief Executive Officer of the Debtors and will assist the Debtors with financial reporting and analysis. The Debtors have selected Mr. Caruso to serve as their CRA on the terms set forth in the Second Addendum. Mr. Caruso has over 25 years of restructuring experience and has acted as the chief financial officer of several companies. His areas of expertise span steel, manufacturing, retail, construction, service and oil industries. He is a qualified financial expert in federal district courts and practiced as a CPA through 1990. The Debtors believe that Mr. Caruso, who has worked closely with Debtors' management since Huron was first engaged by the Debtors, is thus intimately familiar with the Debtors' business

4
DB02:9281379.1                                    069152.1001

operation, and has actively participated in negotiations on the terms of the DIP Facilities, is well qualified and able to act as the CRA in these cases in a cost-effective and efficient manner.

## SCOPE OF SERVICES

9. The Debtors anticipate that Huron will provide such financial advisory services as the Debtors and Huron deem appropriate and feasible throughout the course of these chapter 11 cases. The Debtors have negotiated the terms of the Engagement Letter, which sets forth the services that Huron will provide to the Debtors (the "Services"), as well as the manner in which Huron will be compensated for such Services. Specifically, subject to this Court's approval, the Debtors propose to engage Huron to provide the following financial advisory services to the Debtors throughout these chapter 11 cases:

- assist the Debtors in preparing the financial disclosures required by the Bankruptcy Code and the Bankruptcy Rules, including the Debtors' schedules of assets and liabilities, statements of financial affairs, and monthly operating reports;

- assist the Debtors with providing the information and analyses required in connection with the DIP Facilities;

- assist the Debtors with the identification and implementation of short-term cash forecasting and cash management procedures;

- assist the Debtors with providing the information and analyses required in connection with the hearings on the use of cash collateral and other financing as may be deemed necessary;

- assist and advise the Debtors in connection with the development and implementation of any employee incentive and benefit programs;

- assist the Debtors with the identification of executory contracts and leases and the performance of cost/benefit evaluations with respect to the assumption or rejection of each;

- assist the Debtors' management team and counsel with respect to the coordination of resources related to the ongoing reorganization efforts;

- assist the Debtors with the preparation of financial information for distribution to creditors and other parties in interest, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analyses, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

- attendance at meetings and assistance in discussions with potential investors, banks and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the Office of the United States Trustee, other parties in interest and professionals hired by the foregoing parties, as requested by the Debtors;

- analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track the resolution of such claims;

- assist the Debtors in the preparation of information and analyses necessary for the confirmation of a plan of reorganization in these chapter 11 cases, including information contained in the disclosure statement;

- assist the Debtors in the evaluation and analysis of avoidance actions, including any fraudulent conveyances and preferential transfers;

- render strategic and financial advice to the Debtors in connection with mid-term operating forecasts and possible credit facility amendments as well as valuation related work; and

- render such other general business consulting or such other assistance as the Debtors' management or legal advisors may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals retained by the Debtors.

10. In addition, pursuant to the terms of the Second Addendum and in accordance with the requirements of the DIP Facilities, the Debtors have chosen Mr. Caruso to serve as their CRA in these chapter 11 cases. The Debtors anticipate that Mr. Caruso provide the following services to the Debtors in his capacity as the CRA:

- perform certain analyses in support of financial reporting compliance, including DIP budget variance reporting and DIP budget updates;

- coordinate with the official claims agent to establish the procedures for integrating and reconciling company records with filed claims;

- oversight of all cash disbursements in order to assist with DIP loan compliance with respect to the DIP budget;

- participation in meetings with the post-petition lenders, as necessary;

- addressing financial reporting matters in preparation for and resulting from the Debtors' restructuring, including assistance with the evaluation of applicable generally accepted accounting principles in accordance with ASC 852, *Reorganizations*, both during these chapter 11 cases and upon the Debtors' emergence from chapter 11 (for example: accounting cut-off issues; determination of pre- and post-petition obligations; establishment of pre-petition payment controls and processes; accounting for liabilities subject to compromise; accounting for reorganization items in the company's statement of operations; and various other tasks, as may be necessary, at the direction of the Debtors' management); and

- providing such assistance as may be necessary in connection with the Debtors' efforts to review, update or modify their business plan and develop a plan of reorganization, including; assistance with preparing a liquidation analysis; coordination with the Debtors' claims processing agent; assistance with various other tasks, as may be necessary, at the direction of the Debtors' management and their legal advisors.

