# EXHIBIT C

PROPRIETARY AND CONFIDENTIAL

August 14, 2009

Neenah Enterprises, Inc
Mr. Robert Ostendorf
2121 Brooks Ave
Neenah WI, 54956

Dear Mr Ostendorf:

I am pleased to confirm, on behalf of Huron Consulting Services LLC ("Huron," "we," "us," or "our"), our engagement to provide Neenah Enterprises Inc, ("you," "your," or "the Company") certain Financial Advisory services as outlined below.

*Objectives and Scope*

We understand that the Company's financial department management is currently having its efforts diverted away from its normal participation in the day-to-day and strategic management of the Company as a result of the re-financing and cash flow management demands of the business. We further understand that you desire to have Huron assist you with your cash flow management, as follows:

- Assist in the Management of the Company's daily liquidity;
- Assist in the preparation of cash flow and liquidity projections, updated financial forecasts, and assist in the preparation of feasibility analyses in connection with the Company's restructuring efforts;
- Monitoring and analysis of the Debtor's operations and financial condition, cash expenditures, business plans, operating forecasts, strategy, projected cash requirements and cash management;
- Borrowing base management and forecasting;
- Identification of improvements to working capital management aimed at maximizing availability/liquidity;
- Such other efforts as mutually agreed to between the Company and Huron.

*Our Services*

Our services will consist of the objectives and scope as set forth above and will be performed by John DiDonato, Richard Caruso, Agatha Sygulinska and such other Huron personnel as agreed to in accordance with the terms of this agreement. While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel, as appropriate, to perform the services so long as any such reassignment does not result in any significant disruption or delay in the delivery of the services or impact the Company negatively with respect to the cost thereof.

Our findings will be conveyed to you, the Company, on a weekly basis. It is not anticipated that any formal written reports will be issued unless otherwise requested by you.

We are a management consulting firm and not a CPA firm, and do not provide attest services, audits or other engagements in accordance with the AICPA Statements on Auditing Standards. We will not audit any financial statements or perform attest procedures with respect to information in conjunction with this engagement. Our services are not designed, nor should they be relied upon, to identify weaknesses in internal controls, financial statement errors, irregularities, illegal acts or disclosure deficiencies.

*Your Responsibilities*

In connection with our provision of services, you will perform the tasks, furnish the personnel, provide the resources, and undertake the responsibilities specified below.

You will designate an employee or employees within your senior management who will make or obtain all management decisions with respect to this engagement on a timely basis. You also agree to ensure that all assumptions set forth below are accurate and to provide us with such further information we may need and which we can rely on to be accurate and complete. You also agree to cause all levels of your employees and contractors to cooperate fully and timely with us. We will be entitled to rely on all of your decisions and approvals and we will not be obligated to evaluate, advise on, confirm, or reject such decisions and approvals.

To help maximize the value of our work to you and to keep the project moving on schedule, you agree to comply with all of our reasonable requests and to provide us timely access to all information and locations reasonably necessary to our performance of the services.

The successful delivery of our services, and the fees charged, are dependent on (i) your timely and effective completion of your responsibilities, (ii) the accuracy and completeness of any assumptions, and (iii) timely decisions and approvals by your management. You will be responsible for any delays or additional costs incurred in performing the services caused by any deficiencies in the assumptions or in carrying out your responsibilities; provided, however, that we shall notify you as soon as practicable should we become aware that any such deficiency is likely to cause a delay or increased costs.

*Retainer*

Both Parties agree that Huron will commence this work without a retainer in return for Neenah's agreement to rigorously follow the payment terms contained herein. On or about September 15, 2009, Neenah will determine whether it is appropriate to institute a retainer and the amounts and terms of such retainer.

*Fees and Expenses*

We will bill on an hourly basis based on the actual hours worked and the following hourly billing rates (which may be subject to adjustment from time to time upon 30 days prior written notice to you):

| Title | Hourly Rate |
|---|---|
| Managing Director | $650-695 |
| Director | $525-590 |
| Manager | $375-450 |
| Associate | $300-375 |
| Analyst | $225-225 |

Mail check to:

Huron Consulting Services LLC
4795 Paysphere Circle
Chicago, IL 60674

Or wire transfer to:

Bank of America, N.A.
Chicago, Illinois
Routing No.0260-0959-3
Account Title: Huron Consulting Services LLC
Account Number: 5800297276
Comments: Include Invoice Number

Out of pocket expenses (including transportation, lodging, meals, communications, supplies, copying, etc.) will be billed at the actual amounts incurred. We will follow our Huron customary travel policies which are the to utilize coach service on airlines (except when not available) and utilize hotels for which Neenah may have preferred rates.

We will bill on a weekly basis. Our invoices are due upon presentation. Undisputed amounts remaining outstanding for more than 20 days (past due) will be subject to an interest charge of 1.5% per month from the date of invoice. We reserve the right to suspend further services until payment is received on undisputed past due invoices, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension We understand that our bills should be sent to:

Robert Ostendorf
CEO
Neenah Enterprises, Inc
2121 Brooks Ave
Neenah, WI 54956

Business Terms

The attached General Business Terms apply to this engagement.

* * * * * *

Please indicate your agreement with these terms by signing and returning to me the enclosed copy of this letter. We appreciate the opportunity to be of service to you and look forward to working with you on this engagement.

Sincerely,

HURON CONSULTING SERVICES LLC

By: _____*signature*_____
Richard Caruso
Title: _____
Date: _____

Attachments: General Business Terms

Acknowledged and Accepted:
Neenah Enterprises, Inc
By: _____*signature*_____
Title: CFO
Date: 9-14-09

**Attachment to Engagement Letter dated August 21, 2009 between
Huron Consulting Group and Neenah Enterprises, Inc.**

**GENERAL BUSINESS TERMS**

These General Business Terms, together with the Engagement Letter (including any and all attachments, exhibits and schedules) constitute the entire understanding and agreement (the "Agreement") between us with respect to the services and deliverables described in the Engagement Letter. If there is a conflict between these General Business Terms ("GBTs") and the terms of the Engagement Letter, the terms of the GBTs will govern unless the Engagement Letter specifically references and pre-empts the relevant section in the Engagement Letter.

**1. Our Services and Deliverables** We will provide the services and furnish the deliverables (the "Services") as described in our Engagement Letter and any attachments thereto, as may be modified in writing from time to time by mutual consent.

**2. Independent Contractor** We are an independent contractor and not your employee, agent, joint venture or partner, and will determine the method, details and means of performing our Services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, payroll and other applicable employee withholdings.

**3. Fees and Expenses** (a) Our fees and payment terms are set out in our Engagement Letter. Those fees do not include taxes and other governmental charges (which will be separately identified in our invoices.)

(b) We reserve the right to suspend Services if undisputed invoices are not timely paid, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension.

**4. Taxes** (a) You will be responsible for and pay all applicable sales, use, excise, value added, services, consumption and other taxes and duties associated with our performance or your receipt of our Services, excluding taxes on our income generally.

(b) If you are required by the laws of any foreign tax jurisdiction to withhold income or profits taxes from our payment, then the amount payable by you upon which the withholding is based shall be paid to us net of such withholding. You shall pay any such withholding to the applicable tax authority. However, if after 120 days of the withholding, you do not, upon our written demand, provide us with official tax certificates documenting remittance of the taxes, you shall pay to us an amount equal to such withholding. The tax certificates shall be in a form sufficient to document qualification of the taxes for the foreign tax credit allowable against our corporation income tax.

**5. Confidentiality and Privacy** (a) With respect to any information you supply in connection with this engagement, ("Confidential Information"), we will protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform our obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, other than as a result of our breach of this Agreement, (ii) already known to us, as may be demonstrated by written records in our possession as of the date hereof, (iii) lawfully disclosed by a third party, (iv) independently developed, as may be demonstrated by written records in our possession as of the date hereof, (v) disclosed pursuant to legal requirement or order, but only after giving you timely notice thereof, or (vi) disclosed to taxing authorities or to representatives and advisors in connection with tax filings, reports, claims, audits and litigation with your prior written approval.

(b) Confidential Information made available hereunder, including copies thereof, shall be returned or destroyed upon your request; provided that we may retain archival copies of email messages for record keeping purposes, and we shall make no unauthorized use of such copies.

(c) We agree to use any personally identifiable information and data you provide us only for the purposes of this engagement and as you direct, and we will not be liable for any third-party claims related to such use. You agree to take necessary actions to ensure that you comply with applicable laws relating to privacy and/or data protection, and acknowledge that we are not providing legal advice on compliance with the privacy and/or data protection laws of any country or jurisdiction.

(d) We may also mention your name and provide a general description of the engagement in our client lists or marketing materials with your prior written approval.

**6. Our Deliverables and Your License** Upon full and final payment of all amounts due us in connection with this engagement in accordance with the terms hereof, all right, title and interest in the deliverables set out in our Engagement Letter will become your sole and exclusive property, except as set forth below. We will retain sole and exclusive ownership of all right, title and interest in our proprietary information, processes, methodologies, know how and software ("Huron Property"), including such information as existed prior to the delivery of our Services. To the extent our deliverables to you contain Huron Property, upon full and final payment of all amounts due us in connection with this engagement, we grant you a non-exclusive, non-assignable, royalty-free, perpetual license to use it in connection with the deliverables and the subject of the engagement and for no other or further use without our express, prior written consent. If our deliverables are subject to any third party rights in software or intellectual property, we will notify you of such rights.

**7. Your Responsibilities** To the extent applicable, you will cooperate in providing us with reasonable office space, equipment, data and access to your personnel as necessary to perform the Services. You shall provide reliable, accurate and complete information necessary for us to adequately perform the Services and will promptly notify us of any material changes in any information previously provided. You acknowledge that we are not responsible for independently verifying the truth or accuracy of any information supplied to us by or on behalf of you.

**8. Our Warranty** We warrant that our Services will be performed with reasonable care in a timely, diligent and competent manner, consistent with standards achieved by other firms of our size and type. Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 90 days after the Services are performed or delivered. The notice will specify and detail the non-conformance and we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance. We will not buy any third party goods or services. Our Services will not infringe the intellectual property rights of any third party.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, ALL OF WHICH ARE HEREBY DISCLAIMED.

**9. Limitation of Liability**
(a) Neither party will be liable for any special, consequential, incidental, indirect or exemplary damages or loss (nor any lost profits, savings or business opportunity). Further, our liability relating to this engagement will in no event exceed an amount equal to the fees (excluding taxes and expenses) we receive from you for the portion of the engagement giving rise to such liability.

(b) Neither of us will be liable for any delays or failures in performance due to circumstances beyond our

reasonable control.

**10. Non-Solicitation** During the term of this engagement, and for a period of one year following its expiration or termination, neither party will directly or indirectly solicit, employ or otherwise engage any of the other party's employees (including former employees) or contractors who were involved in the engagement or with whom such party became familiar as a result of the engagement.

**11. Termination**

(a) Termination for Convenience. Either party may terminate this Agreement for convenience at any time on 30 days' prior written notice to the other.

(b) Termination for Breach. Either party may terminate this Agreement for breach if, within 15 days' notice, the breaching party fails to cure a material breach of this Agreement.

(c) To the extent you terminate this Agreement for convenience, you will pay us for all Services rendered, effort expended, expenses incurred, contingent fees (if any), or commitments made by us to the effective date of termination. To the extent you terminate this Agreement for breach, you will pay us for all conforming Services rendered and reasonable expenses incurred by us to the effective date of the termination, less any liability arising as a direct result of our breach.

(d) Further, we reserve the right to terminate this Agreement at any time, upon providing written notice to you, if conflicts of interest arise or become known to us that, in our sole judgment, would impair our ability to perform the Services objectively.

(e) The terms of this Agreement which relate to confidentiality, ownership and use, limitations of liability, non-solicitation and payment obligations shall survive its expiration or termination.

**12. General** (a) This Agreement supersedes all prior oral and written communications between us, and may be amended, modified or changed only in a writing when signed by both parties.

(b) No term of this Agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that neither party has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, neither party will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond its reasonable control.

(d) This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without giving effect to conflict of law rules. The parties hereto agree that any and all disputes or claims arising hereunder shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Any arbitration will be conducted in Chicago, Illinois. Any arbitration award may be entered in and enforced by any court having jurisdiction thereof, and the parties consent and commit themselves to the jurisdiction of the courts of the State of Illinois for purposes of any enforcement of any arbitration award. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

(e) If any portion of this Agreement is found invalid, such finding shall not affect the enforceability of the remainder hereof, and such portion shall be revised to reflect our mutual intention.

(f) This Agreement shall not provide third parties with any remedy, cause, liability, reimbursement, claim of action or other right in law or in equity for any matter governed by or subject to the provisions of this Agreement.



December 14, 2009

Neenah Enterprises, Inc
Mr. Robert E. Ostendorf, Jr.
President and Chief Executive Officer
2121 Brooks Ave.
Neenah, WI 54956

RE: Addendum to August 14, 2009 Engagement Agreement

Dear Mr. Ostendorf:

As a follow-up to our telephone conversation, the original engagement agreement dated August 14, 2009 (the "Agreement") between Huron Consulting Services LLC ("Huron") and Neenah Enterprises, Inc (the "Company" or "NEI") shall be supplemented by this addendum. Unless specifically modified herein, all other terms and conditions of the Agreement shall remain in full force and effect and shall apply to this Addendum.

*Scope of Services Addendum*

We understand that The Company's revolving bank group is requiring that an assessment be performed of your business plan and cash flow budgets and that such assessment be completed in a relatively compressed time period. As a result, we would like to clarify and expand our scope of services to include the following:
- Perform and distribute a projection assessment report to NEI's revolving bank group, covering fiscal 2010
- Interface with NEI's revolving bank group's financial advisor (Conway McKenzie) and, if requested, members of the bank group with respect to such assessment

In addition, depending on the course of action over the next several weeks, we understand that you may request us to perform some or all of the following services:
- Interface with NEI's term loan lender's financial advisor (Moelis) and, if requested, members of the ad hoc committee of noteholders with respect to such assessment
- Assist with DIP sizing and budget preparation
- Assist with negotiating terms of DIP credit agreement
- Assist with vendor management programs
- Assist with critical vendor analysis and related management programs
- Assist NEI's bankruptcy counsel Sidley & Austin ("Sidley") with dual-path (contingency) bankruptcy planning, including financial schedules, etc.
- Assist Sidley with preparation of various financial analyses in support of first day motions
- Assist with monthly reporting requirements

1

- Assist with analyzing leases and other executory contracts in support of reject/accept decision making
- Assist with preparing a "recovery" business plan in support of a Plan of Reorganization or other type of transaction
- Such other related items as the Company and Huron may agree to from time to time

This assessment will be performed by a team lead by Rich Caruso and two other Huron professionals. The size of this team may be modified (up or down) as the project progresses given the nature of various tasks enumerated above.

*Fees and Retainer*

Fees for this assignment will be billed based on the hourly rates set forth in the Agreement. Given the nature of this assignment, the Company agrees to provide Huron with a retainer of $75,000, which will be held by Huron and applied against the last invoice issued by Huron or if the retainer exceeds the amount of such last invoice any remaining balance shall be returned to the Company.

In addition, to the fullest extent permitted under applicable law, you agree to indemnify and hold us and our personnel, agents and contractors harmless against all costs, fees, expenses, damages, and liabilities (including reasonable defense costs and legal fees), associated with any legal proceeding or other claim brought against us by a third party, including a subpoena or court order, arising from or relating to any Services that you use or disclose, or this engagement generally. This indemnity shall not apply to the extent a claim arises out of our gross negligence or willful misconduct, as finally adjudicated by a finder of fact.

*Purpose and Use of Final Deliverables*

We understand that you may wish to circulate our deliverables among the revolving bank group and/or term loan noteholders and their respective advisors together with other information prepared by you for which you are solely responsible. We will consent to distribution of our deliverables subject to the following conditions:

- Receipt by us of a countersigned copy of the letter in the form set out in Appendix 1, with such modifications as may be reasonably requested by such proposed recipient, from the relevant member of the revolving bank group or representative of term loan noteholders requesting our deliverables and you.

Neenah Enterprises, Inc.
12/14/2009

Please indicate your agreement with this addendum and re-affirm your agreement with the terms of the Agreement by signing and returning to me the enclosed copy of this letter. We appreciate the opportunity to be of service to you and look forward to working with you on this engagement.

Sincerely,

HURON CONSULTING SERVICES LLC

By: *[signature]*

    Richard D. Caruso
    Managing Director
    December 14, 2009

Acknowledged and Agreed:
Neenah Enterprises, Inc.

By: *[signature]*

    Robert E. Ostendorf, Jr.
    President and Chief Executive Officer
    November ___, 2009

Neenah Enterprises, Inc.
12/14/2009

Appendix 1

[Recipient letterhead]

*[Insert Date]*

Huron Consulting Services LLC
550 West Van Buren Street
Chicago, Illinois 60607

*Attention: Rich Caruso*

Dear Mr. Caruso:

Neenah Enterprises, Inc. ("Neenah") has requested that Huron Consulting Services LLC ("Huron") provide [Recipient] and those of our officers, directors and employees who have a need to know on our behalf (collectively, the "Recipient") access (defined below) to information and/or deliverables resulting from Huron's advisory services to Neenah and, to the extent requested, discussing the information, deliverables, and Huron's advisory services (collectively referred to as "Huron Information").

We confirm that Neenah has authorized us to receive Huron Information and provide access to our Representatives (defined below). In consideration of Huron providing Recipient with access to Huron Information, Recipient understands and agrees as follows:

Huron Information was prepared or performed at the direction of and in accordance with instructions provided by Neenah and exclusively for Neenah's sole benefit and use. Huron Information may not include all information or procedures deemed necessary for Recipient's purposes and certain findings and information may have been communicated to Neenah that are not included in Huron Information.

Recipient does not acquire any benefits in or rights as a result of Recipient's access to, use of, reliance on, distribution or discussion of Huron Information ("Access") that Recipient otherwise would not have had. Huron does not assume any duties, obligations, liabilities or responsibility to Recipient or any party other than Neenah in connection with Huron Information.

Recipient releases Huron from any claims, liabilities, losses, settlements, judgments, damages, costs and expenses (including attorneys' fees) ("Claims") that may arise from or relate to access to Huron Information.

Recipient shall maintain the confidentiality of and shall not disclose Huron Information to any third parties without Huron's prior written consent and execution of a separate Access Letter by

4

such third party, except as provided below or to the extent required by law, rule, regulation, or as compelled by legal process, provided that (other than for routine supervisory examinations by regulatory authorities with jurisdiction over Recipient) Recipient provides Huron with prompt written notice of a request to disclose Huron Information (so long as such notice is not prohibited by law), so that Huron may, at its option and expense, object to and/or seek an appropriate protective order (provided that, any such Huron action shall not affect Recipient's disclosure obligations).

Recipient may disclose Huron Information to its Affiliates (defined below), and those agents and representatives acting on its behalf (including accountants, attorneys, financial and other professional advisors), their respective officers, directors or employees, (collectively, "Representatives") without such Representatives signing a separate Access letter, provided that: (i) Representatives have a need to know Huron Information to assist or advise Recipient in connection with the aforementioned Transactions (and not for the Representatives' own benefit or any other purpose), and (ii) Recipient first advises such Representatives of the terms of this Access letter and secures their agreement to the provisions contained herein and their agreement to not further disclose or distribute Huron Information. Recipient assumes responsibility and liability for any Claims against Huron that may arise from or relate to the Representatives' Access to Huron Information. Subject to Huron's prior consent, Interested Representatives must execute a separate Access letter. Interested Representatives shall not be required to sign a separate Access letter if they are or become, by virtue of Recipient's signature hereto, contractually bound to the terms of this Access letter. "Affiliates" means all entities that control, are controlled by, or are under common control with Recipient.

Recipient's obligations hereunder do not prohibit Recipient from disclosing, without attribution or reference in any manner to Huron or Huron Information, any information that: (i) publicly is or becomes available other than by a breach of this Access letter; (ii) is or becomes available to Recipient from a third party who is known by Recipient to not be prohibited from disclosing such information by a contractual, or legal obligation; (iii) is known to Recipient prior to the date of this Access letter; or (iv) that Recipient develops independently without use of or reliance on Huron information. Huron is not authorized to and does not waive any other non-use or non-disclosure obligations which may apply to Neenah or other third party information that may be subject to confidentiality agreements.

This Access letter constitutes the entire agreement between the parties regarding Huron Information. The laws of the state of Illinois shall govern this Access letter.

Neenah Enterprises, Inc.
12/14/2009

Acknowledged and Agreed by Recipient representative:

*By:* _____
Name of Company Official

_____
Title

_____
Date

*Authorized By:*
Neenah Enterprises, Inc.

*By:* _____
Robert E. Ostendorf, Jr
President and CEO


CONSULTING GROUP

February 9, 2010

Neenah Enterprises, Inc
Mr. Robert E. Ostendorf, Jr.
President and Chief Executive Officer
2121 Brooks Ave.
Neenah, WI 54956

RE: Addendum to August 14, 2009 Engagement Agreement and Related Addendum Dated December 14, 2009

Dear Mr. Ostendorf:

We are providing this addendum as a supplement to the original engagement agreement dated August 14, 2009 (the "Agreement") between Huron Consulting Services LLC ("Huron") and Neenah Enterprises, Inc (the "Company" or "NEI") and the addendum to such original engagement agreement dated December 14, 2009. Unless specifically modified herein, all other terms and conditions of the Agreement shall remain in full force and effect and shall apply to this Addendum.

*Scope of Services Addendum*

We understand that as a condition of certain of the Company's DIP loan agreements, the Company's DIP loan lenders are requiring the retention of a Chief Restructuring Advisor ("CRA"). As a result, we would like to clarify and expand our scope of services to include the following:

- Assistance complying with various financial reporting requirements contained in the Company's DIP loan agreements, which may include, but not be limited to:
  - Assistance with performing certain analyses in support of financial reporting compliance
  - DIP budget variance reporting
  - DIP budget updates
- As requested by the Company, assistance with the Company's overall restructuring effort, which may include, but not be limited to:
  - Managing the process for compiling and completing the required Statements of Financial Affairs (SOFA) and Schedules of Assets and Liabilities
  - Coordinating with the official claims agent to establish the procedures for integrating and reconciling Company records with filed claims
  - Evaluating and establishing procedures for completing and filing Monthly Operating Reports required by the Office of the United States Trustee
  - Oversight of all significant cash disbursements in order to assist with DIP loan compliance with respect to the Approved Budget
  - Participation in meetings with the company's DIP loan lenders, as necessary

1

- Addressing financial reporting matters in preparation for and resulting from a restructuring, including assistance with the evaluation of applicable generally accepted accounting principles in accordance with ASC 852, *Reorganizations*, both during and upon emergence from Chapter 11. For example:
  - Accounting cut-off issues;
  - Determination of pre- and post-petition obligations
  - Establishment of pre-petition payment controls and processes
  - Accounting for liabilities subject to compromise
  - Accounting for Reorganization Items in the company's statement of operations
  - Various other tasks, as may be necessary, at the direction of Neenah management
- Provide such assistance as may be necessary in connection with the Company's effort to review, update or modify its business plan and its development of a Plan of Reorganization
  - Assistance with compiling a Liquidation Analysis
  - Coordination with the Company's claims processing agent
  - Assistance with various other tasks, as may be necessary, at the direction of Neenah management and its advisors and counsel
- Various other services as may be deemed necessary by the Company in order to ensure loan compliance and to further the restructuring efforts of the Company

Our services in the role of CRA will be performed by a team lead by Rich Caruso and three other Huron professionals. The size of the Huron team may be modified (up or down) as the project progresses given the nature of various tasks enumerated above.

*Fees and Retainer*

Fees for this assignment will be billed based on the hourly rates set forth in the Agreement. We understand that payment of our invoices for its work is governed by the Court and such procedures for filing fee statements and notice as may be applicable to the Company's Chapter 11 cases.

A retainer will not be required for this phase of our engagement.

In addition, to the fullest extent permitted under applicable law, you agree to indemnify and hold us and our personnel, agents and contractors harmless against all costs, fees, expenses, damages, and liabilities (including reasonable defense costs and legal fees), associated with any legal proceeding or other claim brought against us by a third party, including a subpoena or court order, arising from or relating to any Services that you use or disclose, or this engagement generally. This indemnity shall not apply to the extent a claim arises out of our gross negligence or willful misconduct, as finally adjudicated by a finder of fact.

Please indicate your agreement with this addendum and re-affirm your agreement with the terms of the Agreement by signing and returning to me the enclosed copy of this letter. We appreciate

Neenah Enterprises, Inc.
2/9/2010

the opportunity to be of service to you and look forward to working with you on this engagement.

Sincerely,

HURON CONSULTING SERVICES LLC

By: *[signature]*

Richard D. Caruso
Managing Director
February 9, 2010


Acknowledged and Agreed:
Neenah Enterprises, Inc.

By: *[signature]*

Robert E. Ostendorf, Jr.
President and Chief Executive Officer
February 9, 2010