## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[1] | Case No. 10-10360 (MFW) |
| Debtors. | Jointly Administered |
| | Local Rule 2016 Waiver Requested |
| | Hearing Date: March 9, 2010 at 1:00 p.m. (ET)<br>Objection Deadline: March 2, 2010 at 4:00 p.m. (ET) |

### APPLICATION FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MERCER (US) INC. AS COMPENSATION CONSULTANT TO THE DEBTORS PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107, *NUNC PRO TUNC* TO THE PETITION DATE, AND GRANTING A WAIVER OF COMPLIANCE WITH DEL. BANKR. L.R. 2016-2(d) IN ACCORDANCE WITH DEL. BANKR. L.R. 2016-2(g)

The above-captioned debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors") hereby submit this application (the "Application") for entry of an order authorizing the employment and retention of Mercer (US) Inc. ("Mercer") as compensation consultant to the Debtors in these chapter 11 cases, pursuant to sections 327(a) and 1107(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors: (i) submit the Declaration of John Dempsey, a principal of Mercer (the "Dempsey Declaration"), which is attached hereto as Exhibit B and incorporated herein by reference; and (ii) respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

DB02:9281512.1                                                                                                                    069152.1001

## STATUS OF THE CASE AND JURISDICTION

1. On February 3, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief. On February 4, 2010, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 2015(b).

2. The Debtors continue in possession of their respective properties and continue to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On February 12, 2010, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## RELIEF REQUESTED

5. By this Application, the Debtors desire to employ and retain Mercer as their compensation consultant in these chapter 11 cases, *nunc pro tunc* to the Petition Date. The terms and scope of Mercer's services are set forth in an engagement letter between the Debtors and Mercer dated as of December 1, 2009 (the "Engagement Letter"), a copy of which is attached to this Application as Exhibit C. In summary, the Debtors anticipate that Mercer will analyze proposed management compensation arrangements and assist and advise the Debtors, under the leadership of the compensation committee of the Debtors' board of directors, in

developing a management compensation program that aligns the interests of the Debtors, their key employees, and their creditors. The Debtors now seek authority to employ Mercer in these cases on the terms and subject to the conditions described below and in the Engagement Letter.

6.  Mercer is a consulting firm focused on providing human resource consulting and related outsourcing and investment services. Mercer routinely advises large corporate clients on all aspects of their business operations. Of relevance to the Debtors' circumstances, Mercer has considerable experience providing compensation planning and advisory services to businesses in a chapter 11 environment. Specifically, Mercer has been employed to perform compensation-related analysis and services in numerous cases under the Bankruptcy Code, including the chapter 11 cases of Tribune Company, R.H. Donnelley Corporation, Smurfit-Stone Container Corporation, Nortel Networks, Inc., Adelphia Communications, Dana Corporation, Owens Corning, Kaiser Aluminum Corporation, Solutia, Oglebay Norton, Citation Corp., Intermet Corp., Venture Industries, Alterra, EaglePicher, Allied Holdings, and many others. See Dempsey Declaration at ¶ 3

7.  In light of the complexity of these chapter 11 cases and the nature of the Debtors' industry, the Debtors require expert consultation regarding certain compensation programs. As a leading compensation and benefits consulting firm, Mercer is particularly well suited to serve as the Debtors' compensation consultant in these chapter 11 cases. Mercer routinely advises large corporate clients on compensation and benefits and has considerable experience providing these services to businesses in a chapter 11 environment.

8.  The Debtors believe that Mercer is well qualified to provide its services to the Debtors in a cost-effective, efficient and timely manner. Mercer's professionals have worked closely with the Debtors' management team and employees and, as such, have become well acquainted with the Debtors' business operations and compensation programs.

9. General descriptions of the types of services that the Debtors anticipate that Mercer will render are set forth in the Engagement Letter. In particular, the Debtors anticipate that Mercer will perform, among others, the following services:[2]

(a) Develop an executive compensation program that would be appropriate and motivational during the restructuring period, including, without limitation, cash-based short-term incentives, new equity participation arrangements, and post-bankruptcy employment security arrangements;

(b) Participating, when requested, in discussions between the Debtors, their creditors constituencies, and the United States Trustee, among other things, to explain the purposes and terms of applicable compensation programs and provide the results of Mercer's analysis of same; and

(c) If requested, provide testimony regarding Mercer's findings, conclusions and recommendations, as applicable, including without limitation, at any deposition or hearing held in connection with the Debtors' restructuring, confirmation of a plan of reorganization, or in connection with proceedings to approve any particular compensation program(s) and payments during the pendency of the Debtors' chapter 11 cases.

10. The Debtors' management has determined that the Debtors require the above-listed services in order to operate their businesses effectively and to create a compensation plan that is both competitive and appropriate for the Debtors' circumstances. As noted above, Mercer has substantial expertise in working with businesses in a chapter 11 environment, and is well qualified to perform these services and assist the Debtors in these chapter 11 cases.

11. Pursuant to the terms and conditions of the Engagement Letter and subject to the Court's approval, the Debtors are advised that Mercer intends to (a) seek compensation for the Engagement Letter on an hourly basis in accordance with its ordinary rates in effect on the date services are rendered; and (b) charge on a monthly basis for its reasonable out-of-pocket expenses in accordance with the terms of the Engagement Letter.

---

[2] This summary is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the terms contained in this Application and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control. All terms not otherwise defined herein shall be given the meanings ascribed to them in the Engagement Letter.

4

12. The current hourly rates for Mercer's professionals that will perform services for the Debtors under the terms of the Engagement Letter are as follows:

| Position | Hourly Rate |
| --- | --- |
| Partner | $700 to $800 |
| Principal | $600 to $750 |
| Senior Associate | $400 to $550 |
| Associate | $250 to $400 |
| Analyst | $200 to $300 |
| Support Staff | $50 to $100 |

13. Mercer intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court, as described below.

14. Pursuant to the terms of the Engagement Letter, the Debtors have agreed to indemnify Mercer and its officers, directors, employees and Affiliates (collectively, the "Mercer Parties") from any Loss in connection with the Services, the Engagement Letter or the acts or omissions of any third party (other than Mercer's subcontractors, if any), except to the extent it is finally determined to have directly resulted from the negligence, fraud, or bad faith conducted by any Mercer Party. The Debtors have further agreed that in no event shall the Debtors or any of the Mercer Parties be liable in connection with the Engagement Letter or the Services for any loss of profit or incidental, consequential, special, indirect, punitive or similar damages.

15. Consistent with the prevailing standards for retention of professionals in chapter 11 cases in the Third Circuit, however, the Debtors request (and Mercer agrees) that the order approving Mercer's retention provide that notwithstanding anything to the contrary in the Engagement Letter, the Debtors shall have no obligation to indemnify any person, or provide

contribution or reimbursement to any person, for any claim or expense to the extent that it is either (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Mercer's contractual obligations unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by the Order.

16. In addition, and again in recognition of the prevailing standards and requirements for the retention of professionals in chapter 11 cases, the Debtors request (and Mercer agrees) that notwithstanding any contrary provisions in the Engagement Letter, all of Mercer's fees and expenses in these cases will be subject to approval of the Court upon proper application by Mercer in accordance with sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the fee and expense guidelines established by the U. S. Trustee, and any other applicable requirements.

17. Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Additionally, Local Rule 2016-2(d) requires retained professionals to submit detailed time entries that set forth, among other things: a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue. However, Local Rule 2016-2(g) allows a retained professional to request a waiver of the requirements of Local Rule 2016-2, for

DB02:9281512.1                                                                                                                                      069152.1001

cause. The Debtors submit that the requirements of Local Rule 2016-2(d) should be tailored to the nature of Mercer's engagement and its compensation structure.

18. Mercer has advised the Debtors that Mercer's billing system software is unable to record Mercer's professionals' time in tenth of an hour increments and respectively requested a waiver from having to maintain contemporaneous time descriptions in time increments of tenths of an hour. The Debtors therefore request that, should this Court approve Mercer's retention, Mercer be authorized to report the time incurred by Mercer's professionals in quarter of an hour increments. The Debtors submit that given the nature of the services to be provided by Mercer, such billing formats and associated time details will be sufficient for the Debtors and other parties-in-interest to make an informed judgment regarding the nature and appropriateness of Mercer's services and fees. Accordingly, to the extent necessary based on the foregoing, the Debtors respectfully request that the information requirements set forth in Local Rule 2016-2(d) are hereby modified and waived, to the extent necessary, with respect to Mercer's services.

## **DISINTERESTEDNESS OF PROFESSIONALS**

19. To the best of the Debtors' knowledge, information and belief, other than in connection with these cases, Mercer has no connection with the Debtors, their creditors, the U.S. Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth below or in the Dempsey Declaration. In particular:

(a) Mercer is not employed by, and has not been employed by, any entity other than the Debtors in matters related to these chapter 11 cases.

(b) From time to time, Mercer has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters <u>unrelated</u> to these chapter 11 cases. As described below, however, Mercer has

undertaken a detailed search to determine, and to disclose, whether it is performing or has performed services for any significant creditors, equity security holders, insiders or other parties in interest in such unrelated matters.

20. To check and clear potential conflicts of interest in these cases, Mercer performed a conflicts search on the Debtors and other significant parties-in-interest (collectively, the "Interested Parties").[3] The identities of the Interested Parties were provided to Mercer by the Debtors and are set forth on Schedule 1 to the Dempsey Declaration. Mercer's research of its relationships with the Interested Parties indicated that Mercer was formerly employed by certain of the Interested Parties (or their apparent affiliates, as the case may be) for whom Mercer provided financial advisory and other similar services unrelated to the Debtors' cases. A summary of such parties that Mercer was able to locate as of the date of this Application using its reasonable efforts are listed on Schedule 2 to the Dempsey Declaration.

21. Despite the efforts described above to identify and disclose Mercer's connections with parties in interest in these cases, Mercer is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if Mercer discovers additional information that requires disclosure, Mercer will file a supplemental disclosure with the Court as promptly as possible.

22. To the best of the Debtors' knowledge, information and belief, and as described in the Dempsey Declaration, Mercer neither holds nor represents any interest adverse to the Debtors or their respective estates in the matters for which it is proposed to be retained. Accordingly, the Debtors believe that Mercer is a "disinterested person," as defined in section

---

[3] As of the date of this Application, Mercer has completed its conflicts search for those Interested Parties identified by the Debtors and the results of that conflicts search are described in the Dempsey Declaration. In the event that Mercer subsequently discovers that a conflict search has not been completed for any of the Interested Parties or any subsequently identified party-in-interest, Mercer will promptly complete a conflict search on such parties and file a supplemental declaration in the event that completion of the search results in any additional disclosures in connection with its retention by the Debtors in these cases.

8

101(14) of the Bankruptcy Code. For all of the reasons previously stated, the Debtors submit that the employment of Mercer would be in the best interests of the Debtors and their respective estates. The Debtors' knowledge, information and belief regarding Mercer's disinterestedness are based, and made in reliance, upon the Dempsey Declaration.

## **NOTICE**

23. Notice of this Application has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the agent for the lenders under the prepetition credit facility; (iv) counsel to the agents for the lenders under the proposed post-petition credit facilities; (v) counsel to the ad hoc committee of the holders of 9.5% secured notes; (vi) the indenture trustee for the 9.5% secured notes; (vii) counsel to the holders of the 12.5% subordinated notes; and (viii) all other parties required to receive service under Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter an order, in substantially the form attached hereto as Exhibit A: (i) authorizing the Debtors to retain and employ Mercer as their compensation consultant in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, on the terms and conditions described herein and in the Engagement Letter, *nunc pro tunc* to the Petition Date; and (ii) granting such other and further relief as the Court may deem proper.

Dated: February 19, 2010

NEENAH ENTERPRISES, INC.
(for itself and on behalf of each other Debtor)

*/s/ Robert E. Ostendorf, Jr.*

Robert E. Ostendorf, Jr.
President and Chief Executive Officer

-and-

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Brett H. Myrick
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert S. Brady*

Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION