UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NEENAH ENTERPRISES, INC., | ) Case No. 10-10360 (MFW) |
| et al., | ) Jointly Administered |
| | ) |
| Debtors. | ) Re: Docket Nos. 5, 41 & 60 |
| | ) Objection Due: 03/02/10 at 4:00 p.m. |
| | ) Hearing Date: 03/09/10 at 1:00 p.m. |
| | ) |

OBJECTION OF CERTAIN UTILITY COMPANIES TO MOTION OF THE DEBTORS
FOR AN INTERIM ORDER AND A FINAL ORDER PURSUANT TO SECTIONS 105(a)
AND 366 OF THE BANKRUPTCY CODE (I) PROHIBITING UTILITY PROVIDERS
FROM ALTERING, REFUSING, OR DISCONTINUING UTILITY SERVICES, (II)
DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE
PERFORMANCE, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING
ADEQUATE ASSURANCE OF PAYMENT

Metropolitan Edison Company ("Met-Ed"), The Toledo Edison

Company ("TE"), Pennsylvania Power Company("Penn Power"),

Pennsylvania Electric Company ("Penelec") and FirstEnergy

Solutions Corp. ("FES") (collectively, the "Utilities"), by

counsel, hereby object to the *Motion Of The Debtors For An*

*Interim Order And A Final Order Pursuant To Sections 105(a) And*

*366 Of The Bankruptcy Code (I) Prohibiting Utility Providers From*

*Altering, Refusing, Or Discontinuing Utility Services, (II)*

*Deeming Utility Providers Adequately Assured Of Future*

*Performance, And (III) Establishing Procedures For Determining*

*Adequate Assurance Of Payment* (the "Utility Motion"), and set

forth the following:

## Introduction

Section 366(c)(2), as amended, requires a Chapter 11 debtor to provide utilities with adequate assurance of payment that is satisfactory to the utility within 30 days of the Petition Date. If a debtor believes the **amount** of the utility's request pursuant to Section 366(c)(2) needs to be modified, the debtor can file a motion pursuant to Section 366(c)(3) seeking to modify the **amount** of the utility's request. The Debtors, however, have filed the Utility Motion seeking to avoid the express procedures and requirements of Section 366(c). Specifically, the Debtors filed the Utility Motion at the outset of this case seeking Court approval, without evidence or supporting documentation, to establish their own **form** and **amount** of adequate assurance to their utility providers – a deposit into a segregated account (the "Escrow Account") in conjunction with Debtors' purported ability to pay for future utility services in the ordinary course of business. Accordingly and in violation of the express requirements under Section 366(c)(2), the Debtors are seeking to unilaterally determine the amount and conditions for adequate assurance of payment satisfactory to the Debtors. Neither this Court nor the Debtors have the authority to establish the **form** of adequate assurance of payment. Section 366(c)(3) only provides the Debtors with the ability, after notice and a hearing, to seek

2

to modify the adequate assurance of payment deemed satisfactory to the Utilities under Section 366(c)(2).

As case law is clear that adequate assurance of payment is to be determined on a case-by-case basis, it is remarkable how a two-week deposit or two-week escrow account are becoming the debtor's proposed **form** and **amount** of adequate assurance in virtually every bankruptcy case filed in this District. Moreover, as customers of the Utilities, the Debtors are aware that the Utilities bill on a monthly basis in arrears and provide the Debtors with generous trade terms. Accordingly, at a minimum, the Debtors should be required to set forth an evidentiary and legal basis as to why this Court should consider modifying the amount of adequate assurance of payment necessary to cover the foregoing billing cycles, which is generally the amount of security that would be satisfactory to the Utilities under Section 366(c)(2). The Debtors, however, who bear the burden of proof under Section 366(c)(3), do not address why this Court should begin to consider modifying the Utilities' requests for adequate assurance of payment. Accordingly, this Court should deny the Utility Motion as not being properly before the Court because the Utility Motion: (1) was not heard after notice and a hearing; (2) does not address the Utilities' deposit requests; (3) does not seek to modify the amount of the Utilities' deposit requests; and, (4) does not provide the

Utilities with adequate assurance of payment pursuant to Section 366(c) of the Bankruptcy Code.

### Procedural Facts

1.   On February 3, 2010 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court.   The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.   The Debtors' cases are being jointly administered.

### The Utility Motion

3.   On the Petition Date the Debtors filed the Utility Motion seeking *ex parte* Court approval for the Escrow Account that will contain a deposit of $1,100,000 which is an amount that is purportedly equal to the Debtors' aggregate cost for two weeks of utility service.[1]   In the Utility Motion, Debtors allege that on a monthly basis, the Debtors spend approximately $2,100,000 on utility expenses.   Utility Motion at ¶¶ 11 & 13.

4.   No notice of the Utility Motion was given to the Debtors' utilities prior to the Court entering the *Interim Order*

---

1 The Utility Motion commences a contested matter.   Debtors, however, failed to serve the Utility Motion upon the Utilities in the manner required under Rule 9014(b) of the Federal Rules of Bankruptcy Procedure.   Accordingly, the Debtors have failed to provide the Utilities with proper notice of the Utility Motion in violation of the Utilities' rights to Due Process.   Furthermore, Debtors allege that the amount of the Escrow Account represents approximately 50% of the Debtors' estimated monthly utility costs.   Debtors, however, do not provide the Court or the Utilities with any documentation to validate this

*Pursuant To Sections 105(a) And 366(b) Of The Bankruptcy Code (I)*
*Prohibiting Utility Providers From Altering, Refusing, Or*
*Discontinuing Utility Services, (II) Deeming Utility Providers*
*Adequately Assured Of Future Performance, And (III) Establishing*
*Procedures For Determining Adequate Assurance Of Payment* (the
"Interim Utility Order") on February 4, 2010.

     5.    Because the Utilities were never served with the
Utility Motion, they had no opportunity to respond to the Utility
Motion or otherwise be heard at the *ex parte* hearing on the
Utility Motion that took place on February 4, 2010, despite the
fact that Section 366(c)(3) (presuming this was the statutory
basis for the relief sought by the Debtors) requires that there
be "notice and a hearing" and the Utilities provided continuous
prepetition utility goods and/or services to the Debtors.

     6.    In the Utility Motion, the Debtors are attempting to
establish adequate assurance in a form and in an amount that is
satisfactory to the Debtors – a position clearly in violation of
the express provisions of Section 366(c)(2), which requires the
Debtors to provide the Utilities with adequate assurance of
payment satisfactory to the Utilities.

     7.    In support of the Utility Motion, the Debtors:

     A.    Contend that the Escrow Account along with Debtors'
purported ability to timely pay all post-petition utility

---

amount.

invoices in the ordinary course of business constitutes adequate assurance of payment.  Utility Motion at ¶¶ 13, 15 & 19.  The Debtors, however, do not have the authority to establish the form of adequate assurance of payment. Section 366(c)(3) only provides the Debtors with the ability, after notice and a hearing, to seek to modify the **amount** of the adequate assurance of payment deemed satisfactory to the Utilities under Section 366(c)(2).  Additionally, the Debtors' purported ability and intention to pay all post-petition utility services represent nothing more than the promise of an allowed administrative expense.  Section 366(c)(3)(B)(iii), however, expressly precludes the Court from considering the availability of an administrative expense priority when making a determination as to whether an assurance of payment is adequate.

B.   Rely upon unpublished decisions.  Utility Motion at ¶ 24.  The Debtors, however, do not address the merits or the facts of those cases to explain why, if at all, the adequate assurance of payment decisions in those cases are relevant to this case.  Also, the Debtors fail to explain why the facts of this case justify modifying the amount of the Utilities' deposit requests as set forth herein.  It has always been and continues to be the standard that once the Court is in the position to make a determination of adequate assurance of payment, it is a decision that the Court is to make based upon the facts of the

6

case before it.

8.    Although the two-week escrow deposit is not sufficient, it is even a more hollow offer than normal because the Debtors seek authority to unilaterally adjust the balance of the Escrow Account for the Debtors' termination of post-petition utility services.  Utility Motion at ¶¶ 14 & 19.  Debtors' foregoing proposal concerning the Escrow Account is without any obligation to maintain the balance of the Escrow Account for payment in full of all post-petition amounts due to the Utilities.  As the Debtors know, once the Debtors close an account, the Utilities will issue an invoice for service provided from the last bill to the account closure date, which will need to be paid along with any other outstanding invoices on the applicable account.  If a Utility is not permitted to apply the funds available in the Escrow Account to the final bill amounts, the Escrow Account is not providing any security for the payment of those invoices.

9.    Finally, throughout the Utility Motion, the Debtors seek to avoid the procedural and substantive requirements of Section 366 by imposing upon the Utilities various burdensome procedures that are either not authorized by Section 366 or are contrary to its specific provisions.  Utility Motion at ¶ 16.

10.    In the Interim Utility Order, the Court: (a) granted the Utility Motion on an interim basis; and, (b) directed the Debtors to fund the Escrow Account as set forth in the Utility

7

Motion.   Further, the Court set an objection deadline to the
Utility Motion of March 2, 2010, at 4:00 p.m. and a Final Hearing
on March 9, 2010, at 1:00 p.m (34th day of the case).

### Facts Regarding The Utilities

11.   Each of the Utilities provided the Debtors with
prepetition utility goods and/or services and has continued to
provide the Debtors with utility goods and/or services since the
Petition Date.

12.   Except as set forth below concerning FES, under the
Utilities' billing cycles, the Debtors receive approximately one
month of utility goods and/or services before the Utility issues
a bill for such charges.   Once a bill is issued, the Debtors have
approximately 15 to 30 days to pay the applicable bill.   If the
Debtors fail to timely pay the bill, a past due notice is issued
and a late fee is subsequently imposed on the account.   If the
Debtors fail to pay the bill after the issuance of the past due
notice, the Utilities issue a notice that informs the Debtors
that they must cure the arrearage within a certain period of time
or their services will be disconnected.   Accordingly, under the
Utilities' billing cycles, the Debtors could receive at least 2
months of goods and/or services before the utility could cease
the supply of goods and/or services based upon a post-petition
payment default.

13.   The billing cycle between FES and the Debtors is set

8

forth in the parties' prepetition contracts.  The first contract is titled *Customer Supply Agreement* dated November 2, 2006, by and between FirstEnergy Solutions Corp. as Supplier and Mercer Forge Corp. as Customer (the "Mercer Agreement").  Under the Mercer Agreement, the Debtors receive approximately one month of utility goods and/or services before FES issues a bill for such charges.  Once a bill is issued, the Debtors have 30 days from the invoice date to pay the bill.  FES may only terminate service under the Mercer Agreement for Debtors' failure to pay a nondisputed bill after FES has provided the Debtors with written notice of the default and an additional ten (10) days in which to cure the default.  Accordingly, under the billing cycle of the Mercer Agreement, the Debtors could receive at least 70 days of unpaid charges before FES could cease the supply of utility goods and/or services for any post-petition payment default by the Debtors.

14.  FES is also a party to a prepetition contract with Debtor A&M Specialties.  This second contract is also titled *Customer Supply Agreement* dated November 3, 2006, by and between FirstEnergy Solutions Corp. as Supplier and A & M Specialties, Inc. as Customer (the "A&M Agreement").  Under the A&M Agreement, the Debtors receive approximately one month of utility goods and/or services before FES issues a bill for such charges. Once a bill is issued, the Debtors have 30 days from the invoice date to

pay the bill.  FES may only terminate service under the A&M Agreement for Debtors' failure to pay a nondisputed bill after FES has provided the Debtors with written notice of the default and an additional ten (10) days in which to cure the default. Accordingly, under the billing cycle of the A&M Agreement, the Debtors could receive at least 70 days of unpaid charges before FES could cease the supply of utility goods and/or services for any post-petition payment default by the Debtors.

15.  In order to avoid the need to bring witnesses and have lengthy testimony regarding the billing cycles of the Utilities, the Utilities respectfully request that this Court, pursuant to Rule 201 of the Federal Rules of Evidence, take judicial notice of their billing cycles.  Pursuant to the foregoing request and based on the voluminous size of the applicable documents, the Utilities are providing the following web-site links to the applicable tariffs and/or state laws, regulations and/or ordinances (collectively, the "Tariffs"):

A.    Met-Ed:

https://www.firstenergycorp.com/Residential_and_Business/Customer_Choice/files/Tariff_-_PA/Met-Ed_Complete_Tariff_No._50_w-Supp_17_bookmarked_2nd_ver.pdf

B.    TE:

https://www.firstenergycorp.com/Residential_and_Business/Customer_Choice/files/Tariff_-_OH/TE-2010%20-%20Electric%20Service.pdf

C.    Penn Power:

https://www.firstenergycorp.com/Residential_and_Business/Customer

Choice/files/Tariff_-
PA/Penn_Power_Complete_Tariff_with_Supp_No_63_bookmarked_.pdf

    D.    Penelec:

https://www.firstenergycorp.com/Residential_and_Business/Customer
_Choice/files/Tariff_-
_PA/Penelec_Complete_Tariff_No._79_with_Supp._16_bookmarked_5th_.
pdf

    E.    FES:

The billing cycles for FES are set forth in the Mercer Agreement and the A&M Agreement.  FES presumes that the Debtors have a copy of these Agreements, but as needed, FES can provide a copy of the Agreements upon request.

16.  Subject to a reservation of the Utilities' rights to supplement their post-petition deposit requests if additional accounts belonging to the Debtors are subsequently identified, the Utilities' estimated pre-petition debt owed by the Debtors to the Utilities and post-petition deposit requests are as follows (the "Requests"):

| Utility | No. of Accts. | Est. Pre-Pet. Debt | Dep. Request |
|---------|---------------|--------------------|--------------|
| Met-Ed | 3 | $374.96 | $4,825 (2-months) |
| TE | 1 | $7,184.22 | $13,454 (2-months) |
| Penn Power | 1 | $2,734.94 | $5,188 (2-months) |
| Penelec | 2 | $156,907.33 | $184,925 (2-months) |
| FES | 2 | $131,007 | $236,000 (2-months) |

## Discussion

11

A.    **THE UTILITY MOTION SHOULD BE DENIED AS TO THE UTILITIES.**

Sections 366(b) and (c) of the Bankruptcy Code, in

pertinent part, provide:

> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the Debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.
>
> (c)(1)(A) For purposes of this subsection, the term "assurance of payment" means
>
> > (i) a cash deposit;
> > (ii) a letter of credit;
> > (iii) a certificate of deposit;
> > (iv) a surety bond;
> > (v) a prepayment of utility consumption; or
> > (vi) another form of security that is mutually agreed upon between the utility and the Debtor or the trustee.
>
> (B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment,
>
> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the Debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;
>
> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
>
> (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider
>
> > (i) the absence of security before the date of the filing of the petition;
> > (ii) the payment by the Debtor of charges for utility service in a timely manner before the date

of the filing of the petition; or
    (iii) the availability of an administrative
expense priority.

(4) Notwithstanding any other provision of law, with
respect to a case subject to this subsection, a utility
may recover or set off against a security deposit
provided to the utility by the Debtor before the date
of the filing of the petition without notice or order
of the court.

11 U.S.C. §366.

As set forth by the United States Supreme Court, "[i]t is
well-established that 'when the statute's language is plain, the
sole function of the courts--at least where the disposition
required by the text is not absurd--is to enforce it according to
its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534,
124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford*
*Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1,
6, 120 S. Ct., 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain*
*(In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . .
. must be read in a 'straightforward' and 'commonsense'
manner."). A plain reading of Section 366(c)(2) makes clear that
a debtor is required to provide adequate assurance of payment
satisfactory to its utilities on or within thirty (30) days of
the filing of the petition. If a debtor believes the **amount** of
the utility's request needs to be modified, then the debtor can
file a motion under Section 366(c)(3) requesting the court to
modify the **amount** of the utility's request.

13

In this case, the Debtors completely ignore the Utilities'
adequate assurance requests.  Instead, the Debtors filed the
Utility Motion to improperly shift the focus of their obligations
under Section 366(c) from modifying the amount of the Utilities'
adequate assurance requests to establishing adequate assurance of
payment acceptable to the Debtors.  Accordingly, this Court
should not reward the Debtors for their failure to comply with
the requirements of Section 366(c) and deny the Utility Motion as
to the Utilities.  *See In re Viking Offshore (USA), Inc.*, 2008 WL
782449 at *3 (Bankr. S.D. Tex. Mar. 20, 2008) ("The relief
requested by Debtors would reverse the burden, by making an
advance determination that the proposed assurance was adequate. .
. . the court lacks the power to reverse the statutory framework
for provision of adequate assurance of payment."); see *also In re
Pilgrim's Pride Corporation*, Case No. 08-45664 (DML)(Docket No.
447), United States Bankruptcy Court For the Northern District of
Texas, *Memorandum Order* entered on January 5, 2009 (Denying
debtors' motion seeking to establish adequate assurance of
payment); see *also In re Ramsey Holdings, Inc.*, Case No. 09-
13998-M (TLM), United States Bankruptcy Court For the Northern
District of Oklahoma, *Order Denying Debtor's Amended Motion For
Entry of an Order Pursuant To Section 366 of the Bankruptcy Code
Deeming Utility Companies Adequately Assured of Future
Performance* entered on December 21, 2009 (Denying debtor's motion

14

seeking to establish adequate assurance of payment, and holding that the debtor is required by Section 366 to first approach its utility providers and attempt to arrange a mutually agreeable form of adequate assurance of payment, and if such attempts are unsuccessful, the debtor can then petition the Court to establish adequate assurance.).

1.   **The Debtors' Proposed Escrow Account Does Not Provide the Utilities With Adequate Assurance of Payment.**

The Escrow Account is an improper and otherwise unreliable form of adequate assurance of future payment for the following reasons:

(i)     This Court only has authority under Section 366(c)(3) to modify the <u>amount</u> of the Utilities' deposit request. Neither the Debtors nor this Court has the authority to establish the <u>form</u> of adequate assurance of payment, i.e., the creation of an escrow account as opposed to adequate assurance in the form of cash deposits that the Utilities are requesting from the Debtors.

(ii)    The Debtors have failed to provide the Utilities with any information concerning the location of the Escrow Account. In addition, the Debtors have failed to propose any procedures as to when and how utilities could obtain funds from the Escrow Account. Presumably, the Utilities would have to incur legal fees and costs to file and litigate an application for payment of post-petition administrative expenses, which would be for at least one month's service because the Utilities bill the Debtors on a monthly basis.

(iii)   The Utilities bill monthly in arrears so any request upon the Escrow Account will be, at a minimum, for monthly bills. Accordingly, the Escrow Account that would merely contain the estimated cost of two weeks of the Debtors' monthly utility charges would be

undercapitalized from the outset.

(iv)    The Debtors fail to specify whether the Utilities will still have access to the Escrow Account if the Debtors default on their obligations concerning their post-petition financing.

(v)     The Escrow Account may be reduced by the Debtors' termination of a particular account which essentially operates as a refund to the Debtors of the proposed two-week deposit prior to the utility's issuance and receipt of payment of a final post-petition bill.

Accordingly, the Court should not approve the Escrow Account as adequate assurance to the Utilities on a final basis because the Escrow Account is not the **form** of adequate assurance requested by the Utilities herein and because it is an otherwise unreliable form of adequate assurance.

2.    **The Utility Motion Should Be Denied As To The Utilities Because the Debtors Have Not Set Forth Any Basis For Modifying the Utilities' Requested Deposits.**

As set forth above, in the Utility Motion the Debtors fail to address why this Court should modify the Utilities' requests for adequate assurance of payment. Under Section 366(c)(3), the Debtors have the burden of proof as to whether the Utilities' adequate assurance of payment request should be modified. *See In re Stagecoach Enterprises, Inc.*, 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof). The Debtors, however, offer the Court no evidence nor factually supported

16

documentation to explain how or why the amount of the Utilities'

adequate assurance requests should be modified.  Indeed, the

Debtors never even address the matter in the Utility Motion

because the Debtors failed to: (1) contact the Utilities

concerning their adequate assurance requests; and, (2) make any

attempt to determine whether the Utilities' requests for adequate

assurance needed to be modified.  Accordingly, the Court should

deny the relief requested by Debtors in the Utility Motion and

require the Debtors to comply with the requirements of Section

366(c) with respect to the Utilities.  *See In re Lucre, Inc.*, 333

B.R. 151, 154 (Bankr. W.D. Mich. 2005) (holding that the right of

a debtor or trustee to seek modification of a utility's deposit

request "arises only after the adequate assurance payment has

been agreed upon by the parties.").

    B.    **THE COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE
ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE
UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY
CODE.**

Section 366(c) was amended to overturn decisions such as

*Virginia Electric and Power Company v. Caldor, Inc.*, 117 F.3d 646

(2d Cir. 1997), that held that an administrative expense, without

more, could constitute adequate assurance of payment in certain

cases.  Section 366(c)(1)(A) specifically defines the forms that

assurance of payment may take as:

        (i) a cash deposit;
        (ii) a letter of credit;

> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually
> agreed upon between the utility and the debtor or
> the trustee.

A determination of adequate assurance is within the court's discretion, and is made on a case-by-case basis, subject to the new requirements of Section 366(c). *See In re Utica Floor Maintenance, Inc.*, 25 B.R. 1010, 1016 (Bankr. N.D.N.Y. 1982); *In re Cunha*, 1 B.R. 330, 332-33 (Bankr. E.D. Va. 1979). Section 366 of the Bankruptcy Code was enacted to balance a debtor's need for utility services from a provider that holds a monopoly on such services, with the need of the utility to ensure for itself and its rate payers that it receives payment for providing these essential services. *See In re Hanratty*, 907 F.2d 1418, 1424 (3d Cir. 1990). The deposit or other security "should bear a reasonable relationship to expected or anticipated utility consumption by a debtor." *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986). In making such a determination, it is appropriate for the Court to consider "the length of time necessary for the utility to effect termination once one billing cycle is missed." *In re Begley*, 760 F.2d 46, 49 (3d Cir. 1985). Based on the Debtors' anticipated utility consumption, the minimum period of time the Debtors could receive service from the Utilities before termination of service for non-

payment of bills is approximately two (2) months.  Accordingly,
the deposits requested herein by the Utilities are reasonable.
*See In re Stagecoach*, 1 B.R. at 735-36 (holding that a two month
deposit is appropriate where the debtor could receive sixty (60)
days of service before termination of services because of the
utilities' billing cycle.); *see also In the Matter of Robmac,
Inc.*, 8 B.R. 1, 3-4 (Bankr. N.D. Ga. 1979).

As set forth above, the Requests are based on: (1) the
Utilities' billing exposure created by their applicable Tariffs
and/or by the Agreements; and, (2) the amount that the applicable
public service commissions, which are neutral third-party
entities, permit the Utilities to request from their customers.
Although the Utilities recognize that this Court is not bound by
the Tariffs, the Tariffs are extremely relevant information of a
determination made by an independent entity on the appropriate
amount of adequate assurance that should be paid to the
Utilities.

In contrast, the Debtors do not provide an objective, much less
an evidentiary, basis for their proposed adequate assurance in the
form of the Escrow Account.  Accordingly, not only have the Debtors
failed to satisfy their statutory burden under Section 366 as to why
the Requests should be modified, but Debtors have also failed to
demonstrate why their alternative adequate assurance of payment
proposal in the form of the Escrow Account should be accepted by the

Utilities and approved by the Court.  Hence, and for all of the foregoing reasons, the Court should deny the Utility Motion and require the Debtors to immediately pay the Utilities the adequate assurance deposit amounts requested herein.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1.    Denying the Utility Motion as to the Utilities;

2.    Awarding the Utilities with the post-petition adequate assurance of payment requested herein; and,

3.    Providing such other and further relief as the Court deems just and appropriate.

Dated:  February 25, 2010    McCARTER & ENGLISH, LLP

William F. Taylor, Jr. (#2936)
405 North King Street, 8th Floor
Wilmington, DE  19801
Telephone: (302) 984-6300

And

Russell R. Johnson III
John M. Merritt
Law Firm Of Russell R. Johnson III, PLC
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
Facsimile: (804) 749-8862
E-mail:  russj4478@aol.com

*Counsel For Metropolitan Edison Company, The Toledo Edison Company, Penn Power, Pennsylvania Electric Company and FirstEnergy Solutions Corp.*