# EXHIBIT 1

EAST\40025470.1

404. PAYMENT PROCEDURE

(a) Bills will be due and payable on or before the due date specified on the bill.

(b) Payments received by mail will be considered as paid by the due date when the payment is received on or before the due date shown on the bill.

(c) Bills may be paid at authorized pay stations. A convenience fee may be charged by the third party processing the payment at the authorized pay stations. The Company will not be responsible for payments made to unauthorized pay stations. R

(d) A late payment charge will be applied to all rate classifications under the following conditions:

(1) The charge will be applied to outstanding charges past due but no sooner than 20 days after the mailing date of the bill.

(2) The amount of the charge will be as specified in the utility service rate schedules.

(3) The charge will not be waived if it was properly applied, except when the Company is unable to obtain a scheduled meter reading and the customer disputes the estimate. R

(e) For each dishonored check that is returned to the Company, a processing fee of $15 shall be charged to cover the Company's cost of processing the dishonored check, and further, the Company shall pass through to the customer (in addition to the processing fee) any actual bank charges incurred or imputed by the Company which arise from the check being returned to the Company. R

**WISCONSIN ELECTRIC POWER COMPANY**

Volume 17 – Electric Rules and Regulations
Effective In All Areas Served In Wisconsin

Revision 1 Sheet 67
Amendment No. 691

405.1 Deposits for Residential Service, (continued)

(d) The customer has obtained service through fraud or subterfuge.

(e) The new residential customer accrues charges for service that become 60 days or more past due within the first 8 months of service. A deposit shall not be required if the customer provides the company with information showing that his or her gross quarterly income is at or below 200% of the federal income poverty guidelines. When the company requests said deposit, the customer shall be informed of his or her right to provide the deposit or establish a deferred payment agreement. The customer shall be given 30 days to provide the deposit or enter into a deferred payment agreement for the deposit amount. N

(2) A deposit for an existing account will not exceed the highest actual bill for any two consecutive months within the preceding twelve month review period as determined by the Company. If, during the cold weather disconnection rules period, a customer had an arrears amount incurred during this period that was 80 days or more past due and had the ability to pay for utility service, the deposit may not exceed the highest actual bills for any 4 consecutive months within the preceding 12 month review period. R

(3) An existing residential deposit will be reviewed at twelve-month intervals. As a result of this review, a deposit no longer required under the provisions of Section 405.1(b) (1) will be refunded.

405.2 Deposits for Commercial Service

(a) New Customers

(1) If the credit standing of a new commercial applicant is not satisfactory to the Company, the applicant may be required to furnish a deposit. The following factors will be considered in establishing whether an applicant's credit is satisfactory:

(a) credit information from credit reporting services;

(b) letter of credit from a financial institution or another utility;

(c) the applicant's business characteristics, such as type of business, length of time the applicant has operated, the applicant's business experience and knowledge, and estimated size of the applicant's bills;

(d) value of the assets of the business, and

(e) the financial condition of the business.

Issued: 1-26-06
Effective: For service furnished on and after 1-26-06
PSCW Authorization: Order date 1-26-06 in Docket No. 05-UR-102

**WISCONSIN ELECTRIC POWER COMPANY**

Volume 17 – Electric Rules and Regulations
Effective In All Areas Served In Wisconsin

Revision 0    Sheet 68
Amendment No. 652

405.2   Deposits for Commercial Service,   (continued)

    (2)    The applicant will be notified within 30 days of the request for service as to whether the above credit data will be required.  When the applicant has provided all requested information, the customer will be notified within 30 days as to whether a deposit is required.  If a request for a deposit is made, the applicant will be given at least 20 days to provide payment or guaranty or to establish an installment payment agreement.

    (3)    When required, a deposit on a new commercial account will not exceed the estimated bills for any two consecutive billing periods determined by the Company.

    (4)    The deposit of a new commercial customer will be refunded after 24 consecutive months of prompt payment.  Payment will be considered "prompt" if it is received prior to the issuance of a notice of disconnection of service.

(b)   Existing Customers

    (1)    If an existing commercial customer does not make payment prior to receiving a notice of disconnection, the customer will not have fulfilled the requirement to have paid all bills promptly and, therefore, may be required to furnish a deposit.

    (2)    The maximum deposit for an existing commercial account will not exceed the highest actual bill for any two consecutive months within the preceding 12-month review period as determined by the Company.

    (3)    A commercial deposit will be reviewed at 24-month intervals.  As a result of the review, a deposit no longer required under the provisions of Section 405.2(b)(1) will be refunded.

Issued:  12/18/00
Effective:  For service furnished on and after 12/18/00
PSCW Authorization:  Letter dated 12/12/00

**WISCONSIN ELECTRIC POWER COMPANY**

Volume 17 – Electric Rules and Regulations
Effective In All Areas Served In Wisconsin

Revision 1 Sheet 71
Amendment No. 691

406. COLLECTION PROCEDURES

406.1 General

(a) Electric service accounts are due and payable on or before the due date specified on the bill. Accounts which remain unpaid after that date are considered in arrears and shall be deemed delinquent for collection purposes 21 days after issuance of the bill.

(b) A current bill considered for collection action is defined as including all charges up to the time collection action is started. R

406.2 Collection Action

(a) Collection action will be taken on any electric service account on which one or more bills are in arrears in excess of the amount most recently designated as the collection action limit for the class of service involved. The arrears for accounts may cover a period of more than one month before collection action is started, except as hereinafter provided.

(b) When collection action is required, the following steps will be taken:

(1) A written notice of disconnection will be sent to the customer ten calendar days prior to the first date of the proposed disconnection. R

(2) If the delinquent charges remain unpaid at the end of the above notice period and satisfactory arrangements for payment have not been made, service may be discontinued without further notice on or before the 20th day after the mailing date of the written notice of disconnection by the Company. R

(3) If service is not disconnected during the above prescribed period, a subsequent notice shall be left on the premises not less than 24 hours nor more than 48 hours prior to disconnection.

Disconnection notice will be given on a form approved by the Public Service Commission of Wisconsin. R

Issued: 1-26-06
Effective: For service furnished on and after 1-26-06
PSCW Authorization: Order date 1-26-06 in Docket No. 05-UR-102

**WISCONSIN ELECTRIC POWER COMPANY**

Volume 17 – Electric Rules and Regulations
Effective In All Areas Served In Wisconsin

Revision 3 Sheet 72
Amendment No. 726

406.2   Collection Action,   (continued)

(c)   A customer whose account is subject to collection action may defer or avoid disconnection of
service by paying in full, within the period specified in the disconnection notice, or by doing one of the
following:

    (1)   An agreement with the Company for extension of time for a specific period.

    (2)   An agreement with the Company for payment of the arrears by installments added to
the regular monthly bills for service.

    (3)   By making a minimum payment as described below:

The Company will offer residential customers a Minimum Payment Option (MPO) beginning with the first
disconnection notice following the winter moratorium. The MPO allows a customer to avoid disconnection
by paying a fixed percentage of their past due balance to stay connected. Percentages will begin at 30% for
the first billing cycle following the end of the winter moratorium, and may increase or decrease for
subsequent billing cycles. The minimum percentage will increase by up to 10% for each succeeding
month, but at no time will it exceed 60% of the balance as the minimum amount. The MPO option will be
available during peak collection periods throughout the collection season as determined by the Company.
If such payment does not reduce the past due balance below the collection action limit, the customer will be
subject to disconnection the following billing cycle. MPO is offered in addition to a deferred payment
agreement. The Company reserves the right to modify or remove the MPO. The Company will keep Public
Service Commission Consumer Affairs staff informed on a monthly basis of any changes to the minimum
payment percentage.

R

(d)   In certain circumstances the Company may begin collection action regardless of the amount or
period of arrears. Some of such circumstances are as follows:

    (1)   When service arrears are being billed in accordance with an installment agreement and
the current month's bill and/or the installments are in arrears.

    (2)   When several accounts for one customer at the same location are in arrears, and one
of these accounts is in arrears in excess of the collection action limit in force.

    (3)   When a customer whose service has been disconnected for nonpayment or who has
unpaid arrears charges from a previous address has made satisfactory arrangements
for reconnection but is unable to pay the delinquent bills. In such cases, the Company
may conduct collection action on any additional arrears regardless of the amount or
period of arrears.

    (4)   When a customer's service account has been paid in an irregular manner and the
customer's credit standing does not permit extension of credit to an amount equal
to the collection action limit.

Issued: 5-12-09
Effective: For service furnished on and after 5-12-09
PSCW Authorization: Letter dated 5-1-09

VOLUME XVI

WISCONSIN ELECTRIC - GAS OPERATIONS

SHEET NO. 149.00 ORIGINAL
SCHEDULE X-330
AMENDMENT NO. 489

## Responsibility for Use of Service

1. A customer failing to notify the company when discontinuing service shall be responsible for the payment for all service used, as determined by the company, up to the time the premise is occupied by a successor customer.

2. A customer using service without first making application therefore shall be responsible for the payment for all service used, as determined by the company, from the time the premises were vacated by the preceding customer.

3. If service is discontinued by one customer and resumed by another on the same premises without notice to the company by either customer, then each customer shall be responsible for the payment of only his share of all service used, as determined by the company.

4. When there is a change of customers involving service to a rental dwelling unit, the company shall assess responsibility for service in a manner consistent with Wi. Stat. 196.643.

## Payment Procedure

1. Bills will be due and payable on or before the due date specified on the bill.

2. Payments received by mail will be considered as paid by the due date when the payment is received on or before the due date shown on the bill.

3. Late payment charges shall be assessed in a manner consistent with the rules, requirements, guidelines and provisions of the Wisconsin Administrative Code s. PSC 134.13(1)(g). See Schedule X-235, Other Charges, for late payment charge information.

ISSUED 01-25-2006. EFFECTIVE FOR SERVICE FURNISHED ON AND AFTER 01-26-2006. ISSUED UNDER AUTHORITY OF AN ORDER OF THE PUBLIC SERVICE COMMISSION OF WISCONSIN IN DOCKET 05-UR-102.

VOLUME XVI
SHEET NO. 151.00 ORIGINAL
SCHEDULE X-330
WISCONSIN ELECTRIC - GAS OPERATIONS
AMENDMENT NO. 489

**Deposit Requirements** (continued)

**Deposits for Commercial Service**

New Customers

The company may request a deposit or guarantee of service for farm and/or commercial service in a manner consistent with all rules, provisions, guidelines and requirements of the Wisconsin Administrative Code s. PSC 134.0615.

Existing Customers

The company may request a deposit or guarantee of service for farm and/or commercial service in a manner consistent with all rules, provisions, guidelines and requirements of the Wisconsin Administrative Code s. PSC 134.0615.

ISSUED 01-25-2006. EFFECTIVE FOR SERVICE FURNISHED ON AND AFTER 01-26-2006. ISSUED UNDER AUTHORITY OF AN ORDER OF THE PUBLIC SERVICE COMMISSION OF WISCONSIN IN DOCKET 05-UR-102.

VOLUME XVI

WISCONSIN ELECTRIC - GAS OPERATIONS

SHEET NO. 152.00 ORIGINAL
SCHEDULE X-330
AMENDMENT NO. 489

## Conditions of Deposit

All aspects of customer deposits relating to the size of the deposit, the accrual of interest, review and refund of the deposit will be conducted in a manner consistent with the Wisconsin Administrative Code s. PSC 134.061 for residential service and the Wisconsin Administrative Code s. PSC 134.0615 for commercial service.

## Guarantors

All aspects of guaranty agreements or guaranty arrangements will be conducted in a manner consistent with the Wisconsin Administrative Code s. PSC134.061(3) for residential service and the Wisconsin Administrative Code s. PSC 134.0615(4) for commercial service.

ISSUED 01-25-2006.  EFFECTIVE FOR SERVICE FURNISHED ON AND AFTER 01-26-2006.  ISSUED UNDER AUTHORITY OF AN ORDER OF THE PUBLIC SERVICE COMMISSION OF WISCONSIN IN DOCKET 05-UR-102.

VOLUME XVI

WISCONSIN ELECTRIC - GAS OPERATIONS

SHEET NO. 153.00 Rev. 2
SCHEDULE X-330
AMENDMENT NO. 559

## General Collection Information

1. Gas service accounts are due and payable on or before the due date specified on the bill. Non-residential accounts which remain unpaid after that date are considered in arrears and shall be deemed delinquent for collection purposes. Residential accounts which remain unpaid after the due date are considered in arrears and shall be deemed delinquent for collection purposes.

2. A current bill considered for collection action is defined as including all charges delinquent at the time collection action is started.

## Collection Action

1. Collection actions taken by the company shall be conducted in a manner in compliance with all conditions, guidelines, rules, provisions and requirements of the Wisconsin Administrative Code s. PSC 134.062 for residential accounts and the Wisconsin Administrative Code s. PSC 134.0622 for commercial accounts.

2. Disconnection notice will be given on forms as shown in Schedule X-500, Forms.

3. The company shall offer Deferred Payment Agreements to residential customers in a manner in compliance with all conditions, guidelines, rules and requirements of the Wisconsin Administrative Code s. PSC 134.063.

4. Court costs incurred and awarded by the court in the process of pursuing collection from a customer for utility services or any other charges approved by the Public Service Commission of Wisconsin may be charged to the customer's account.

5. For any check returned to the company, a fee found on Schedule X-235, Other Charges, will be charged.

6. The company will respond whenever a customer advises the company of dispute in a manner in compliance with all conditions, guidelines, rules and requirements of the Wisconsin Administrative Code s. PSC 134.064.

7. The Company will offer residential customers a Minimum Payment Option (MPO) beginning with the first disconnection notice following the winter moratorium. The MPO allows a customer to avoid disconnection by paying a fixed percentage of their past due balance to stay connected. Percentages will begin at 30% for the first billing cycle following the end of the winter moratorium, and may increase or decrease for subsequent billing cycles. The minimum percentage will increase by up to 10% for each succeeding month, but at no time will it exceed 60% of the balance as the minimum amount. The MPO option will be available during the peak collection periods throughout the collection season as determined by the Company. If such payment does not reduce the past due balance below the collection action limit, the customer will be subject to disconnection the following billing cycle. MPO is offered in addition to a deferred payment agreement. The Company reserves the right to modify or remove the MPO. The Company will keep Public Service Commission of Wisconsin Consumer Affairs staff informed on a monthly basis of any changes to the minimum payment percentage.

ISSUED 05-19-2009. EFFECTIVE FOR SERVICE FURNISHED ON AND AFTER 05-27-2009. ISSUED UNDER AUTHORITY OF A LETTER OF THE PUBLIC SERVICE COMMISSION OF WISCONSIN, PSC ERF# 113980.

VOLUME XVI

WISCONSIN ELECTRIC - GAS OPERATIONS

SHEET NO. 156.00 ORIGINAL
SCHEDULE X-330
AMENDMENT NO. 489

## General Billing Information

1. Billing practices of the company shall be conducted in a manner consistent with all of the conditions, guidelines, provisions and rules of the Administrative Code s. PSC 134.13 .

2. The company shall make an adjustment to the customer's bill when an adjustment for equipment failure is necessary as prescribed in the conditions, guidelines, rules and provision of the Administrative Code of PSC 134.14 unless otherwise specified within this tariff.

3. The company shall not be responsible nor liable for any damage, loss, or injury caused directly or indirectly by defects in the piping on the customer's premises, or by suspension of service for non-payment of service bills, or for failure to establish credit.

ISSUED 01-25-2006. EFFECTIVE FOR SERVICE FURNISHED ON AND AFTER 01-26-2006. ISSUED UNDER AUTHORITY OF AN ORDER OF THE PUBLIC SERVICE COMMISSION OF WISCONSIN IN DOCKET 05-UR-102.

notice under s. PSC 113.0407, the utility shall investigate any disputed issue and shall attempt to resolve that issue by negotiation. During this investigation and negotiation, utility service shall not be disconnected over this matter.

(b) If a disputed issue cannot be resolved pursuant to s. PSC 113.0407 (1), the utility shall inform the customer of the right to appeal to the public service commission.

**(13)** Notwithstanding any other provision of this section, other than for reasons of safety or danger, a utility may not disconnect or refuse to reconnect service to a residential premises if disconnection or refusal of reconnection of service will aggravate an existing medical or protective services emergency for the occupant, if the occupant complies with the procedures of par. (a):

(a) A utility shall postpone the disconnection of service, or reconnect the service if disconnected, for up to 21 days to enable the occupant to arrange for payment, if the occupant produces a licensed Wisconsin physician's statement or notice from a public health, social services or law enforcement official which identifies the medical or protective services emergency and specifies the period of time during which disconnection will aggravate the circumstances. During this extension of service, the utility and occupant shall work together to develop resources and make reasonable payment arrangements in order to continue the service on a permanent basis. The postponement may be extended by renewal of the statement or notice if there is evidence of reasonable communication between the utility and occupant in attempting to make arrangements for payment.

(b) During the period service is continued under the provisions of this subsection, the customer shall be responsible for the cost of residential utility service. But no action to disconnect that service shall be taken until expiration of the period of continued service. Any customers who are in this continued service category shall be admitted into appropriate and special payment plan programs the utility may offer.

(c) If there is a dispute concerning an existing medical or protective services emergency, either party may request informal review by the public service commission staff. Pending a decision after informal review, residential utility service shall be continued provided that the occupant has submitted the statement or notice described in par. (a).

**(14)** Residential service shall not be disconnected on a day, or on a day immediately preceding a day, when the business offices of the utility are not available to the public for the purpose of transacting all business matters unless the utility provides personnel who are readily available to the customer 24 hours per day to evaluate, negotiate or otherwise consider the customer's objections to the disconnection as provided under s. PSC 113.0407 and proper service personnel are readily available to restore service 24 hours per day.

**(15)** Notwithstanding any other provision of this chapter, residential utility service may not be refused because of a delinquent account if the customer or applicant provides as a condition of future service a deposit or guarantee as governed by s. PSC 113.0402, or a voucher agreement. If the guarantor has agreed to be responsible for payment of all future bills, the customer shall be notified of the billing arrangement and of the ability to reject the proposed arrangement.

**(16)** The utility may not disconnect services in affected counties when a heat advisory, heat warning, or heat emergency issued by the national weather service is in effect. A utility shall make reasonable attempts to reconnect service to an occupied dwelling that has been disconnected when an occupant states that there is a potential threat to health or life that results from the combination of the heat and loss of service. The utility may require that an occupant produce a licensed physician's statement or notice from a public health, social services, or law enforcement official which identifies the medical emergency for the occupant. Upon expiration of the heat advisory, heat warning, or heat emergency, the utility may disconnect service to a property that was reconnected during this period without further notice if an appropriate payment arrangement has not been established.

**(17)** If the utility becomes aware that there are extenuating circumstances, such as infirmities of aging, developmental, mental or physical disabilities, the use of life support systems, or like infirmities incurred at any age, or the frailties associated with being very young, the utility shall take these circumstances into consideration prior to disconnecting service.

**History:** Cr. Register, July, 2000, No. 535, eff. 8–1–00; CR 06–046: am. (10) (c) 4. Register April 2007 No. 616, eff. 5–1–07.

**PSC 113.0302 Disconnections, commercial and farm accounts.** **(1)** Commercial or farm accounts which involve occupied dwellings shall be subject to s. PSC 113.0304.

**(2)** Commercial or farm utility service may be disconnected or refused for any of the following reasons:

(a) Failure to pay a delinquent account.

(b) Violation of the utility's rules pertaining to the use of service in a manner which interferes with the service of others or to the operation of non–standard equipment, if the customer has first been notified and provided with reasonable opportunity to remedy the situation.

(c) Failure to comply with a deposit, guarantee arrangement, or installment payment agreement, as specified in s. PSC 113.0403.

(d) Refusal or failure to permit authorized utility personnel to read the meter at least once every 6 months in order to determine actual usage. The 6–month period begins with the date of the last meter reading.

(e) Failure to comply with Wisconsin statute, commission rule or commission order pertaining to conservation or availability of service.

(f) Failure to pay costs or fees incurred by and awarded to the utility by a court of law, for pursuit of collection of bills, or failure to pay extraordinary collection charges as allowed and specified in the utility's tariffs filed with the public service commission.

(g) Failure to comply with applicable requirements of this section, or of the utility's rules, or with s. 196.16, Stats., or if the customer proposes to use a device that is not designed to reasonably minimize interference with communication and signal services.

(h) Refusal or failure to provide authorized utility personnel access to utility equipment.

**(3)** A utility is not required to furnish commercial or farm service under conditions requiring operation in parallel with generating equipment connected to the customer's system if such operation is hazardous or may interfere with its own operations or service to other customers or with service furnished by others. The utility may specify requirements as to connection and operation as a condition of rendering service under such circumstances.

**(4)** A public utility may disconnect commercial or farm utility service, without notice, where a dangerous condition exists for as long as the condition exists.

**(5)** A public utility may disconnect commercial or farm utility service, without notice, where it has reasonable evidence that utility service is being obtained by potentially unsafe devices or potentially unsafe methods that stop or interfere with the proper metering of the utility service.

**(6)** A public utility may disconnect commercial or farm utility service, without notice, where service has been reconnected without the utility's authorization.

**(7)** (a) Account arrears incurred by an owner or property manager for rental residential dwelling units or responsibility for non–compliance with energy conservation requirements as set out in ch. PSC 136 may be transferred, without regard to class of service, to the home or office account of the owner or property manager.

(b) The utility shall send written notice of the planned transfer of the account arrears or responsibility for non–compliance with energy conservation requirements to the owner or property manager prior to making the transfer.

(c) If the account arrears remain unpaid or the structure in question continues to be in non–compliance with the energy conservation requirements, the utility may disconnect the owner's or property manager's residence or office service, provided that the utility complies with the disconnection provisions of ss. PSC 113.0301 and 113.0304.

(d) An owner or property manager whose account is subject to disconnection action may avoid disconnection of service by making payment, by making an agreement with the utility for an extension of time for a specific period, or by installing the required energy conservation measures in the property in question. Any disconnection shall be in compliance with ss. PSC 113.0301 and 113.0304.

**(8)** Commercial or farm utility service may not be disconnected or refused for any of the following reasons:

(a) Delinquency in payment for service by a previous occupant of the premises to be served.

(b) Failure to pay for merchandise or charges for non–utility service billed by the utility.

(c) Failure to pay for a different type or class of utility service, except as provided in s. PSC 113.0302 (7) (a).

(d) Failure to pay the account of another customer as guarantor thereof.

(e) Failure to pay charges arising from any underbilling occurring more than one year prior to the current billing and due to any misapplication of rates or any faulty metering.

(f) Failure to pay an estimated bill other than a bill rendered pursuant to an approved meter reading plan.

**(9)** The commercial or farm customer shall have, in all instances, at least 20 days from the date of issuance of the bill to provide payment. An account may be deemed delinquent and notice of intent to disconnect issued after the 20–day period has elapsed. In the event of a discrepancy between the issue date and the postmark, the 20–day period shall be figured from whichever is later.

**(10)** (a) A utility shall not disconnect commercial or farm service for reasons enumerated in sub. (1) unless written notice is sent to the customer by first class mail or personally served at least 10 calendar days prior to the day of the proposed disconnection. If disconnection is not accomplished on or before the 20th day after the issuance of a notice, a subsequent notice shall be left on the premises not less than 24 hours nor more than 48 hours prior to disconnection.

(b) If the billing address is different from the service address, notice shall be posted at each individual dwelling unit of the service address not less than 5 days before disconnection for reasons enumerated in sub. (2). If access is not possible, this notice shall be posted at a minimum, to all entrances to the building and in the lobby. Such notice shall state, at a minimum:

1. The date of the notice.

2. The proposed date of disconnection.

3. That, if feasible, the occupants may apply to the utility to accept responsibility for future bills and avoid disconnection of service. Refusal or acceptance of the application for service is subject to those conditions set out in this chapter.

4. That if disconnection of service to an occupied dwelling will aggravate an existing medical or protective services emergency, the occupant should contact the utility immediately.

(c) Disconnection notice for reasons enumerated in sub. (2) shall be given upon a form approved by the commission and shall contain the following information:

1. The name and address for the customer and the address of the service, if different.

2. A statement of the reasons for the proposed disconnection of service and that disconnection will occur if the account is not paid, or if arrangement is not made to pay the account, or if other suitable arrangements are not made, or if equipment changes are not made.

3. A statement that the customer should communicate immediately upon receipt of the notice with the utility's designated office, listing a telephone number, if he or she disputes the notice of delinquent account, or if he or she wishes to negotiate a payment agreement as an alternative to disconnection, or when serving an occupied dwelling, if there is a threat to health or safety of a resident because of the infirmities of aging, developmental, mental or physical disabilities, the use of life support systems, or like infirmities incurred with age, or the frailties associated with being very young.

4. A statement that the customer may appeal to the public service commission staff in the event that the grounds for the proposed disconnection or the amount of any bill remains in dispute after the customer has pursued the available remedies with the utility.

**(11)** The utility shall make a reasonable effort to have a personal or telephone contact with the commercial or farm customer prior to disconnection. If a contact is made, the utility shall review the reasons for the pending disconnection. The utility shall keep a record of these contacts and contact attempts.

**(12)** (a) When a commercial or farm customer, either directly or through the public service commission, disputes a disconnection notice, the utility shall investigate any disputed issue and attempt to resolve that issue by negotiation. During this investigation and negotiation, utility service shall not be disconnected over this matter.

(b) If a disputed issue cannot be resolved pursuant to s. PSC 113.0407 (1), the utility shall inform the customer of the right to appeal to the public service commission.

**(13)** Commercial or farm service shall not be disconnected on a day, or on a day immediately preceding a day, when the business offices of the utility are not available to the public for the purpose of transacting all business matters unless the utility provides personnel who are readily available to the customer 24 hours per day to evaluate, negotiate or otherwise consider the customer's objections to the disconnection, as provided under s. PSC 113.0407 and proper service personnel are readily available to restore service 24 hours per day.

**(14)** The utility may not disconnect service that serves an occupied dwelling unit in affected counties when a heat advisory, heat warning, or heat emergency issued by the national weather service is in effect. A utility shall make reasonable attempts to reconnect service to an occupied dwelling that has been disconnected for nonpayment when an occupant states that there is a potential threat to health or life that results from the combination of the heat and loss of service. The utility may require that an occupant produce a licensed physician's statement or notice from a public health, social service, or law enforcement official which identifies the medical emergency for the occupant. Upon expiration of the heat advisory, heat warning, or heat emergency, the utility may disconnect service to a property that was reconnected during this period without further notice if an appropriate payment arrangement has not been established.

**History:** Cr. Register, July, 2000, No. 535, eff. 8–1–00.

**PSC 113.0303 Reconnection of service.** **(1)** (a) By June 1 of each year, or at a date designated by order of the commission, each electric utility in Wisconsin serving more than 40,000 customers shall submit a fall reconnection plan for review and approval by commission order. The plan shall provide reasonable means, including a timetable for personal contacts, that will be used to assure that all premises to which service was disconnected within the past 12 months and remains disconnected for nonpayment shall be contacted prior to October 25, or at a date set by

The interest rate in a calendar year shall apply to the amount of the deposit and to all interest accrued during the previous year(s), for the fraction of the calendar year that the deposit was held by the utility.

**(10)** REFUND. The utility shall refund the deposit of a residential customer after 12 consecutive months of prompt payment.

**(11)** REVIEW. The utility shall not continue to require a cash deposit for a residential account unless a deposit is permitted under the provisions of sub. (4) or (10).

**(12)** METHOD OF REFUND. Any deposit or portion thereof refunded to a residential customer shall be refunded by check unless both the customer and the utility agree to a credit on the regular billing, or unless sub. (14) applies.

**(13)** REFUND AT TERMINATION OF SERVICE. On termination of residential service, the utility shall credit the deposit, with accrued interest, to the customer's final bill and return the balance within 30 days of issuing the final bill.

**(14)** ARREARAGES. An arrearage owed by a residential customer may be deducted from the customer's deposit under any of the following conditions:

(a) Except as provided in par. (c), a deposit may be used by the utility only to satisfy an arrearage occurring after the deposit was made.

(b) If the utility deducts an arrearage from a customer deposit, it may require the customer to bring the deposit up to its original amount. Failure of the customer to do so within 20 days of mailing a written request for payment is a ground for disconnection.

(c) When a deposit is refunded to the customer, the utility may first deduct any arrearage owed by the customer, whether the arrearage arose prior to or after the date of the deposit.

**(15)** APPLICABILITY. The provisions in subs.(2) and (3) are not applicable to deposits or guarantees made in connection with the financing of extensions or other equipment.

**History:** Cr. Register, July, 2000, No. 535, eff. 8-1-00; CR 02-027: am. (3) (b), Register December 2002 No. 564, eff. 1-1-03.

**PSC 113.0403 Deposits for commercial and farm service. (1)** DEPOSIT REQUEST. If the credit of an applicant for commercial and farm service has not been established satisfactorily to the utility, the utility may require the applicant to post deposit. The utility shall notify the applicant within 30 days of the request for service as to whether a deposit will be required. The 30-day period shall begin from the date the applicant provides all requested relevant information to the utility. If no request for a deposit is made within this period, no deposit shall be required, except under the provisions of the sub. (5). If a request for a deposit is made, the applicant must be given at least 30 days to provide payment, or guarantee, or to establish an installment payment agreement.

**(2)** CONSIDERATIONS FOR DEPOSIT. In determining whether an applicant for commercial or farm service has satisfactorily established its credit, the utility shall inform the customer that it will consider any or all of the following factors, if provided by the customer, before requiring a security deposit.

(a) Credit information from credit reporting services.

(b) Letter of credit from a financial institution or another utility.

(c) Applicant's business characteristics, such as type of business, length of time the applicant has operated, the applicant's business experience and knowledge and estimated size of the applicant's bills;

(d) Assets of the business.

(e) The financial condition of the business, as indicated in a financial statement.

**(3)** INSTALLMENT PAYMENT AGREEMENT. A commercial or farm customer or applicant for commercial or farm service of which a deposit is requested shall have the right to receive service under an installment payment agreement.

**(4)** GUARANTEE TERMS AND CONDITIONS. (a) The utility may accept, in lieu of a cash deposit for new or existing commercial or farm service, a contract signed by a guarantor satisfactory to the utility whereby payment of a specified sum not exceeding the cash deposit requirement is guaranteed. The term of such contract shall be for no longer than 2 years, but it shall automatically terminate after the commercial or farm customer has closed its account with the utility, or at the guarantor's request on 30 days' written notice to the utility.

(b) On termination of a guarantee contract, or whenever the utility deems the amount of surety insufficient, a cash deposit or a new or additional guarantee may be required on 20-day written notice to the customer. The service of a customer who fails to comply with these requirements may be disconnected on 10 days written notice, subject to the establishment of an installment payment agreement.

(c) The utility shall mail the guarantor copies of all disconnect notices sent to the customer whose account he or she has guaranteed, unless the guarantor waives such notice in writing.

**(5)** EXISTING COMMERCIAL OR FARM SERVICE. (a) The utility may require an existing commercial or farm customer to furnish a deposit if the customer has not made prompt payment of all bills within the last 24 months, or if the customer has the ability to pay for the utility service but, during the cold weather disconnection rules period, had an arrears amount incurred during that period that was 80 days or more past due.

(b) When the utility requests a deposit of an existing commercial or farm customer, the customer shall have 30 days to provide the deposit, guarantee, or to establish an installment payment agreement.

**(6)** WRITTEN EXPLANATION. (a) A utility shall provide a written explanation of why a deposit or guarantee is being required for commercial or farm service. The explanation shall include notice of the customer's right to appeal any deposit request or amount required under this section to the public service commission.

(b) The utility shall inform the customer at the time a deposit is provided that if, after 12 months of utility service, the deposit amount is greater than necessary based on actual consumption, the customer may request refund of the difference between the 2 amounts.

**(7)** REFUSAL OR INTERRUPTION OF SERVICE. Commercial or farm service may be refused or disconnected for failure to pay a deposit request, subject to the rules pertaining to disconnection and refusal of service.

**Note:** See s. PSC 113.0302.

**(8)** AMOUNT OF DEPOSIT. (a) The maximum deposit for a new commercial or farm account shall not exceed the highest estimated gross bill for any 2 consecutive billing periods selected by the utility. If after a 12-month period the deposit amount is shown to be greater than warranted based on actual consumption, the utility shall at the customer's request refund the difference between the 2 amounts, plus interest.

(b) Except as provided in par. (c), the maximum deposit for an existing commercial or farm account shall not exceed the highest actual gross bill for any 2 consecutive months within the preceding 12 months review period, as determined by the utility.

(c) If, during the cold weather disconnection rules period, a customer had an arrears amount incurred during this period that was 80 days or more past due and had the ability to pay for utility service, the deposit may not exceed the highest actual gross bill for any 4 consecutive months within the preceding 12-month review period, as determined by the utility.

**(9)** INTEREST. (a) Deposits for commercial or farm service shall bear interest from the date a deposit is made to the date it is applied to an account balance or refunded.

(b) The interest rate to be paid shall be subject to change annually on a calendar basis. The commission shall determine the rate of interest to be paid on deposits held during the following calen-

Unofficial Text (See Printed Volume). Current through date and Register shown on Title Page.

dar year and notify the utilities of the rate by December 15 of each year. The rate shall be equal to the weekly average yield of one-year United-States treasury securities adjusted for constant maturity for the week ending on or after December 1 made available by the federal reserve board, rounded to the nearest tenth of one percent.

(c) The rate of interest set by the commission shall be payable on all deposits. Utilities shall calculate the interest earned on each deposit at the time of the refund and at the end of each calendar year. The interest rate in a calendar year shall apply to the amount of the deposit and to all interest accrued during the previous year(s), for the fraction of the calendar year that the deposit was held by the utility.

**(10)** TIME OF REFUND. The deposit of a commercial or farm customer shall be refunded after 24 consecutive months of prompt payment.

**(11)** METHOD OF REFUND. Any deposit or portion thereof refunded to a commercial or farm customer shall be refunded by check unless both the customer and the utility agree to a credit on the regular billing, or unless sub. (13) applies.

**(12)** REFUND AT TERMINATION OF SERVICE. Upon termination of commercial or farm service, the deposit, with accrued interest, shall be credited to the final bill and the balance shall be returned within 30 days of issuing the final bill.

**(13)** ARREARAGES. An arrearage owed by a commercial or farm customer may be deducted from the customer's deposit under the following conditions.

(a) Except as provided in par. (c), a deposit may be used by the utility only to satisfy an arrearage occurring after the deposit was made.

(b) If the utility deducts an arrearage from a customer deposit, it may require the customer to bring the deposit up to its original amount. Failure of the customer to do so within 20 days of mailing a written request for payment is a ground for disconnection.

(c) When a deposit is refunded to the customer, the utility may first deduct any arrearage owed by the customer, whether the arrearage arose prior to or after the date of the deposit.

**(14)** APPLICABILITY. The provisions of subs. (3) and (4) are not applicable to deposits or guarantees made in connection with the financing of extensions or other equipment.

**History:** Cr. Register, July, 2000, No. 535, eff. 8-1-00; CR 02-027: am. (4) (b), Register December 2002 No. 564, eff. 1-1-03.

**PSC 113.0404 Deferred payment agreement.** **(1)** The utility is required to offer deferred payment agreements only to residential accounts and may offer such agreements to other customers.

**(2)** Every deferred payment agreement entered into due to the customer's inability to pay the outstanding bill in full shall provide that service will not be discontinued if the customer pays a reasonable amount of the outstanding bill and agrees to pay a remaining outstanding balance in installments.

**(3)** For purposes of determining reasonableness in sub. (2), the parties shall consider the customer's ability to pay, including the following factors:

(a) Size of the delinquent account.

(b) Customer's payment history.

(c) Time that the debt has been outstanding.

(d) Reasons why debt has been outstanding.

(e) Any other relevant factors concerning the circumstances of the customer, such as household size, income and expenses.

**(4)** A utility may require a written deferred payment agreement with the customer's signature. A written agreement offered by a utility shall state immediately preceding the space provided for the customer's signature in at least 12-point boldface print,

**"RIGHT OF APPEAL**

- If you are not satisfied with this agreement, DO NOT SIGN IT.
- You have the right to suggest a different payment agreement.
- If you and the utility can not agree on terms, you can ask the public service commission to review the disputed issues.
- If you sign this agreement, you agree that you owe the amount due under the agreement.
- Signing this agreement does not affect your responsibility to pay for your current service."

A utility that does not require a written deferred payment agreement shall communicate to the customer all points listed above except for the signature when making the arrangement with the customer. A utility must send written confirmation of a deferred payment agreement upon customer request. The commission may require a utility to use written deferred payment agreements.

**(5)** A delinquent amount covered by a deferred payment agreement shall not be subject to a late payment charge if the customer meets the payment schedule required by the agreement.

**(6)** A special payment agreement entered into by the customer and the utility through the utility's early identification program shall be given the force and effect of a deferred payment agreement for purposes of late payment charges.

**(7)** If a utility customer has not fulfilled the terms of a deferred payment agreement and there has not been a significant change in the customer's ability to pay since the agreement was negotiated, the utility may disconnect utility service pursuant to disconnection of service rules, ss. PSC 113.0301 and 113.0304 and shall not be required to negotiate a subsequent deferred payment agreement prior to disconnection.

**(8)** Payments made by a customer in compliance with a deferred payment agreement shall first be considered made in payment of the previous account balance with any remainder credited to the current bill.

**(9)** If a deferred payment agreement cannot be reached because the customer's offer is unacceptable to the utility, the utility shall inform the customer in writing why the customer's offer was not acceptable.

**History:** Cr. Register, July, 2000, No. 535, eff. 8-1-00.

**PSC 113.0405 Meter readings and billing periods.** Readings of all meters used for determining charges to customers shall be scheduled no less frequently than once every two months. Utilities may offer quarterly or semiannual meter-reading plans to customers who elect such an option. An effort shall be made to read meters on corresponding days of each meter-reading period cycle. The meter-reading date may be advanced or postponed not more than 5 days without adjustment of the billing for the period. Bills for service shall be rendered within 40 days from the reading of the meter except as may be otherwise specifically authorized by the commission. The utility may permit the customer to supply the meter readings on a form supplied by the utility, or by telephone or electronic mail, provided a utility representative reads the meter at least once each 6 months and when there is a change of customer. The utility shall make reasonable efforts to read the meters of customers whose meters require access to a residence and who cannot be available during normal business hours.

**History:** Cr. Register. July, 2000, No. 535, eff. 8-1-00.

**PSC 113.0406 Billing.** **(1)** (a) Each bill, including the customer's receipt, provided by Madison Gas and Electric Company, Northern States Power Company, Superior Water, Light and Power Company, Wisconsin Electric Power Company, Wisconsin Power and Light Company, Wisconsin Public Service Corporation, or their successors, shall show for each meter the following information:

Unofficial Text (See Printed Volume). Current through date and Register shown on Title Page.

1. The customer name, billing address and service address, if different from the billing address.

2. For residential customers in multi–unit buildings, current meter identification information or number and account number.

3. The present and last preceding meter readings.

4. The present and last preceding meter reading dates.

5. The next scheduled meter reading date.

6. The number of days in the billing period.

7. The number of units consumed.

8. The class of service with clear explanation of codes and abbreviations.

9. The rate schedule under which the bill is calculated including the itemized calculations of the rate schedule component including, but not limited to, such items as customer charge, energy blocks, demand charges, minimum bills and all other billing factors necessary for the customer to check the calculation of the bill.

10. Clear itemized adjustment clause bill calculation.

11. Amount subject to tax, tax rate and tax billed.

12. Clear itemization of the amount of the bill for the present billing period, any unpaid balance from previous billing periods and any late payment charges.

13. Clear itemization of other utility charges and credits.

14. Degree day information.

15. A statement that the utility will, upon customer request, provide the information and assistance necessary for the customer to evaluate fuel consumption and conservation.

(b) Upon receiving such request in par. (a) 15., the utility shall provide consumption and degree day information by billing periods for at least the last year and information and instructions needed by the customer to make consumption comparisons and evaluate his or her conservation efforts.

(c) Bills rendered without an actual meter reading shall be specifically marked as estimated.

(d) Each bill, including the customer's receipt rendered by electric utilities not included in par. (a), shall show the present and last preceding meter readings, the date of the present reading, the number of units consumed, the class of service if other than residential and the rate schedule under which the bill is calculated. In lieu of including the rate schedule on the bill the utility may, whenever a rate change becomes effective or at least once a year, supply each customer with the schedule of rates at which the bills are calculated and any other rates that might be applicable. Such a schedule shall be written in clear and direct language in no smaller type than 10–point type. Bills rendered at rates requiring the measurement of a number of different factors shall show all data necessary for the customer to check the calculation of a bill. All monthly adjustment clause factors necessary for a customer to check the calculation of the bill shall be included on the monthly bill. Minimum and estimated bills shall be distinctly marked as such. Estimated bills are bills rendered without actual meter readings.

(e) The utility may include on the utility service bill charges to the customer resulting from other services, materials, or work provided by the utility as a result of commission–approved conservation and alternative energy programs and, with the consent of both the customer and the utility, merchandise and service repair work charges. The charges shall be listed individually on the bill and the customer shall be permitted to include such payment in his or her payment for electric utility service. Any partial payments shall be applied first to the amount due for utility service and the remainder to the other charges.

(f) Costs or fees incurred by and awarded to the utility by a court of law, for pursuing bill collection through other agencies, such as small claims courts, or extraordinary collection charges as allowed and specified in the utility's tariffs filed with the public service commission, may be included on the utility's service bill. Such tariffs shall be established on the basis of rate case proceedings or generic proceedings to establish the reasonableness of such charges.

(g) The commission may authorize the utility to make late payment charges to a customer's utility service bill that is not paid in full within 20 days following issuance of the bill and for utility service that has been obtained by diversion around or tampering with the metering of the account. The late payment charge may be either a one–time charge as provided in par. (h) or a monthly charge as provided in par. (i). The utility shall receive approval from the commission of the method it desires to use and shall not change methods without commission approval.

(h) If the utility is authorized to make a one–time late payment charge, such charge shall comply with the following requirements:

1. The bill shall clearly indicate the amount of the late payment charge and the date after which the late payment charge shall be applied.

2. Except as provided in par. (i) 8., late payment charges shall be applied no sooner than 20 days after the date of issuance of the bill.

3. The amount of the late payment charge shall be 3% of the bill, except a minimum charge of $.50 shall apply. The charge shall not exceed 1% per month (12% per annum) for forbearances occurring primarily, for personal, family or household purposes where the only charge is a late charge.

4. Late payment charges shall be applied to all customer classes and rate classifications.

Note: See s. PSC 113.0404 (5) and (6).

5. A late payment charge shall be applied only once to any given amount outstanding.

6. If a customer disputes a bill for utility service or portion thereof and does not pay the disputed bill in full within 20 days following issuance of the bill, the late payment charge shall be applied only to that portion of the disputed bill later found to be correct and payable to the utility.

7. Bills issued for utility service previously unbilled because of meter diversion or tampering with the proper metering of the account may include a late payment charge when issued.

(i) If the utility is authorized to make monthly late payment charges, such charges shall comply with the following requirements.

1. The amount of the charge shall be no more than 1% per month and shall be filed with and approved by the commission before it can be applied. The charge shall not exceed 1% per month (12% per annum) for forbearances occurring primarily, for personal, family or household purposes where the only charge is a late charge.

2. The late payment charge shall be applied to the total unpaid balance for utility service, including unpaid late payment charges.

3. Except as provided in subd. 9., the late payment charge shall be applied no sooner than 20 days after the date of issuance of the bill.

4. The late payment charge shall be applied to all customer classes and rate classifications.

5. If a customer disputes a bill for utility service or portion thereof and does not pay the disputed bill in full within 20 days following issuance of the bill, the late payment charge shall be applied only to that portion of the disputed bill later found to be correct and payable to the utility.

6. The utility may not waive any properly applied late payment charge, except when the utility fails to obtain scheduled meter readings, the utility shall waive the late payment charge upon dispute of the estimate by the customer.

Note: See s. PSC 113.0404 (5) and (6).

Unofficial Text (See Printed Volume). Current through date and Register shown on Title Page.

7. No additional late payment charge may be applied to a delinquent account for utility service after the date on which the delinquent account was written off by the utility as uncollectible.

8. If a utility changes the type of late payment charge or initiates a late payment charge, the new charge shall apply only to utility service provided after the effective date of the change or initiation.

9. Bills issued for utility service that was previously unbilled because of meter diversion or tampering with the proper metering of the account may include a late payment charge when issued. The late payment charge may be applied from the estimated date that the diversion or tampering began.

(j) A customer who receives a lump sum payment from an outside source to be used to pay his or her utility service bill may, at the utility's option, apply the payment to the customer's account in equal monthly installments.

**(2)** (a) If the billing period is longer or shorter than allowed in s. PSC 113.0405, the bill shall be prorated on a daily basis unless other provision is made in the utility's filed rules.

(b) If the utility is unable to gain access to read a standard residential meter at the end of each billing period, the utility shall, upon customer request, provide meter reading forms which allow the customer to send a card reading in time for billing. If actual readings cannot be obtained, the utility shall also leave a meter reading form at the premises for the customer to complete and return to the utility in time for bill preparation or leave a form at the premises explaining the estimation or leave a form at the premises explaining the estimation and how to avoid future estimations. This form shall be used when billing systems do not have sufficient time to allow the customer to return the card reading prior to billing.

(c) If no form is left on the premises, or if the form is not returned in time to be processed in the billing cycle, a minimum or estimated bill may be rendered. In cases of emergency the utility may render minimum or estimated bills without reading meters or supplying meter reading forms to customers. Only in unusual cases or when approval is obtained from the customer may more than three consecutive estimated bills be rendered.

(d) If meter reading is not scheduled on a monthly basis, the utility shall supply customers with meter reading forms for the periods when the meter is not scheduled to be read by the utility. Customers may not be required to provide these meter readings. If the customer informs the utility he or she does not desire to supply a reading, or if the form is not returned in time for the billing operation, a minimum or estimated bill may be rendered.

(e) When an actual meter reading indicates that a previous estimated bill was abnormally high or low, the utility shall calculate the bill for the entire period as if use of service was uniformly distributed throughout the period. The previous estimated charge shall be deducted from the recomputed total. If there is evidence to indicate that actual use was not uniform throughout the period, the billing shall be adjusted according to available information.

**(3)** (a) Credits due a customer because of meter inaccuracies, errors in billing, or misapplication of rates shall be shown separately and identified.

(b) The original billing rendered because of meter inaccuracy, or errors in billing, or misapplication of rates, shall be separated from the regular bill and the charges explained in detail.

**(4)** (a) Each bill for service shall be computed at the proper filed rate, which shall be the rate selected by the utility unless the customer selects a rate under par. (e).

(b) When it is difficult to determine what rate should be applied until there has been actual usage, the rate classification shall be reviewed when there has been adequate usage to determine the lowest applicable rate but no later than the end of the first 12 months of usage. The customer shall be notified as soon as the lowest firm service rate option has been determined and be given the option to select a different applicable rate as set forth in par. (e). The rate determined by the utility to be the lowest firm rate option shall be effective with the billing following the date of notification by the utility unless the customer selects a rate. If the customer selects a rate, the rate shall be effective with the current billing period if required billing information is available but not later than the beginning of the second billing period following the customer's request.

(c) A utility may enter into contracts with customers having terms longer than one year, but the rates paid under such contracts shall be the utility's lowest applicable firm service rate option, for which meter usage information is known, on file with the commission at the time of the contract, unless the customer selects another applicable rate at the time of the contract.

(d) If the utility has information that the customer could qualify for a lower rate by changing voltage delivery, or combining or separating services as allowed under the utility's rules and regulations, he or she shall be notified; but no change in rates shall be made until the customer makes the necessary modifications. If such modifications are made, the utility shall change the customer's rate classification effective for the beginning of the current billing period if required billing information is available, but the change shall be effective no later than the beginning of the second billing period following the customer's request and notification has been made.

(e) When a customer is eligible to take service under more than one rate schedule, the utility shall inform the customer at the times specified in par. (f) of the option to select a rate, of the options and service classifications for which the customer may be eligible and the conditions necessary to qualify and of the firm service rate option that would have resulted in the lowest rate based on the previous 12 months' service and on the metered customer usage information known to the utility. The information provided shall include a general explanation of electric service usage characteristics to assist the customer in selecting the lowest rate consistent with the customer's anticipated usage and needs. If the customer requests a change in rate classification, it shall be effective at the beginning of the current billing period if required billing information is available, but such change shall be effective no later than the beginning of the second billing period following the customer's request.

(f) At least once in each calendar year customers with more than one rate option shall be informed of the option to select a rate set forth in par. (e). The notification requirement may be satisfied through the use of a bill insert. The customer shall also be informed of the option to select a rate whenever there is a change in rates that would affect the customer and at any other time the customer so requests. If the utility notifies the customer of the option to select a rate as the result of a rate change or a customer request, such notification shall satisfy the requirement to notify the customer at least once in each calendar year.

(g) Nothing in this section shall be construed as permitting a customer to select a service classification inconsistent with the utility's applicable tariff provisions or with contractual agreements between the utility and the customer.

**(5)** Each utility shall offer a budget payment plan to all prospective and existing residential customers and to all commercial accounts for which the primary purpose of the service is to provide for residential living, subject to the following minimum requirements:

(a) A budget payment plan tariff shall be on file with the public service commission, applicable only to charges for utility services under public service commission jurisdiction.

(b) A budget payment plan may be established at any time of the year. The budget amount shall be calculated on the basis of the estimated consumption and estimated applicable rates through the end of the budget year. If the budget year is a fixed year, then prospective and existing customers requesting a budget payment plan after the start of the fixed year shall have their initial monthly bud-

get amount determined on the basis of the number of months remaining in the current budget year.

(c) An applicant for a budget plan shall be informed at the time of application that budget amounts shall be reviewed and changed every 6 months, if necessary, in order to reflect current circumstances. Adjustments to the budget amount shall be made with the objective that the customer's underbilled or overbilled balance at the end of the budget year shall be less than one month's budget amount.

(d) Customers on the budget payment plan shall be notified of adjustments by means of a bill insert, a message printed on the bill itself, or both. The customer shall be adequately informed of the adjustment at the same time the bill containing the adjustment is rendered.

(e) Customers who have arrearages shall be allowed to establish a budget payment plan by signing a deferred payment agreement for arrears, according to the provisions of s. PSC 113.0404.

(f) Budget payment plans shall be subject to the late payment charge provisions. In addition, if a budget payment is not paid, the customer shall be notified with the next billing that if proper payment is not received subsequent to this notification, the next regular billing may effectuate the removal of the customer from the budget plan and reflect the appropriate amount due.

(g) At the end of a budget year, if an underbilled or overbilled balance exists in the account, the balance shall be handled as follows:

1. A customer's debit balance shall be paid in full or, at the customer's option, on a deferred basis.

2. A customer's credit balance shall be applied, at the customer's option, against the customer's account, credited in monthly installments to the customer's account over the course of the next budget year, or refunded to the customer.

**(6)** An occupant shall apply for utility service. An occupant who uses utility service but does not apply for it may be billed an estimated or actual amount at a later date for service used prior to the time of application. The utility must have reasonable grounds to establish responsibility for the backbilling. Failure to pay charges resulting from this backbilling may result in disconnection of service. The utility shall inform the occupant of the right to dispute the billing through the dispute procedures set forth in s. PSC 113.0407.

**(7)** (a) The utility may request all new customers to make an application for service. The utility may require that a verbal or written application be made by telephone, letter or in person. The utility shall establish a written policy for requesting the information. The utility may require the customer to provide:

1. Name or names of party responsible for bill payment.

2. Address where service is to be provided.

3. Mailing address if different from service address.

4. Address of residence immediately prior to application.

(b) The utility may request additional credit information from applicants as part of its application for service. Except as provided in s. PSC 113.0301 (3), utility service shall not be disconnected or refused for refusal to provide any information other than that specified in par. (a).

(c) The utility may accept third party applications for service. The utility shall send written confirmation of receipt of the service application to the party responsible for bill payment.

**(8)** (a) A utility shall pay interest on customer overpayments not refunded to the customer within 60 days of receipt by the utility if the net amount refunded exceeds $20 per refund and the overpayment was made to the utility due to:

1. Meters registering fast as defined in s. PSC 113.0924.

2. Use of an incorrect meter constant or multiplier.

3. Incorrect service or rate classification, provided the information furnished by the customer to the utility was not deficient, or the customer did not choose the rate as provided in s. PSC 113.0406 (4).

4. Billing based on a switched meter condition, where the customer was on the incorrect meter.

5. Misapplication of rates.

(b) A utility is not required to pay interest to customer for overpayments made for:

1. Financing of service extensions or other equipment.

2. Budget payment plans.

3. Estimated bills, if the utility made a reasonable effort to obtain access. Reasonable efforts to gain access means that the utility has notified the customer after 3 consecutive estimated readings that the utility will read the meter at other than standard business hours at the customer's request.

4. Receipt of lump sum payments made from an outside source as the Low Income Home Energy Assistance Program or other like programs.

(c) The rate of interest to be paid shall be calculated in the same manner as provided for in s. PSC 113.0402 (9) (b). Interest shall be paid from the date when the customer overpayment occurred until the date when the overpayment is refunded. Interest will be calculated on the net amount overpaid in each calendar year.

(d) Nothing in these rules shall prevent the commission or its staff from requiring the payment of interest on amounts returned to customers in those instances where the commission or its staff finds that such payment is necessary for a fair and equitable resolution of an individual complaint.

History: Cr. Register, July, 2000, No. 535, eff. 8-1-00.

**PSC 113.0407 Dispute procedures. (1)** Whenever the customer disputes the utility's request for a deposit or other guarantee, or advises the utility's designated office that all or any part of any billing as rendered is in dispute, or that any matter related to the disconnection or refusal of service is in dispute, the utility shall:

(a) Investigate the dispute promptly and completely.

(b) Advise the customer of the results of the investigation.

(c) Attempt to resolve the dispute.

(d) Provide the opportunity for the residential customer to enter into a deferred payment agreement under s. PSC 113.0404 when applicable in order to resolve the dispute.

(e) When a utility designates an agent to handle disputes and inquiries and when the agent refuses or fails to adequately address the disputes and inquiries, upon complaint or other indicator of such refusal or failure, the dispute resolution responsibility required under this section reverts to the utility.

(f) When utility payments are made electronically or through vendors, credit cards, or other third party and when these third parties have a contractual relationship with the utility, the dispute/inquiry resolution responsibility remains with the utility.

**(2)** After the customer has pursued the available remedies with the utility, he or she may request that the public service commission staff informally review the disputed issue and recommend terms of settlement.

**(3)** (a) A customer's request for informal review may be made in any reasonable manner such as by written request or telephoned request directed to the public service commission. By telephone or written request the public service commission staff may request the utility to investigate the dispute.

(b) The utility shall designate employees for responding to commission complaints who are readily available and have an appropriate and sufficient authority level for investigating concerns raised by the commission and its staff. Utilities shall promptly inform the commission of any changes in these designations. A utility shall respond to public service commission staff's request for an investigation by contacting the complainant within 48 hours for most circumstances, or 4 hours in an emergency situ-

residential account. The explanation shall include notice of the customer's right to appeal any deposit request or amount required under this section to the public service commission.

**(6)** REASONABLENESS OF DEPOSIT. When requesting a deposit from a residential customer, the utility shall consider the customer's ability to pay, including the following factors, in determining the reasonableness of its request:

(a) Size of the delinquent account.

(b) Customer's payment history.

(c) Time that the debt has been outstanding.

(d) Reasons why the debt has been outstanding.

(e) Any other relevant factors concerning the circumstances of the customer, as household size, income and expenses.

**(7)** AMOUNT OF DEPOSIT. (a) The maximum deposit for a new residential account shall not exceed the highest estimated gross bills for any 2 consecutive billing periods selected by the utility.

(b) Except as provided in par. (c), the maximum deposit for an existing residential account shall not exceed the highest actual gross bills for any 2 consecutive months within the preceding 12 month review period, as determined by the utility.

(c) If, during the cold weather disconnection rules period, a customer had an arrears amount incurred during this period that was 80 days or more past due and had the ability to pay for utility service, the deposit may not exceed the highest actual gross bills for any 4 consecutive months within the preceding 12 month review period, as determined by the utility.

**(8)** REFUSAL OR DISCONNECTION OF SERVICE. Residential service may be refused or disconnected for failure to pay a deposit request subject to the rules pertaining to disconnection and refusal of service, as provided in s. PSC 134.062.

**(9)** INTEREST. (a) Deposits for residential accounts shall bear interest payable from the date a deposit is made to the date it is applied to an account balance or is refunded.

(b) The interest rate to be paid shall be subject to change annually on a calendar year basis. The commission shall determine the rate of interest to be paid on deposits held during the following calendar year and notify utilities of that rate by December 15 of each year. The rate shall be equal to the weekly average yield of one–year United States treasury securities adjusted for constant maturity for the week ending on or after December 1 made available by the federal reserve board, rounded to the nearest tenth of one per cent.

(c) The rate of interest set by the commission shall be payable on all deposits. Utilities shall calculate the interest earned on each deposit at the time of refund and at the end of each calendar year. The interest rate in a calendar year shall apply to the amount of the deposit and to all interest accrued during the previous year(s), for the fraction of the calendar year that the deposit was held by the utility.

**(10)** REFUND. The utility shall refund the deposit of a residential customer after 12 consecutive months of prompt payment.

**(11)** REVIEW. The utility shall not continue to require a cash deposit for a residential account unless a deposit is permitted under the provisions of sub. (4) or (10).

**(12)** METHOD OF REFUND. Any deposit or portion thereof refunded to a residential customer shall be refunded by check unless both the customer and the utility agree to a credit on the regular billing, or unless sub. (14) applies.

**(13)** REFUND AT TERMINATION OF SERVICE. On termination of residential service, the utility shall credit the deposit, with accrued interest, to the customer's final bill and return the balance within 30 days of issuing the final bill.

**(14)** ARREARAGES. An arrearage owed by a [residential] customer may be deducted from the customer's deposit under the following conditions:

(a) Except as provided in par. (c), a deposit may be used by the utility only to satisfy an arrearage occurring after the deposit was made.

(b) If the utility deducts an arrearage from a customer deposit, it may require the customer to bring the deposit up to its original amount. Failure of the customer to do so within 20 days of mailing a written request for payment is ground for disconnection.

(c) When a deposit is refunded to the customer, the utility may first deduct any arrearage owed by the customer, whether the arrearage arose prior to or after the date of the deposit.

**(15)** APPLICABILITY. The provisions in subs. (2) and (3) are not applicable to deposits or guarantees made in connection with the financing of extensions or other equipment.

**History:** Cr. Register, January, 1975, No. 229, eff. 2–1–75; am. Register, November, 1980, No. 299, eff. 12–1–80; renum. (7) to (14) to be (8) to (15), cr. (7), Register, April, 1985, No. 352, eff. 5–1–85; emerg. cr. (2) (c), am. (4) (a) and (5), eff. 10–25–88; r. and recr. Register, October, 1989, No. 406, eff. 11–1–89.

**PSC 134.0615 Deposits for commercial and farm service.** **(1)** DEPOSIT REQUEST. If the credit of an applicant for commercial or farm service has not been established satisfactorily to the utility, the utility may require the applicant to post a deposit. The utility shall notify the applicant within 30 days of the request for service as to whether a deposit will be required. The 30–day period shall begin from the date the applicant provides all requested relevant information to the utility. If no request for a deposit is made within this period, no deposit shall be required, except under the provisions of sub. (5). If a request for a deposit is made, the applicant must be given at least 30 days to provide payment, or guarantee, or to establish an installment payment agreement.

**(2)** CONSIDERATIONS FOR DEPOSIT. In determining whether an applicant for commercial or farm service has satisfactorily established its credit, the utility shall inform the customer that it will consider any or all of the following factors, if provided by the customer, before requiring a security deposit:

(a) Credit information from credit reporting services.

(b) Letter of credit from a financial institution or another utility.

(c) Applicant's business characteristics, such as type of business, length of time the applicant has operated, the applicant's business experience and knowledge, and estimated size of the applicant's bills.

(d) Assets of the business.

(e) The financial condition of the business, as indicated in a financial statement.

**(3)** INSTALLMENT PAYMENT AGREEMENT. A commercial or farm customer or applicant for commercial or farm service of which a deposit is requested shall have the right to receive service under an installment payment agreement.

**(4)** GUARANTEE TERMS AND CONDITIONS. (a) The utility may accept, in lieu of a cash deposit for new or existing commercial or farm service, a contract signed by a guarantor satisfactory to the utility whereby payment of a specified sum not exceeding the cash deposit requirement is guaranteed. The term of such contract shall be for no longer than 2 years, but it shall automatically terminate after the commercial or farm customer has closed its account with the utility, or at the guarantor's request on 30 days' written notice to the utility.

(b) On termination of a guarantee contract, or whenever the utility deems the amount of surety insufficient, a cash deposit or a new or additional guarantee may be required on 20–day written notice to the customer. The service of a customer who fails to comply with these requirements may be disconnected on 8 days' written notice, subject to the establishment of an installment payment agreement.

(c) The utility shall mail the guarantor copies of all disconnect notices sent to the customer whose account he or she has guaranteed, unless the guarantor waives such notice in writing.

**(5)** EXISTING COMMERCIAL OR FARM SERVICE. (a) The utility may require an existing commercial or farm customer to furnish a deposit if the customer has not made prompt payment of all bills within the last 24 months, or if the customer has the ability to pay for the utility service but, during the cold weather disconnection rules period, had an arrears amount incurred during that period that was 80 days or more past due.

(b) When the utility requests a deposit of an existing commercial or farm customer, the customer shall have 30 days to provide the deposit, guarantee, or to establish an installment payment agreement.

**(6)** WRITTEN EXPLANATION. (a) A utility shall provide a written explanation of why a deposit or guarantee is being required for commercial or farm service. The explanation shall include notice of the customer's right to appeal any deposit request or amount required under this section to the public service commission.

(b) The utility shall inform the customer at the time a deposit is provided that if, after 12 months of utility service, the deposit amount is greater than necessary based on actual consumption, the customer may request refund of the difference between the 2 amounts.

**(7)** REFUSAL OR INTERRUPTION OF SERVICE. Commercial or farm service may be refused or disconnected for failure to pay a deposit request, subject to the rules pertaining to disconnection and refusal of service.

Note: See s. PSC 134.0622.

**(8)** AMOUNT OF DEPOSIT. (a) The maximum deposit for a new commercial or farm account shall not exceed the highest estimated gross bill for any 2 consecutive billing periods selected by the utility. If after a 12 month period the deposit amount is shown to be greater than warranted based on actual consumption, the utility shall at the customer's request refund the difference between the 2 amounts, plus interest.

(b) Except as provided in par. (c), the maximum deposit for an existing commercial or farm account shall not exceed the highest actual gross bill for any 2 consecutive months within the preceding 12 month review period, as determined by the utility.

(c) If, during the cold weather disconnection rules period, a customer had an arrears amount incurred during this period that was 80 days or more past due and had the ability to pay for utility service, the deposit may not exceed the highest actual gross bill for any 4 consecutive months within the preceding 12 month review period, as determined by the utility.

**(9)** INTEREST. (a) Deposits for commercial or farm service shall bear interest from the date a deposit is made to the date it is applied to an account balance or refunded.

(b) The interest rate to be paid shall be subject to change annually on a calendar [year] basis. The commission shall determine the rate of interest to be paid on deposits held during the following calendar year and notify the utilities of the rate by December 15 of each year. The rate shall be equal to the weekly average yield of one-year United States treasury securities adjusted for constant maturity for the week ending on or after December 1 made available by the federal reserve board, rounded to the nearest tenth of one per cent.

(c) The rate of interest set by the commission shall be payable on all deposits. Utilities shall calculate the interest earned on each deposit at the time of refund and at the end of each calendar year. The interest rate in a calendar year shall apply to the amount of the deposit and to all interest accrued during the previous year(s), for the fraction of the calendar year that the deposit was held by the utility.

**(10)** TIME OF REFUND. The deposit of a commercial or farm customer shall be refunded after 24 consecutive months of prompt payment.

**(11)** METHOD OF REFUND. Any deposit or portion thereof refunded to a commercial or farm customer shall be refunded by check unless both the customer and utility agree to a credit on the regular billing, or unless sub. (13) applies.

**(12)** REFUND AT TERMINATION OF SERVICE. Upon termination of commercial or farm service, the deposit, with accrued interest, shall be credited to the final bill, and the balance shall be returned within 30 days of issuing the final bill.

**(13)** ARREARAGES. An arrearage owed by a commercial or farm customer may be deducted from the customer's deposit under the following conditions:

(a) Except as provided in par. (c), a deposit may be used by the utility only to satisfy an arrearage occurring after the deposit was made.

(b) If the utility deducts an arrearage from a customer deposit, it may require the customer to bring the deposit up to its original amount. Failure of the customer to do so within 20 days of mailing a written request for payment is a ground for disconnection.

(c) When a deposit is refunded to the customer, the utility may first deduct any arrearage owed by the customer, whether the arrearage arose prior to or after the date of the deposit.

**(14)** APPLICABILITY. The provisions of subs. (3) and (4) are not applicable to deposits or guarantees made in connection with the financing of extensions or other equipment.

**History:** Cr. Register, October, 1989, No. 406, eff. 11-1-89.

**PSC 134.062 Disconnections, residential.** **(1)** Residential utility service may be disconnected or refused for any of the following reasons:

(a) Failure to pay a delinquent account or failure to comply with the terms of a deferred payment agreement, as provided in s. PSC 134.063.

(b) Violation of the utility's rules pertaining to the use of service in a manner which interferes with the service of others or to the operation of nonstandard equipment, if the customer has first been notified and provided with reasonable opportunity to remedy the situation.

(c) Failure to comply with deposit or guarantee arrangements, as specified in s. PSC 134.061.

(d) Refusal or failure to permit authorized utility personnel to read the meter at least once every 6 months in order to determine actual usage. The 6-month period begins with the date of the last meter reading.

(e) Failure to comply with Wisconsin statute, commission rule or commission order pertaining to conservation or availability of service.

(f) Failure to pay costs or fees incurred by and awarded to the utility by a court of law, for pursuit of collection of bills, or failure to pay extraordinary collection charges as allowed and specified in the utility's tariffs filed with the public service commission.

(g) Failure to comply with applicable requirements of this section, or of the utility's rules, or with s. 101.865, Stats.

Note: Section 101.865, Stats., was repealed by 2007 Wis. Act 63.

(h) Delinquency in payment for service received by a previous customer or occupant at the premises to be served, if an account is transferred to a new account holder or customer and the previous account holder or customer continues to be an occupant of the dwelling unit to be served.

(i) Connecting or causing to be connected a device or use of gas considered to be a nonessential use of natural gas which is prohibited under s. PSC 136.05.

dents who have mental retardation or other developmental or mental disabilities.

4. A statement that residential utility service will be continued during serious illness or protective services emergency if the occupant submits a statement or notice pursuant to sub. (11).

5. A statement that the customer may appeal to the public service commission staff in the event that the grounds for the proposed disconnection or the amount of any bill remains in dispute after the customer has pursued the available remedies with the utility.

**(9)** (a) The utility shall make a reasonable effort to have a personal or telephone contact with the residential customer prior to disconnection. If a contact is made, the utility shall review the reasons for the pending disconnection of service, and explain what actions must be taken to avoid disconnection.

(b) If the account is being billed in the name of "occupant,""resident" or other like term, the utility shall also contact other utilities serving the premises and attempt to obtain the name of a responsible adult member residing at the service address.

(c) The utility shall keep a record of these contacts and contact attempts.

**(10)** (a) When a residential customer, either directly or through the public service commission, disputes a disconnection notice under s. PSC 134.064, the utility shall investigate any disputed issue and shall attempt to resolve that issue by negotiation. During this investigation and negotiation, utility service shall not be disconnected over this matter.

(b) If a disputed issue cannot be resolved pursuant to s. PSC 134.064 (1), the utility shall inform the customer of the right to appeal to the public service commission.

**(11)** Notwithstanding any other provision of this section, other than for reasons of safety or danger, a utility may not disconnect or refuse to reconnect service to a residential premises if disconnection or refusal of reconnection of service will aggravate an existing medical or protective services emergency for the occupant, if the occupant complies with the procedures of par. (a):

(a) A utility shall postpone the disconnection of service, or reconnect the service if disconnected, for 21 days to enable the occupant to arrange for payment, if the occupant produces a licensed Wisconsin physician's statement or notice from a public health, social services or law enforcement official which identifies the medical or protective services emergency and specifies the period of time during which disconnection will aggravate the circumstances. The postponement may be extended by renewal of the statement or notice. During this 21 days of service, the utility and occupant shall work together to develop resources and make reasonable payment arrangements in order to continue the service on a permanent basis. Further postponements may be granted if there is evidence of reasonable communication between the utility and occupant in attempting to make arrangements for payment.

(b) During the period service is continued under the provisions of this subsection, the customer shall be responsible for the cost of residential utility service. But no action to disconnect that service shall be taken until expiration of the period of continued service. Any customers who are in this continued service category shall be admitted into appropriate and special payment plan programs the utility may offer.

(c) If there is a dispute concerning an existing medical or protective services emergency, either party may request informal review by the public service commission staff. Pending a decision after informal review, residential utility service shall be continued provided that the occupant has submitted the statement or notice described in par. (a).

**(12)** Residential service shall not be disconnected on a day, or on a day immediately preceding a day, when the business offices of the utility are not available to the public for the purpose of transacting all business matters unless the utility provides personnel who are readily available to the customer 24 hours per day to evaluate, negotiate or otherwise consider the customer's objections to the disconnection as provided under s. PSC 134.064, and proper service personnel are readily available to restore service 24 hours per day.

**(13)** Notwithstanding any other provision of this chapter, residential utility service may not be refused because of a delinquent account if the customer or applicant provides as a condition of future service a deposit or guarantee as governed by s. PSC 134.061, or a voucher agreement.

**History:** Cr. Register, January, 1975, No. 229, eff. 2-1-75; am. (1) (a) and (5) (a), Register, December, 1975, No. 240, eff. 1-1-76; am. (2) (intro.), Register, March, 1979, No. 279, eff. 4-1-79; emerg. cr. (2) (g), eff. 1-26-80; cr. (2) (f), Register, January, 1980, No. 289, eff. 2-1-80; cr. (2) (e), Register, February, 1980, No. 290, eff. 3-1-80; cr. (2) (g), Register, July, 1980, No. 295, eff. 8-1-80; emerg. cr. (10), eff. 12-17-81; cr. (2) (h), Register, September, 1982, No. 321, eff. 10-1-82; cr. (10), Register, September, 1983, No. 333, eff. 10-1-83; am. (8) (a), Register, June, 1986, No. 366, eff. 7-1-86; r. (9) (b), Register, May, 1987, No. 377, eff. 6-1-87; r. and recr. Register, October, 1989, No. 406, eff. 11-1-89; correction in (1) (g) made under s. 13.93 (2m) (b) 7., Stats., Register, September, 1997, No. 501.

**PSC 134.0622 Disconnections, commercial and farm accounts.** **(1)** Commercial or farm accounts which involve residential dwellings shall be subject to s. PSC 134.0624.

**(2)** Commercial or farm utility service may be disconnected or refused for any of the following reasons:

(a) Failure to pay a delinquent account.

(b) Violation of the utility's rules pertaining to the use of service in a manner which interferes with the service of others or to the operation of non-standard equipment, if the customer has first been notified and provided with reasonable opportunity to remedy the situation.

(c) Failure to comply with the deposit, guarantee arrangement, or installment payment agreement, as specified in s. PSC 134.0615.

(d) Refusal or failure to permit authorized utility personnel to read the meter at least once every 6 months in order to determine actual usage. The 6-month period begins with the date of the last meter reading.

(e) Failure to comply with Wisconsin statute, commission rule or commission order pertaining to conservation or availability of service.

(f) Failure to pay costs or fees incurred by and awarded to the utility by a court of law, for pursuit of collection of bills, or failure to pay extraordinary collection charges as allowed and specified in the utility's tariffs filed with the public service commission.

(g) Failure to comply with applicable requirements of this section, or of the utility's rules, or with s. 101.865, Stats.

**Note:** Section 101.865, Stats., was repealed by 2007 Wis. Act 63.

(h) Connecting or causing to be connected a device or use of gas considered to be nonessential use of natural gas, which is prohibited under s. PSC 136.05.

(i) Connecting or having connected a natural gas outdoor lighting fixture as specified in s. PSC 136.02.

**(3)** A public utility may disconnect commercial or farm utility service, without notice, where a dangerous condition exists for as long as the condition exists.

**(4)** A public utility may disconnect commercial or farm utility service, without notice, where it has reasonable evidence that utility service is being obtained by potentially unsafe devices or potentially unsafe methods that stop or interfere with the proper metering of the utility service.

**(5)** (a) Account arrears incurred by an owner or property manager for rental residential dwelling units or responsibility for non-compliance with energy conservation requirements as set out in ch. PSC 136 may be transferred, without regard to class of service, to the home or office account of the owner or property manager.

(b) The utility shall send written notice of the planned transfer of the account arrears or responsibility for non-compliance with energy conservation requirements to the owner or property manager prior to making the transfer.

Unofficial Text (See Printed Volume). Current through date and Register shown on Title Page.

(c) If the account arrears remain unpaid or the structure in question continues to be in non-compliance with the energy conservation requirements, the utility may disconnect the owner's or property manager's residence or office service, provided that the utility complies with the disconnection provisions of s. PSC 134.0624.

(d) An owner or property manager whose account is subject to disconnection action may avoid disconnection of service by making payment, by making an agreement with the utility for an extension of time for a specific period, or by installing the required energy conservation measures in the property in question. Any disconnection shall be in compliance with s. PSC 134.0624.

**(6)** Commercial or farm utility service may not be disconnected or refused for any of the following reasons:

(a) Delinquency in payment for service by a previous occupant of the premises to be served.

(b) Failure to pay for merchandise or charges for non-utility service billed by the utility.

(c) Failure to pay for a different type or class of utility service, except as provided in sub. (5).

(d) Failure to pay the account of another customer as guarantor thereof.

(e) Failure to pay charges arising from any underbilling occurring more than one year prior to the current billing and due to any misapplication of rates or any faulty metering.

(f) Failure to pay an estimated bill other than a bill rendered pursuant to an approved meter reading plan.

**(7)** The commercial or farm customer shall have, in all instances, at least 20 days from the date of issuance of the bill to provide payment. An account may be deemed delinquent and notice of intent to disconnect issued after the 20-day period has elapsed. In the event of a discrepancy between the issue date and the postmark, the 20-day period shall be figured from whichever is later.

**(8)** (a) A utility shall not disconnect commercial or farm service for reasons enumerated in sub. (2) unless written notice is sent to the customer by first class mail or personally served at least 8 calendar days prior to the day of the proposed disconnection. If disconnection is not accomplished on or before the 15th day after the issuance of a notice, a subsequent notice shall be left on the premises not less than 24 hours nor more than 48 hours prior to disconnection.

(b) If the billing address is different from the service address, notice shall be posted at each individual dwelling unit of the service address not less than 5 days before disconnection for reasons enumerated in sub. (2). If access is not possible, this notice shall be posted at a minimum, to all entrances to the building and in the lobby. Such notice shall state at a minimum:

1. The date of the notice.

2. The proposed date of disconnection.

3. That, if feasible, the occupants may apply to the utility to accept responsibility for future bills and avoid disconnection of service. Refusal or acceptance of the application for service is subject to those conditions set out in this chapter.

4. That if disconnection of service will aggravate an existing medical or protective services emergency, the occupant should contact the utility immediately.

(c) Disconnection notice for reasons enumerated in sub. (2) shall be given upon a form approved by the commission, and shall contain the following information:

1. The name and address of the customer and the address of the service, if different.

2. A statement of the reasons for the proposed disconnection of service and that disconnection will occur if the account is not paid, or if arrangement is not made to pay the account, or if other suitable arrangements are not made, or if equipment changes are not made.

3. A statement that the customer should communicate immediately upon receipt of the notice with the utility's designated office, listing a telephone number, if he or she disputes the notice of delinquent account, or if he or she wishes to negotiate a payment agreement as an alternative to disconnection.

4. A statement that the customer may appeal to the public service commission staff in the event that the grounds for the proposed disconnection or the amount of any bill remains in dispute after the customer has pursued the available remedies with the utility.

**(9)** The utility shall make a reasonable effort to have a personal or telephone contact with the commercial or farm customer prior to disconnection. If a contact is made, the utility shall review the reasons for the pending disconnection of service, and explain what actions must be taken to avoid disconnection. The utility shall keep a record of these contacts and contact attempts.

**(10)** (a) When a commercial or farm customer, either directly or through the public service commission, disputes a disconnection notice, the utility shall investigate any disputed issue and attempt to resolve that issue by negotiation. During this investigation and negotiation, utility service shall not be disconnected over this matter.

(b) If a disputed issue cannot be resolved pursuant to s. PSC 134.064 (1), the utility shall inform the customer of the right to appeal to the public service commission.

**(11)** Commercial or farm service shall not be disconnected on a day, or on a day immediately preceding a day, when the business offices of the utility are not available to the public for the purpose of transacting all business matters unless the utility provides personnel who are readily available to the customer 24 hours per day to evaluate, negotiate or otherwise consider the customer's objections to the disconnection, as provided under s. PSC 134.064, and proper service personnel are readily available to restore service 24 hours per day.

**History:** Cr. Register, October, 1989, No. 406, eff. 11-1-89, correction in (2) (g) made under s. 13.93 (2m) (b) 7., Stats., Register April 2007 No. 616.

**PSC 134.0623 Reconnection of service.** **(1)** (a) By June 1 of each year, or at a date designated by order of the commission, each gas utility in Wisconsin serving more than 400,000 customers shall submit a fall reconnection plan for review and approval by commission order. The plan shall provide reasonable means, including a time table for personal contacts, that will be used to assure that all premises to which service was disconnected within the past 12 months and remains disconnected for nonpayment shall be contacted prior to October 25, or at a date set by commission order, to inform them of available payment options such as budget billing or deferred payment agreements.

(b) Prior to October 15 of each year, or at a date designated by order of the commission, all gas utilities serving fewer than 400,000 customers shall attempt by letter, telephone, or personal visit to contact all households at premises to which service was disconnected within the past 12 months and remains disconnected for nonpayment and inform them of available payment options such as budget billing or deferred payment agreements. If a letter, telephone call or personal visit does not result in a response from an adult member of the household by October 15 or at a date designated by order of the commission, a subsequent personal visit shall be made no later than October 25, or at a date designated by order of the commission.

(c) For any household remaining disconnected after October 25, the utility shall continue its efforts to have a personal contact with the household and determine its situation. The utility shall make a personal contact attempt after the date of disconnection and before November 1 for any household disconnected between October 15 and October 31. If, during any of the contacts made to

meters of customers who cannot be available during normal business hours.

History: 1–2–56; r. and recr. Register, February, 1959, No. 38, eff. 3–1–59; am. Register, September, 1982, No. 321, eff. 10–1–82; am. Register, October, 1989, No. 406, eff. 11–1–89.

**PSC 134.13 Billing.** **(1)** (a) All of the information in par. (b) shall be shown for each meter on each bill, including the customer's receipt, if the bill is provided by any of the following:

1. Madison Gas and Electric Company.
2. Northern States Power Company.
3. Superior Water, Light and Power Company.
4. Wisconsin Electric Power Company.
5. Wisconsin Gas LLC.
6. Wisconsin Power and Light Company.
7. Wisconsin Public Service Corporation.

(b) A bill under par. (a), including the customer's receipt, shall show the following information:

1. The customer name, billing address and service address, if different from the billing address.

2. For residential customers in multi–unit buildings, current meter identification information or number and account number.

3. The present and last preceding meter readings.

4. The present and last preceding meter reading dates.

5. The next scheduled meter reading date.

6. The number of days in the billing period.

7. The number of units consumed.

8. The class of service with clear explanation of codes and abbreviations.

9. The rate schedule under which the bill is calculated including the itemized calculations of the rate schedule component including, but not limited to, such items as customer charge, energy blocks, demand charges, minimum bills and all other billing factors necessary for the customer to check the calculation of the bill.

10. Clear itemized adjustment clause bill calculation.

11. Amount subject to tax, tax rate, and tax billed.

12. Clear itemization of the amount of the bill for the present billing period, any unpaid balance from previous billing periods and any late payment charges.

13. Clear itemization of other utility charges and credits.

14. Degree day information.

15. A statement that the utility will, upon customer request, provide the information and assistance necessary for the customer to evaluate fuel consumption and conservation.

(c) Upon receiving such request in par. (b) 15., the utility shall provide consumption and degree day information by billing periods for at least the last year and information and instructions needed by the customer to make consumption comparisons and evaluate his or her conservation efforts.

(d) Bills rendered without an actual meter reading shall be specifically marked as estimated.

(e) Each bill, including the customer's receipt rendered by gas utilities not included in par. (a), shall show the present and last preceding meter readings, the date of the present reading, the number of units consumed, the class of service if other than residential, and the rate schedule under which the bill is calculated. In lieu of including the rate schedule on the bill the utility may, whenever a rate change becomes effective or at least once a year, supply each customer with the schedule of rates at which the bills are calculated and any other rates that might be applicable. Bills rendered at rates requiring the measurement of a number of different factors shall show all data necessary for the customer to check the calculation of a bill. All monthly adjustment clause factors necessary for a customer to check the calculation of the bill shall be included on the monthly bill. Minimum and estimated bills shall be distinctly marked as such. Estimated bills are bills rendered without actual meter readings.

(f) The utility may include on the utility service bill charges to the customer resulting from other services, materials, or work provided by the utility as a result of commission–approved conservation and alternative energy programs, and, with the consent of both the customer and the utility, merchandise and service repair work charges. The charges shall be listed individually on the bill, and the customer shall be permitted to include such payment in his or her payment for gas utility service. Any partial payments shall be applied first to the amount due for utility service and the remainder to the other charges.

(g) Costs or fees incurred by and awarded to the utility by a court of law, for pursuing bill collection through other agencies, such as small claims courts, or extraordinary collection charges as allowed and specified in the utility's tariffs filed with the public service commission, may be included on the utility service bill. Such tariffs shall be established on the basis of rate case proceedings or generic proceedings to establish the reasonableness of such charges.

(h) The commission may authorize the utility to make late payment charges to a customer's utility service bill that is not paid in full within 20 days following issuance of the bill and for utility service that has been obtained by diversion around or tampering with the proper metering of the account. The late payment charge may be either a one–time charge as provided in par. (i) or a monthly charge as provided in par. (j). The utility shall receive approval from the commission of the method it desires to use and shall not change methods without commission approval.

(i) If the utility is authorized to make a one–time late payment charge, such charge shall comply with the following requirements:

1. The bill shall clearly indicate the amount of the late payment charge and the date after which the late payment charge shall be applied.

2. Except as provided in subd. 8., late payment charges shall be applied no sooner than 20 days after the date of issuance of the bill.

3. The amount of the late payment charge shall be 3% of the bill, except a minimum charge of $.30 shall apply.

4. Late payment charges shall be applied to all customer classes and rate classifications.

5. The utility shall not waive any properly applied late payment charges.

Note: See s. PSC 134.063 (5) and (6).

6. A late payment charge shall be applied only once to any given amount outstanding.

7. If a customer disputes a bill for utility service or portion thereof and does not pay the disputed bill in full within 20 days following issuance of the bill, the late payment charge shall be applied only to that portion of the disputed bill later found to be correct and payable to the utility.

8. Bills issued for utility service previously unbilled because of meter diversion or tampering with the proper metering of the account may include a late payment charge when issued.

(j) If the utility is authorized to make monthly late payment charges, such charges shall comply with the following requirements:

1. The amount of the charge shall be no more than one and one–half per cent per month and shall be filed and approved by the commission before it can be applied.

2. The late payment charge shall be applied to the total unpaid balance for utility service, including unpaid late payment charges.

3. Except as provided in subd. 9., the late payment charge shall be applied no sooner than 20 days after the date of issuance of the bill.

4. The late payment charge shall be applied to all customer classes and rate classifications.

5. If a customer disputes a bill for utility service or portion thereof and does not pay the disputed bill in full within 20 days following issuance of the bill, the late payment charge shall be applied only to that portion of the disputed bill later found to be correct and payable to the utility.

6. The utility may not waive any properly applied late payment charge.

**Note:** See s. PSC 134.063 (5) and (6).

7. No additional late payment charge may be applied to a delinquent account for utility service after the date on which the delinquent account was written off by the utility as uncollectable.

8. If a utility changes the type of late payment charge or initiates a late payment charge, the new charge shall apply only to utility service provided after the effective date of the change or initiation.

9. Bills issued for utility service that was previously unbilled because of meter diversion or tampering with the proper metering of the account may include a late payment charge when issued. The late payment charge may be applied from the estimated date that the diversion or tampering began.

(k) A customer who receives a lump sum payment from an outside source to be used to pay his or her utility service bill may, at the utility's option, apply the payment to the customer's account in equal monthly installments.

**(2)** (a) If the billing period is longer or shorter than allowed by s. PSC 134.12, the bill shall be prorated on a daily basis unless other provision is made in the utility's filed rules.

(b) If the utility is unable to gain access to read a standard residential meter at the end of each billing period, the utility shall, upon customer request, provide meter reading forms which allow the customer to send a card reading in time for billing. If actual readings cannot be obtained, the utility shall also leave a meter reading form at the premises for the customer to complete and return to the utility in time for bill preparation or leave a form at the premises explaining the estimation and how to avoid future estimations. This form shall be used when billing systems do not have sufficient time to allow the customer to return the card reading prior to billing.

(c) If no form is left on the premises, or if the form is not returned in time to be processed in the billing cycle, a minimum or estimated bill may be rendered. In cases of emergency the utility may render minimum or estimated bills without reading meters or supplying meter reading forms to customers. Only in unusual cases or when approval is obtained from the customer may more than three consecutive estimated bills be rendered.

(d) If meter reading is not scheduled on a monthly basis, the utility shall supply customers with meter–reading forms for the periods when the meter is not scheduled to be read by the utility. Customers may not be required to provide these meter readings. If the customer informs the utility he or she does not desire to supply a reading, or if the form is not returned in time for the billing operation, a minimum or estimated bill may be rendered.

(e) When an actual meter reading indicates that a previous estimated bill was abnormally high or low, the utility shall calculate the bill for the entire period as if use of service was normally distributed throughout the period. The previous estimated charge shall be deducted from the recomputed total. If there is evidence to indicate that actual use was not uniform throughout the period, the billing shall be adjusted according to available information.

**(3)** (a) Credits due a customer because of meter inaccuracies, errors in billing, or misapplication of rates shall be shown separately and identified.

(b) The original billing rendered because of meter inaccuracies, errors in billing, or misapplication of rates shall be separated from the regular bill and the charges explained in detail.

**(4)** (a) Each bill for service shall be computed at the proper filed rate, which shall be the rate selected by the utility unless the customer selects a rate under par. (e).

(b) When it is difficult to determine what rate should be applied until there has been actual usage, the rate classification shall be reviewed when there has been adequate usage to determine the lowest applicable rate but no later than the end of the first 12 months of usage. The customer shall be notified as soon as the lowest firm sales service rate option has been determined and be given the option to select a different applicable rate as set forth in par. (e). The rate determined by the utility to be the lowest firm sales service rate option shall be effective with the billing period following the date of notification by the utility unless the customer selects a rate. If the customer selects a rate, the rate shall be effective with the current billing period if required billing information is available but not later than the beginning of the second billing period following the customer's request.

(c) A utility may enter into contracts having terms longer than one year, but the rates paid under such contracts shall be the utility's lowest applicable firm sales service rate option, for which meter usage information is known, on file with the commission at the time of the contract, unless the customer selects another applicable rate at the time of the contract.

(d) If the utility has information that the customer could qualify for a lower rate by installing equipment, or combining or separating services as allowed under the utility's rules and regulations, he or she shall be notified; but no change in rates shall be made until the customer makes the necessary modifications. If such modifications are made, the utility shall change the customer's rate classification effective for the beginning of the current billing period if required billing information is available, but the change shall be effective no later than the beginning of the second billing period following the customer notification to the utility that the modification has been made.

(e) When a customer is eligible to take service under more than one rate schedule, the utility shall inform the customer at the times specified in par. (f) of the option to select a rate, of the rate options and service classifications for which the customer may be eligible and the conditions necessary to qualify, and of the firm sales service rate option that would have resulted in the lowest rate based on the previous 12 months' service and on the metered customer usage information known to the utility. The information provided shall include a general explanation of gas service usage characteristics to assist the customer in selecting the lowest rate consistent with the customer's anticipated usage and needs. If the customer requests a change in rate classification, it shall be effective at the beginning of the current billing period if required billing information is available, but such change shall be effective no later than the beginning of the second billing period following the customer's request.

(f) At least once in each calendar year customers with more than one rate option shall be informed of the option to select a rate as set forth in par. (e). The notification requirement may be satisfied through the use of a bill insert. The customer shall also be informed of the option to select a rate whenever there is a change in rates that would affect the customer, and at any other time the customer so requests. If the utility notifies the customer of the option to select a rate as the result of a rate change or a customer request, such notification shall satisfy the requirement to notify the customer at least once in each calendar year.

(g) Nothing in this section shall be construed as permitting a customer to select a service classification inconsistent with the utility's applicable tariff provisions or with contractual agreements between the utility and the customer.

**(5)** Each utility shall offer a budget payment plan to all prospective and existing residential customers and to all commercial accounts for which the primary purpose of the service is to provide

for residential living, subject to the following minimum requirements:

(a) A budget payment plan tariff shall be on file with the public service commission, applicable only to charges for utility services under public service commission jurisdiction.

(b) A budget payment plan may be established at any time of the year. The budget amount shall be calculated on the basis of the estimated consumption and estimated applicable rates through the end of the budget year. If the budget year is a fixed year, then prospective and existing customers requesting a budget payment plan after the start of the fixed year shall have their initial monthly budget amount determined on the basis of the number of months remaining in the current budget year.

(c) An applicant for a budget plan shall be informed at the time of application that budget amounts shall be reviewed and changed every 6 months, if necessary, in order to reflect current circumstances. Adjustments to the budget amount shall be made with the objective that the customer's underbilled or overbilled balance at the end of the budget year shall be less than one month's budget amount.

(d) Customers on the budget payment plan shall be notified of adjustments by means of a bill insert, a message printed on the bill itself, or both. The customer shall be adequately informed of the adjustment at the same time the bill containing the adjustment is rendered.

(e) Customers who have arrearages shall be allowed to establish a budget payment plan by signing a deferred payment agreement for the arrears, according to the provisions of s. PSC 134.063.

(f) Budget payment plans shall be subject to the late payment charge provisions. In addition, if a budget payment is not paid, the customer shall be notified with the next billing that if proper payment is not received subsequent to this notification, the next regular billing may effectuate the removal of the customer from the budget plan and reflect the appropriate amount due.

(g) At the end of a budget year, if an underbilled or overbilled balance exists in the account, the balance shall be handled as follows:

1. A customer's debit balance will be paid in full or, at the customer's option, on a deferred basis.

2. A customer's credit balance shall be applied, at the customer's option, against the customer's account credited in monthly installments to the customer's account over the course of the next budget year, or refunded to the customer.

**(6)** An occupant shall apply for utility service. An occupant who uses utility service but does not apply for it may be billed an estimated or actual amount at a later date for service used prior to the time of application. The utility must have reasonable grounds to establish responsibility for the backbilling. Failure to pay charges resulting from this backbilling may result in disconnection of service. The utility shall inform the occupant of the right to dispute the billing through the dispute procedures set forth in s. PSC 134.064.

**(7)** (a) The utility may request all new customers to make an application for service. The utility may require that a verbal or written application be made by telephone, letter, or in person. The utility shall establish a written policy for requesting the information. The utility may require the customer to provide:

1. Name or names of party responsible for bill payment.
2. Address where service is to be provided.
3. Mailing address if different from service address.
4. Address of residence immediately prior to application.

(b) The utility may request additional credit information from applicants as part of its application for service. Except as provided in s. PSC 134.062 (2), utility service shall not be disconnected or refused for refusal to provide any information other than that specified in par. (a).

(c) The utility may accept third party applications for service. The utility shall send confirmation of receipt of the service application to the party responsible for bill payment.

**(8)** (a) Where rental residential dwelling utility service is in the tenant's name, and the tenant vacates the residential dwelling unit, continued utility service for such dwelling unit may be placed in the name of the owner or property manager.

(b) The utility shall provide the owner or property manager with written notice of its intent to transfer billing responsibility. Such notice shall provide the owner or property manager with 5 days to notify the utility of:

1. The name of the customer who should be placed in service, such service date not to be later than 5 days from the notice mailing date; or

2. That utility service to the premises should be terminated and affirms to the utility that such termination will not endanger human health or life or cause damage to property during the period of disconnection.

**(9)** (a) A utility shall pay interest on customer overpayments not refunded to the customer within 60 days of receipt by the utility if the net amount refunded exceeds $20 per refund and the overpayment was made to the utility due to:

1. Meters registering fast as defined in s. PSC 134.14.
2. Use of an incorrect meter constant or multiplier.
3. Incorrect service or rate classification, provided the information furnished by the customer to the utility was not deficient, or the customer did not choose the rate as provided in sub. (4).
4. Billing based on a switched meter condition where the customer was billed on the incorrect meter.
5. Misapplication of rates.

(b) A utility is not required to pay interest to customers for overpayments made for:

1. Financing of service extensions or other equipment.
2. Budget payment plans.
3. Estimated bills, if the utility made a reasonable effort to obtain access to the customer's meter, but was unable to gain access. Reasonable effort to gain access means that the utility notified the customer after three consecutive estimated readings that the utility will read the meter at other than standard business hours at the customer's request.
4. Receipt of lump sum payment made from an outside source as the Low Income Home Energy Assistance Program or other like programs.

(c) The rate of interest to be paid shall be calculated in the same manner as provided for in s. PSC 134.061 (9) (b). Interest shall be paid from the date when the customer overpayment was made until the date when the overpayment is refunded. Interest shall be calculated on the net amount overpaid in each calendar year.

(d) Nothing in these rules shall prevent the commission or its staff from requiring the payment of interest on amounts returned to customers in those instances where the commission or its staff finds that such payment is necessary for a fair and equitable resolution of an individual complaint.

**History:** 1–2–56; r. and recr. Register. February, 1959, No. 38, eff. 3–1–59; am. (6), Register, January, 1965, No. 109, eff. 2–1–65; r. and recr. (1), Register, August, 1976, No. 248, eff. 9–1–76; am. Register, March, 1979, No. 279, eff. 4–1–79; am. (1) and (5), Register, October, 1980, No. 298, eff. 11–1–80; am. (6), Register, November, 1980, No. 299, eff. 12–1–80; renum. (1) (d) to be (1) (f) and am. (intro)., cr. (1) (d), (e) and (g) and am. (6) (f), Register, September, 1981, No. 309, eff. 10–1–81; r. and recr. Register, October, 1989, No. 406, eff. 11–1–89; correction in (9) (c) made under s. 13.93 (2m) (b) 7., Stats.. Register, September, 1997, No. 501; **CR 06–046: am. (1) (a) (intro.), renum. (1) (a) 1. to 15. and (b) to (j) to be (1) (b) 1. to 15. and (c) to (k), cr. (1) (a) 1. to 7. and (b) (intro.) Register April 2007 No. 616, eff. 5–1–07.**

**PSC 134.14 Adjustment of bills. (1)** Whenever a meter is found to have a weighted average error of more than 2% fast as tested in the manner specified in s. PSC 134.28, a recalculation of bills for service shall be made for the period of inaccuracy assuming an inaccuracy equal to the weighted average error. Weighted average error refers to 80% of the open rate plus 20% of the check