# EXHIBIT B

Dated as of March 5, 2010                Kristopher M. Hansen
                                    Direct Dial  212-806-6056
                                    Direct Fax  212-806-9056
                                    khansen@stroock.com


Members of the Ad Hoc Group of Holders of the 9.5% Senior
Secured Notes due 2017 (the "Senior Secured Notes") issued
by Neenah Foundry Company (the "Company")

Re:  **Engagement Letter**

Members of the Ad Hoc Group:

We are pleased to confirm the retention of Stroock &
Stroock & Lavan LLP ("Stroock") as legal counsel to you in
your capacity as a member of the ad hoc group of certain
holders, or investment managers to certain holders on
behalf of such holders, of the Senior Secured Notes issued
by the Company identified in Annex A hereto (together with
any Additional Holders, as defined below, the "Ad Hoc
Group") in connection with a potential restructuring of
the Senior Secured Notes and matters related thereto.
Kris Hansen will be the lead lawyer for this engagement
and will be assisted by other Stroock attorneys and
paraprofessionals.

Our services are generally provided on an hourly basis
with billing rates for our attorneys and paraprofessionals
varying depending upon experience and subject to change
from time to time.   The current billing rates for
attorneys and paraprofessionals who may assist with this
engagement range from $995 per hour to $235 per hour.  We
also bill our clients for disbursements and charges
incurred in connection with our services, including
charges for telephone calls, photocopying, messenger
services, word processing, travel, filing fees and
secretarial overtime.  We may pass along to our clients
for direct payment to the vendor certain substantial
charges such as those for local or foreign counsel,

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI
180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM

NY 72651058

Dated as of March 5, 2010
Page 2

printing, duplicating, court reporting and other items, but we generally include these items on our monthly invoices.

While we expect to obtain payment of our fees and expenses directly from the Company, if the Company does not pay our invoices and we've exhausted the Retainer, the individual members of the Ad Hoc Group shall be individually and not jointly responsible for the payment of all fees for services rendered and expenses incurred hereunder in proportion to such member's percentage of the aggregate principal dollar amount of the Notes held by all members of the Ad Hoc Group.  This pro rata payment obligation shall apply for each calendar month during which a member serves on the Ad Hoc Group; provided, however, subject to the previous sentence, that each member's payment obligation shall commence on the date that such member first receives information from Stroock regarding the Committee's activities (provided that such member thereafter executes this Engagement Letter) and each member shall only be obligated to pay for fees and expenses after such time, rather than for the full month in which such information was provided to the member. Each Ad Hoc Group member may resign from the Ad Hoc Group at any time, provided, however, that such resignation shall only be effective upon receipt by Stroock of written or e-mail notice of such resignation.  Each resigning Ad Hoc Group member shall have no obligation to pay for any services rendered in the month following the effective date of such Ad Hoc Group member's resignation.  Any services rendered to an Ad Hoc Group member individually shall be billed entirely to such Ad Hoc Group member.

Each Ad Hoc Group member agrees to report to Stroock the amount of all Senior Secured Notes and any other obligations of the Company or any of its affiliates held by it as of the date of execution of this Engagement Letter.  In addition, to the extent there has been a change in the amount of Senior Secured Notes and any other obligation of the Company or any of its affiliates held by an Ad Hoc Group member, each Ad Hoc Group member agrees to

Dated as of March 5, 2010
Page 3

report any such change to Stroock by email to Lori Kata (lkata@stroock.com) at the beginning of each month for which Stroock is retained. If Stroock does not receive notice of a change in an Ad Hoc Group member's holdings of Senior Secured Notes and any other obligation of the Company or any of its affiliates at the beginning of each month, it shall be presumed that such Ad Hoc Group member's holdings with respect thereto are unchanged. The identity of, all holdings of, and all amounts billed to, individual members of the Ad Hoc Group shall be kept strictly confidential by Stroock and any other professional retained by the Ad Hoc Group or Stroock to assist in this matter and shall not be disclosed to other members of the Ad Hoc Group or to any third party, unless required by statute, court order or legal process. In the event that the Company becomes the subject of a bankruptcy proceeding and we are required to report each Ad Hoc Group member's holdings to the presiding bankruptcy court, we will use commercially reasonable efforts to obtain court approval to report such information under seal or in a similar non-public format, and will provide you with prior notice so that you may have the opportunity to resign from the Ad Hoc Group to prevent such disclosure.

In the event that Stroock's fees and expenses are not paid by the Company, we will bill each Ad Hoc Group member for services rendered and disbursements incurred on a monthly basis, or on such other periodic basis as we may determine, and will expect payment within 90 days. We will provide each Ad Hoc Group member with statements (together with per entry time detail upon request) indicating a breakout by attorney of the aggregate hours and charges for each Stroock attorney as well as a summary of all expenses and disbursements incurred. We also will provide each Ad Hoc Group member with an individual bill indicating their portion of the total bill based upon the amount of Senior Secured Notes held by such Ad Hoc Group member as a percentage of the aggregate Senior Secured Notes held by the entire Ad Hoc Group as of the first day of each billing period. Failure to make timely payment may result in the suspension or termination of our

Dated as of March 5, 2010
Page 4

services.   Each Ad Hoc Group member will be responsible
for any costs of collection in respect of its portion of
the fees and expenses due hereunder, including reasonable
attorneys' fees.

Each member of the Ad Hoc Group understands that, as is
the case with any large law firm, Stroock may from time to
time represent in unrelated matters a client whose
interests may conflict with those of another client.
Thus, for example, there may be instances in which we may
represent the Ad Hoc Group in a litigation or other matter
involving party A and, at the same time, we may represent
party A in connection with an unrelated litigation or
other matter.  As part of our retention, members of the Ad
Hoc Group hereby consent to any such representations so
long as they do not involve a conflict in a matter in
which we represent the Ad Hoc Group.

In the event that any member of the Ad Hoc Group (i)
executes a confidentiality agreement with the Company or
any of its affiliates or (ii) determines in good faith, in
accordance with its internal policies and procedures, that
it has come into possession of material non-public
information concerning the Company and any of its
affiliates, then in each case such member will, to the
extent practicable and legally permissible, use
commercially reasonable efforts to notify Stroock.
Notwithstanding anything to the contrary herein, each Ad
Hoc Group member participating in deliberations,
negotiations, conversations or other communications
between or among members of the Ad Hoc Group or Stroock,
or receiving material or work product distributed to
members of the Ad Hoc Group or Stroock regarding the
Company or any of its affiliates (the "Information") from
another Ad Hoc Group member (hereinafter each a
"Discloser") shall (i) be solely responsible for
determining whether or not any Information disclosed to it
constitutes material non-public information, and (ii) not
rely on the Discloser's determination with respect to the
materiality of any such information.

Dated as of March 5, 2010
Page 5

Notwithstanding anything to the contrary contained in this Engagement Letter, the parties recognize that certain Ad Hoc Group members are financial institutions that engage in a broad range of financial transactions (including, without limitation, trading activity, mergers and acquisitions, and securities purchases) and this Engagement Letter shall not be deemed to restrict in any way such Ad Hoc Group members' ability to engage in their ordinary course activities involving the Company, the Senior Secured Notes or other securities of the Company, including any ordinary brokerage, asset management, asset backed lending, investment banking, financing, capital markets, loan origination and arbitrage activities.

Additional parties seeking to join this Ad Hoc Group must execute this Engagement Letter (the "Additional Holders"); provided, however, that the addition or deletion of members of the Ad Hoc Group shall not require an amendment to, or re-execution of, this Engagement Letter; provided, further, that the payment obligations, as specified herein, of any such Additional Holder shall commence as of the date such Additional Holder executes this Engagement Letter. Members of the Ad Hoc Group shall be notified, as soon as practicable, of the addition, resignation or removal of a member of the Ad Hoc Group. It is agreed that such notice need not be in writing.

It is understood that the Ad Hoc Group shall not adopt formal by-laws and that all items of business before the Ad Hoc Group shall be decided by a majority of the outstanding principal amount of the Senior Secured Notes held by the Ad Hoc Group in the aggregate. In addition, members of the Ad Hoc Group hereby agree to vote on matters before the Ad Hoc Group based upon their respective economic interests as holders of the Senior Secured Notes and not based upon their holdings of any other security or form of indebtedness of the Company or any of its affiliates. If the Ad Hoc Group determines that it needs a steering committee comprised of the largest holders, then such steering committee shall be formed.

Dated as of March 5, 2010
Page 6

It is our goal to maintain at all times a constructive and positive relationship with you with respect to this engagement. However, should a dispute arise between us, we believe that a prompt and fair resolution is in the interests of all concerned. To this end, if any controversy or claim arises out of or relates to this Engagement Letter or any services provided by us to you, in connection with the above-described or any other matters (including malpractice claims and fee disputes), you and we hereby waive any right to bring a court action or have a jury trial and agree that the dispute shall be submitted to binding arbitration to be conducted in New York City before the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules of the AAA.

By signing this letter, you and we acknowledge that, as a result of the immediately preceding paragraph, in the event a dispute should arise as to our fee for legal services (or as to any other matter arising out of this Engagement Letter or our services), we will resolve the dispute before the AAA and that our arbitration will be covered by the rules and procedures of the AAA. The AAA is an arbitral forum outside Part 137 of the Rules of the Chief Administrator of the Courts (22NYCRR). By signing this Engagement Letter, you have been advised that, but for this letter, you: (i) would have the right to use the fee arbitration procedures of Part 137, and (ii) would not be required to arbitrate a fee dispute between us in an arbitral forum outside Part 137. By signing this letter, you and we waive our respective rights with regard to arbitration pursuant to Part 137, which includes the right to reject the arbitrator's award by commencing an action on the merits (trial *de novo*) in a court of law.

The provisions of this Engagement Letter may be modified only pursuant to a subsequent written agreement executed by Stroock and all of the then current members of the Ad Hoc Group. This Engagement Letter shall be subject to the law and applicable ethical rules of the State of New York, without regard to applicable conflicts of law rules.

Dated as of March 5, 2010
Page 7

This Engagement Letter and the obligations created hereunder shall terminate upon the dissolution of the Ad Hoc Group unless otherwise provided herein.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]

Dated as of March 5, 2010
Page 8

If you concur with the matters described above, please
return an executed copy of this Engagement Letter via
email to Kris Hansen at khansen@stroock.com with a copy to
Lori Kata at lkata@stroock.com.  This Engagement Letter
may be acknowledged in counterparts, which, when fully
executed and taken together, shall constitute one and the
same instrument.  In addition, execution copies of this
Engagement Letter delivered by facsimile shall be deemed
to be originals.

We are, of course, pleased to discuss any questions you
may have regarding our billing practices or other matters.
We thank you for the opportunity to represent the Ad Hoc
Group and look forward to working with you on this matter.

Very truly yours,

STROOCK & STROOCK & LAVAN LLP

By: _____
      Kristopher M. Hansen


AGREED:

Holders of the 9.5% Senior Secured Notes due 2017 issued
by Neenah Foundry Company


By: _____

Name: _____

Title: _____

Date: _____

Dated as of March __, 2010
Page 8

If you concur with the matters described above, please
return an executed copy of this Engagement Letter via
email to Kris Hansen at khansen@stroock.com with a copy to
Lori Kata at lkata@stroock.com.    This Engagement Letter
may be acknowledged in counterparts, which, when fully
executed and taken together, shall constitute one and the
same instrument.    In addition, execution copies of this
Engagement Letter delivered by facsimile shall be deemed
to be originals.

We are, of course, pleased to discuss any questions you
may have regarding our billing practices or other matters.
We thank you for the opportunity to represent the Ad Hoc
Group and look forward to working with you on this matter.

Very truly yours,

STROOCK & STROOCK & LAVAN LLP


By
:    _____
     Kristopher M. Hansen


AGREED:

Holders of the 9.5% Senior Secured Notes due 2017 issued
by Neenah Foundry Company

By:  *GoldenTree Asset Management LP, as Investment Manager for certain managed funds*

Name:  _____, *Barry Ritholtz*

Title:  *General Counsel*

Date:  *March 24, 2010*

Dated as of March ___, 2010
Page 8

If you concur with the matters described above, please
return an executed copy of this Engagement Letter via
email to Kris Hansen at khansen@stroock.com with a copy to
Lori Kata at lkata@stroock.com.   This Engagement Letter
may be acknowledged in counterparts, which, when fully
executed and taken together, shall constitute one and the
same instrument.   In addition, execution copies of this
Engagement Letter delivered by facsimile shall be deemed
to be originals.

We are, of course, pleased to discuss any questions you
may have regarding our billing practices or other matters.
We thank you for the opportunity to represent the Ad Hoc
Group and look forward to working with you on this matter.

Very truly yours,

STROOCK & STROOCK & LAVAN LLP


By
:      _____
       Kristopher M. Hansen



AGREED:

Holders of the 9.5% Senior Secured Notes due 2017 issued
by Neenah Foundry Company

By:    MACKAY SHIELDS LLC, as investment adviser or
       _____ sub-advisor for certain
                                clients
Name:  Ellen Metzger
       ELLEN METZGER
Title: SENIOR MANAGING DIRECTOR & GENERAL COUNSEL

Date:   3-5-10

## ANNEX A

Members of the Ad Hoc Group

| GoldenTree Asset Management, LP |
| --- |
| MacKay Shields LLC |

STROOCK & STROOCK & LAVAN LLP · NEW YORK · LOS ANGELES · MIAMI

180 MAIDEN LANE, NEW YORK, NY 10038-4982 TEL 212.806.5400 FAX 212.806.6006 WWW.STROOCK.COM