## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., <u>et al.</u>,[1] | Case No. 10-10360 (MFW) |
| Debtors. | Jointly Administered |
| | **Hearing Date: April 27, 2010 at 9:30 a.m.**<br>**Objection Deadline: April 23, 2010 at 4:00 p.m.** |

**MOTION OF THE DEBTORS FOR AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) ESTABLISHING PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE DEBTORS' JOINT PLAN OF REORGANIZATION, (III) SCHEDULING A HEARING TO CONSIDER CONFIRMATION OF THE DEBTORS' JOINT PLAN OF REORGANIZATION AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT THEREOF**

The debtors and debtors in possession in the above-captioned chapter 11 cases

(each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>"), by and through their undersigned counsel,

hereby move the Court (the "<u>Motion</u>") for entry of an order, pursuant to sections 105, 1125,

1126, and 1128 of title 11 of the Unites States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 3003,

3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"),

and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), for entry of an order (i)

approving the Disclosure Statement (as defined below) as containing "adequate information," as

defined in section 1125(a)(i) of the Bankruptcy Code; (ii) establishing procedures for the

solicitation and tabulation of votes to accept or reject the Joint Plan of Reorganization for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

Neenah Enterprises, Inc. and Its Subsidiaries, dated as of March 26, 2010 (as it may be amended, supplemented or modified from time to time, the "Plan")[2] [Docket No. 180], including (a) fixing the voting record date for purposes of determining which Holders of Claims against the Debtors are entitled to vote on the Plan, (b) approving solicitation packages and procedures for distribution of the Disclosure Statement to those Holders of Claims against the Debtors who are entitled to vote on the Plan, and (c) approving forms of Ballots and establishing procedures for the submission of votes on the Plan; (iii) scheduling the Confirmation Hearing and establishing certain notice and objection procedures in respect thereof; and (iv) granting related relief, all as more fully set forth below.  In support of this Motion, the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.    On February 3, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On February 4, 2010, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2.    The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On February 12, 2010, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  No request has been made for the appointment of a trustee or examiner.

4.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory and legal predicates for the relief

---

[2] Capitalized terms used but not defined in this Motion have the meanings assigned to such terms in the Plan.

the Debtors are requesting in the Motion are sections 105, 1125, 1126, and 1128 of the

Bankruptcy Code, Bankruptcy Rules 2002, 3003, 3017, 3018, and 3020, and Local Rule 3017-1.

## BACKGROUND OF THE MOTION

5.      On March 26, 2010, the Debtors filed (a) the Plan and (b) the Disclosure

Statement for Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries (as it

may be amended, supplemented or modified from time to time, the "Disclosure Statement")

[Docket No. 181].  In addition, contemporaneously with the filing of the Plan and Disclosure

Statement, the Debtors filed the Notice of Hearing to Consider Approval of Disclosure Statement

for the Plan (the "Disclosure Statement Hearing Notice") [Docket No. 182].  On or about March

26, 2010, the Debtors served the Disclosure Statement Hearing Notice in accordance with the

requirements of Bankruptcy Rule 2002(b).  See Affidavit of Service of The Garden City Group,

Inc. [Docket No. 192].  Although the Debtors' chapter 11 cases have been procedurally

consolidated and the Debtors have filed a single joint plan of reorganization, the Debtors' estates

have not been substantively consolidated.  As such, the Plan constitutes, and shall be deemed to

constitute, a separate chapter 11 plan of reorganization for each Debtor.

## CLASSIFICATION OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS

6.      In accordance with section 1122 of the Bankruptcy Code, the Plan

classifies Holders of Claims against and Interests in the Debtors into certain Classes of Claims

and Interests for all purposes, including with respect to voting on the Plan, as follows:

| CLASS | DESCRIPTION | TREATMENT | ENTITLED TO VOTE |
|-------|-------------|-----------|------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No – Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | No – Deemed to Accept |
| 3 | Prepetition Credit Agreement Claims | Unimpaired | No – Deemed to Accept |
| 4 | Secured Note Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Unimpaired | No – Deemed to Accept |
| 6 | Subordinated Notes Claims | Impaired | Yes |
| 7 | Intercompany Claims | Impaired | No – Deemed to Accept |
| 8 | Section 510(b) Claims | Impaired | No – Deemed to Reject |
| 9 | NEI Common Interests | Impaired | No – Deemed to Reject |

3

| 10 | Subsidiary Interests | Unimpaired | No – Deemed to Accept |

7.      Based on the foregoing classification scheme, only the Holders of Claims in Classes 4 and 6 (collectively, the "Voting Classes") are Impaired and entitled to vote to accept or reject the Plan.  Holders of Claims and Interests in Classes 1, 2, 3, 5 and 10 (collectively, the "Unimpaired Classes") are Unimpaired, are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and thus are not entitled to vote to accept or reject the Plan.  The Debtors, as the Holders of Intercompany Claims in Class 7 (collectively, the "Intercompany Claims") and the proponents of the Plan, shall be deemed to have accepted the Plan and thus are not entitled to vote to accept or reject the Plan.  Holders of Claims and Interests in Classes 8 and 9 (collectively, the "Deemed Rejecting Classes" and together with the Unimpaired Classes, Unclassified Claims (as defined below), and Intercompany Claims, the "Non-Voting Classes"), shall neither receive nor retain any property under the Plan and thus are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, the Deemed Rejecting Classes are not entitled to vote to accept or reject the Plan.

8.      In addition, the Plan designates four (4) categories of Claims that are entitled to receive distributions under the Plan but are not classified for purposes of voting to accept or reject the Plan.  These categories of Claims include (i) the Administrative Expense Claims, (ii) the DIP Revolving Facility Claims, (iii) the DIP Term Facility Claims, and (iv) the Priority Tax Claims (collectively, the "Unclassified Claims").

## RELIEF REQUESTED

9.      By this Motion, the Debtors respectfully request entry of an order, in substantially the form attached hereto as Exhibit A (the "Voting Procedures Order"): (i) approving the Disclosure Statement; (ii) establishing procedures for the solicitation and tabulation of votes to accept or reject the Plan, including (a) fixing the voting record date for

purposes of determining which Holders of Claims against the Debtors are entitled to vote on the

Plan, (b) approving solicitation packages and procedures for distribution of the Disclosure

Statement to Holders of Claims against the Debtors who are entitled to vote on the Plan, and (c)

approving forms of Ballots and establishing procedures for the submission of votes on the Plan;

(iii) scheduling the Confirmation Hearing and establishing certain notice and objection

procedures in respect thereof; and (iv) granting related relief.

   10. In addition to the relief specifically requested pursuant to this Motion, the

Debtors also request that the Disclosure Statement be approved as containing "adequate

information" within the meaning of section 1125(a)(1). Pursuant to Local Rule 3017(a), the

Debtors are not required to file a motion seeking approval of the Disclosure Statement. Section

1125 of the Bankruptcy Code, however, requires the court to approve a written disclosure

statement prior to allowing a plan proponent to solicit votes on a plan of reorganization. The

proposed Voting Procedures Order provides such relief. To approve the Disclosure Statement,

the Court must find that it contains "adequate information," which is defined as "information of a

kind, and in sufficient detail . . . that would enable . . . a hypothetical investor of the relevant

class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). The Debtors

submit that the Disclosure Statement contains "adequate information" as that phrase is defined in

section 1125(a)(1) of the Bankruptcy Code and should therefore be approved.

**I.**  **Request for Establishment of Solicitation and Notice Procedures**

  **A.**  **Fixing a Voting Record Date**

   11. Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting

votes to approve a plan of reorganization, "creditors and equity security holders shall include

holders of stocks, bonds, debentures, notes, and other securities of record on the date the order

approving the disclosure statement is entered or another date fixed by the court, for cause, after

notice and a hearing." Fed. R. Bankr. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar

provision regarding the determination of the record date for voting purposes.

12.    The Debtors propose that the Court establish April 27, 2010 as the record

date (the "Record Date") for purposes of determining the Holders of Claims in Voting Classes

who are entitled to receive Solicitation Packages (as defined below) and vote to accept or reject

the Plan, and the Holders of Claims and Interests in the Non-Voting Classes that shall receive a

Non-Voting Package (as defined below).  Further, the Debtors propose that the amount of each

Holder's Claim be determined for solicitation and voting purposes as of the Record Date.

**B.    Approval of Solicitation Packages and Procedures for Distribution Thereof to Voting Classes, Unimpaired Classes, and Deemed Rejecting Classes**

*(a)    Solicitation Packages*

13.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to

creditors and equity security holders for the purpose of soliciting their votes and providing

adequate notice of a hearing to confirm a plan of reorganization, specifically providing that:

> Upon approval of a disclosure statement – except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders – the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1) the plan or court-approved summary of the plan;
>
> (2) the disclosure statement approved by the court;
>
> (3) notice of the time within which acceptances and rejections of the plan may be filed; and
>
> (4) any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in

accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Bankruptcy Rule 3017(d).

14.     In accordance with the requirements of Bankruptcy Rule 3017(d), following the Court's approval of the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, the Debtors propose to distribute (or cause to be distributed) to each Holder of a Claim in one of the Voting Classes a solicitation package (the "Solicitation Package") containing copies of:

    a.   the Disclosure Statement together with the Plan and all other exhibits annexed thereto;

    b.   the Voting Procedures Order, excluding the exhibits annexed thereto;

    c.   the Confirmation Hearing Notice (as defined below);

    d.   a Ballot[3] with a return envelope; and

    e.   such other materials as the Court may direct or approve, including any supplemental solicitation materials the Debtors may file with the Court.

15.     Furthermore, the Debtors propose to distribute to all Holders of Claims or Interests in the Non-Voting Classes a "Non-Voting Package," which shall consist of the applicable Non-Voting Notice (as defined below) and the Confirmation Hearing Notice, each as approved by the Court.

16.     To the extent the Debtors anticipate distributing any supplemental solicitation materials, the Debtors will file such materials with the Court not less than two (2) business days before the hearing to approve the Disclosure Statement.

---

[3] Consistent with securities industry practices in bankruptcy solicitations, the Debtors propose to distribute Master Ballots (as defined below) to the Voting Nominees (as defined below) after the Solicitation Packages have been distributed to the Beneficial Owners (as defined below).

069355.1001

17.    In addition, with respect to any transferred Claim, the Debtors propose that the transferee be entitled to receive a Solicitation Package and cast a Ballot on account of the transferred Claim only if the parties have completed all actions necessary to effect the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) by the Record Date.  In the event a Claim is transferred after the transferor has executed and submitted a Ballot to the Voting Agent (as defined below), the transferee of such Claim shall also be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim as of the Record Date.

18.    The Debtors expect that they will complete the distribution of the appropriate Solicitation Packages[4] and Non-Voting Packages no later than the date that is six (6) calendar days after the Record Date (the "Solicitation Commencement Date") to all Holders of Claims and Interests.  To avoid duplication and reduce expenses to their estates, the Debtors propose that Holders of Claims who have more than one non-duplicative Claim in a particular Voting Class should receive only one Solicitation Package and one Ballot in the aggregate amount of all Claims held by such Holders within that Voting Class, as necessary.

19.    In addition, to the extent that the following parties have not otherwise received a Solicitation Package, prior to the Solicitation Date, the Debtors will distribute (a) the Disclosure Statement, together with the Plan and all other exhibits annexed thereto, (b) the Voting Procedures Order, excluding the exhibits annexed thereto, and (c) the Confirmation Hearing Notice to: (i) the Office of the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel to the Committee; (vi) counsel to the

---

[4] The record Holders of the Debtors' debt securities will be provided with ample copies of, and instructions to forward, the appropriate Solicitation Packages to the Beneficial Owners (as defined below) of such debt securities. Upon written request with supporting documentation, the Voting Nominees (as defined below) will be reimbursed by the Debtors for any reasonable, actual, and necessary expenses incurred in connection with such distribution.

agents for the Debtors' post-petition lenders; (vii) counsel to the Ad Hoc Committee of Secured

Noteholders; (viii) counsel to the Subordinated Noteholders; and (ix) those parties requesting

notice pursuant to Bankruptcy Rule 2002(i).

### (b)     Delivery of Notices to Holders of Unimpaired Claims and Unclassified Claims

20.     As set forth above, Classes 1, 2, 3, 5 and 10 are Unimpaired under the

Plan and are conclusively presumed to accept the Plan.  Consistent with section 1126(f) of the

Bankruptcy Code, the Debtors propose that all Holders of such Claims or Interests in Classes 1,

2, 3, 5 and 10, as well as the Holders of Unclassified Claims, receive a Non-Voting Package

consisting of: (a) the Confirmation Hearing Notice and (b) a notice of Unimpaired Class non-

voting status, in substantially the form of the notice annexed to the Voting Procedures Order as

Exhibit C (the "Notice of Unimpaired Class Non-Voting Status").[5]

### (c)     Delivery of Notices to Deemed Rejecting Classes

21.     As set forth above, Holders of Claims and Interests in Classes 8 and 9

shall neither receive nor retain any property on account of their Claims and Interests and thus are

presumed to reject the Plan.  See 11 U.S.C. § 1126(g).  Because sending a Solicitation Package

to such Holders of Claims and Interests is unnecessary and would represent an unnecessary cost

to the Debtors' estates, the Debtors propose to mail, or cause to be mailed, by the Solicitation

Commencement Date to each Holder of a Claim or Interest in the Deemed Rejecting Classes, at

the address to which notices are required to be sent pursuant to Bankruptcy Rule 2002(g), a Non-

Voting Package consisting of: (a) the Confirmation Hearing Notice and (b) a notice of non-

voting status in substantially the form annexed to the Voting Procedures Order as Exhibit D (the

---

[5] As noted above, holders of Intercompany Claims are Plan proponents and shall not be entitled to vote to accept or reject the Plan.  As a result, the holders of Intercompany Claims will not receive solicitation materials from the Debtors.

"Notice of Deemed Rejecting Class Non-Voting Status" and collectively with the Notice of

Unimpaired Class Non-Voting Status, the "Non-Voting Notices").

    22.  The Confirmation Hearing Notice also advises any party wishing to obtain

a copy of the Disclosure Statement and/or the Plan to do so by contacting the Voting Agent, The

Garden City Group, Inc., (i) by first class mail, personal delivery, or overnight courier addressed

to Neenah Enterprises, Inc. Ballot Processing Center, c/o The Garden City Group, Inc., 190

South LaSalle Street, Suite 1520, Chicago, IL 60603; or (ii) by telephoning the Voting Agent at

(866) 405-2136 to obtain a copy of the documents at the Debtors' expense.  In addition, copies of

the Plan and the Disclosure Statement may be viewed on the Internet at

http://www.neenahrestructuring.com or at the Bankruptcy Court's website

(http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such

website.

    *(d)*  ***Undeliverable or Returned Notices and Solicitation Packages***

    23.  The Debtors anticipate that certain Disclosure Statement Hearing Notices

may be returned by the United States Postal Service as undeliverable.  The Debtors believe it

would be costly and wasteful to distribute Solicitation Packages, Confirmation Hearing Notices,

Notices of Unimpaired Non-Voting Status, or Notices of Deemed Rejecting Class Non-Voting

Status to the same addresses to which undeliverable Disclosure Statement Hearing Notices were

distributed.  The Debtors therefore seek the Court's approval for a departure from the strict

notice rule, excusing the Debtors from distributing Solicitation Packages or Non-Voting

Packages to those entities listed at such addresses if the Debtors are unable to ascertain accurate

addresses for such entities before the Solicitation Commencement Date after exercising good

faith efforts to locate a more current address.  Further, if the Debtors send Solicitation Packages

or Non-Voting Packages, which are deemed undeliverable, and in good faith cannot obtain more

                                

current addresses, the Debtors seek to be excused from attempting to re-deliver Solicitation

Packages or Non-Voting Packages to such entities.

24.    The Debtors believe that the proposed solicitation procedures described

herein comport with due process and the requirements of Bankruptcy Rule 3017 and section

1125 of the Bankruptcy Code.  Under such procedures, all parties entitled to vote to accept or

reject the Plan will receive the Solicitation Package, which will include a complete copy of the

Disclosure Statement and the Plan.  As such, the Debtors submit that good cause exists for

implementing the aforementioned notice and service procedures.

**C.    Approval of Ballots, Master Ballots and Procedures for Voting on the Plan**

*(a)    Ballots and Master Ballots and the Distribution Thereof*

25.    Bankruptcy Rule 3017(d) requires the Debtors to mail a form of Ballot to

all "creditors and equity security holders entitled to vote on the plan." Fed. R. Bankr. P. 3017(d).

The Debtors propose to distribute to Holders of Claims in the Voting Classes, as described

below, one or more Ballots (and instructions attached thereto) in substantially the form annexed

to the Voting Procedures Order as Exhibit A (the "Ballots").  The Ballots are based on Official

Form No. 14 but have been modified to address the particular aspects of these Chapter 11 Cases

and to include certain additional information the Debtors believe is relevant and appropriate for

each Class of Claims entitled to vote to accept or reject the Plan.  The Debtors will distribute the

appropriate Ballots, along with return envelopes, to Holders of Claims in the Voting Classes as

part of the Solicitation Packages.  The Holders of Claims or Interests in the Non-Voting Classes

are not entitled to vote on the Plan and will not receive a Ballot.

26.    With respect to the Solicitation Packages that the Debtors will send to

certain Holders of debt securities entitled to vote on the Plan, the Debtors propose to deliver

11

Solicitation Packages to the record Holders of such Claims, including, without limitation, representatives such as brokers, banks, commercial banks, transfer agents, trust companies, dealers, other agents or nominees, or their mailing agents (collectively, the "Voting Nominees").[6] Each Voting Nominee will receive reasonably sufficient numbers of Solicitation Packages, including sufficient beneficial Ballots (the "Beneficial Ballots"), to distribute to the beneficial owners of the Claims for whom such Voting Nominee acts (collectively, the "Beneficial Owners"). In addition, upon written request with supporting documentation, the Debtors will reimburse each Voting Nominee's reasonable, actual, and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages to the Beneficial Owners of such Claims, the tabulation of the Ballots, and the completion of Master Ballots (as defined below).

27.     The Debtors propose that each Voting Nominee be required to (i) forward a Solicitation Package to the Beneficial Owners of the securities entitled to vote on the Plan (the "Voting Securities") for whom such Voting Nominee acts and (ii) include a return envelope provided by and addressed to the Voting Nominee so that the Beneficial Owners may return the completed Beneficial Ballots to the Voting Nominee by such deadline as the Voting Nominee establishes to ensure the Voting Nominee receives the Beneficial Ballots with sufficient time to summarize the results on a master ballot. The Voting Nominee will then summarize the individual votes of its respective Beneficial Owners from their Beneficial Ballots on the appropriate master ballot (the "Master Ballot"), in substantially the form of the Master Ballot (and instructions attached thereto) annexed to the Voting Procedures Order as Exhibit B, and will then return the Master Ballot to the Voting Agent so that it is received prior to the Voting

---

[6] Unless pre-validated, Beneficial Owners should return their executed Beneficial Ballots to the Voting Nominee in either the pre-addressed envelope provided by the Voting Nominee and/or by any other means prescribed by the Voting Nominee and should not mail their Beneficial Ballots to the Debtors, the Voting Agent, or the indenture trustee for their series of notes. Any Beneficial Ballot not timely received by the Voting Nominee shall not be counted for voting purposes.

069355.1001

Deadline (as defined below).  The Debtors propose that the Voting Nominees be required to

retain the Beneficial Ballots for inspection for a period of at least one (1) year following the

Voting Deadline (as defined below).

       28.     To aid this process, the Debtors propose that, upon request by the Debtors,

the Secured Notes Indenture Trustee be required to request on behalf of the Debtors the security

position listing for the Secured Notes as of the Record Date from The Depository Trust

Company ("DTC").  In the event the Debtors provide a draft letter to the Secured Notes

Indenture Trustee, the Secured Notes Indenture Trustee shall furnish the completed letter to DTC

within two (2) business days of receipt of such request, with a copy to the Debtors, as directed in

the request.  The Debtors shall be responsible for making any payments DTC may require in

connection with the request.

       *(b)*     ***Establishment of the Voting Deadline***

       29.     Bankruptcy Rule 3017(c) provides that, on or before approval of a

disclosure statement, the Court shall fix a time within which the Holders of Claims may vote to

accept or reject a plan.  The Debtors will use their reasonable efforts to mail all Solicitation

Packages no later than the Solicitation Commencement Date, which shall be six (6) calendar

days after the Record Date.  Based on this schedule, the Debtors respectfully request that the

Court establish June 2, 2010 at 4:00 p.m. (Eastern Time) as the deadline by which all Ballots and

Master Ballots must be properly executed, completed, delivered to, and received by the Voting

Agent (the "Voting Deadline").  Ballots and Master Ballots must be returned to the Voting Agent

by first class mail postage prepaid, personal delivery, or by overnight courier.

       30.     The proposed Voting Deadline is approximately thirty-six (36) days after

the anticipated entry of the Voting Procedures Order approving the Disclosure Statement and the

13

Record Date, and approximately thirty (30) days after the Solicitation Commencement Date.

The Debtors believe this solicitation period is sufficient to allow Holders of Claims in the Voting

Classes to make an informed decision to accept or reject the Plan.

     *(c)*    ***Approval of Procedures for Vote Tabulation***

       31.    Pursuant to an order of this Court entered February 4, 2010 [Docket No.

4], the Debtors have retained the services of The Garden City Group, Inc. ("GCG") to, among

other things, assist the Debtors as their Voting Agent.  The Debtors expect that the Voting Agent

(or its agents) will perform all services relating to the solicitation of votes on the Plan (the

"Balloting Services"), including, without limitation:

    a.    identifying voting and non-voting creditors;

    b.    printing Ballots specific to each Holder of a Claim in a Voting Class that indicates each Holder's voting Class, voting amount of the Claim, where applicable, and other relevant information;

    c.    coordinating the mailing of Ballots and providing an affidavit verifying the mailing of Ballots;

    d.    mailing the Confirmation Hearing Notices, Solicitation Packages and Non-Voting Packages;

    e.    receiving Ballots and tabulating the votes on the Plan and providing an affidavit verifying the results of such tabulation; and providing any other balloting-related services the Debtors may request from time to time including, without limitation, providing testimony at the Confirmation Hearing regarding the Balloting Services and the tabulation of votes on the Plan; and

    f.    preparing voting reports for each Voting Class, including voting amount and number, and maintaining such information in a database.

     *(d)*    ***Ballot Tabulation***

       32.    The Debtors propose that each Holder of a Claim within a Voting Class be

entitled to vote the amount of such Claim as of the Record Date.

33.    The Debtors further request that creditors with multiple Claims within a particular Class be required to vote all such Claims in any such Class to either accept or reject the Plan and may not split their vote(s).  Accordingly, as noted below, an individual Ballot (as opposed to a Master Ballot) that partially rejects and partially accepts the Plan on account of multiple Claims within the same Class will not be counted.  For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, to the extent that it is possible to do so for all Voting Classes, separate Claims held by a single creditor in each Class will be aggregated as if such creditor held a single Claim in such Class, and the votes related to those Claims shall be treated as a single vote on the Plan.

34.    In addition, to the extent a creditor has filed or purchased duplicative Claims that are classified under the Plan in the same Class, the Debtors propose to provide such creditor with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to the allowance of such duplicate Claims.

35.    Notwithstanding the foregoing, the Debtors further request that a Holder of Claims in more than one Class under the Plan be required to execute and submit a separate Ballot for each Class of Claims in which the claimant holds a Claim, including the requirement, in the case of debt securities, that each Beneficial Owner execute a separate Beneficial Ballot for each block of debt securities it holds through any Voting Nominee and to return each such Beneficial Ballot to the appropriate Voting Nominee.

36.    The Debtors further request that if any Holder casts more than one Ballot or Master Ballot voting the same Claim(s) before the Voting Deadline, the last dated valid Ballot or Master Ballot received before the Voting Deadline be deemed to reflect the creditor's intent

and supersede any prior dated Ballots or Master Ballots.  If a Holder of Claims casts multiple

Ballots or Master Ballots dated with the same date, but which are voted inconsistently, the

Debtors request such Ballots not be counted, except in the case of a supplemental Master Ballot.

37.    The following types of Ballots will not be counted in determining whether

the Plan has been accepted or rejected:

      a.    any Ballot or Master Ballot that is otherwise properly completed, executed, and timely returned to the Voting Agent, but does not indicate an acceptance or rejection of the Plan;

      b.    any Ballot or Master Ballot received after the Voting Deadline, except in the Debtors' sole discretion;

      c.    any Ballot or Master Ballot containing a vote that this Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

      d.    any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

      e.    any Ballot that partially accepts and partially rejects the Plan;

      f.    any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

      g.    any unsigned Ballot or Ballot without an original signature, except in the Debtors' sole discretion; and

      h.    any Ballot transmitted to the Voting Agent by facsimile or other electronic means, except in the Debtors' sole discretion.

38.    In addition, the Debtors propose that the following voting procedures and

standard assumptions be used in tabulating the Ballots:

      a.    The method of delivery of Ballots to the Voting Agent is at the election and risk of each voting Holder, but such delivery will be deemed made only when the Voting Agent has actually received the original, executed Ballot.

      c.    If a Holder of Claim(s) casts multiple Ballots on account of the same Claim or Class of Claims, which are received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots shall not be counted (except in the case of a supplemental Master Ballot).

      d.    The Debtors, in their sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot or Master Ballot at any time, including failure to timely file such Ballot, either before or after the close of voting, and without notice.

e.      After the Voting Deadline, no vote may be withdrawn without the prior consent of the Debtors.

f.      Subject to any contrary order of the Court, the Debtors reserve the right to reject any and all Ballots or Master Ballots not proper in form.

g.      Subject to any contrary order of the Court, the Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot.

h.      Unless otherwise ordered by the Court, any defects or irregularities in connection with deliveries of Ballots or Master Ballots must be cured within such time as the Debtors (or the Court) determine, and delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

i.      Neither the Debtors, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots or Master Ballots, nor will any such party incur any liability for failure to provide such notification.  Ballots or Master Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will not be counted.

39.      Each Holder of a Claim entitled to vote on the Plan will receive a Ballot.

The Debtors further propose that each Claim within the Classes of Claims entitled to vote to accept or reject the Plan will be temporarily allowed for purposes of voting on the Plan in accordance with the following:

a.      A Claim will be temporarily allowed for voting purposes as listed in the Debtors' schedules of liabilities, provided that (i) such Claim is not scheduled as contingent, unliquidated, undetermined or disputed or in the amount of $0.00, (ii) no Proof of Claim has been timely filed (or otherwise deemed timely filed under applicable law), or (iii) such Claim has not been satisfied by the Debtors;

b.      Unless a Proof of Claim has been filed for such a Claim, contingent, unliquidated or disputed Claims listed on the Debtors' schedules of liabilities will be temporarily allowed for voting purposes in the amount allowed by the Court, pursuant to Bankruptcy Rule 3018(a);

c.      Except as provided in subsection (e) below, Ballots for timely filed Claims (or Claims that are deemed timely filed by the Court under applicable law) that are the subject of an objection filed on or before the Voting Deadline shall be provisionally allowed by the Court for voting purposes in the amount of $1; provided, however, that if the Holder of any such Claim timely responds to the objection, their vote will ultimately be allowed in the amount set by the Court after a hearing is held and order entered by the Court on the objection;

17

d.      If the Debtors have requested that a Claim be reclassified and/or allowed in a fixed, reduced amount pursuant to an objection to such Claim, such Holder's Ballot shall be counted in the reduced amount requested by the Debtors and/or in the requested category, subject to any order entered pursuant to a motion filed by that Holder; and

e.      Ballots for timely filed Claims (i) that are listed as contingent, unliquidated and/or disputed on the face of the Claim or (ii) that the Debtors determine, after reasonable review of the Claim (including any supporting documentation contained therewith) is a contingent, unliquidated and/or disputed Claim and is not the subject of an objection filed before the Voting Deadline, shall vote in the amount of $1.00, unless otherwise allowed by Court order after a timely filed motion filed by the Holder of such Claim.

40.      The Debtors further request that the date that is two (2) days prior to the Confirmation Hearing be set as the deadline for the Voting Agent to file its voting tabulations reflecting the votes cast to accept or reject the Plan.

### (e)      *Master Ballot Tabulation*

41.      With respect to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners, the Debtors propose the amount that will be used to tabulate acceptance or rejection of the Plan will be the principal amount held by such Voting Nominees and Beneficial Owners as of the Record Date (the "Record Amount"). The Debtors propose that the following additional rules apply to the tabulation of Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners:

a.      Votes cast by Beneficial Owners through a Voting Nominee will be applied against the positions held by such entities in the applicable debt security of the Debtors as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a Voting Nominee pursuant to a Master Ballot will not be counted in excess of the Record Amount of the applicable securities held by such Voting Nominee on the Record Date.

b.      For the purpose of tabulating votes, each Beneficial Owner shall be deemed to have voted the principal amount of its securities.

c.      To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, the Voting Agent, in good faith, will attempt to reconcile discrepancies with the applicable Voting Nominees.

18

d.      To the extent overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Voting Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable security.

e.      Where a Beneficial Owner holds securities through more than one Voting Nominee, it must execute a separate Ballot for each block of debt securities it owns. Such Holder must, however, vote all its Claims in each Class in the same manner, to either accept or reject the Plan. Accordingly, if such Holder returns more than one Ballot to more than one Voting Nominee voting different Claims within each Class under the Plan and the Ballots are not voted in the same manner, as reflected on such separate Master Ballots, such votes will not be counted.

42.     Courts have approved similar voting and tabulation procedures in other chapter 11 cases in this District. See, e.g., In re Merisant Worldwide, Inc., Case No. 09-10059 (PJW) (Oct. 23, 2009); In re Pliant Corp., Case No. 09-10443 (MFW) (Aug. 17, 2009); In re Linens Holding Co., Case No. 08-10832 (CSS) (Jan. 26, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Dec. 16, 2008); In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Nov. 30, 2008); In re Goody's Family Clothing, Inc., Case No. 08-11133 (CSS) (Aug. 25, 2008); In re Inland Fiber Group, LLC, Case No. 06-10884 (KJC) (Sept. 29, 2006); In re QUTI Corp., f/k/a Questron Tech., Inc., Case No. 02-10319 (PJW) (Aug. 26, 2005); In re Cone Mills Corp., Case No. 03-12944 (MFW) (Aug. 20, 2004); In re BRAC Group, Inc. (f/k/a Budget Group, Inc.), Case No. 02-12152 (CGC) (Feb. 4, 2004). The Debtors believe such procedures provide for a fair and equitable voting process.

II.     **Request to Schedule the Confirmation Hearing, Establish Notice Procedures and Objection Deadlines with Respect Thereto, and Approve Form of Notice of Cure Amounts**

A.      **Scheduling the Confirmation Hearing**

43.     In accordance with Bankruptcy Rule 3017(c),[7] and in light of the Debtors' proposed solicitation schedule outlined herein, subject to the Court's availability, the Debtors propose that June 25, 2010 be fixed by the Court as the date for a hearing to consider confirmation of the Plan (the "Confirmation Hearing"). Such date will give the Debtors sufficient time to solicit votes on the Plan and to provide adequate notice of the Confirmation Hearing to all parties-in-interest. The Debtors also request that the Court order that the Confirmation Hearing may be continued by the Debtors from time to time (after consultation with the Committee) without further notice to creditors or other parties in interest.

B.      **Establishing Procedures for Notice of the Confirmation Hearing**

44.     Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight (28) days' notice to all holders of claims and equity interests of the time fixed for filing objections to confirmation of a plan of reorganization and the hearing to consider confirmation of a plan of reorganization. In accordance with the foregoing Bankruptcy Rules, the Debtors propose to provide all known creditors, parties filing a notice of appearance in these cases, governmental units having an interest in these cases, indenture trustees, and equity interest holders, each as of the Record Date, with a copy of the notice of the confirmation hearing (the "Confirmation Hearing Notice") in substantially the form attached to the Voting Procedures Order as Exhibit E. The Debtors will send such notice contemporaneously with the Solicitation Packages and Non-Voting Packages.

---

[7] The Bankruptcy Code provides: "On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c).

069355.1001

45.     Furthermore, the Debtors seek permission, pursuant to Bankruptcy Rule 2002(l), which permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice," to supplement the foregoing notice procedures by publishing a notice of the Confirmation Hearing, in substantially the form of the notice attached to the Voting Procedures Order as Exhibit F (the "Publication Notice"), in the national editions of The Wall Street Journal and USA Today, at least twenty (20) days before the Objection Deadline (as defined below).  The Debtors believe that the Publication Notice will provide adequate notice of the Objection Deadline and the Confirmation Hearing to all creditors of the Debtors and other parties in interest who will not otherwise receive service by mail.

46.     The Debtors believe the foregoing procedures will provide adequate notice of the Confirmation Hearing and the Objection Deadline and, accordingly, request the Court approve the procedures as adequate and appropriate under the circumstances.

C.    **Establishing Procedures for Filing Objections to Confirmation of the Plan**

47.     Bankruptcy Rule 3020(b) provides that objections to confirmation of a proposed plan of reorganization must be filed with the Bankruptcy Court and served on the debtor, the trustee, any committee appointed under the Bankruptcy Code, and on any other entity designated by the Bankruptcy Court, within a time specified by the Bankruptcy Court.

48.     To permit the Debtors adequate time to respond to objections prior to the Confirmation Hearing, the Debtors request that June 18, 2010 at 4:00 p.m. (Eastern Time) be fixed by the Court as the last date for filing and serving written objections to confirmation of the Plan (including any supporting memoranda) (the "Objection Deadline").  The Debtors request that the Court direct that objections to confirmation of the Plan, if any, (i) be made in writing; (ii) state the name and address of the objecting party and the nature of the Claim or Interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the

21

Plan; and (iv) be filed with the Court, together with proof of service, and served so that they are

received on or before the Objection Deadline by the following parties:

Counsel to the Debtors:

Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Facsimile: (312) 853-7036
Attn: Larry J. Nyhan
        Bojan Guzina

Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Facsimile: (302) 571-1253
Attn: Robert S. Brady
        Edmon L. Morton

The U.S. Trustee:

U.S. Trustee
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lock Box 35
Wilmington, Delaware 19801
Facsimile: (302) 573-6497
Attn: Thomas P. Tinker

- and -

Counsel to the Official Committee of Unsecured Creditors

Greenberg Traurig, LLP
1007 North Orange Street
The Nemours Building
Wilmington, DE 19801
Facsimile : 302-661-7360

Attn: Donald J. Detweiler

Greenberg Traurig, LLP
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
Facsimile: 302-661-7360
Attn: Sandra G.M. Selzer

-and-

Counsel to the Ad Hoc Committee of Secured Noteholders:

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Facsimile: (212) 806-2508
Attn:  Kristopher M. Hansen
       Lori E. Kata

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Facsimile: (302) 498-7816
Attn:  Daniel J. DeFranceschi

49.    The Debtors further propose that they, or any other party supporting confirmation of the Plan, be afforded an opportunity to file a response to any objections to confirmation of the Plan by no later than 12:00 p.m. (Eastern Time) two (2) Business Days prior to the date of the Confirmation Hearing.  At that time, the Debtors will also file their proposed findings of fact and conclusions of law and form of order confirming the Plan, and a memorandum of law in support of confirmation of the Plan.

50.    The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Plan, Ballots, Master Ballot, Confirmation Hearing Notice, Publication Notice, Notice of Deemed Rejecting Class Non-Voting Status, Notice of Unimpaired Class Non-Voting Status, and related documents without further order of the Court, including, without

limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package and/or Non-Voting Packages prior to their distribution of such materials.

## NOTICE

51.     Notice of this Motion has been provided to: (i) counsel to the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the administrative agent for the Debtors' prepetition secured lenders; (iv) counsel to the agents for the Debtors' post-petition lenders; (v) counsel to the Ad Hoc Committee of Secured Noteholders; (vi) counsel to the Subordinated Noteholders; and (vii) those parties requesting notice pursuant to Bankruptcy Rule 2002(i), in accordance with Local Rule 2002-1(b).  In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

069355.1001

WHEREFORE, the Debtors respectfully request this Court enter the Voting

Procedures Order, substantially in the form of the order attached hereto as <u>Exhibit A</u>, and grant

such other and further relief as is just and proper.

Dated: Wilmington, Delaware
       April 9, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Alison L. Triggs
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

    - and -

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION