## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEENAH ENTERPRISES, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-10360 (MFW)<br><br>Jointly Administered<br><br>**Hearing Date: June 7, 2010 at 10:30 a.m. ET**<br>**Objection Deadline: May 28, 2010 at 4:00 p.m. ET** |

### MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. § 1121(d) EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH THE DEBTORS MAY FILE A PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES THEREOF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), extending the exclusive periods during which only the Debtors may (a) file a plan of reorganization and (b) solicit acceptances thereof. In support of this Motion, the Debtors respectfully state the following:

### INTRODUCTION

1.      Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred twenty (120) days after the commencement of a chapter 11 case during which the debtor has the exclusive right to file a plan of reorganization (the "Exclusive Filing Period"). Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

reorganization within the Exclusive Filing Period, the debtor will have an exclusive period of one

hundred eighty (180) days from the commencement of the chapter 11 case to solicit acceptances

of such a plan of reorganization (the "Exclusive Solicitation Period," and together with the

Exclusive Filing Period, the "Exclusive Periods"). Pursuant to section 1121(d) of the Bankruptcy

Code, bankruptcy courts may extend the Exclusive Periods "for cause." 11 U.S.C. § 1121(d).

      2.     The Exclusive Filing Period in these chapter 11 cases extends through

June 3, 2010, while the Exclusive Solicitation Period extends through August 2, 2010. By this

Motion, the Debtors request that the Court extend (i) the Exclusive Filing Period by

approximately one hundred twenty (120) days, through and including October 1, 2010 and (ii)

the Exclusive Solicitation Period by approximately one hundred twenty (120) days, through and

including December 1, 2010. For the reasons set forth in this Motion, the Debtors submit that

ample "cause" exists for the Court to extend the Exclusive Periods as requested herein.

### STATUS OF THE CASE AND JURISDICTION

      3.     On February 3, 2010 (the "Petition Date"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code. On February 4, 2010, the

Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

      4.     The Debtors have continued in possession of their respective properties and

have continued to operate and maintain their businesses as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

      5.     On February 17, 2010, the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102 of the Bankruptcy Code. No request has been made for

the appointment of a trustee or examiner in these chapter 11 cases.

6.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code and Bankruptcy Rule 9006(b).

## BACKGROUND TO THE MOTION

7.      Prior to the Petition Date, the Debtors reached an agreement in principle on the terms of a pre-arranged plan of reorganization with (i) the holders of 100% of the aggregate outstanding principal amount of the 12.5% Senior Subordinated Notes (the "Subordinated Notes") issued by Neenah Foundry Company ("Neenah"), one of the Debtors herein, and (ii) the holders of approximately 55% of the aggregate outstanding principal amount of the 9.5% Senior Secured Notes (the "Secured Notes") issued by Neenah.  The principal terms of such pre-arranged plan of reorganization are set forth in the Restructuring & Lock-Up Agreement (the "Lock-Up Agreement") dated as of February 3, 2010, by and among Neenah Enterprises, Inc. ("NEI"), NFC Castings, Inc., and the beneficial holders (collectively, the "Consenting Holders") of the Subordinated Notes and the Secured Notes that are signatories thereto.  Pursuant to the Lock-Up Agreement, the Consenting Holders agreed (subject to the terms and conditions of the Lock-Up Agreement) to accept and support the confirmation of a plan of reorganization that is materially consistent with the plan term sheet attached as Exhibit A to the Lock-Up Agreement (the "Plan Term Sheet").  The Debtors attached an executed copy of the Lock-Up Agreement as Exhibit C to the Affidavit of Robert E. Ostendorf, Jr., President and Chief Executive Officer of Neenah Enterprises, Inc., in Support of First Day Motions [Docket No. 15].

8.      In accordance with the terms of the Lock-Up Agreement, the Debtors filed the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries with the Court

3

on March 26, 2010 (as amended, the "Plan") [Docket No. 180].  The Debtors believe that the Plan is consistent in all materials respects with the terms and conditions set forth in the Plan Term Sheet.  Pursuant to the Plan, among other things, (i) the Secured Notes will be exchanged for (a) 97% of the new common stock to be issued by NEI (subject to dilution by a management equity incentive plan and the new common stock issuable upon exercise of the warrants granted to the holders of the Subordinated Notes) and (b) $50 million in principal amount of new senior secured notes, (ii) the Subordinated Notes will be exchanged for (a) 3% of NEI's new common stock (subject to dilution by a management equity incentive plan and the new common stock issuable upon exercise of the warrants granted to the holders of the Subordinated Notes) and (b) warrants to acquire another 10% of such new common stock on the terms set forth in the Plan, (iii) the allowed claims of general unsecured creditors will be paid in full in cash, and (iv) the existing equity interest in NEI will be cancelled and extinguished.  On April 27, 2010, this Court approved the adequacy of the disclosure statement relating to the Plan (the "Disclosure Statement") [Docket No. 325] pursuant to section 1125 of the Bankruptcy Code.  The Debtors have satisfied each milestone set forth in the Lock-Up Agreement, and they fully expect to satisfy the remaining milestones (which, among other things, require that the Plan be confirmed no later than one hundred fifty (150) days after the Petition Date) as well.  Indeed, the Court has already scheduled a hearing for June 23, 2010, which is approximately one hundred forty (140) days after the Petition Date, to consider confirmation of the Plan.  The Debtors expect that each impaired class of creditors that is entitled to vote on the Plan will vote to accept the Plan.

9.      As of the date of this Motion, the Debtors have been operating under the protections of the Bankruptcy Code for approximately one hundred (100) days.  During this time, the Debtors have concentrated on stabilizing their business operations and managing a smooth

4

transition to operating under bankruptcy protection. At the same time, the Debtors and their professionals have also made significant efforts to ensure that these chapter 11 cases are efficiently administered and have devoted substantial time to performing all the tasks typically required at the beginning of a chapter 11 case, including filing "first day" pleadings, preparing and filing schedules of assets and liabilities, managing critical vendor and customer relationships in an effort to minimize disruption to business operations, and addressing employee issues. The following is a brief summary of certain of the Debtors' significant efforts since the Petition Date.

10. Immediately following the filing of their bankruptcy petitions, the Debtors filed numerous "first day" motions seeking, among other things, (a) approval to continue utilizing their existing bank accounts and cash management system; (b) authority to pay a variety of prepetition claims held by critical vendors, suppliers, shippers, and other lien claimants; and (c) authority to continue certain key customer programs. The Court has approved all such "first day" motions on a final basis. The relief the Court granted with respect to such "first day" and other motions, taken as a whole, allowed the Debtors to minimize any disruption to their business operations associated with the commencement of the bankruptcy proceedings.

11. The Debtors, together with their counsel and financial advisors, have also worked diligently to analyze the Debtors' books and records and to address numerous issues arising in connection with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"). Preparing the Schedules for eighteen Debtors with complex business operations was a significant and time-consuming undertaking for the Debtors and their advisors, which required the collection, review, and categorization of a substantial number of documents, as well as intensive coordination with all the Debtors' various business units. These efforts resulted in the timely filing of the Schedules on

5

April 2, 2010 [Docket Nos. 214-227; 229; 249-253].[2]  Accordingly, the Debtors have

accomplished the necessary first step in quantifying all of their potential liabilities.

12.     As discussed above, in accordance with the requirements of the Lock-Up

Agreement, the Debtors filed their Plan and Disclosure Statement on March 26, 2010, less than

sixty (60) days after the Petition Date.  The filing of the Plan and Disclosure Statement was the

culmination of a process in which the Debtors, their advisors, and the Debtors' principal creditor

constituencies and their advisors, including the Committee and the Committee's advisors, actively

participated.  Indeed, the preparation of the Plan, the Disclosure Statement, and related materials

required a substantial investment of both time and resources by the Debtors and their

professionals.  The Plan process continues to be an interactive one, with the Debtors and their

advisors regularly communicating with the Debtors' principal creditor constituencies and their

advisors, including the Committee and its advisors.  This Court's approval of the Disclosure

Statement at the April 27, 2010 hearing was a significant milestone toward confirmation of the

Plan.

13.     In addition to the specific matters summarized above, the Debtors have

devoted a substantial amount of time to performing numerous other tasks typically required of

debtors in possession, including: (a) devoting considerable resources to addressing ongoing

operational issues and initiatives; (b) responding to numerous formal and informal requests for

information from various creditor constituencies, including the Committee and the Consenting

Holders; (c) negotiating agreements with numerous utilities regarding requests for adequate

assurance with respect to post-petition utility services; and (d) complying with all applicable

reporting requirements under the Bankruptcy Code and the Bankruptcy Rules.  In addition, the

---

[2] Pursuant to an order dated February 4, 2010, this Court extended the deadline for the Debtors to file the Schedules for an additional thirty (30) days, through and including April 5, 2010 [Docket No. 31].

069152.1001

Debtors have worked diligently to maintain a cooperative relationship with the principal parties in interest in these chapter 11 cases, including the U.S. Trustee, the Committee, and the Consenting Holders. Among other things, the Debtors have responded, and continue to respond, to numerous requests for information from the professionals representing these parties in interest.

## BASIS FOR RELIEF REQUESTED

**A.      Section 1121(d) Authorizes the Court to Extend the Exclusive Periods "For Cause"**

14.      The objective of a chapter 11 case is the negotiation and confirmation of a plan of reorganization. The exclusive periods under section 1121(d) are designed to afford the debtor a full and fair opportunity to formulate and propose such a plan of reorganization and to solicit acceptances thereof without the disruption that may be caused if competing plans are filed. Where the initial Exclusive Periods provided by the Bankruptcy Code prove to impose an unrealistic timeframe within which to file and confirm a plan of reorganization, section 1121(d) enables the Court to extend such Exclusive Periods. Specifically, section 1121(d) provides that, "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).

15.      It is well established that the decision to extend a debtor's Exclusive Periods is committed to the sound discretion of the court and should be based upon the facts and circumstances of the particular case. See First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986); In re Mid-State Raceway, Inc., 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); In re Reetz, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance. See In re

7

Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989); In re Amko Plastics,

Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Congress did not intend that the initial Exclusive

Periods be a hard and fast rule; rather, Congress intended that the Exclusive Periods be

sufficiently long, given the circumstances, for a debtor to formulate, negotiate, and draft a viable

plan without the inherent disruptions that could result if non-debtor parties filed competing plans

of reorganization. See Geriatric Nursing Home, Inc. v. First Fidelity Bank, N.A. (In re Geriatric

Nursing Home, Inc.), 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan

unimpaired by competition . . . is meant to allow the debtor time to satisfy all creditors and win

support for its restructuring scheme and thus ensure its survival as a business.").

      16.     In fact, Congress recognized that the Exclusive Filing Period often will not

afford a debtor sufficient time to formulate and negotiate a plan of reorganization. The House

Report to the 1978 Bankruptcy Act, which first codified section 1121, provides the following

discussion of the section, then a bill before the House for debate:

> The court is given the power, though, to increase . . . the 120-day period
> depending on the circumstances of the case.  [T]he bill allows the
> flexibility for individual cases that is not available today.  For example, if
> an unusually large company were to seek reorganization under chapter 11,
> the Court would probably need to extend the time in order to allow the
> debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted); see also In re Amko

Plastics, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with

extensions of exclusivity); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987)

(noting that "flexibility" is the "hallmark" of section 1121(d)).

      17.     When determining whether cause exists for an extension of the Exclusive

Periods, courts rely on a variety of factors, each of which may independently provide a sufficient

8

ground for extending the periods. Factors the courts have considered in making this determination include: (a) the size and complexity of the case; (b) the necessity of sufficient time to negotiate and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist. See, e.g., Cont'l Cas. Co. v. Burns & Roe Enters., Inc. (In re Burns & Roe Enters., Inc.), No. 00-41610, 2005 WL 6289213 (D.N.J. Nov. 2, 2005); In re R.G. Pharmacy, Inc., 374 B.R. 484, 487 (Bankr. D. Conn. 2007); In re Adelphia Commc'ns Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re Grand Traverse Dev. Co. L.P., 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); In re Sw. Oil Co. of Jourdanton, Inc., 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987).

**B.     Cause Exists to Extend the Exclusive Periods in These Cases**

18.    Each of the factors relevant to the Debtors' cases supports the relief they are requesting. As noted above, the terms of the Lock-Up Agreement contain important milestones associated with a plan process, including, among others, the filing of the Plan and Disclosure Statement within 60 days of the Petition Date, the approval of the adequacy of the Disclosure Statement within 90 days of the Petition Date, and confirmation of the Plan within 150 days of the Petition Date. Prior to the Petition Date, the Debtors and their principal creditor constituencies negotiated these "deliverables" and the timeline for their completion. The deliverables provide a reasoned and logical basis for an extension of the Exclusive Periods, as it would make little sense for the Exclusive Periods to lapse prior to the Debtors' ability to achieve

9

each milestone within the agreed upon timeframe.  Moreover, the Debtors have met all the

milestones—including filing a Plan and Disclosure Statement within 60 days of the Petition

Date—and have timely performed all their obligations under the Lock-Up Agreement.  The

Debtors have not been dilatory in these cases; rather, the Debtors have worked expeditiously to

address all critical issues and move these cases forward.  As noted above, the Debtors have

simultaneously addressed a variety of issues in an effort to stabilize their operations, including

vendor and customer relations, the preparation and filing of Schedules, and other operational and

case management issues.  See supra ¶ 10-13.  As a result of these efforts, the Debtors' business

operations have remained stable, and none of the Debtors' customers have experienced disruption

since the Petition Date.

18.    The Debtors are proceeding diligently to achieve confirmation of the pre-

arranged Plan within the timeframe contemplated under the Lock-Up Agreement, and the

progress the Debtors have made in these cases to date warrants the requested extension of the

Exclusive Periods.  The Debtors are more likely to be able to confirm their Plan if they are

permitted to continue working with their key constituencies without the distractions of a

competing plan of reorganization.  Indeed, a framework for that process is embedded in the Lock-

Up Agreement.  To deny an extension of the Exclusive Periods would jeopardize the significant

progress the Debtors have made to date, thereby defeating the objective of section 1121 of the

Bankruptcy Code to afford a debtor a meaningful and reasonable opportunity to negotiate with

creditors and propose and confirm a plan of reorganization.

19.    Also counseling in favor of an extension of the Exclusive Periods is the fact

that these cases are large and complex.  There are 18 Debtors in these jointly administered chapter

11 cases, each of which has a complex capital structure.  As of September 30, 2009, the Debtors

069152.1001

reported total assets having a book value of approximately $286,611,000. In addition, for the fiscal year ended September 30, 2009, the Debtors recorded approximately $333,000,000 in net sales.

20.    As noted, these cases have been pending for approximately 100 days. The Debtors believe that, under the relevant facts and circumstances, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of any creditor, and will afford the parties the opportunity to pursue to fruition the beneficial objectives of a confirmable plan of reorganization.

21.    Based upon the foregoing, cause exists in these bankruptcy proceedings to extend the Debtors' Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code. Thus, the Debtors respectfully request that the Court extend the Exclusive Filing Period through and including October 1, 2010, and extend the Exclusive Solicitation Period through and including December 1, 2010.

## NOTICE

21.    Notice of this Motion has been provided to: (i) counsel to the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the administrative agent for the Debtors' prepetition secured lenders; (iv) counsel to the agents for the Debtors' post-petition lenders; (v) counsel to the ad hoc committee of holders of the 9.5% secured notes; (vi) counsel to the holders of the 12.5% subordinated notes; and (vii) those parties requesting notice pursuant to Bankruptcy Rule 2002(i), in accordance with Local Rule 2002-1(b). In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

YCST01:9666744.1

069152.1001

WHEREFORE, the Debtors respectfully request entry of an order in substantially the form of the order attached to the Motion as Exhibit A, (i) extending the Exclusive Filing Period through and including October 1, 2010, (ii) extending the Exclusive Solicitation Period through and including December 1, 2010, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
      May 14, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Alison L. Triggs
One South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

      -and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

069152.1001