## IN UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEENAH ENTERPRISES, INC., et al.,[1]<br>　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 10-10360 (MFW)<br><br>Jointly Administered |

### SECOND MONTHLY APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS FOR THE PERIOD FROM MARCH 1, 2010 THROUGH MARCH 31, 2010

| | |
|---|---|
| Name of Applicant: | Rothschild Inc. |
| Authorized to Provide Professional Services to: | Neenah Enterprises, Inc., et al. |
| Date of Retention: | As of March 8, 2010, *nunc pro tunc* to February 3, 2010 |
| Period for which compensation and reimbursement are sought: | March 1, 2010 – March 31, 2010 |
| Amount of compensation sought as actual, reasonable, and necessary: | $175,000.00 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $5,461.07 |

This is a:　　　　　X　Monthly　_____ Interim　_____ Final Application

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

If this is not the first application filed, disclose the following for prior application:

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| 4/16/10 | 2/3/10 – 2/28/10 | $162,500.00 | $1,532.99 | No Objection | No Objection |

IN UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEENAH ENTERPRISES, INC., et al.,<br>　　　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 10-10360 (MFW)<br><br>Jointly Administered |

**SECOND MONTHLY APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF ROTHSCHILD INC. AS FINANCIAL
ADVISOR AND INVESTMENT BANKER TO THE DEBTORS FOR THE PERIOD
FROM
MARCH 1, 2010 THROUGH MARCH 31, 2010**

Rothschild Inc. ("Applicant"), investment banker and financial advisor to Neenah

Enterprises, Inc. ("Debtors"), makes this application for monthly compensation and

reimbursement of expenses from March 1, 2010 through March 31, 2010 and in support thereof

respectfully represents:

1.　　　This application is made pursuant to (i) Sections 327(a), 328(a) and 105(a) of Title

11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2014 of the Federal Rules of

Bankruptcy Procedure, (iii) the Administrative Order of this Court, dated March 8, 2010, Under

11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and

Reimbursement of Expenses for Professionals (the "Compensation Procedures Order") and (iv)

the Order of this Court, dated as of March 8, 2010 Authorizing the Debtors and Debtors-in-

Possession to Employ and Retain Rothschild Inc. as Financial Advisor and Investment Banker

Pursuant to 11 U.S.C. § 327(a) and 328(a) (the "Retention Order"), a copy of which is attached

hereto as Exhibit A. The Retention Order authorized a waiver of the informational requirements

of Local Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"). Pursuant to the Retention Order, the Debtors were authorized to employ and retain Applicant pursuant to the terms of a letter agreement, dated as of May 22, 2009 (the "Engagement Letter") a copy of which is attached as Exhibit B, between the Debtors and Applicant, subject to certain modifications. Under the Engagement Letter, Applicant is entitled, among other things, to payment of various fees, including a Monthly Fee, a Recapitalization Fee and a New Capital Fee, as defined in the Engagement Letter, as well as a reimbursement of Applicant's expenses, including those expenses related to the Indemnification provision of the Engagement Letter. Any payments with respect to fees or estimated expenses received by the Applicant from the Debtors in excess of the total expense or fee amount will be credited towards the payment of future fees and expenses.

2. Under the Engagement Letter, Applicant is entitled to a Monthly Fee of $175,000.00. In addition, the Debtors agreed to reimburse Applicant for all of Applicant's reasonable expenses incurred in connection with the performance of its engagement hereunder including without limitation the fees, disbursements and other charges of Applicant's legal counsel. Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. As defined in the Engagement Letter, the Applicant is also entitled to a Recapitalization Fee of $2,750,000 payable upon the earlier of (i) the confirmation and effectiveness of a Plan and (ii) the closing of a Transaction and a New Capital Fee equal to (i) 1.5% of the face amount of any senior secured debt raised including, without limitation, any debtor-in-possession financing raised; (ii) 2.5% of the face amount of any junior secured or second lien debt raised; (iii) 3.5% of the face amount of any unsecured debt raised; and (iv) 5.0% of any equity capital, or capital convertible into equity, raised (a "New Capital Raise); provided that, in no event shall the New Capital Fee with respect to any New Capital Raise be less than

$500,000. The New Capital Fee shall be payable upon the closing of the transaction by which the new capital is committed. Rothschild has agreed to credit (to the extent not otherwise credited) (i) 50% of the paid Monthly Fees in excess of $525,000 (the "Monthly Fee Credit") against any Recapitalization Fee or New Capital Fee and (ii) 50% of any paid New Capital Fees in excess of $500,000 (after application of any available Monthly Fee Credit) against the Recapitalization Fee; provided that in no event shall the Recapitalization Fee be reduced below zero nor shall the New Capital Fee be reduced below $500,000. Notwithstanding the terms of the Engagement Letter, including the foregoing, Rothschild and the Debtors, in consultation with the Secured Noteholders, agreed prior to the Petition Date that Rothschild's aggregate fees under the Engagement Letter (including the fees Rothschild earned prior to the Petition Date) shall not exceed $3.85 million.

3.    Pursuant to the terms of the Engagement Letter, dated as of May 22, 2009, between Applicant and the Debtors, it is proposed that Applicant will render the following financial advisory and investment banking services to the Debtors during these Chapter 11 cases, as necessary and requested by the Debtors[2]:

(a) review and analyze the Company's assets and the financial strategies of the Company;

(b) review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

---

[2]    To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control

(c) evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

(d) advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

(e) determine a range of values for the Company and any securities that the Company offers or proposes to offer in connection with a Transaction;

(f) assist the Company and its other professionals in reviewing the terms of any proposed Transaction or other transaction, in responding thereto and, if directed, in evaluating alternative proposals for a Transaction;

(g) assist in soliciting financing to replace the existing revolving credit facility and/or provide junior lien / last out financing within the revolving credit facility;

(h) assist in soliciting, reviewing and analyzing any proposals the Company receives from third parties in connection with a Transaction or other transaction;

(i) assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives or any acquirer of the Company or any of its assets in connection with a Transaction;

(j) assist in soliciting debtor-in-possession ("DIP") and/or exit financing should the Company seek protection under the Bankruptcy Code (as defined below);

(k) advise the Company with respect to, and attend, meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as necessary;

(l) in the event the Company determines to commence Chapter 11 cases, and if requested by the Company, participate in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and provide relevant testimony with respect to the matters described herein and issues arising in connection with any proposed Plan (as defined below); and

(m) render such other financial advisory and investment banking services as may be agreed upon by Rothschild and the Company.

4.    On or about May 22, 2009 the Debtors engaged Applicant to advise the Debtors with respect to potential financing, restructuring and/or strategic alternatives.  Pursuant to the Retention Order, Applicant provided financial advisory and investment banking services to the Debtors during the Relevant Period.  The Debtors chose to retain Applicant, among other reasons, because of Applicant's reputation as a leading investment banking firm and financial advisor and its substantial experience advising Debtors and other parties in interest in connection with all aspects of financial restructurings and Chapter 11 cases, including financial advice regarding mergers, acquisitions, divestitures, public and private financings and spin-offs and evaluation of assets and liabilities, formulation and negotiation of plans of reorganization and the restructuring of indebtedness.  Pursuant to the terms of the Engagement Letter, dated as of May

22, 2009, between Applicant and the Debtors, Applicant has been providing investment banking and financial advisory services to the Debtors and has become familiar with the Debtors' business and many of the issues that may arise in the context of these Chapter 11 cases.

5.       As of March 8, 2010 this Court entered the Retention Order, pursuant to Bankruptcy Code Sections 327(a) and 328(a) of the Bankruptcy Code.  The Retention Order stipulates that Applicant's fees and expenses shall be subject to review solely under the standard of review under section 328(a) of the Bankruptcy Code.  However, the United States Trustee shall have the right to object to Rothschild's request(s) for interim and final compensation and reimbursement based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code.

6.       By this Application, Applicant seeks approval of compensation accrued under the Engagement Letter during the period March 1, 2010 through March 31, 2010 (the "Relevant Period"), consisting of monthly fees in the amount of $175,000.00 and reimbursement of reasonable and necessary expenses incurred by Applicant during the Relevant Period in the amount of $5,461.07.  Under the terms of the Compensation Procedures Order, the Applicant requests a cash payment of 80% of its total monthly fees, totaling $140,000.00 after accounting for the 20% hold-back, 100% of its reimbursable expenses, totaling $5,461.07, for a total interim payment of $145,461.07.

7.       The Debtors have continued in possession of their properties and have continued to operate and manage their businesses as Debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases.

8.    By the Retention Order, this Court has approved the appointment of Applicant as investment banker and financial advisor to the Debtors to provide assistance to the Debtors in evaluating the complex financial and economic issues raised by this Chapter 11 case and to fulfill their statutory and fiduciary duties.  As more fully described in the Engagement Letter, the professional services that Applicant will render to the Debtors include, but shall not be limited to, the items mentioned previously in paragraph 3.

9.    A copy of the Engagement Letter and the resumes of key professionals of Applicant providing services to the Debtors are attached as Exhibits B and C, respectively.

10.    Senior level professionals with extensive experience in the area of investment banking and bankruptcy services have directed Applicant's team.  The investment banking services set forth above were performed primarily by Neil Augustine, Managing Director; Stephen Antinelli, Managing Director; Alexander Svoyskiy, Vice President; Richard Siegel, Associate and Mitch Houff, Analyst, as well as other professionals, as needed.  Applicant's general staffing policy is to assign senior bankers, experienced mid-level bankers, associates and financial analysts to each assignment.  Senior bankers, Neil Augustine and Stephen Antinelli, have overall responsibility for the case.  They are primarily responsible for developing strategy with respect to the case, directing negotiations and interfacing with the other senior professionals involved with the case.  They are also responsible for day-to-day coordination of the case and the review of all financial analyses.  The experienced mid-level banker, in this case Alexander Svoyskiy, guides the financial analyses and works closely with the associate, Richard Siegel, and financial analyst, in this case Mitch Houff, who assist in the day-to-day coordination of the case and perform extensive financial analyses.  The senior bankers, experienced mid-level banker, associate and financial analyst coordinate their actions so as to not duplicate efforts.  Given that

the senior bankers, the experienced mid-level banker, associate and the financial analyst have different roles in the case but have overlapping responsibilities, there are frequent times where it is appropriate for two or more bankers to be present at a meeting.

11.    The amount of fees and expenses sought in this application and Applicant's billing processes are consistent with market practices for investment banking firms both in and out of bankruptcy.  Applicant does not bill its clients based on the number of hours expended by its professionals.  It bills clients on a retainer basis (generally monthly), plus transaction fees. Accordingly, Applicant does not have hourly rates for its professionals and Applicant's professionals generally do not maintain time records for the work performed for its clients. Applicant's policy, for all engagements in or out of bankruptcy, is to dedicate the appropriate number of professionals to the assignment to complete the work as efficiently as possible. Applicant has, however, maintained a daily time log detailing the activities and services performed by Applicant on behalf of the Debtors during the Relevant Period.  These records describe the time expended by each professional for this period in half hour increments and are attached as exhibit E.

12.    Given the size and complexity of this case, the complicated corporate and financial structure of the Debtors, the degree of activity during the Relevant Period and the high level of services rendered by Applicant to the Debtors, Applicant believes that the compensation sought is fair and reasonable.

## BACKGROUND

13.    On February 3, 2010, the Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the U.S. Bankruptcy Court (the "Bankruptcy Court") for the District of Delaware (Case No. 10-10360 or the "Filings"). During

the pendency of the bankruptcy proceedings, the Debtors remain in possession of their properties and assets and the management of the Debtors and subsidiaries continues to operate the businesses of the Debtors as Debtors-in-possession. Since the Filings, the Debtors have continued to honor orders and provide services to its customers.

## SUMMARY OF SERVICES RENDERED

14.   All services rendered by Applicant during the Relevant Period were performed at the request or direction of the Debtors or professionals of Sidley Austin LLP ("Sidley") and Huron Consulting Inc. ("Huron"). Applicant has provided a broad range of necessary financial advisory services, and Applicant respectfully refers this Court to Exhibit E for a detailed recitation of the daily activities of its professionals during the Relevant Period. In summary, the main categories of services performed during the Relevant Period are described below:

### *Court Hearings / Filings*

15.   This category includes time spent by Rothschild professionals in Court in its capacity as financial advisor and investment banker to the Debtors, including time spent performing research and various analyses for the Debtors and assisting Sidley in the collection of salient documents in preparation for the Court proceedings, including the Disclosure Statement and Plan of Reorganization documents.

### *Financial and Operational Due Diligence*

16.   Rothschild's due diligence involves numerous meetings and telephone calls with officers of the Debtors and Huron. The subjects reviewed on these occasions include the reasonableness of the assumptions underlying the projections, the operating structure and

financial results of the Debtors, financial reporting structure, legal and tax structure of the Debtors and their subsidiaries, and numerous other subjects.

17.    Additionally, Rothschild assists the Company in coordinating the due diligence process for the Debtors' constituencies.  This process includes sessions to review the operating model, sales and costs assumptions for each division, balance sheet and cash flow assumptions and sourcing assumptions.  Rothschild professionals assist in the coordination and participate in teleconference calls and onsite meetings with the Company, their constituencies and advisors to the constituencies.  Rothschild also assists in the coordination of Company's responses to follow-on due diligence requests from the constituents and their advisors.

*Internal Meetings / Calls*

18.    This category includes time spent by Rothschild in internal meetings and calls with members of the Sidley and Huron teams, the Debtors' management team and other agents of the Company.  In general, given the complexity and nature of these reorganization proceedings, Rothschild professionals frequently participate in such internal meetings and calls.  These discussions are necessary throughout the course of these proceedings in order to synchronize efforts and determine a consensually agreed upon optimal course of action.  Discussions include, among other things, the Debtors' overall reorganization strategy, appropriate steps and recommended timing of future actions, general preparation in anticipation of meetings with the Creditors' Committee, Board of Directors, other third parties and Court proceedings.  This category also includes time spent with members of the Sidley and Huron teams, the Debtors' management and AECOM, the Debtors' environmental consultant, to discuss several environmental clean-up projects that the Company is undertaking, including, among other things, the Debtors' environmental cleanup strategy, the timing and estimated costs associated with these

environmental cleanup projects. In addition, this category includes time spent with and among Rothschild professionals keeping traveling team members informed of all relevant proceedings, deliberating on strategies going forward and time spent during which the more senior bankers instruct and review the work product of the more junior bankers.

### *Financial Analysis and Modeling*

19.     During the Relevant Period, Applicant assisted the Debtors in preparing various financial analyses including, but not limited to, updating the financial model to incorporate the revised projections provided by the Debtors, valuation work related to the Debtors as well as preparing various other analyses and presentations.

### *Board of Directors – Calls / Meetings / Discussions*

20.     Throughout the Relevant Period, Applicant participated in meetings with the Board of Directors to discuss various business, legal, operational restructuring, employee and Chapter 11 issues, as well as providing an update on the overall restructuring process and exploring related alternatives with the respect to the Debtors.

### *Noteholders – Calls / Meetings / Discussions*

21.     Throughout the Relevant Period, Applicant participated in weekly phone calls with the Debtors and the Secured Noteholders, and their advisors to discuss various business, legal, operational restructuring, employee and Chapter 11 issues. These calls provide an opportunity for the Noteholders and their advisors to diligence the Company's results and request additional information. Noteholders also have an opportunity to review the details of the Company's DIP covenant compliance on these calls.

*Creditor Committee – Calls / Meetings / Discussions*

22.    Throughout the Relevant Period, Applicant participated in meetings at the Company's headquarters and in phone calls with the Creditors' Committee advisors and assisted the Debtors in compiling materials in order to provide the Creditors' Committee with the information it has sought concerning the Debtors and these chapter 11 cases.

*General Presentation Preparation*

23.    This category includes time spent preparing various presentations, including presentations made to the Board of Directors of the Debtors and discussion materials to address issues raised during meetings among Company management, Rothschild, Sidley and Huron. This category also includes time spent printing and binding presentations on behalf of the Company for various meetings held in New York or at the Company's headquarters.

*Travel Time*

24.    This category includes time spent traveling on behalf of the Debtors, including flight time to and from the Debtors' headquarters in Neenah, Wisconsin and various facility sites as part of the due diligence process and travel time to and from the Bankruptcy Court.

*Fee Applications / Monthly Invoice*

25.    This category includes time spent preparing the Second Interim Fee Application of Rothschild Inc. for Compensation and Reimbursement of Expenses.

26.    Applicant respectfully submits that the compensation requested for the Relevant Period for services rendered by Applicant to the Debtors is fully justified and reasonable based on the following: (i) the degree of activity during the Relevant Period and the high level of

services rendered by Applicant to the Debtors; (ii) the complexity of the issues presented; (iii) the skill necessary to perform the financial advisory and investment banking services properly; (iv) the preclusion of other employment; (v) customary fees charged in non-bankruptcy situations for similar services rendered; (vi) time constraints required by the exigencies of the case and (vii) the experience, reputation and ability of the professionals rendering services.

## SUMMARY OF EXPENSES INCURRED

27.    During the Relevant Period, Applicant incurred reasonable and necessary out-of-pocket expenses aggregating $5,461.07.  Details of the expenses incurred during the Relevant Period are also provided in Exhibit D.  Applicant submits that all such expenses were necessarily incurred, are reasonable in amount and represent only the actual costs incurred.

28.    Applicant's charges for expenses to the Debtors are determined in the same manner as for clients in non-bankruptcy matters.  Out-of-pocket expenses incurred by Applicant are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client.  Applicant does not factor general overhead expenses into disbursements charged to clients in connection with Chapter 11 cases. Applicant has followed its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions explained:

(a)    Applicant's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints.  Applicant's employees are permitted to order meals in the office if Applicant's employee is required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or

holidays.   Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost;

(b)   Messengers and couriers are used by Applicant to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise, Applicant uses the regular postal system.   Any charges for either messengers or couriers are billed to the client at cost;

(c)   All airfare and other transportation charges incurred by Applicant's employees directly in connection with services to the client are billed to client at cost;

(d)   The research/database category consists of the cost of using databases (e.g., Disclosure, Securities Data Corporation, Dow Jones, etc.) to which Applicant subscribes to search for and obtain information used in Applicant's financial analyses.   Applicant pays the vendor's standard rate for such database services.   In certain instances, Applicant has determined that paying a flat annual or monthly fee for such services is less costly than contracting for such services on a per use basis.   Such annual or monthly services are allocated to clients based on such clients' use of each service.   The research category also consists of charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by Applicant;

(e)   Applicant bills photocopying charges at the rate of $.10 per page for black and white copies and $1.00 per page for color copies;

(f)   With respect to local travel, Applicant's general policy enables employees to travel by taxi or, in certain circumstances, by private car service, to and from

meetings while rendering services to a client on a client related matter, for which the client is charged. This policy is based on Applicant's determination that travel by taxi or private car service is the most efficient use of a professional's time. Applicant's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 9:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters;

(g)     Telephone expenses are charged based on Applicant's actual cost of telephone charges with respect to client matters. Cellular phone charges are based on vendor's actual invoices; and

(h)     Word processing charges represent actual costs incurred by Applicant's in-house vendor and actual cost of overtime secretarial support in connection with client matters.

29.   In the course of rendering services to the Debtors as their financial adviser and investment banker during the Relevant Period, Applicant incurred and paid certain expenses as outlined in Exhibit D. Applicant submits that all such expenses were necessarily incurred, are reasonable in amount and represent only the actual costs incurred by Applicant. Any payments received by the Applicant from the Debtors in excess of the total expense or fee amount will be credited towards the payment of future fees and expenses.

## CONCLUSION

30.   The services summarized by this application and rendered by Applicant to the Debtors during the Relevant Period were substantial, highly professional and instrumental to the

Debtors' performance in the cases. They were reasonable and necessary to the Debtors' performance of their duties.

31.    As noted above, in accordance with the provisions of the Compensation Procedures Order and the Retention Order, Applicant requests approval of total fees in the amount of $175,000.00 and the reimbursement of total expenses in the amount of $5,461.07 during the Relevant Period for a total payment of $180,461.07.

32.    As demonstrated throughout this Application, the amount of compensation requested by Applicant is necessary, fair and reasonable.

33.    All services for which compensation is sought were performed for and on behalf of the Debtors. Except as permitted under Section 504 of the Bankruptcy Code, Applicant has not entered into any agreement, express or implied, with any party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

34.    WHEREFORE, Applicant respectfully seeks approval of (a) Monthly Fees in the amount of $175,000.00, (b) reimbursement of reasonable and necessary expenses incurred by Applicant during the Relevant Period in the amount of $5,461.07 for a total of $180,461.07. Under the terms of the Compensation Procedures Order, the Applicant requests a cash payment of 80% of its total monthly fees, totaling $140,000.00 after accounting for the 20% hold-back, 100% of its reimbursable expenses, totaling $5,461.07, for a total interim payment of $145,461.07.

[Signature Page Follows]

Dated: New York, New York

May 2, 2010

ROTHSCHILD INC.

By:

Neil A. Augustine, Managing Director

**IN UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[3] Debtors. | Case No. 10-10360 (MFW) Jointly Administered |

**CERTIFICATION OF NEIL A. AUGUSTINE**

NEIL A. AUGUSTINE, after being duly sworn according to law, deposes and says:

1.      I am a Managing Director with the applicant firm, Rothschild Inc.

("Rothschild"), which firm maintains offices at 1251 Avenue of the Americas, New York, NY

10020.  Rothschild acted as investment banker to and rendered professional services on behalf of

the Debtors.  I submit this Certification with respect to the Interim Fee Application of Rothschild

Inc. as Financial Advisor and Investment Banker to the Debtors (the "Application").[4]

2.      I have personally performed many of the financial advisory and investment

banking services rendered by Rothschild as investment banker to the Debtors and am thoroughly

familiar with all other work performed on behalf of the Debtors by the professionals in the firm.

---

[3]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are:  Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300).  The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

[4]    Unless otherwise defined herein, all capitalized terms have the meanings given to them in the Application.

3.    I have reviewed the Application and the facts set forth therein are true and correct to the best of my knowledge, information and belief.

4.    Except to the extent that fees or disbursements are prohibited by the Local Guidelines or the Trustee Guidelines, the fees and disbursements sought are billed in accordance with practices customarily employed by Rothschild and generally accepted by Rothschild's clients.  The Retention Order authorized a waiver of the informational requirements of Local Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

5.    In providing reimbursable service, Rothschild does not make a profit on that service, whether the service is performed by Rothschild in house or through a third party.

6.    The U.S. Trustee and the Debtors will each be provided with a copy of the Application simultaneously with the filing thereof, and will have at least 14 days to review such Application prior to any hearing with respect thereto.

[Signature Page Follows]

_____
Neil A. Augustine, Managing Director


SWORN AND SUBSCRIBED before me this 28 day of May 2010.


_____
Notary Public
My Commission Expires:


DONNA GRASSO SHANDLEY
Notary Public, State Of New York
No.01GR6058322
Qualified In Westchester County
Commission Expires May 7, 20 11