# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEENAH ENTERPRISES, INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-10360 (MFW)<br><br>Jointly Administered<br><br>Hearing Date: June 23, 2010 at 9:30 a.m. ET<br>Objection Deadline: June 23, 2010 at 9:30 a.m. ET |

## MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b) AND 503(b) AUTHORIZING THE DEBTORS TO (I) REIMBURSE ALL REASONABLE AND DOCUMENTED FEES AND EXPENSES INCURRED BY THE EXIT FINANCING LENDERS AND (II) PROVIDE RELATED INDEMNITIES

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby move this Court (the "Motion") for entry of an order, pursuant to sections 105(a), 363(b), and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Debtors to (i) reimburse all reasonable and documented out-of-pocket fees, costs and expenses (including, without limitation, the reasonable fees and disbursements of counsel and other professionals), incurred by the Exit Lenders (as defined below) in connection with (a) the preparation, negotiation, execution and delivery of commitment letters, term sheets, and any and all documentation for the Exit Facilities (as defined below); and (ii) provide related indemnities to the Exit Lenders. In support of this Motion, the Debtors respectfully state the following:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

## STATUS OF THE CASE AND JURISDICTION

1. On February 3, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On February 4, 2010, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

2. On February 17, 2010, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in these chapter 11 cases.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 363(b) and 503(b) of the Bankruptcy Code.

## BACKGROUND TO THE MOTION

4. On April 27, 2010, the Court entered an order approving the Disclosure Statement for the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries (the "Disclosure Statement") [Docket No. 325]. The Debtors are currently soliciting votes on the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries, dated April 27, 2010 (the "Plan") [Docket No. 324]. The hearing to consider confirmation of the Plan (the "Confirmation Hearing") was originally scheduled for June 23, 2010 at 9:30 a.m. (Eastern Time). On June 18, 2010, at the request of the Debtors, the Court entered an order [Docket No. 547] continuing the Confirmation Hearing to July 6, 2010 at 11:30 a.m. (Eastern Time).

5. The Plan provides for the Reorganized Debtors to enter into the Exit Term Loan Facility[2] and the Exit Revolving Facility (collectively, the "Exit Facilities") on the Effective Date.[3] The Exit Facilities are a key element of the restructuring contemplated by the Plan and will, among other things, allow the Reorganized Debtors to repay the DIP Term Facility and the DIP Revolving Facility on the Effective Date, make cash distributions under the Plan and pay administrative expenses, and fund their business operations after the Effective Date.

6. Since the commencement of these chapter 11 cases, the Debtors have known that exit financing would be required to implement a plan of reorganization. Following the Court's approval of the Disclosure Statement, the Debtors (in consultation with their financial advisors, Rothschild, Inc. ("Rothschild")) intensified their search for exit financing. In connection with this process, Rothschild approached a broad spectrum of potential lenders, ranging from traditional lending institutions (such as Bank of America, N.A. ("Bank of America"), the Prepetition Agent and DIP Revolving Facility Agent) to alternative investors such as hedge funds and private equity firms. Rothschild contacted more than fifty (50) potential lenders, approximately thirty (30) of whom expressed interest in providing the exit financing and received related materials from the Debtors. By the middle of May 2010, the Debtors had received indications of interest in the form of initial term sheets from seven (7) potential lenders. In addition, the members of the Ad Hoc Committee of Secured Noteholders submitted a proposal to provide the Exit Term Loan Facility. The Debtors then engaged in additional discussions with the potential exit financing lenders to refine and improve the terms of their initial proposals.

---

[2] Capitalized terms used but not defined in this Motion have the meaning assigned to such terms in the Plan.

[3] Section 5.8 of the Plan specifically provides that, on the Effective Date, the Reorganized Debtors shall be authorized and directed to enter into the Exit Term Loan Facility Documentation and the Exit Revolving Facility Documentation and to execute all other necessary and appropriate documentation in connection with the Exit Facilities.

7. After examining their options, and following consultation with the Ad Hoc Committee of Secured Noteholders, the Debtors have decided to (i) pursue a commitment from Bank of America (the "Exit Revolving Facility Lender") to provide the Exit Revolving Facility in a principal amount of up to $75,000,000 and (ii) pursue a commitment from GoldenTree Asset Management LP and MacKay Shields LLC (not in their individual capacities but on behalf of certain funds and/or accounts that they manage or advise) (the "Exit Term Loan Lenders" and, together with the Exit Revolving Facility Lender, the "Exit Lenders") to provide the Exit Term Loan Facility in a principal amount of up to $60,000,000. The Debtors and the Exit Lenders, with the assistance of their respective legal and financial advisors, are in the process of negotiating detailed term sheets, commitment letters, and fee letters for the Exit Facilities. The Debtors expect to seek the Court's approval of such term sheets, commitment letters, and fee letters (and related documentation) for the Exit Facilities at the Confirmation Hearing.

## RELIEF REQUESTED

8. By this Motion, the Debtors seek the authority, pursuant to sections 105(a), 363(b) and 503(b) of the Bankruptcy Code, to (i) reimburse all reasonable and documented out-of-pocket fees, costs and expenses (including, without limitation, the reasonable fees and disbursements of counsel and other professionals) incurred by the Exit Lenders in connection with the preparation of the Exit Term Loan Facility Documentation and the Exit Revolving Facility Documentation and (ii) provide related indemnities to the Exit Lenders.

9. The Exit Lenders have requested that the Debtors reimburse their expenses and provide related indemnities in connection with the preparation of the Exit Term Loan Facility Documentation and the Exit Revolving Facility Documentation. Specifically, the Exit Lenders

have requested that the Debtors agree to the following expense reimbursement and indemnity provisions (collectively, the "Expense Reimbursement and Indemnity Provisions"):

### Exit Revolving Facility

- Fees and Expenses: Debtors agree to pay or reimburse, all reasonable and documented out-of-pocket fees, costs and expenses (including, without limitation, reasonable fees and disbursements of counsel, reasonable consultant costs and expenses, filing and recording fees, and costs and expenses associated with due diligence, travel, appraisals, valuations and audits) incurred by or on behalf of Bank of America in connection with (i) the preparation, negotiation, execution and delivery of the Exit Revolving Facility Documentation, and (ii) the enforcement of Bank of America's rights and remedies under the Exit Revolving Facility Documentation, in each case irrespective of whether the Exit Revolving Facility is consummated.

  The Debtors' reimbursement obligation would apply whether or not the Exit Revolving Facility closes, and Bank of America's right to receive reimbursement of all costs and expenses incurred in connection with the Exit Revolving Facility would be entitled to priority as an administrative expense claim under section 503(b)(1) of the Bankruptcy Code, and would be payable by the Debtors not later than three (3) business days after written demand by Bank of America and without further order of the Court, whether or not the Exit Revolving Facility closes.

- Indemnification: Debtors agree to indemnify and hold harmless Bank of America and each of its affiliates, directors, officers, employees, advisors and agents (each, an "Indemnified Party") from and against (and will reimburse each Indemnified Party for) any and all losses, claims, damages, liabilities, and expenses (including, without limitation, the reasonable fees and expenses of counsel) that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or by reason of (including, without limitation, in connection with any investigation, litigation or proceeding or preparation of a defense in connection therewith) any matters contemplated by the Exit Revolving Facility or any use made or proposed to be made with the proceeds thereof, unless and only to the extent that, as to any Indemnified Party, it shall be determined in a final, non-appealable judgment by a court of competent jurisdiction that such losses, claims, damages, liabilities or expenses resulted from the gross negligence or willful misconduct of such Indemnified Party or its affiliates, directors, officers, employees, advisors or agents. The Debtors agree that no Indemnified Party shall have any liability for any indirect or consequential damages in connection with the Exit Revolving Facility.

YCST01:9820804.2    069152.1001

# Exit Term Loan Facility

- **Fees and Expenses**. The Debtors agree to pay or reimburse the Exit Term Loan Lenders and Wilmington Trust FSB, the proposed administrative agent for the Exit Term Loan Facility (the "Exit Term Loan Agent"), on demand, but in no event later than three (3) business days after such demand, for all reasonable and documented out-of-pocket costs and expenses incurred by the Exit Term Loan Agent and the Exit Term Loan Lenders in connection with the Exit Term Loan Facility (together with reasonable supporting documentation therefor) and the preparation, negotiation, execution and delivery of the Exit Term Loan Facility Documentation, the administration, amendment, modification or waiver thereof and any security arrangements in connection therewith, including, without limitation, the reasonable fees, costs and expenses of counsel, including local counsel, to the Exit Term Loan Agent and the Exit Term Loan Lenders, whether or not the Exit Term Loan Facility is consummated. The Debtors further agree to pay all reasonable and documented costs and expenses of the Exit Term Loan Agent and the Exit Term Loan Lenders (including, without limitation, the reasonable fees, costs and expenses of counsel, including local counsel, to the Exit Term Loan Agent and the Exit Term Loan Lenders) incurred in connection with the enforcement of any of their rights and remedies under any Exit Term Loan Facility Documentation.

    The Debtors' reimbursement obligation would apply whether or not the Exit Term Loan Facility closes, and the rights of the Exit Term Loan Agent and the Exit Term Loan Lenders to receive reimbursement of all costs and expenses incurred in connection with the Exit Term Loan Facility would be entitled to priority as an administrative expense claim under section 503(b)(1) of the Bankruptcy Code, and would be payable by the Debtors not later than three (3) business days after written demand by the Exit Term Loan Agent or the Exit Term Loan Lenders and without further order of the Court, whether or not the Exit Term Loan Facility closes.

- **Indemnification**. The Debtors agree to indemnify and hold harmless the Exit Term Loan Agent and the Exit Term Loan Lenders and each of their respective affiliates and each of their respective officers, directors, employees, agents, advisors and representatives (each, an "Indemnified Person") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Person (including, without limitation, in connection with any investigation, litigation or proceeding or the preparation of a defense in connection therewith), in each case arising out of or in connection with or by reason of any Exit Term Loan Facility Documentation or the transactions contemplated thereby, or any use made or proposed to be made with the proceeds of the Exit Term Loan Facility, except to the extent such claim, damage, loss, liability or expense is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's gross negligence or willful misconduct. In the

case of an investigation, litigation or other proceeding to which the indemnity in this paragraph applies, such indemnity shall be effective, whether or not such investigation, litigation or proceeding is brought by any Debtor, any securityholder or creditor of any Debtor, an Indemnified Person or any other person, or an Indemnified Person is otherwise a party thereto and whether or not the transactions contemplated hereby are consummated.

No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to any Debtor, or any of its securityholders or creditors for or in connection with the transactions contemplated hereby, except for direct damages (as opposed to special, indirect, consequential or punitive damages including, without limitation, any loss of profits, business or anticipated savings) determined in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's gross negligence or willful misconduct.

## BASIS FOR RELIEF REQUESTED

10. Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts interpreting section 363(b) of the Bankruptcy Code have generally approved the use, sale, or lease of estate property out of the ordinary course of business if the debtor has offered a sound business justification. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 142, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease or property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for the use of property under section 363).

11. The debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner that is outside the ordinary course of business.

7

See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); Montgomery Ward, 242 B.R. at 154. Once a debtor articulates a valid business justification, however, a presumption arises that the debtor's decision is made "on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule thus shields a debtor's management from judicial second guessing, and mandates that a court approve a debtor's business decision unless that decision is the product of bad faith or gross abuse of discretion. Id.; see also Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986).

12. In the Debtors' judgment, there are substantial business justifications for the Debtors to agree to the Expense Reimbursement and Indemnity Provisions. As discussed above, the Exit Facilities are an indispensable element of the restructuring transactions contemplated under the Plan and are necessary for the Debtors to confirm and implement the Plan. The Exit Lenders have informed the Debtors that they are not prepared to incur significant out-of-pocket expenses without assurances that such expenses will be reimbursed by the Debtors, regardless of whether the Exit Facilities are consummated. The Debtors believe that the Expense Reimbursement and Indemnity Provisions are customary and reasonable under the circumstances and will provide a significant benefit to the Debtors' estates by ensuring that the Exit Lenders and the Debtors continue negotiating and finalizing the terms of the Exit Revolving Facility Documentation and the Exit Term Loan Facility Documentation.

13. For these reasons, the Debtors submit that the relief requested in this Motion is in the best interests of the Debtors and their estates and therefore should be granted.

YCST01:9820804.2

069152.1001

## **NOTICE**

14. The Debtors will provide notice of this Motion to: (i) counsel to the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Prepetition Agent and the DIP Revolving Facility Agent; (iv) counsel to the DIP Term Facility Agent; (v) counsel to the Ad Hoc Committee of Secured Noteholders; (vi) counsel to the Subordinated Noteholders; and (vii) those parties requesting notice pursuant to Bankruptcy Rule 2002(i). In light of the nature of the relief requested herein, the Debtors believe no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of an order, in substantially the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and granting such other and further relief as the Court determines to be just and proper.

Dated: Wilmington, Delaware
June 18, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Alison L. Triggs
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Robert S. Brady_
Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Morgan L. Seward (No. 5388)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION