# EXHIBIT 4

**(Form of New Warrants)**[1]

---

[1] The Debtors expressly reserve the right to supplement, modify or amend this document at any time prior to the Effective Date.

DRAFT
SUBJECT TO CHANGE

<u>EXHIBIT 4</u>

### SERIES [A][B] WARRANT

**THIS WARRANT WAS ORIGINALLY ISSUED ON [•], 2010 PURSUANT TO AN EXEMPTION FROM THE REGISTRATION REQUIREMENT OF SECTION 5 OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") PURSUANT TO SECTION 1145 OF TITLE 11 OF THE UNITED STATES CODE, 11 U.S.C. §§ 101-1532, AND NEITHER THIS WARRANT NOR THE SECURITIES ISSUABLE UPON EXERCISE OF THIS WARRANT HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OR ANY STATE SECURITIES LAW.  THIS WARRANT AND THE SECURITIES ISSUABLE UPON EXERCISE OF THIS WARRANT MAY NOT BE SOLD OR TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR AN EXEMPTION FROM REGISTRATION THEREUNDER.   THIS WARRANT AND THE SECURITIES ISSUABLE UPON EXERCISE OF THIS WARRANT ARE SUBJECT TO CERTAIN TRANSFER AND OTHER RESTRICTIONS SET FORTH HEREIN. THE ISSUER HEREOF RESERVES THE RIGHT TO REFUSE THE TRANSFER OF THIS WARRANT AND THE SECURITIES ISSUABLE UPON EXERCISE OF THIS WARRANT EXCEPT IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS WARRANT.**

**NO. W[A][B]-1**                                              **[•] Shares**

### WARRANT TO PURCHASE SHARES OF COMMON STOCK
### OF NEENAH ENTERPRISES, INC.

THIS CERTIFIES THAT, for value received, NEENAH ENTERPRISES, INC., a Delaware corporation (the "<u>Company</u>"), promises to issue to [INSERT NAME OF HOLDER], the holder of this warrant (this "<u>Warrant</u>"), or its successors or assigns (the "<u>Holder</u>"), [•][1] nonassessable shares of Common Stock (as defined below), upon the payment by the Holder to the Company of the Warrant Price (as defined herein) in accordance with <u>Section 1.2</u> hereof, and to deliver to the Holder a certificate or certificates representing the shares of Common Stock so purchased or uncertificated shares of Common Stock registered in the stock ledger of the Company.  The number of shares of Common Stock purchasable upon exercise of this Warrant and the Warrant Price shall be subject to adjustment from time to time as provided herein.  The warrant price per share of Common Stock shall initially be equal to [$19.33][2] [$•][3] per share (the "<u>Warrant Price</u>"), subject to adjustment as provided herein.

---

[1]    Insert Holder's pro rata portion.

[2]    Initial exercise price for Series A Warrant.

[3]    Initial exercise price for Series B Warrant shall be equal to (a) (i) $500 million <u>minus</u> (ii) the outstanding debt of the Reorganized Debtors as of the Effective Date <u>minus</u> (iii) $1.4 million (which represents the fair market value of the Series A Warrants as of the Effective Date calculated based off the Black-Scholes options pricing model) <u>plus</u> (iv) Cash and Cash Equivalents of the Reorganized Debtors as of the Effective Date <u>divided by</u> (b) ten million (10,000,000) shares of New Common Stock.

For the purpose of this Warrant, the term "Common Stock" shall mean (i) the class of stock designated as the common stock of the Company at the date of this Warrant, or (ii) any other class or classes of stock resulting from changes or reclassifications of such class of stock, and the term "Business Day" shall mean any day other than a Saturday or Sunday or a day on which commercial banks in New York, New York are required or authorized to be closed.

Section 1.    Term of Warrant, Exercise of Warrant.

Section 1.1    (a) Subject to the terms of this Warrant, the Holder shall have the right, at the Holder's option, which may be exercised in whole or in part, at any time, and from time to time, commencing at the time of the issuance of this Warrant and until the earlier of (i) immediately prior to the consummation of a Liquidity Event (as defined below), and (ii) 5:00 p.m. Eastern Time on [●][4] (the "Warrant Expiration Time"), to purchase from the Company the number of fully paid and nonassessable shares of Common Stock which the Holder may at the time be entitled to purchase upon exercise of this Warrant (the "Warrant Shares"). After the Warrant Expiration Time, this Warrant will be void.

(b)    Holder agrees that, in the event of a Liquidity Event, either (i) Holder shall elect to exercise this Warrant in whole and such exercise will be deemed effective immediately prior to the consummation of such Liquidity Event, or (ii) Holder shall elect not to exercise this Warrant or elect to exercise only a portion of this Warrant and the unexercised portion of this Warrant will expire upon the consummation of such Liquidity Event and be of no further force or effect. The Company shall provide the Holder with the information set forth in Section 4.3 in connection with such contemplated Liquidity Event, which is to be delivered to Holder promptly following the earlier to occur of (x) the entry by the Company into a definitive written agreement with respect to such contemplated Liquidity Event, and (y) if applicable, the record date set for any stockholder vote required with respect to such Liquidity Event, but in no event less than ten (10) Business Days prior to the consummation of the proposed Liquidity Event. For purposes of this Warrant, the term "Liquidity Event" shall mean any of the following, unless the Company shall otherwise elect by written notice to the Holder: (A) the liquidation, dissolution or winding up of the Company, (B) the merger, consolidation or sale of stock to which the Company is a party and which the holders of the voting securities of the Company immediately prior thereto own less than a majority of the outstanding voting securities of the surviving entity immediately following such transaction, (C) the direct or indirect sale or other transfer, in one or a series of related transactions (including without limitation any merger or consolidation) of all or substantially all of the property and assets of the Company and its subsidiaries, or (D) the consummation of an underwritten public offering on a firm commitment basis pursuant to an effective registration statement filed pursuant to the Securities Act, covering the offer and sale of shares of Common Stock representing more than 20% of the shares of Common Stock issued and outstanding immediately prior to the consummation thereof.

Section 1.2    The purchase right evidenced by this Warrant shall be exercised by the Holder surrendering this Warrant, with the form of Exhibit A hereof duly executed by the

---

[4]    To be inserted on the Effective Date. The Series A Warrant Expiration Date shall be the day, month and year that is five calendar years from the issuance date of this Warrant. The Series B Warrant Expiration Date shall be the day, month and year that is seven calendar years from the issuance date of this Warrant.

Holder, to the Company during normal business hours on any Business Day at its office at 2121 Brooks Avenue, Neenah, Wisconsin 54956 (or, in the event the Company's principal office is no longer located at 2121 Brooks Avenue, Neenah, Wisconsin 54956, its then principal office (the "Principal Office")), accompanied by the payment of an amount (the "Exercise Payment") equal to the Warrant Price, multiplied by the number of Warrant Shares being purchased pursuant to such exercise, in cash, payable to the Company by certified or official bank check, or by wire transfer in immediately available funds of the Exercise Payment.

Section 1.3    Upon any exercise of this Warrant, the Company shall issue and cause to be delivered with all reasonable dispatch to or upon the written order of the Holder and, subject to Section 3, in such name or names as the Holder may designate, a certificate or certificates for the number of full Warrant Shares issuable upon such exercise (unless such Warrant Shares are uncertificated, in which case the Company shall register such uncertificated Warrant Shares in the stock ledger of the Company in such name or names as the Holder may designate) together with such other property which may be deliverable upon such exercise. Except in the event of a Liquidity Event, if fewer than all of the Warrant Shares represented by this Warrant are purchased, a new Warrant of the same tenor as this Warrant, evidencing the Warrant Shares not purchased, will be issued and delivered by the Company to the Holder, together with the issuance of the certificates representing the Warrant Shares then being purchased (unless such Warrant Shares are uncertificated, in which case the Company shall register such uncertificated Warrant Shares in the stock ledger of the Company). This Warrant shall be canceled by the Company upon the exercise and surrender of this Warrant in accordance with this Section 1.

Section 2.    Warrant Register, Registration of Transfers.

Section 2.1    Warrant Register.  The Company shall keep at its Principal Office a register in which the Company shall record the name and address of the holder of this Warrant from time to time and all transfers and exchanges of this Warrant (the "Warrant Register"). The Company shall give the Holder prior written notice of any change of the address at which the Warrant Register is kept.

Section 2.2    Registration of Transfers, Exchanges or Assignment of Warrants.

(a)    Subject to compliance with applicable securities laws and the other provisions of this Section 2, the Holder shall be entitled to assign the Holder's interest in this Warrant in whole or in part to any person upon surrender of this Warrant accompanied by a written instrument or instruments of transfer in the form of Exhibit B hereof duly completed and executed by the Holder. This Warrant may also be exchanged or combined with warrants of like tenor at the option of the Holder for another Warrant or Warrants of like tenor and representing in the aggregate the right to purchase a like number of Warrant Shares upon presentation thereof to the Company at its Principal Office together with a written notice signed by the Holder specifying the denominations in which the new Warrant is or the new Warrants are to be issued.

(b)    Upon surrender for transfer or exchange of this Warrant to the Company at its Principal Office for transfer or exchange, in accordance with this Section 2.2, the Company shall, without charge (subject to Section 3), execute and deliver a new Warrant or Warrants of like tenor and of a like aggregate amount of Warrant Shares in the name of the assignee named in

NY 72639423v9

such instrument of assignment and, if the Holder's entire interest is not being assigned, in the name of the Holder with respect to that portion not transferred, and this Warrant shall promptly be canceled.

(c)     This Warrant (or any portion hereof) may not be sold or otherwise transferred in violation of federal or state securities laws. Further, no sale or other transfer of this Warrant (or any portion hereof) shall be permitted (i) if (A) the Company is not, at the time of such transfer, a reporting company under the Securities Exchange Act of 1934, as amended (the "Exchange Act") and (B) after giving effect to such sale or transfer, the Company would be, or would be obligated to become, a reporting company under the Exchange Act (including becoming subject to the periodic reporting requirements of Section 13 or 15(d) of the Exchange Act), (ii) to a person or entity engaged in direct competition with the Company or any of its subsidiaries, or (iii) if such sale or transfer is otherwise prohibited by, or in conflict or violation of, terms of the certificate of incorporation or by-laws of the Company (as then in effect) applicable to all holders of the Company's equity securities. The Company, if it reasonably deems it to be necessary, may require, as a condition to any sale or transfer of a Warrant, that the holder deliver to the Company an opinion of counsel, in form and substance reasonably satisfactory to the Company, to the effect that such sale or transfer is made in compliance with all applicable federal and state securities laws or pursuant to an exemption under the Securities Act and state securities laws. The provisions of this Section 2.2 shall not apply to the exercise of any Warrant to the extent that the Warrant Shares issued upon such exercise (and any unexercised portion of the Warrant so exercised) shall be issued to the same registered holder that exercised such Warrant. Notwithstanding the foregoing, the Company hereby acknowledges that the Holder, if then under common control with Tontine Asset Associates, LLC (a "Tontine Affiliate"), may from time to time transfer all or any portion of this Warrant to Tontine Capital Overseas Master Fund II, L.P. or any other Tontine Affiliate, upon compliance with the immediately preceding Section 2.2(b).

(d)     The Warrant shall bear such legends as the Company shall determine reflecting the restrictions in the immediately preceding Section 2.2(c).

(e)     In the event of any purported sale or transfer in violation of the provisions of this Warrant, such purported transfer shall be void *ab initio*, and the Company shall not give effect to such transfer.

Section 3.     Payment of Taxes. The Company shall pay all documentary stamp taxes, if any, attributable to the initial issuance to the Holder of any Warrant Shares upon the exercise of this Warrant. The Company shall not, however, be required to pay any tax which may be payable in respect of any transfer involved in the transfer and delivery of stock certificates or registration of uncertificated shares, as applicable, in the name other than that of the Holder exercising this Warrant, and any such tax shall be paid by such Holder at the time of presentation.

Section 4.     Certain Covenants.

Section 4.1     Reservation of Warrant Shares. There have been reserved and the Company shall at all times keep reserved, out of its authorized but unissued Common Stock, free

4

from any preemptive rights, rights of first refusal or other restrictions (other than pursuant to applicable law), a number of shares of Common Stock sufficient to provide for the exercise of the right of purchase represented by this Warrant. The transfer agent, if any, for the Common Stock, and every subsequent transfer agent for any shares of its Common Stock issuable upon the exercise of the right of purchase as set out in this Warrant, shall be irrevocably authorized and directed at all times to reserve such number of authorized shares as shall be requisite for such purpose.

Section 4.2    No Impairment. The Company shall not by any direct or indirect action or omission avoid or seek to avoid the observance or performance of any of the terms of this Warrant, but shall at all times in good faith assist in the carrying out of all such terms and in the taking of all such action, as may be necessary or appropriate to protect the rights of the Holder against impairment. Without limiting the generality of the foregoing, the Company shall take all such action as may be necessary or appropriate so that the Company may validly issue fully paid and nonassessable shares of Common Stock upon the exercise of this Warrant at the then Warrant Price therefor.

Section 4.3    Notice of Liquidity Event.    In case the Company shall propose to consummate a Liquidity Event, then the Company shall give to the Holder a notice of such Liquidity Event, which shall include a summary description of the material terms of the Liquidity Event and shall specify the date on which such Liquidity Event is to take place. Such notice shall be so given promptly following the earlier to occur of (x) the entry by the Company into a definitive written agreement with respect to such contemplated Liquidity Event, and (y) if applicable, the record date set for any stockholder vote required with respect to such Liquidity Event, but in no event less than ten (10) Business Days prior to the consummation of the proposed Liquidity Event.

Section 5.    Adjustment of Warrant Price.

Section 5.1    Adjustment for Change in Capital Stock. In case the Company shall at any time (a) issue additional shares of Common Stock as a dividend or other distribution on outstanding shares of Common Stock, (b) subdivide its outstanding shares of Common Stock into a greater number of shares of Common Stock, or (c) combine, reverse split or consolidate its outstanding shares of Common Stock into a smaller number of shares of Common Stock, then (x) the Warrant Price in effect immediately prior to such event shall be adjusted immediately after such event or on the record date for such issuance of shares by way of stock dividend, as the case may be, to that price determined by multiplying the Warrant Price in effect immediately prior to such event by a fraction (i) the numerator of which shall be the total number of outstanding shares of Common Stock immediately prior to such event, and (ii) the denominator of which shall be the total number of outstanding shares of Common Stock immediately after such event, and (y) the number of shares of Common Stock purchasable upon the exercise of any Warrant shall be that number of shares of Common Stock obtained by multiplying the number of shares of Common Stock purchasable immediately prior to such adjustment upon the exercise of such Warrant by the Warrant Price in effect immediately prior to such adjustment and dividing the product so obtained by the Warrant Price in effect after such adjustment. Any such adjustments shall be made successively whenever any event referred to in this Section 5.1 shall occur and any such issue of shares of Common Stock by way of stock dividend shall be deemed

to have been made on the record date for the stock dividend for the purpose of calculating the number of outstanding shares immediately after such event under this <u>Section 5.1</u>.

Section 5.2    <u>Reorganization, Reclassification, Consolidation, Merger or Sale</u>.  Except in the event of a subdivision, combination or similar event otherwise provided for in <u>Section 5.1</u>, or in the event of a Liquidity Event, which shall be governed by <u>Section 1.1</u> above, if any capital reorganization or reclassification of the capital stock of the Company, or any consolidation or merger of the Company with another corporation shall be effected in such a way that holders of Common Stock shall be entitled to receive stock, securities or assets with respect to or in exchange for Common Stock, then, as a condition of such reorganization, reclassification, consolidation, exercise, merger or sale, lawful and adequate provision shall be made whereby the Holder shall thereafter have the right to receive upon the basis and upon the terms and conditions specified herein and in lieu of the shares of Common Stock immediately theretofore receivable upon the exercise of this Warrant, the amount of shares of stock, securities or assets (including cash) as may be issued or payable with respect to or in exchange for a number of outstanding shares of such Common Stock equal to the number of Warrant Shares for which this Warrant could have been exercised immediately prior to such reorganization, reclassification, consolidation, merger or sale, and in any such case appropriate provision shall be made with respect to the rights and interests of such Holder to the end that the provisions hereof shall thereafter be applicable, as nearly as may be, in relation to any shares of stock, securities or assets (including cash) thereafter deliverable upon the exercise of this Warrant.  The Company will not effect any consolidation, merger or sale (other than a Liquidity Event), unless prior to the consummation thereof the successor corporation (if other than the Company) resulting from such consolidation or merger or the corporation purchasing such assets shall assume, by written instrument executed and mailed or delivered to the Holder at the last address of such Holder appearing on the books of the Company, the obligation to deliver to such Holder such shares of stock, securities or assets (including cash) as, in accordance with the foregoing provisions, the Holder may be entitled to receive.  Notwithstanding the foregoing, this Warrant shall expire upon the consummation of a Liquidity Event.

Section 5.3    <u>No Adjustment for Exercise of Options, Warrants, Etc. or Future Issuance of Common Stock</u>.  Except as otherwise set forth in this <u>Section 5</u>, the Warrant Price and the number of shares purchasable upon exercise of this Warrant shall not be adjusted for (i) any issuance (or deemed issuance) of Common Stock or rights to acquire Common Stock or securities exchangeable or exercisable for or convertible into Common Stock to any person pursuant to any stock option, stock purchase or other incentive plan or arrangement for the benefit of employees, consultants or directors of the Company or its subsidiaries in effect at any time or (ii) any other issuance (or deemed issuance) of Common Stock or rights to acquire Common Stock or securities exchangeable or exercisable for or convertible into Common Stock at any time after the date hereof.

Section 5.4    <u>Fractional Shares</u>.  The Company shall not issue fractions of shares of Common Stock upon exercise of this Warrant or scrip in lieu thereof.  If any fraction of a share of Common Stock would, except for the provisions of this <u>Section 5.4</u>, be issuable upon exercise of this Warrant, the Company shall in lieu thereof pay to the person entitled thereto an amount in cash equal to the current value of such fraction, calculated to the nearest one-hundredth (1/100) of a share, to be computed on the basis of the Fair Market Value for a share of Common Stock as

6

of the date of exercise. The term "Fair Market Value" shall mean the closing price of a share of Common Stock or other security on the date of the issuance or sale on the principal national securities exchange on which the Common Stock is listed or admitted to trading or, if the Common Stock or such other security is not listed or admitted to trading on any national securities exchange, in the over-the-counter market or, if the Common Stock or such other security is not publicly traded, the Fair Market Value for such day shall be the fair market value thereof determined by the board of directors of the Company.

Section 5.5    Notice of Adjustment. Promptly following any adjustment of the Warrant Price, and from time to time upon the request of the Holder, the Company shall furnish to the Holder a notice setting forth the amount of the Warrant Price resulting from such adjustment or otherwise in effect and the number of Warrant Shares then available for purchase under this Warrant, setting forth in reasonable detail the method of calculation and the facts upon which such calculation is based. If the Holder disagrees with the resulting adjustment of the Warrant Price or the number of Warrant Shares, the method of calculation or the facts upon which the calculation is based, Holder shall provide written notice of such disagreement to the Company setting forth in reasonable detail the basis for its disagreement. Promptly thereafter, the Company and Holder shall negotiate in good faith to resolve such disagreement and determine the correct adjustment to the Warrant Price or number of Warrant Shares.

Section 5.6    Certain Events. If any event occurs as to which, in the good faith judgment of the board of directors of the Company the other provisions of this Section 5 are not strictly applicable or if strictly applicable would not fairly protect the exercise rights of the Holder in accordance with the essential intent and principles of such provisions, then the board of directors of the Company in the good faith, reasonable exercise of its business judgment shall make an adjustment in the application of such provisions, in accordance with such essential intent and principles so as to protect such exercise rights as aforesaid.

Section 5.7    Minimum Adjustment. Except as hereinafter provided, no adjustment of the Warrant Price hereunder shall be made if such adjustment results in a change of the Warrant Price then in effect of less than 1%. Any adjustment of less than 1% shall be carried forward and shall be made at the time of and together with any subsequent adjustment which, together with the adjustment or adjustments so carried forward, amounts to 1% or more of the Warrant Price then in effect. However, upon the exercise of this Warrant, the Company shall make all necessary adjustments not theretofore made to the Warrant Price up to and including the date upon which this Warrant is exercised.

Section 6.    No Rights as a Stockholder; Notice to Holder. Nothing contained in this Warrant shall be construed as conferring upon the Holder (i) the right to vote or to consent or to receive notice as a stockholder in respect of any meeting of stockholders for the election of directors of the Company or any other matter, (ii) the right to receive any cash dividends, stock dividends, allotments or rights or other distributions paid, allotted or distributed or distributable to the holders of Common Stock prior to or for which the relevant record date preceded the date of the exercise of such Warrants, or (iii) any other rights whatsoever as a stockholder of the Company.

NY 72639423v9

Section 7.      <u>Replacement of Warrant</u>. Upon receipt of evidence reasonably satisfactory to the Company of the loss, theft, destruction or mutilation of this Warrant and (in the case of loss, theft or destruction) upon delivery of an indemnity agreement in an amount reasonably satisfactory to it, or (in the case of mutilation) upon surrender and cancellation of this Warrant, the Company will issue, in lieu thereof, a new Warrant of like tenor, terms and conditions.

Section 8.      <u>Notices</u>.   All notices and other written communications provided for hereunder shall be given in writing and delivered in person or sent by overnight delivery service (with charges prepaid) or by facsimile transmission, if the original of such facsimile transmission is sent by overnight delivery service (with charges prepaid) by the next succeeding Business Day and (a) if to the Holder addressed to it at the address or fax number specified for such Holder in the Warrant Register or at such other address or fax number as the Holder shall have specified to the Company in writing in accordance with this <u>Section 8</u>, and (b) if to the Company, addressed to it at 2121 Brooks Avenue, Neenah, Wisconsin 54956, Attention: Secretary or at such other address or fax number as the Company shall have specified to the Holder in writing in accordance with this <u>Section 8</u>. Notice given in accordance with this <u>Section 8</u> shall be effective upon the earlier of the date of delivery or the second Business Day at the place of delivery after dispatch.

Section 9.      <u>Applicable Law; Jurisdiction; Waiver of Jury Trial</u>.

Section 9.1    This Warrant shall be governed by and construed in accordance with the laws of the State of New York without giving effect to principles of conflict of laws.

Section 9.2    **FORUM SELECTION AND CONSENT TO JURISDICTION. ANY LITIGATION OR OTHER PROCEEDING BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS WARRANT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF THE COMPANY OR THE HOLDER RELATING TO THIS WARRANT SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN THE SUPREME COURT, NEW YORK COUNTY (AND, WHERE APPLICABLE, IN THE COMMERCIAL DIVISION THEREOF) OR IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. THE COMPANY AND (BY ITS ACCEPTANCE OF THIS WARRANT) THE HOLDER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS BY CERTIFIED MAIL, POSTAGE PREPAID OR BY PERSONAL SERVICE WITHIN OR WITHOUT THE STATE OF NEW YORK AT THE ADDRESS FOR NOTICES SPECIFIED IN <u>SECTION 8</u>. THE COMPANY AND (BY ITS ACCEPTANCE OF THIS WARRANT) THE HOLDER HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY HAVE OR HEREAFTER MAY HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION OR OTHER PROCEEDING BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION OR OTHER PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. TO THE EXTENT THE COMPANY OR THE HOLDER HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT REFERRED TO ABOVE OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR**

8

TO JUDGMENT, ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, THE COMPANY AND (BY ITS ACCEPTANCE OF THIS WARRANT) THE HOLDER IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS WARRANT.

Section 9.3    WAIVER OF JURY TRIAL; CERTAIN DAMAGES.    THE COMPANY AND (BY ITS ACCEPTANCE OF THIS WARRANT) THE HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION OR OTHER PROCEEDING BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS WARRANT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN) OR ACTIONS OF THE COMPANY AND THE HOLDER.    EXCEPT AS PROHIBITED BY LAW, THE COMPANY AND (BY ITS ACCEPTANCE OF THIS WARRANT) THE HOLDER HEREBY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION OR OTHER PROCEEDING ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.

Section 10.    Amendments and Waivers; Severability.    This Warrant is one of a series of Series [A][B] warrants originally exercisable for an aggregate of 500,000 shares of Common Stock issued by the Company on [•], 2010 (the "Reorganization Warrants").    The provisions of this Warrant may be amended and the Company may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only if the Company has obtained the written consent of either (a) the Holder of this Warrant or (b) the holders of Reorganization Warrants representing at least 50% of the  shares of Common Stock obtainable upon exercise of the Reorganization Warrants; provided that no such action may change the Warrant Price of this Warrant or the number of  shares or class of stock obtainable upon exercise of this Warrant without the written consent of the Holder of this Warrant.  Any provision of this Warrant which is prohibited, unenforceable or not authorized in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition, unenforceability or non-authorization without invalidating the remaining provisions hereof or affecting the validity, enforceability or legality of such provision in any other jurisdiction.

Section 11.    Captions.    The captions of the Sections and subsections of this Warrant have been inserted for convenience only and shall have no substantive effect.

[remainder of page intentionally left blank]

NY 72639423v9

IN WITNESS WHEREOF, the undersigned has executed this Warrant as of the ___ day of _____, 2010.

NEENAH ENTERPRISES, INC.

By: _____
Name:
Title:

Attest: _____
**Secretary**

10

## EXHIBIT A

### [To be signed only upon exercise of Warrant]

To NEENAH ENTERPRISES, INC.:

The undersigned, the holder of the Warrant surrendered herewith (the "Warrant"), hereby irrevocably elects to exercise the purchase right represented by such Warrant for, and to purchase thereunder, [_____] shares of Common Stock of NEENAH ENTERPRISES, INC. and herewith makes payment of $[_____] [by certified or bank check] [by wire transfer in immediately available funds] therefor in full payment of the Exercise Payment, and requests that the shares be issued in the name of, and be delivered to [_____], whose address is [_____]. All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Warrant.


Dated:

_____

(Signature must conform in all respects to name of the Holder as specified on the face of the Warrant)

_____

_____
Address

## EXHIBIT B

### [To be signed only upon transfer of Warrant]

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto [_____] the right represented by the Warrant surrendered herewith (the "Warrant") to purchase [_____] shares of the Common Stock of NEENAH ENTERPRISES, INC. to which the Warrant relates, and appoints [_____] attorney to transfer said right on the books of NEENAH ENTERPRISES, INC. with full power of substitution in the premises. All capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Warrant.


Dated:

_____

(Signature must conform in all respects to name of the Holder as specified on the face of the Warrant)


_____
                                    Address


In the presence of:


_____