IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
In re:                                                                        Chapter 11

NEENAH ENTERPRISES, INC., et al.                  Case No. 10-10360 (MFW)

                                                                              (Jointly Administered)
                                            Debtors.
---------------------------------------------------------X  Objection Period: July 8, 2010 at 4:00 pm (ET)


# FOURTH MONTHLY APPLICATION OF HURON CONSULTING SERVICES LLC AS FINANCIAL ADVISORS TO THE DEBTORS FOR ALLOWANCE OF INTERIM COMPENSATION AND FOR INTERIM REIMBURSMENT OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD MAY 1, 2010 THROUGH MAY 31, 2010

| | |
|---|---|
| Name of Application: | HURON CONSULTING GROUP |
| Authorized to Provide Professional Services to: | Neenah Enterprises, Inc., et al. |
| Date of Retention: | March 8, 2010 nunc pro tunc to February 3, 2010 |
| Period for which Compensation and Reimbursement is sought: | May 1, 2010 Through May 31, 2010 |
| Amount of compensation sought as actual, reasonable and necessary: | $274,728.75 |
| Amount of reimbursement sought as actual, reasonable and necessary: | $16,234.96 |

This is a _x_ monthly  ___ final application

If this is not the first application filed, disclose the following for each prior application:

| DATE FILED | PERIOD COVERED | REQUESTED FEES/EXPENSES | APPROVED FEES/EXPENSES |
|---|---|---|---|
| 03/11/10 | February 3, 2010 through February 28, 2010 | $288,870.00/$11,678.99 | Received payment of 80% of fees and 100% of expenses |

- 1 -

| | | | |
|---|---|---|---|
| 04/22/10 | March 1, 2010 through March 31, 2010 | $495,568.75/$16,781.85 | Received payment of 80% of fees and 100% of expenses |
| 05/24/10 | April 1, 2010 through April 30, 2010 | $316,137.50/$13,302.15 | Pending |

**COMPENSATION BY PROFESSIONAL**

NEENAH ENTERPRISES, INC., et al
(Case No. 10-10360 (MFW))

May 1, 2010 through May 31, 2010

| Professional | Title | Hours | Rate | Total |
|---|---|---|---|---|
| Richard D. Caruso | Managing Director | 63.5 hrs | $675.0 / hr | 42,862.50 |
| Brent Johnson | Director | 173.8 hrs | $575.0 / hr | 99,935.00 |
| Fernando Pena-Alfaro | Director | 79.2 hrs | $575.0 / hr | 45,540.00 |
| Nick Zaccagnini | Manager | 16.2 hrs | $375.0 / hr | 6,075.00 |
| Brett Anderson | Manager | 156.8 hrs | $375.0 / hr | 58,800.00 |
| Omer Ozgozukara | Manager | 155.1 hrs | $375.0 / hr | 58,162.50 |
| Total Professional Charges | | 644.6 | | $311,375.00 |
| | | | Less: Travel Time Discount (50%): | $36,646.25 |
| | | | **Total May Fees:** | **$274,728.75** |
| | | | Blended Hourly Rate: | $426.20 |

## COMPENSATION BY PROJECT CATEGORY

### NEENAH ENTERPRISES, INC., et al
(Case No. 10-10360 (MFW))

May 1, 2010 through May 31, 2010

| Activity Code | Activity Code Description | Hours | Fees |
|---|---|---|---|
| 1 | Meeting / teleconference with Debtor Management, Board, or Counsel | 3.7 | 2,327.50 |
| 2 | Meeting / teleconference with Bank Group, Counsel or Advisors | 4.7 | 2,932.50 |
| 5 | Case Reporting: UST Rpts, Statements, & Schedules | 33.3 | 14,627.50 |
| 6 | Retention and Fee Applications | 29.5 | 13,762.50 |
| 7 | Disclosure Statement / Plan of Reorganization | 2.3 | 1,472.50 |
| 8 | Business Plan & Analysis of Operations | 173.4 | 82,495.00 |
| 9 | Cash Flow Analysis and Reporting | 52.4 | 30,070.00 |
| 10 | DIP Financing, Exit Financing, Cash Collateral, Bank Issues | 70.5 | 37,927.50 |
| 12 | Tax Issues/Analysis | 7.3 | 4,637.50 |
| 16 | Unsecured Claim Analysis | 57.7 | 22,837.50 |
| 20 | Accounts Payable / Vendor Issues | 46.6 | 18,055.00 |
| 23 | Lease Issues | 12.7 | 4,882.50 |
| 24 | Case Administration | 3.8 | 2,055.00 |
| 26 | Travel Time | 146.7 | 73,292.50 |
| | **Totals:** | **644.6** | **$311,375.00** |
| | Less: Travel Time Discount (50%): | | $36,646.25 |
| | **Total May Fees:** | | **$274,728.75** |

- 4 -

## EXPENSE SUMMARY

NEENAH ENTERPRISES, INC., et al
(Case No. 10-10360 (MFW))

May 1, 2010 through May 31, 2010

| Cost Type | Amount |
|---|---|
| Airfare | 4,062.48 |
| Conferencing (Audio, Video, Web, CATV) | 169.85 |
| Ground Transportation | 487.00 |
| Hotel/Lodging | 4,086.87 |
| Meals | 2,331.35 |
| Mileage | 1,846.00 |
| Parking & Tolls | 120.00 |
| Rental Car | 3,131.41 |
| **Total Expenses** | **$16,234.96** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
In re:                                                      Chapter 11

NEENAH ENTERPRISES, INC., et al.,[1]                         Case No. 10-10360 (MFW)

                                                            (Jointly Administered)
                            Debtors.
------------------------------------------------------------X

**FOURTH MONTHLY APPLICATION OF HURON CONSULTING SERVICES LLC AS FINANCIAL ADVISORS TO THE DEBTORS FOR ALLOWANCE OF INTERIM COMPENSATION AND FOR INTERIM REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD MAY 1, 2010 THROUGH MAY 31, 2010**

Huron Consulting Services LLC ("Huron Consulting Group" or "Huron"), financial advisors to the Debtors in these chapter 11 cases *nunc pro tunc* to the Petition Date (as defined below), submits this application (the "Application") for interim allowance of compensation for professional services rendered by Huron to the Debtors for the period May 1, 2010 through May 31, 2010 (the "Compensation Period") and reimbursement of actual and necessary expenses incurred by Huron during the Compensation Period under sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-2 of the Local Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

- 1 -

Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee Guidelines") and the Order Under 11 U.S.C. § 105 (a) and 331, Fed. R. Bankr. P. 2016 and Del. Banker. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of Fees and Expenses for Professionals (the "Interim Compensation Procedures Order")[2]. In support of this Application, Huron represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a) and 1107 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## BACKGROUND

2. On February 3, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtors also jointly filed motions or applications seeking certain typical "first day" relief. On February 4, 2010 the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 2015(b).

3. The Debtors continue in possession of their respective properties and continue to operate and maintain their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Terms used but not otherwise defined herein have the meanings ascribed to them in the Interim Compensation Procedures Order.

4. On February 17, 2010, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

### HURON'S RETENTION

5. The Debtors selected Huron to serve as their financial advisors. On March 8, 2010, this Court entered the Order Pursuant to 11 U.S.C. Sections 327 (a) and 1107 (b), Fed. R. Bankr. P. 2014 and 2016, and Del. Bankr. L.R. 2014-1 and 2016-1 Authorizing the Employment and Retention of Huron Consulting Services LLC as Financial Advisors to the Debtors, *Nunc Pro Tunc to February 3, 2010*.

### FEE PROCEDURES ORDER

6. On March 8, 2010, the Court entered the Interim Compensation Procedures Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

7. In particular, the Interim Compensation Procedures Order provides that a Professional may file and serve a Monthly Fee Application with the Court no earlier than the tenth day of each month following the month for which compensation is sought. Provided that no objections to such Monthly Fee Application are filed within the ten day Objection Deadline, the Professional may file a certificate of no objection with the Court, after which the Debtors are authorized to pay such Professional 80 percent of the fees and 100 percent of the expenses requested in such Monthly Fee Application. If an objection to a portion of the Monthly Fee Application is filed and not resolved, the Debtors are authorized to pay 80 percent of the fees and 100 percent of the expenses that are not subject to the objection.

### RELIEF REQUESTED

8. Huron submits this Application (a) for allowance of reasonable compensation for the actual, reasonable and necessary professional services that it has rendered

as financial advisors for the Debtors in these cases for the period from May 1, 2010 through May 31, 2010, and (b) for reimbursement of actual, reasonable and necessary expenses incurred in representing the Debtors during that same period.

9. During the period covered by this Application, Huron incurred fees in the amount of $311,375.00 before reduction. In accordance with Local Rules regarding travel time being charged at 50%, net fees for the Compensation Period, after a reduction of $36,646.25 for travel time, are $274,728.75. For the same period, Huron incurred actual, reasonable and necessary expenses totaling $16,234.96. With respect to these amounts, as of the date of this Application, Huron has received no payments.

10. Set forth on the foregoing "Compensation by Project Category" is a summary by subject matter categories of the time expended by timekeepers billing time to these cases.

11. During the Application Period, Huron professionals billed time incurred in service to the Debtors to distinct service categories. Below is a summary of the activities performed by Huron professionals during the Compensation Period, organized by project category code:

**Task Code 1 – Meeting/Teleconference with Debtor Management, Board, or Counsel**

Huron prepared for and participated in meetings and discussions with Debtor management, key personnel and Counsel during the Compensation Period. Huron had weekly conference calls with Debtor management, Counsel and Investment Bankers regarding case status, strategy and upcoming deadlines and deliverables. Huron also spent time meeting with Debtor management to discuss responses to questions from the financial advisors to the Debtors' Lenders.

Huron devoted 3.7 hours to performing these services during the Compensation Period, which resulted in fees of $2,327.50 and a blended rate of $629.

**Task Code 2 – Meeting / teleconference with Bank Group, Counsel or Advisors**

During the Compensation Period, Huron prepared for and participated in weekly status update discussions with the DIP Lenders and their advisors regarding business operations, the business plan, the management incentive plan and the bankruptcy process. Additional discussions were held with the Debtors' Lenders and their Counsel regarding case status updates and certain tax and environmental matters.

Huron devoted 4.7 hours to performing these services during the Compensation Period, which resulted in fees of $2,932.50 and a blended rate of $624.

**Task Code 5 – Case Reporting: UST Reports, Statements & Schedules**

Huron devoted time during the Compensation Period to satisfying the U.S. Trustee reporting requirements and preparing the monthly operating report. Huron spent time preparing, reviewing and finalizing the April monthly operating report, including the drafting of supplemental notes and supporting schedules. Huron worked with Debtor management to gather and analyze the information required to complete the monthly operating report. In addition, Huron spent time preparing reconciling adjustments to the balance sheet and income statement presented in the April monthly operating report and meeting with Debtor management to discuss the report. Additional time was spent reviewing drafts of the April monthly operating report prior to finalizing and filing with the Court.

Huron devoted 33.3 hours to performing these services during the Compensation Period, which resulted in fees of $14,627.50 and a blended rate of $439.

**Task Code 6 – Retention and Fee Applications**

As the Debtors' financial advisors, Huron is required to adhere to the requirements of the Bankruptcy Code and related rules, and the U.S. Trustee guidelines with respect to the retention of professionals in bankruptcy cases. Huron spent time during the Compensation Period preparing, reviewing and finalizing Huron's April Monthly Fee Application and the

related exhibits. Huron also spent time during the Compensation Period reviewing the draft time and expense detail exhibits for time incurred from May 1, 2010 through May 15, 2010 in preparation for the May Fee Application.

Huron devoted 29.5 hours to performing these services during the Compensation Period, which resulted in fees of $13,762.50 and a blended rate of $467.

**Task Code 7 – Disclosure Statement/Plan of Reorganization**

Huron spent time during the Compensation Period reviewing information contained in the Disclosure Statement schedules and exhibits. In particular, Huron reviewed the revised business plan projections with the Debtors' Investment Bankers and addressed revisions concerning revised tax payment calculations received from the Debtors' Tax Advisors. Huron also spent time reviewing the Debtors' motion seeking an extension of the exclusivity period.

Huron devoted 2.3 hours to performing these services during the Compensation Period, which resulted in fees of $1,472.50 and a blended rate of $640.

**Task Code 8 – Business Plan & Analysis of Operations**

During the Compensation Period, Huron spent time working with Debtor management and the Debtors' Investment Bankers to discuss the status of certain restructuring initiatives and the revised business plan. Additional time was spent assisting Debtor management in compiling, reviewing and assessing presentation materials related to the municipal performance stress test results in preparation for a Board of Directors meeting. Huron also spent time coordinating confidentiality agreement logistics and preparing responses to due diligence inquiries from the financial advisors to two of the Debtors' customers. Additional time was spent preparing responses to due diligence requests from the financial advisors to the Debtors' Lenders.

In addition, Huron spent time working with Debtor management regarding a profitability analysis assignment, as requested by Debtor management. Huron met with key

- 6 -

Debtor personnel to assess certain overhead costs and the allocation of those costs, additional accounting and financial information, the Debtors' estimating process, the various production and productivity reports, material flows and the monthly budgets for certain plants. Additional time was spent analyzing the methodology to assess actual profitability by part, by customer and by segment and discussing the methodology with Debtor personnel. Huron also spent time creating, revising and analyzing a financial model to assess profitability under various overhead scenarios. Huron spent time preparing a presentation summarizing the profitability analysis assignment findings to deliver to Debtor management.

Furthermore, Huron spent time reviewing the Debtors' April financial results and preparing a summary to discuss the results with the Debtors' Lenders. Huron also spent time addressing questions from Counsel to the Debtors' Lenders regarding certain environmental matters.

Huron devoted 173.4 hours to performing these services during the Compensation Period, which resulted in fees of $82,495.00 and a blended rate of $476.

**Task Code 9 – Cash Flow Analysis and Reporting**

During the Compensation Period, Huron spent time preparing weekly updates to the DIP Budget model and updating the permitted variance test analysis within the DIP Budget model in order to meet certain covenant tests and reporting requirements of the DIP Loan agreements. Additional time was spent creating and reviewing weekly DIP Budget variance reports on the Debtors' cash flow performance versus the approved DIP Budget. In addition, Huron spent time preparing weekly updates to the DIP Budget model reflecting a June 2010 emergence, as requested by the financial advisors to the Debtors' Lenders. Huron delivered the DIP Budget variance reports to the required parties on a weekly basis and devoted time to discussing the reports and responding to questions. Additional time was spent developing sensitivity functionality into the DIP Budget model to determine the impact of volume and

- 8 -

pricing changes on profitability and liquidity. Huron spent time analyzing the results of the DIP Budget model stress tests under various scenarios and refining the functionality. Huron also spent time compiling presentation materials for a meeting with Debtor management to discuss the June 2010 emergence model and related estimated weekly liquidity. Additional time was spent expanding the forecasted month of August to weekly forecasts in the DIP Budget model and performing quality control review of the updates.

Huron devoted 52.4 hours to performing these services during the Compensation Period, which resulted in fees of $30,070.00 and a blended rate of $574.

**Task Code 10 – DIP Financing, Exit Financing, Cash Collateral, Bank Issues**

During the Compensation Period, Huron spent time compiling documentation and certifications in response to the DIP Loan compliance reporting requirements. Additional time was spent updating year-to-date financials and comparative information in support of the monthly compliance certificate required by the DIP Loan. Huron also spent time assisting Debtor management in obtaining and compiling certain information required for the Form T-3 to be filed with the SEC related to the converted secured notes. In addition, Huron spent time addressing certain environmental issues raised by the DIP Term Lenders' Counsel and responding to various disclosure requests. Huron prepared analyses of estimated environmental and closing costs associated with the shutdown of certain plants. Huron also spent time preparing for and participating in the weekly status conference calls with the financial advisors to the DIP Lenders to discuss the DIP Loan compliance reporting, environmental issues and various other matters raised by the advisors. In addition, Huron spent time during the Compensation Period reviewing and providing certain appraisal reports to Counsel to the Debtors' Lenders.

In addition, Huron spent time working with the Debtors' management and Investment Bankers regarding the exit financing process. Huron assisted in compiling analyses to respond

to certain due diligence inquiries received from potential exit financing lenders. Additional time was spent reviewing drafts of the exit financing presentation materials provided by the Debtors' Investment Bankers. Huron also reviewed exit financing proposals from various lenders and provided comments to the Debtors' Investment Bankers. In addition, Huron spent time discussing the status and strategy of the exit financing process with the Debtors' management and Investment Bankers.

Huron devoted 70.5 hours to performing these services during the Compensation Period, which resulted in fees of $37,927.50 and a blended rate of $538.

**Task Code 12 – Tax Issues / Analysis**

During the Compensation Period, Huron spent time assessing the estimated tax consequences of the Plan of Reorganization and the related impact on the Debtors' enterprise valuation. Huron spent time discussing these matters with the Debtors' management and Investment Bankers and the financial advisors to the Debtors' Lenders. Huron also prepared an analysis in support of the estimated tax consequences of the Plan of Reorganization and the related impact on enterprise valuation. Additional time was spent analyzing the impact of revised tax calculations on liquidity and financial projections with the Debtors' Investment Bankers. In addition, Huron reviewed the tax cash payments analysis and the tax scenarios analysis prepared by the Debtors' Tax Advisors.

Huron devoted 7.3 hours to performing these services during the Compensation Period, which resulted in fees of $4,637.50 and a blended rate of $635.

**Task Code 16 – Unsecured Claim Analysis**

During the Compensation Period, Huron spent time working with Debtor management to establish and communicate the claims resolution process with key Debtor personnel. Additional time was spent reviewing and analyzing the claims register data provided by the Debtors' claims agent. Huron developed claims resolution tools to track claims matched to

scheduled liabilities, claims matched to scheduled creditors with variances on the claimed amount, separate claims filed against individual Debtors and a summary level claims resolution tracking tool of filed, allowed and remaining disputed claims. Huron also spent time reviewing claims filed against each Debtor and identifying the correct category, action item or required reclassification. Huron worked with the Debtors' claims agent to make the necessary adjustments to the claims register. Additional time was spent discussing the claims objection process with Debtor Counsel, reviewing claims identified for objection and modifying the claim category and objection status in the tracking tool.

Huron devoted 57.7 hours to performing these services during the Compensation Period, which resulted in fees of $22,837.50 and a blended rate of $396.

**Task Code 20 – Accounts Payable/Vendor Issues**

During the Compensation Period, Huron spent time updating the accounts payable tracking scorecards of post-petition spending against restrictive caps contained in various Court orders for each Debtor. Huron also spent time updating the master pre-petition payment tracking spreadsheet to track the pre-petition payments that are subject to a restrictive spending caps and analyzing the pre-petition payment forms received from Debtor management at each of the Debtors' plants.

Additional time was spent updating the ordinary course professional payment tracking spreadsheet and corresponding with Debtor personnel at each of the Debtors' plants. Huron also spent time assisting the Debtors in compiling and reviewing supporting documentation for the Debtors to pay certain interim bankruptcy professionals who had fee applications subject to certificates of no objection. In addition, Huron spent time addressing and tracking critical vendor payments. Furthermore, Huron spent time reviewing, analyzing and responding to various information requests from the Unsecured Creditors Committee's financial advisors.

Huron devoted 46.6 hours to performing these services during the Compensation Period, which resulted in fees of $18,055.00 and a blended rate of $387.

**Task Code 23 – Lease Issues**

Huron spent time during the Compensation Period working with key Debtor personnel at each Debtor entity to collect the necessary information to include in the Debtors' Motion to Assume Executory Contracts and Unexpired Leases. Huron prepared customized unexpired lease and executory contract templates for each Debtor to populate. Additional time was spent reviewing and analyzing the lease and executory contract information provided by each Debtor. Huron also prepared exhibits based on information provided by each Debtor to include in the Motion to Assume Executory Contracts and Unexpired Leases, including separate exhibits with cure payments and without cure payments and for customer contracts to be filed under seal.

Huron devoted 12.7 hours to performing these services during the Compensation Period, which resulted in fees of $4,882.50 and a blended rate of $384.

**Task Code 24 – Case Administration**

During the Compensation Period, Huron devoted time to updating the work plan, reviewing recent filings on the court docket, discussing case status and performing other necessary matters related to engagement documentation and administration.

Huron devoted 3.8 hours to performing these services during the Compensation Period, which resulted in fees of $2,055.00 and a blended rate of $541.

**Task Code 26 – Travel Time**

Whenever possible, Huron encourages its professionals to use travel time productively by reading documents, continuing analyses, etc. while in transit. However, with the increased use of smaller aircraft to service more cities, it is increasingly difficult to work on confidential material during travel time. In addition, several of the traveling members of our engagement

team drive to and from their homes and the client site, which clearly reduces the ability to work and travel simultaneously. In compliance with the Local Rules, Huron has reduced its request for compensation for non-working travel by 50% of the amount incurred. Huron devoted 146.7 hours, which resulted in fees of $73,292.50, in regards to non-working travel time and this application reflects a reduction of $36,646.25 as required by the Local Rules.

Huron devoted <u>146.7</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$36,646.25</u> and a blended rate of <u>$250.</u>

12. <u>Exhibit A</u> attached hereto contains logs, sorted by project category task code, which details the time recorded by Huron's professionals and descriptions of the services provided.

13. <u>Exhibit B</u> attached hereto contains a breakdown of disbursements incurred by Huron during the Compensation period for which Huron seeks reimbursement in this application.

14. <u>Exhibit C</u> attached hereto contains the invoice for services rendered for the Compensation Period.

15. Huron has endeavored to represent the Debtors in the most expeditious and economical manner possible. Huron ensured that all tasks were assigned so that work was performed by those professionals at Huron most familiar with the particular matter or task and by the lowest hourly rate professional appropriate for a particular matter.

16. No agreement or understanding exists between Huron and any other person for the sharing of compensation received or to be received for services rendered in or in connection with these cases.

17. The undersigned has reviewed the requirements of Local Rule 2016-2 and certifies to the best of his information, knowledge and belief that this Application complies with that Rule.

- 13 -

**WHEREFORE**, Huron respectfully requests that this Court: (a) allow Huron (i) interim compensation in the amount of $274,728.75 for actual, reasonable and necessary professional services rendered on behalf of the Debtors during the period May 1, 2010 through May 31, 2010, and (ii) interim reimbursement in the amount of $16,234.96 for actual, reasonable and necessary expenses incurred during the same period; (b) authorize and direct the Debtors to pay to Huron the amount of $219,783.00 which is equal to 80% of Huron's allowed interim compensation of $274,728.75 and 100% of Huron's allowed expense reimbursement of $16,234.96, for a total amount of $236,017.96; and (c) grant such other and further relief as is just.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: June 24, 2010  HURON CONSULTING GROUP
New York, New York

*[signature]*

Richard D. Caruso
Managing Director
Huron Consulting Group
1120 Avenue of the Americas, 8th Floor
New York, NY 10036-6700

Telephone: (412) 298-8675
Facsimile: (212) 785-1313

Financial Advisors for
NEENAH ENTERPRISES, INC., et al