# **EXHIBIT A**

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Settlement Agreement") is made this ___ day of ____, 2010, by and between Neenah Foundry Company and Neenah Enterprises, Inc. (collectively, the "Company") and Robert E. Ostendorf, Jr. (the "Executive").

WHEREAS, the Executive is currently employed as the Chief Executive Officer of the Company pursuant to the Amended and Restated Employment Agreement and Restricted Stock Grant between Neenah Enterprises, Inc. and the Executive, dated as of June 5, 2007 (the "Employment Agreement");

WHEREAS, the Employment Agreement and the Amended and Restated 2003 Severance and Change of Control Plan (the "Severance Plan"), provide that in the event of certain separations from employment, the Executive may be entitled to severance and other termination benefits;

WHEREAS, the Executive and Company have mutually agreed to terminate the Executive's employment as of the effective date (the "Effective Date") of the Company's confirmed plan of reorganization (the "Plan") in its Chapter 11 cases;

WHEREAS, the Executive has made certain allegations and claims against the Company with respect to the Employment Agreement and the Severance Plan;

WHEREAS, the Executive and the Company desire to resolve all claims, disputes and causes of action which the Executive has or may have against the Company;

NOW THEREFORE, in consideration of the mutual covenants and other good and valuable consideration contained herein, the parties hereby agree as follows:

1.  **Separation.** Subject to the terms of this Settlement Agreement, the Executive's separation from employment as an officer, director and employee of the Company and its subsidiaries and affiliates shall be effective as of the Effective Date. As of the Effective Date, without any further action by either party, the Executive hereby resigns from all positions held as an officer or director of the Company and any of its subsidiaries and affiliates.

2.  **Transition Services.** In order to assist the Company with an orderly transition of the Executive's responsibilities, the Executive agrees to make himself available to assist the Company for a period of thirty (30) days following the Effective Date at such times as the board of directors of the Company (the "Board"), the Acting Chief Executive Officer or the incoming Chief Executive Officer reasonably request. In no event shall such services require the Executive to expend more than thirty-five (35) hours in the aggregate during such period, or a number of hours in any calendar week that exceeds 20 percent (20%) of the average weekly level of services performed by the Executive over the thirty-six (36) month period prior to the Effective Date. Such transition services shall be provided by the Executive for no additional compensation, but Consultant shall be entitled to reimbursement for reasonable out-of-pocket expenses incurred by the Executive in the performance of his duties, against appropriate vouchers or other receipts.

The Executive shall not incur more than $2,000 in such expenses during the transition period without the Company's prior approval.

3. <u>Consideration</u>. Upon this Settlement Agreement becoming effective when the Executive signs it (which cannot be before the Effective Date), and provided the Executive does not revoke it, as provided in Section 9 below, the Company will (i) pay the Executive the amount of $1,000,000 (less applicable withholdings and deductions) (which amount shall not constitute earnings or wages for purposes of any benefit plan sponsored or maintained by the Company or its affiliates), on the eighth (8th) day following the Effective Date; (ii) provide the Executive with full ownership of the Company car currently driven by the Executive, a 2010 Buick LaCrosse (the "<u>Vehicle</u>"); and (iii) provide the Executive (and his spouse and eligible dependents) with continued health benefits at the Company's cost for a period of two (2) years following the Effective Date (collectively, the "<u>Settlement Benefits</u>"). In addition, the Executive shall be entitled to all earned and unpaid salary and unused vacation time accrued through the Effective Date and unpaid expense reimbursements (subject to substantiation in accordance with Company policy) as of the Effective Date, each payable in cash on the Effective Date, and to all vested benefits under generally applicable benefit plans maintained by the Company, in accordance with their terms, which, for sake of clarity do not include the Employment Agreement, Severance Plan or any other severance or similar plan.

4. <u>Release</u>.

    4.1 <u>Executive's Release</u>. In consideration of the Settlement Benefits, the Executive for himself and his heirs and assigns, himself voluntarily and knowingly, completely and forever releases, waives, voids, extinguishes and discharges unconditionally, the holders of the Company's 9.5% senior secured notes, including, without limitation, GoldenTree Asset Management LP and MacKay Shields LLC, the Company, its subsidiaries and affiliates and its and their respective predecessors, successors and assigns and their respective present, former, and future officers, directors, trustees, shareholders, principals, partners, attorneys, investors, representatives, insurers, fiduciaries, agents or employees, in both their individual and representative capacities (collectively, the "<u>Released Parties</u>"), from all actions, claims, demands, causes of action, obligations, damages, liabilities, expenses and controversies of any nature and description whatsoever (collectively, "<u>Claims</u>"), whether or not now known, suspected or claimed, which the Executive had, has, or may have, against the Released Parties from the beginning of time up to and including the date the Executive signs this Settlement Agreement, including, without limitation, all Claims which arise out of, relate to or are based on (i) the Executive' employment with the Company or termination therefrom, (ii) statements, acts or omissions by the Company or Released Parties, (iii) express or implied agreements between the Executive and the Company and/or Released Parties, (iv) any federal, state or local fair employment practices or civil rights laws including, but not limited to, the Sarbanes-Oxley Act of 2002, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Older Workers Benefit Protection Act, the Family and Medical Leave Act, the Americans with Disabilities Act, and the Employee Retirement Income Security Act of 1974, which prohibit

adverse employment action based upon whistle blowing activities and discrimination on such bases as race, color, religion, creed, national origin, family and/or medical leave, medical condition, sex/gender, sexual harassment, retaliation, protected activity, disability/handicap, age, pregnancy, childbirth or related medical condition, or marital status, (v) common law, public policy, breach of contract or tort, including, without limitation, Claims for emotional distress, libel, slander or wrongful discharge, or (vi) wages, commissions, bonuses, accrued vacation pay, employee benefits, expenses, allowances and any other payment or compensation of any kind whatsoever.

The Company agrees that the Executive is not and will not be releasing any Claims that may not be released by law or that the Executive may have for indemnification or advancement of expenses under this Settlement Agreement or the Company's articles of incorporation, charter, by-laws or standing or other resolutions, or under any insurance policy providing directors' and officers' coverage, then existing, for any lawsuit or claim relating to the period when the Executive was a director, officer, or employee of the Company or any affiliated company, nor any rights to sue to enforce this Settlement Agreement or the payment of any accrued and vested benefits under any retirement plan sponsored or maintained by the Company.

4.2   Company's Release.  Upon this Settlement Agreement becoming effective when the Executive delivers a signed Settlement Agreement to the Company and has not revoked it, as provided in Section 9 below, as set forth in the Plan, the Company completely and forever releases, waives, voids, extinguishes and discharges unconditionally, the Executive of and from any and all Claims and Causes of Action (including, without limitation, Avoidance Actions)(as such terms are defined in the Plan), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, and any and all interests or other rights of a holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date in connection with or related to the Company that may be asserted by or on behalf of the Company against the Executive; provided, however, that nothing in this section shall be construed to release the Executive from willful misconduct or fraud; or from the Executive's obligations under the Employment Agreement which survive the termination of the Employment Agreement, including but not limited to, Sections 3, 4.02 and 4.03.

5.   Restrictive Covenants.  Notwithstanding anything else in this Settlement Agreement to the contrary, Sections 3 (Confidentiality), 4.02 (Covenant Not to Compete) and 4.03 (Non-Disparagement) of the Employment Agreement shall remain in full force and effect and continue to be binding on the Company and the Executive for the duration stated in the Employment Agreement in accordance with the terms thereof, and the Restricted Period (as defined in the Employment Agreement) shall commence on the Effective Date.

6.      <u>Cooperation</u>.  The Executive agrees that after his separation from employment, upon reasonable notice, without the necessity of the Company obtaining a subpoena or court order, the Executive will assist the Company in the defense of any claims, or potential claims that may be made or threatened to be made against the Company in any action, suit or proceeding, whether civil, criminal, administrative, investigative or otherwise ("<u>Proceeding</u>"), and will assist the Company in the prosecution of any claims that may be made by the Company in any Proceeding, to the extent that such claims may relate to the Executive's employment or to events or acts occurring during the period of the Executive's employment by the Company and provided such assistance does not unreasonably interfere with the Executive's other employment following his separation from the Company, if any. The Executive agrees to promptly inform the Company if the Executive is asked to participate (or otherwise become involved) in any Proceeding involving such claims or potential claims. The Executive also agrees to promptly inform the Company if the Executive is asked to assist in any investigation (whether governmental or otherwise) of the Company (or its actions) regardless of whether a lawsuit has then been filed against the Company with respect to such investigation. The Company agrees to reimburse the Executive for all of the Executive's reasonable out-of-pocket expenses associated with such assistance; provided, however, that the Company shall not reimburse the Executive for attorneys' fees, if any.

7.      <u>Return of Company Property and Information</u>.  Upon the Executive's separation from employment, the Executive shall immediately surrender and deliver to the Company all documents, correspondence and any other information, of any type whatsoever, from the Company or any of its agents, servants, employees, suppliers and existing or potential customers, that came into the Executive's possession by any means whatsoever, during the course of his employment, and shall not retain any copies thereof, and shall return all property of the Company (other than the Vehicle), including, without limitation, any computers, blackberries, cell phones, office keys or identification cards in the Executive's possession.

8.      <u>Section 409A</u>.  Any ambiguity in this Settlement Agreement shall be interpreted to comply with Section 409A of the Internal Revenue Code ("<u>Section 409A</u>"). The Executive acknowledges that the Company has made no representations as to the treatment of the compensation and benefits provided hereunder and the Executive has been advised to obtain his own tax advice. The payments to the Executive pursuant to this Agreement are intended to be exempt from Section 409A to the maximum extent possible. Each amount or benefit payable pursuant to this Settlement Agreement shall be deemed a separate payment for purposes of Section 409A. Notwithstanding the foregoing, in the event the Executive is subject to additional taxes under Section 409A(a)(1)(B) as a result of the Settlement Benefits provided hereunder, the Company shall indemnify the Executive with respect to such taxes (and any income or Section 409A(a)(1)(B) additional taxes on such indemnity) up to $100,000. Such indemnification shall be paid to the Executive no later than December 31st of the year in which such excise or penalty tax is imposed.

9. <u>Executive's Acknowledgements</u>. The Executive acknowledges that:

- He has read this Settlement Agreement in its entirety and has full knowledge and understanding of its significance, meaning and binding effect, including that it constitutes a complete general release of all Claims against the Company and Released Parties covered by its terms and the Executive is not and shall not be entitled to any payments, benefits or other obligations from the Company following his separation from employment except as provided, and subject to, this Settlement Agreement;

- He is competent to understand the content and effect of this Settlement Agreement and that his decision to enter into this Settlement Agreement has not been influenced in any way by fraud, duress, coercion, mistake or misleading information and that he has not relied on any information except what is set forth herein;

- He has been advised, in writing, to review this Settlement Agreement with an attorney and/or any person of his choosing before signing;

- He has had a sufficient period of time of up to twenty-one (21) days within which to review this Settlement Agreement, including, without limitation, with his attorney, and that he has, in fact, done so or has, on the advice of counsel, waived the twenty-one (21) day consideration period;

- The Settlement Benefits are provided at the Company's sole discretion and on a non-precedential basis and that he would not have received same if he did not sign this Settlement Agreement;

- He knowingly and voluntarily agrees to all the terms and conditions contained in this Settlement Agreement; and

- This Settlement Agreement shall not become effective until the 8th day after he signs it and that he may at any time before such date revoke this Settlement Agreement by hand delivering or sending via overnight mail a written notice of revocation to the Company: Neenah Enterprises, Inc., [_____]; Attention: [_____].

5

NY 72822103v6

10.     Notices. All notices, requests, demands, claims, and other communications hereunder will be in writing and addressed to the intended recipient as set forth below. Any party hereto may give any notice, request, demand, claim or other communication hereunder by e-mail, registered or certified mail, return receipt requested, or delivery in person or by any nationally known overnight courier service that requires a return receipt or signature for delivery. Any party hereto may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other party hereto notice in the manner herein set forth.

If to the Executive:


If to the Company:


11.     Remedies. No remedy conferred upon either party by this Settlement Agreement is intended to be exclusive of any other remedy, and each and every such remedy shall be cumulative and in addition to and not in derogation of any other remedy or right given hereunder or now or hereafter existing at law or in equity, including, without limitation, any remedies conferred upon either party by virtue of their prior employment relationship. No delay or omission by either party in exercising any right, remedy or power hereunder or existing at law or in equity shall be construed as a waiver thereof, and any such right, remedy or power may be exercised by either party from time to time and as often as may be deemed expedient or necessary by the party in its sole discretion. The Executive acknowledges that money damages would not be a sufficient remedy for any breach of this Settlement Agreement by the Executive and that the Company shall be entitled to specific performance and injunctive relief as remedies for any such breach, in addition to all other remedies available at law or equity to the Company.

12.     Enforceability. If any provision of this Settlement Agreement shall be invalid or unenforceable, in whole or in part, then such provision shall be deemed to be modified or restricted to the extent and in the manner necessary to render the same valid and enforceable, or shall be deemed excised from this Settlement Agreement, as the case may require, and this Settlement Agreement shall be construed and enforced to the maximum extent permitted by law, as if such provision had been originally incorporated herein as so modified or restricted, or as if such provision had not been originally incorporated herein, as the case may be; provided, however, that if the modification or restriction of some provision of this Settlement Agreement deprives any party hereto of the substantial benefit of his or its bargain as set forth herein, then such modification or restriction shall be deemed ineffective. Except as otherwise provided herein, no waiver by either party hereto of a breach by the other party of any condition or provision of this Settlement Agreement to be performed by the other party shall be deemed a waiver of a similar or dissimilar condition or provision at the same time or at any other time.

13. <u>Governing Law</u>. The Executive and the Company agree that the terms of this Settlement Agreement shall be interpreted under and consistent with the laws of the State of New York without regard to conflicts of law. In any legal proceeding, involving directly or indirectly, any matter arising out of or related to this Settlement Agreement, each of the parties hereby irrevocably submits to the exclusive jurisdiction of the United States District Court, Southern District of New York or the Supreme Court of the State of New York in the County of New York in the borough of Manhattan and agrees not to raise any objection to such jurisdiction or to maintaining of the venue of any such proceeding, and service of process in any such proceeding may be duly effected by mailing a copy thereof, by registered mail, postage prepaid, or by hand delivery or by a nationally recognized overnight delivery service to each party thereto. To the extent permitted by law, the Executive and the Company waive any and all rights to a jury trial.

14. <u>Entire Agreement</u>. This Settlement Agreement is not an admission of any liability or wrongdoing by the Executive, the Company or the Released Parties. Except to the extent provided herein, this Settlement Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties with respect to the subject matter hereof and, except as may otherwise be set forth herein, supersedes all prior agreements (including, to the extent inconsistent herewith, the Employment Agreement), covenants, and understandings, inducements or conditions pertaining thereto, express or implied, oral or written.

15. <u>Amendment and Assignment; Successors and Assigns</u>. This Settlement Agreement may not be modified, altered, supplemented, terminated or amended except by a writing signed by the parties. All of the terms and provisions of this Settlement Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective heirs, representatives, successors, assigns and affiliates of the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement and General Release on date first set forth above.

EXECUTIVE                                                                COMPANY

By:_____                          By:_____

7