**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[1] | Case No. 10-10360 (MFW) |
| Debtors. | Jointly Administered |
| | Ref. Docket No. 324 |

**AFFIDAVIT OF ROBERT E. OSTENDORF, JR. IN SUPPORT OF
CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION
OF NEENAH ENTERPRISES, INC. AND ITS SUBSIDIARIES**

STATE OF WISCONSIN        )
                          )  ss:
COUNTY OF WINNEBAGO       )

ROBERT E. OSTENDORF, JR., being duly sworn, deposes and states:

1. I am the President and Chief Executive Officer of Neenah Enterprises, Inc. ("NEI"), a corporation organized under the laws of Delaware and one of the debtors and debtors in possession in the above-captioned chapter 11 cases (each, a "Debtor" and, collectively, the "Debtors"), and of each of the other Debtors. NEI is a holding company that conducts its business operations through its indirect, wholly-owned subsidiary Neenah Foundry Company ("Neenah"), a corporation organized under the laws of Wisconsin and one of the Debtors herein. NEI is the direct or indirect parent company of each of the other Debtors. I have served as the President, Chief Executive Officer, and a director of NEI since July 2007. I am generally familiar with the Debtors' day-to-day operations, business affairs, books, and records.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

2. I submit this affidavit (the "Affidavit") in support of confirmation of the Joint Plan of Reorganization of Neenah Enterprises, Inc. and Its Subsidiaries, dated April 27, 2010 (as it may be amended, supplemented or modified, the "Plan"). Unless otherwise specified, all capitalized terms not defined herein have the meaning assigned to such terms in the Plan.

3. I am authorized to make this Affidavit on the Debtors' behalf. Except as otherwise indicated, all facts set forth in this Affidavit are based on my personal knowledge, materials provided to me by members of the Debtors' management team, information provided by professionals the Debtors have retained, or information I obtained by reviewing relevant documents. Additionally, the opinions I assert in this Affidavit are based upon my experience and knowledge of the Debtors' operations, financial condition, and liquidity. If I were called to testify, I could and would testify competently as to the facts set forth herein.

## COMMENCEMENT OF THE CHAPTER 11 CASES

4. On February 3, 2010 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On February 12, 2010, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. I am informed that no request has been made for the appointment of a trustee or examiner in these Chapter 11 Cases.

## OVERVIEW OF THE PLAN

5. In summary, the Plan provides that: (i) the Debtors' obligations under the Prepetition Credit Agreement, the DIP Revolving Facility Agreement, and the DIP Term Facility Agreement will be repaid in full in cash; (ii) the Secured Notes will be exchanged for (a) 97% of the New Common Stock to be issued by NEI (subject to dilution by the Management Equity

Incentive Plan and the New Warrants to be issued pursuant to the Plan) and (b) $50 million in aggregate principal amount of New Secured Notes; (iii) the Subordinated Notes will be exchanged for (a) 3% of the New Common Stock (subject to dilution by the Management Equity Incentive Plan and the New Warrants to be issued pursuant to the Plan) and (b) the New Warrants; (iv) the Allowed General Unsecured Claims will be paid in full in cash; and (v) the NEI Common Interests will be cancelled and extinguished on the Effective Date.

THE PLAN SATISFIES ALL REQUIREMENTS FOR CONFIRMATION

6. Based on my review of the Plan and my discussions with the Debtors' legal advisors, it is my understanding that the Plan satisfies all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code and Bankruptcy Rule 3016.

7. *The Plan Satisfies Section 1122 of the Bankruptcy Code*. The Plan constitutes a separate plan of reorganization for each of the Debtors. I am informed and believe that each Class of Claims against and Interests in the Debtors contains only those Claims or Interests that are substantially similar to the other Claims or Interests within that Class. I believe that valid business, factual and legal reasons exist for separately classifying the various Classes of Claims against and Interests in the Debtors.

8. *The Plan Satisfies Section 1123(a) of the Bankruptcy Code*. I am informed and believe that the Plan fully complies with each requirement of section 1123(a)(1) – (7) of the Bankruptcy Code, as set forth below:

(a) *Section 1123(a)(1)*. Article II of the Plan designates all Claims and Interests that require classification, as required by section 1123(a)(1) of the Bankruptcy Code.

(b) <u>Section 1123(a)(2)</u>. Article II of the Plan specifies each Class of Claims or Interests that is Unimpaired under the Plan.

(c) <u>Section 1123(a)(3)</u>. Article III of the Plan specifies the treatment of each Class of Claims and each Class of Interests that is Impaired under the Plan.

(d) <u>Section 1123(a)(4)</u>. Article III of the Plan provides the same treatment for each Claim or Interest in a given Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

(e) <u>Section 1123(a)(5)</u>. Article V of the Plan provides adequate means for the Plan's implementation. Article V and various other provisions of the Plan specifically provide adequate means for the Plan's implementation including, without limitation: (1) the continued existence and vesting of assets in the Reorganized Debtors; (2) the adoption of the Amended and Restated Certificate of Incorporation and the Amended and Restated By-Laws; (3) the entry by the Reorganized Debtors into the Exit Revolving Facility Documentation and the Exit Term Loan Facility Documentation; (4) the issuance and distribution of the New Secured Notes, the New Common Stock and the New Warrants; (5) the cancellation of the Prepetition Credit Documents, the Secured Notes, the Subordinated Notes, and the NEI Common Interests; (6) the appointment of new directors of Reorganized NEI and other Reorganized Debtors; and (7) the Restructuring Transactions.

(f) <u>Section 1123(a)(6)</u>. The Amended and Restated Certificate of Incorporation prohibits the issuance of nonvoting equity securities, provides for the appropriate distribution of voting power among all classes of equity securities authorized for issuance, and otherwise complies with the requirements of section 1123(a)(6) of the Bankruptcy Code.

(g) <u>Section 1123(a)(7)</u>. It is my understanding that the provisions of the Plan regarding the manner of selection of officers and directors of the Reorganized Debtors are consistent with the interests of creditors and equity security holders and with public policy.

9. <u>The Plan Satisfies Section 1123(b) of the Bankruptcy Code</u>. It is my understanding that the Plan does not contain any discretionary provision that is inconsistent with the applicable provisions of the Bankruptcy Code.

10. <u>The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2))</u>. Based on my review of the Plan and my discussions with the Debtors' legal advisors, it is my understanding that the Debtors, as the proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code. It is also my understanding and belief that the Debtors, the Ad Hoc Committee of Secured Noteholders, the Secured Notes Indenture Trustee, the Subordinated Noteholders, the Committee, and each of their current and former members, partners, equity holders, officers, directors, affiliates, employees, managers, stockholders, financial advisors, attorneys, accountants, investment bankers, consultants, agents, or other representatives have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Voting Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations.

11. <u>The Debtors Have Proposed the Plan in Good Faith (Section 1129(a)(3))</u>. I believe that the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of reorganizing the Debtors in order to maximize the value of their respective Estates. Moreover, based on my review of the Plan and my discussions with the Debtors' legal advisors, it is my belief that The Debtors have proposed the Plan in good faith and not by any means

5

forbidden by law. I further submit that the Plan is a product of extensive, arm's-length negotiations among the Debtors and their principal creditor constituencies.

12. <u>The Plan Provides for Court Approval of Certain Administrative Expense Payments (Section 1129(a)(4))</u>. Based on my review of the Plan and my discussions with the Debtors' legal advisors, it is my understanding that any payment made or promised by the Debtors or by any Person issuing securities or acquiring property under the Plan, for services rendered or expenses incurred in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to this Court. It is also my understanding that the procedures set forth in the Plan for the allowance of the fees and expenses to be paid by the Debtors satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code.

13. <u>The Debtors Have Disclosed the Identity of Directors and Officers and the Compensation of Insiders (Section 1129(a)(5))</u>. The Debtors have disclosed, or will disclose at the Confirmation Hearing, the identity and affiliations of the initial directors and officers of the Reorganized Debtors. The Debtors have also disclosed, or will disclose at the Confirmation Hearing, the identity and affiliations of any insiders that will be employed or retained by the Reorganized Debtors and the nature of any compensation for such insiders.

14. <u>The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission (Section 1129(a)(6))</u>. Based on my review of the Plan and my discussions with the Debtors' legal advisors, it is my understanding that the Plan does not provide for any rate changes subject to the jurisdiction of any regulatory commission.

15. <u>The Plan Is In the Best Interests of Holders of Claims and Interests Section 1129(a)(7))</u>. Based on my review of the liquidation analysis annexed to the Disclosure Statement as <u>Exhibit E</u> (the "<u>Liquidation Analysis</u>"), and based on my discussions with the

Debtors' legal and financial advisors, it is my understanding and belief that (i) the Plan satisfies the "best interests of creditors" test under section 1129(a)(7) of the Bankruptcy Code and (ii) with respect to each Impaired Class of Claims or Interests, each Holder of an Allowed Claim or an Allowed Interest in such Class has either accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated on the Effective Date pursuant to chapter 7 of the Bankruptcy Code.

16. <u>The Plan Has Been Accepted by Each Impaired Voting Class (Section 1129(a)(8))</u>. Based on my discussions with the Debtors' legal advisors, I an informed and believe that each Impaired Class entitled to vote on the Plan has voted to accept the Plan.

17. <u>The Plan Provides for the Statutorily Mandated Treatment of Claims Entitled to Priority (Section 1129(a)(9))</u>. Based on my discussions with the Debtors' legal advisors, it is my understanding that the Plan provides for the treatment of Claims entitled to priority pursuant to sections 507(a)(2)-(8) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

18. <u>The Plan Has Been Accepted by at Least One Impaired, Non-Insider Class (Section 1129(a)(10))</u>. Based on my discussions with the Debtors' legal advisors, it is my understanding and belief that at least one Impaired Class of Claims against each Debtor has accepted the Plan, excluding the votes cast by insiders.

19. <u>The Plan Is Feasible (Section 1129(a)(11))</u>. Based on my review of the Plan, the Disclosure Statement (and all exhibits thereto), and my knowledge of the Debtors' business operations and financing needs, it is my understanding and belief that the Plan is

feasible and that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors.

20. In connection with the development of the Plan, and for purposes of determining, among other things, whether the Plan is feasible, the Debtors developed a business plan and prepared financial projections (the "Projections"), in the form of Exhibit D to the Disclosure Statement, for the period beginning July 1, 2010 through September 30, 2014 (the "Projection Period"). Following the Bankruptcy Court's approval of the Disclosure Statement, the Debtors updated the Projections to reflect the Debtors' projected income tax liabilities during the Projection Period (the "Updated Projections") and filed the Updated Projections with the Bankruptcy Court on May 6, 2010 [Docket No. 368]. The Updated Projections are premised on numerous assumptions, which are described in detail in the Disclosure Statement.

21. I believe that the Updated Projections and the business plan that forms the basis for the Updated Projections were prepared in good faith based upon assumptions the Debtors believed to be reasonable and applied in a manner consistent with past practice.

22. The Plan Provides for the Payment of Statutory Bankruptcy Fees (Section 1129(a)(12)). Based on my review of the Plan and my discussions with the Debtors' legal advisors, I am informed and believe that the Plan provides for the payment, on the Effective Date, of the statutory fees payable pursuant to 28 U.S.C. § 1930(a)(6).

23. The Plan Properly Treats Retiree Benefits (Section 1129(a)(13)). Based on my review of the Plan and my discussions with the Debtors' legal advisors, I am informed and believe that the Plan provides for the continuation after the Effective Date of all retiree benefits for the duration of the period that the Debtors are obligated to provide such benefits.

24. <u>The Plan Does Not Implicate Sections 1129(a)(14)-(16) of the Bankruptcy Code</u>. Based on my review of the Plan and my discussions with the Debtors' legal advisors, I am informed and believe none of the Debtors are (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts.

25. <u>The Plan Can Be Confirmed Over the Non-Acceptance of an Impaired Class (Section 1129(b))</u>. Based on my review of the Plan and my discussions with the Debtors' legal advisors, it is my understanding that the Plan satisfies all requirements of section 1129(b) of the Bankruptcy Code and should therefore be confirmed even though Class 8 (Section 510(b) Claims) and Class 9 (NEI Common Interests) are conclusively deemed to have rejected the Plan. Specifically, I am informed and believe that (i) no Classes of Claims or Interests senior to Section 510(b) Claims or NEI Common Interests shall receive more than full payment on account of the Claims or Interests in such Classes, (ii) no Holders of Claims or Interests junior to the Section 510(b) Claims or NEI Common Interests shall receive or retain any property under the Plan, and (iii) the Holders of Section 510(b) Claims and NEI Common Interests would not receive or retain any property on account of such Claims or Interests in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code. Accordingly, I am informed and believe that the Plan is "fair and equitable" and does not "discriminate unfairly" with respect to the Holders of Section 510(b) Claims and NEI Common Interests, and should therefore be confirmed.

26. <u>The Principal Purpose of the Plan Is Not the Avoidance of Taxes (Section 1129(d))</u>. Based on my review of the Plan, my knowledge of the circumstances leading up to its development, and my discussions with the Debtors' legal advisors, I submit that the principal purpose of the Plan is not the avoidance of taxes or the avoidance of securities laws.

27. *Releases, Discharges, Exculpations and Injunctions*.  Based on my review of the Plan, my personal knowledge of the circumstances leading up to its development, and my discussions with the Debtors' legal advisors, it is my understanding and belief that each of the releases, discharges, exculpations, indemnifications and injunctions set forth in Article X of the Plan are (i) integral to the terms, conditions, and settlements contained in the Plan; (ii) fair, equitable, reasonable and in the best interests of the Debtors, the Estates, and the Holders of Claims against and Interests in the Debtors; (iii) appropriate based on the record of these Chapter 11 Cases; and (iv) supported by good and reasonable consideration.

28. *Assumption of Executory Contracts and Unexpired Leases*.  Based on my review of the Plan and my personal knowledge of the Debtors' business operations, I am informed and believe that the assumption by the Debtors and assignment to the Reorganized Debtors, as of the Effective Date, of (i) all executory contracts and unexpired leases to which any of the Debtors is a party, (ii) all Collective Bargaining Agreements, (iii) all insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date, (iv) all contracts, agreements and leases that the Debtors entered into or assumed after the Petition Date, and (v) the Pension Plans and other retiree benefit plans, is supported by the Debtors' sound business judgment and is in the best interests of the Debtors and their Estates.

29. For the foregoing reasons, I respectfully submit that the Plan should be confirmed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: July 1, 2010

                                                  /s/ Robert E. Ostendorf, Jr.
                                                  Robert E. Ostendorf, Jr.