11. The Debtors believe that Mr. Caruso's proposed services as the CRA in these chapter 11 cases will be consistent with Huron's role as the Debtors' financial advisor. Mr. Caruso will not be an officer of the Debtors and will perform his duties as the CRA to the Debtors in his capacity as a Managing Director of Huron.

12. The Debtors have also chosen to retain Rothschild, Inc. ("Rothschild") to provide investment banking services in these chapter 11 cases. The Debtors are submitting, concurrently herewith, a separate application to retain Rothschild. Huron and Rothschild have conferred about their respective roles in these chapter 11 cases in order to avoid duplication of efforts. The Debtors intend that Huron's services will complement, and not duplicate, the services to be rendered by Rothschild or any other professionals retained in these chapter 11 cases. Huron understands that the Debtors have retained and may retain additional professionals and will work cooperatively with such professionals to avoid any duplication of efforts.

## HURON'S DISINTERESTEDNESS

13. Huron has informed the Debtors that, to the best of its knowledge, information and belief, and except as may be set forth in the Caruso Declaration, it (i) has no connection with the Debtors, their creditors or other parties in interest in these chapter 11 cases, (ii) does not hold or represent any interest adverse to the Debtors' estates, and (iii) believes that it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. Huron will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Huron will promptly provide the Court with a supplemental affidavit.

14. Except as permitted by section 504(b) of the Bankruptcy Code, Huron has agreed not to share with any person or firm the compensation to be paid for the professional services rendered by Huron in connection with these chapter 11 cases.

## PROFESSIONAL COMPENSATION

15. The Debtors understand that Huron intends to apply to the Court for allowance of compensation for services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), applicable orders of this Court, and guidelines established by the Office of the United States Trustee. Huron, along with Mr. Caruso in his capacity as the CRA, will be paid on an hourly basis. The customary hourly rates, subject to periodic adjustment, charged by Huron's professionals anticipated to be assigned to these cases are as follows:

| | |
|---|---|
| Managing Director | $650 - $695 |
| Directors | $525 - $590 |

| | |
|---|---|
| Manager | $375 - $450 |
| Associate | $300 - $375 |
| Analyst | $225 - $225 |

Mr. Caruso's current hourly billing rate is $675. The other Huron professionals who are expected to provide financial advisory services to the Debtors during the course of these chapter 11 cases, and their respective hourly billing rates, are: Brent Johnson, Director, $575 per hour, Omer Ozgozukara, Manager, $375 per hour, Brett Anderson, Manager, $375 per hour, and such other professionals as may be required.

16. In addition to compensation for professional services rendered by Huron personnel, Huron will seek reimbursement for reasonable and necessary expenses incurred in connection with the Debtors' chapter 11 cases, including but not limited to, transportation costs (economy class airfares), hotel accommodations, meals, telephone and facsimile charges, industry research, counsel fees, duplicating and printing and messenger services.

17. Huron has received a $75,000 retainer in connection with the preparations for the filing of these chapter 11 cases. The unapplied residual retainer, which is estimated to total approximately $6,500, will constitute a general retainer for post-petition services, will not be segregated by Huron in a separate account, and will be held until the end of these chapter 11 cases and applied to Huron's finally approved fees and expenses in these proceedings.

18. In these cases, the general security retainer is appropriate for several reasons. See In re Insilco Technologies, Inc., 291 B.R. 628, 634 (Bankr. D. Del. 2003) (Carey, J.) ("Factors to be considered, include . . . whether terms of an engagement agreement reflect normal business terms in the marketplace; . . . the relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal

9

DB02:9281379.1                                                              069152.1001

bargaining power who engaged in an arms-length negotiation[] [and] . . . whether the retention, as proposed, is in the best interests of the estate[] . . ."); see also Statements of Bankruptcy Judge Peter J. Walsh, In re CTC Communications Group, Inc., Case No. 02-12873 (PJW) (Bankr. D. Del. May 22, 2003), transcript of hearing held May 22, 2003, at 43 ("I agree and adopt wholeheartedly Judge Carey's decision in the Insilco case."). First, these types of retainer agreements reflect normal business terms in the marketplace. See In re Insilco Technologies, Inc., 291 B.R. at 634 ("[I]t is not disputed that the taking of [security] retainers is a practice now common in the market place."). Second, both Huron and the Debtors are sophisticated business entities that have negotiated the retainer at arm's length. Third, the retention of Huron is in the best interests of the Debtors' estates because the retention agreement and retainer allow the Debtors to maintain the prepetition relationship established with Huron. Thus, under the standards articulated in In re Insilco Technologies, Inc., and adopted In re CTC Communications Group, Inc., the facts and circumstances of these cases support the approval of the security retainer.

19. Huron will submit monthly invoices for services rendered and expenses incurred. All of Huron's fees and expenses in these chapter 11 cases relating to the Services performed for the Debtors will be subject to approval of the Court upon proper application by Huron in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the Local Rules of this Court and any orders of the Court, the fee and expense guidelines established by the United States Trustee, and all other applicable requirements.

20. Huron's proposed compensation is consistent with and typical of compensation arrangements entered into by Huron and other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtors believe that

Huron's fee structure is fair and reasonable in light of industry practice, market rates both in and out of chapter 11 cases, Huron's experience in reorganization matters, the scope of services to be performed by Huron and the importance of such services to the outcome of these cases.

## INDEMNIFICATION AND RELATED PROVISIONS

21. Subject to the Court's approval, pursuant to the Engagement Letter the Debtors have agreed to indemnify and hold Huron harmless against liabilities arising out of or in connection with its retention by the Debtors, except for any such liability for claims, liabilities, damages, obligations, costs and expenses incurred by Huron that are judicially determined by a court of competent jurisdiction to have primarily resulted from the bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of Huron.

22. The Huron Engagement Letters also contain standard indemnification language (the "Indemnification Provisions") with respect to services to be provided by Huron. Pursuant to the Huron Engagement Letters, the Debtors have agreed to indemnify Huron for any loss, liability, or obligation arising out of or relating to the Debtors' failure to fulfill their obligations under the Huron Engagement Letters, including, without limitation any failure to supply Huron with complete and accurate information. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions set forth in the Huron Engagement Letters, to the extent set forth below:

(a) shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Indemnification Provisions for services under the Huron Engagement Letters or otherwise, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Bankruptcy Court;

(b) The Debtors shall have no obligation to indemnify Huron, or provide contribution or reimbursement to Huron, for any claim or expense that is either: (i) judicially determined (the determination having become final) to

11

have arisen from Huron's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the material breach of Huron's contractual obligations unless the Court or an appellate court reviewing this Court determines that the indemnification, contribution or reimbursement would not be prohibited by *In re United Artists Theatre Co.*, 351 F.3d 217 (3d Cir. 2003) or other applicable law; provided that in any further proceedings in this Court or on appeal related to this clause (ii) Huron shall not be deemed to have consented to such clause; or (iii) settled prior to a judicial determination as to Huron's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing but determined by the Bankruptcy Court, after notice and a hearing, to be a claim or expense for which Huron should not receive indemnity, contribution, or reimbursement under the terms of the Indemnification Provisions for services under the Huron Engagement Letters;

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases of the Debtors (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the chapter 11 cases of the Debtors, Huron believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' obligations under the Indemnification Provisions (as modified by the order of the Bankruptcy Court approving the Indemnification Provisions), including without limitation the advancement of defense costs, Huron must file an application therefor in the Bankruptcy Court, and the Debtors may not pay such amounts to Huron before the entry of an order by the Bankruptcy Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by Huron for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Huron.

## NOTICE

23. Notice of this Application has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the agent for the lenders under the prepetition credit facility; (iv) counsel to the agents for the lenders under the proposed post-petition credit facilities; (v) counsel to the ad hoc committee of the holders of 9.5% secured notes; (vi) the indenture trustee for the 9.5% secured notes; (vii) counsel to the holders of the 12.5% subordinated notes; and (viii) all other parties required to receive service under Rule 2002-1(b).

In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto as Exhibit A, (i) authorizing the employment and retention of Huron as financial advisor to the Debtors *nunc pro tunc* to the Petition Date, (ii) designating Richard D. Caruso as the Chief Restructuring Advisor to the Debtors, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: February 19, 2010

NEENAH ENTERPRISES, INC.
(for itself and on behalf of each other Debtor)

/s/ Robert E. Ostendorf, Jr.
Robert E. Ostendorf, Jr.
President and Chief Executive Officer

-and-

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Brett H. Myrick
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Robert S. Brady
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION