## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., <u>et al.</u>,[1] | Case No. 10-10360 (MFW) |
| Debtors. | Jointly Administered |
| | **Hearing Date: July 6, 2010 at 11:30 a.m. (ET)** |

### MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION
### OF THE JOINT PLAN OF REORGANIZATION FOR
### <u>NEENAH ENTERPRISES, INC. AND ITS SUBSIDIARIES</u>

| | |
|---|---|
| SIDLEY AUSTIN LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Larry J. Nyhan | Robert S. Brady (No. 2847) |
| Bojan Guzina | Edmon L. Morton (No. 3856) |
| Kerriann S. Mills | Donald J. Bowman, Jr. (No. 4383) |
| Brett H. Myrick | Kenneth J. Enos (No. 4544) |
| One South Dearborn Street | The Brandywine Building |
| Chicago, Illinois 60603 | 1000 West Street, 17th Floor |
| Telephone: (312) 853-7000 | Wilmington, Delaware 19899-0391 |
| Facsimile: (312) 853-7036 | Telephone: (302) 571-6600 |
| | Facsimile: (302) 571-1253 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 5

II. OVERVIEW OF THE PLAN ............................................................................ 5

III. PLAN SOLICITATION AND VOTING ......................................................... 6

IV. THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE. .......................... 8

    1.   The Plan Complies with All Applicable Provisions of the Bankruptcy Code - 11 U.S.C. § 1129(a)(1)................................................................................. 9

    3.   The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law – 11 U.S.C. § 1129(a)(3) ....................................... 14

    4.   The Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval – 11 U.S.C. § 1129(a)(4)......................... 15

    5.   The Debtors Have Disclosed the Identity of Directors and Officers and the Nature of Compensation of Insiders – 11 U.S.C. § 1129(a)(5) ........................... 15

    6.   The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission – 11 U.S.C. § 1129(a)(6) ............... 16

    7.   The Plan Is in the Best Interests of Creditors – 11 U.S.C. § 1129(a)(7)............... 16

    8.   The Plan Has Been Accepted by Each Impaired Voting Class – 11 U.S.C. § 1129(a)(8)................................................................................. 17

    9.   The Plan Provides for Payment in Full of All Allowed Priority Claims – 11 U.S.C. § 1129(a)(9)................................................................................. 18

    10.  At Least One Impaired, Non-Insider Class Has Accepted the Plan – 11 U.S.C. § 1129(a)(10)............................................................................... 20

    11.  The Plan Is Feasible – 11 U.S.C. § 1129(a)(11) ................................................. 20

    12.  All Statutory Fees Have or Will Be Paid – 11 U.S.C. § 1129(a)(12) ................... 22

    13.  The Plan Appropriately Treats Retiree Benefits – 11 U.S.C. § 1129(a)(13) ........ 23

    14.  Sections 1129(a)(14)-(a)(16) of the Bankruptcy Code are Inapplicable .............. 23

  15.  The Plan Satisfies the Requirements for Confirmation Under Section 1129(b) of the Bankruptcy Code Over the Non-Acceptance of an Impaired Class........................... 23

a.    The Plan Does Not Discriminate Unfairly with Respect to the Holders of
Claims and Interests in the Deemed Rejecting Classes ........................................ 25

b.    The Plan is Fair and Equitable with Respect to Holders of Claims and
Interests in the Deemed Rejecting Class.............................................................. 26

16.   The Plan Is Not an Attempt to Avoid Tax Obligations – 11 U.S.C. § 1129(d).... 26

**V. THE ASSUMPTION OF EXECUTORY AND UNEXPIRED LEASES UNDER THE
PLAN SHOULD BE APPROVED** ........................................................................................ 27

**VI. THE DISCHARGE, INJUNCTION, RELEASE AND EXCULPATION PROVISIONS
ARE PERMISSIBLE AND SHOULD BE APPROVED**....................................................... 29

1.    The Discharge and Injunction Provisions Set Forth in Sections 10.2 and 10.4 of the
Plan Comply With the Bankruptcy Code.................................................................. 29

2.    The Direct Releases by the Debtors in Section 10.2 of the Plan Satisfy the Zenith
Factors. ..................................................................................................................... 29

3.    The Third Party Releases Set Forth in Section 10.2(c) of the Plan are Consensual and
Therefore Should be Approved. ................................................................................ 31

4.    The Exculpation Provisions are Appropriate and Should be Approved. ..................... 34

**VII. RESOLUTION OF THE OBJECTIONS** ......................................................................... 36

**VIII. CONCLUSION** ............................................................................................................. 37

## TABLE OF AUTHORITIES

**Cases**

In re 11,111, Inc., 117 B.R. 471 (Bankr. D. Minn. 1990).................................................. 23

In re Alta+Cast, LLC, 2004 Bankr. LEXIS 219 (Bankr. D. Del. 2004) .......................................... 4

In re Bally Total Fitness of Greater New York, Inc., 2007 WL 2779438 (Bankr. S.D.N.Y. 2007) ............................................................................................................................. 30

In re Bank of Am. Nat'l Trust and Savings Assoc. v. 203 N. LaSalle St. P'ship (In re 203 N. LaSalle), 526 U.S. 434 (1999) ......................................................................... 12, 21

In re Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y. 1990); .................................. 20, 21

In re CoreStates Bank, N.A. v. United Chem Tech., Inc., 202 B.R. 33 (E.D. Pa. 1996) .............. 19

In re Cellular Info. Sys., Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) .................................. 10

In re Century Glove, 1993 WL 239489 .............................................................................. 5, 10

In re Continental Airlines, 203 F.3d 203, 214 (3d Cir. 2000)............................................. 28

In re Coram Healthcare Corp., 271 B.R. 228 (Bankr. D. Del. 2001) ...................................... 10

In re Coram Healthcare Corp., 315 B.R. 321 (Bankr. D. Del. 2004) .............................. 5, 27, 29

In re Drexel Burnham Lambert Group Inc., 138 B.R. 723 (Bankr. S.D.N.Y. 1992) ............. 10, 13

In re Elsinore Shore, 91 B.R. 238 (D.N.J. 1988) ............................................................... 5, 9

In re G Survivor Corp., 171 B.R. 755 (Bankr. S.D.N.Y. 1994)............................................. 23

In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001)............................... 28

In re Greate Bay Hotel & Casino, Inc., 251 B.R. 213 (Bankr. D.N.J. 2000)...................... 18, 21

In re Greystone III Joint Venture, 995 F.2d 1274 (5th Cir. 1991)........................................... 6

In re Heartland Fed'l Sav. & Loan Ass'n v. Briscoe Enters. Ltd. II (In re Briscoe Enters., Ltd.), 994 F.2d 1160 (5th Cir. 1993) ........................................................................... 4, 19

In re Jersey City Med. Ctr., 817 F.2d 1055, (3d Cir. 1987)................................................ 5, 6

In re John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs., 987 F.2d 154 (3d Cir. 1993) ................................................................................................................. 6, 20

In re Kennedy, 158 B.R. 589 (Bankr. D.N.J. 1993)........................................................... 21

In re Leslie Fay Cos., Inc., 207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...................................... 20

In re Lubrizol Enterprises, Inc. v. Richmond Metal Finishers (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043 (4th Cir. 1985), cert. denied, 475 U.S. 1057 (1986)...................... 23

In re Mayer Pollack Steel Corp., 174 B.R. 414 (Bankr. E.D. Pa. 1994)................................ 17

In re Monroe Well Service, Inc., 80 B.R. 324 (Bankr. E.D. Pa. 1987) ................................... 28

In re Prussia Assocs., 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) ...................................... 17

In re PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000)................................................... 9, 30

In re Resorts Int'l Inc., 145 B.R. 412 (Bankr. D.N.J. 1990).............................................. 5, 9

In re Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303 (5th Cir. 1986) .................. 24

In re River Village Assocs., 161 B.R. 127 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995) .................................................................................................................... 9

In re Rivera Echevarria, 129 B.R. 11 (Bankr. D.P.R. 1991) ................................................ 17

In re Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36 (3d Cir. 1989)................. 23

In re Sound Radio, Inc., 103 B.R. 521 (D.N.J. 1989)....................................................... 19

In re Source Enters., Inc., 2007 WL 2903954 (Bankr. S.D.N.Y. 2007) .................................. 30

In re Spiegel, Inc., 2006 WL 2577825 (Bankr. S.D.N.Y. 2006) ........................................... 31

In re Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co.), 800 F.2d 581 (6th Cir. 1986)................................................................. 6

3

In re T-H New Orleans Ltd. P'ship, 116 F.3d 790, 801 (5th Cir. 1997)....................................... 17
In re Temple Zion, 124 B.R. 910 (Bankr. E.D. Pa. 1991) .............................................................. 18
In re Texaco, Inc., 85 B.R. 934 (Bankr. S.D.N.Y. 1988)................................................................ 11
In re Vencor, Inc., 2001 WL 34135323 (Bankr. D. Del. 2001)...................................................... 20
In re West Coast Video Enter., Inc., 174 B.R. 906 (Bankr. E.D. Pa. 1994) ................................. 27
In re Worldcom, Inc., 2003 WL 23861928 (Bankr. S.D.N.Y. 2003) ............................................. 31
In re Zenith Elec. Corp., 241 B.R. 92 (Bankr. D. Del. 1999) .................................. 20 , 26, 27, 29

## Statutes

11 U.S.C. § 365(a) ........................................................................................................................ 23
11 U.S.C. § 157(b)(2)(L) ............................................................................................................... 23
11 U.S.C. § 1122(a) .................................................................................................................... 5, 6
11 U.S.C. § 1123(a)(1) ..................................................................................................................... 7
11 U.S.C. § 1123(a)(2) ..................................................................................................................... 7
11 U.S.C. § 1123(a)(3) ..................................................................................................................... 7
11 U.S.C. § 1123(a)(4) ..................................................................................................................... 8
11 U.S.C. § 1123(a)(5) ..................................................................................................................... 8
11 U.S.C. § 1123(a)(6) ..................................................................................................................... 8
11 U.S.C. § 1123(a)(7) ..................................................................................................................... 9
11 U.S.C. § 1126(c) ....................................................................................................................... 14
11 U.S.C. § 1126(f) .................................................................................................................... 3, 13
11 U.S.C. § 1129(a)(1) ..................................................................................................................... 5
11 U.S.C. § 1129(a)(2) ..................................................................................................................... 9
11 U.S.C. § 1129(a)(3) ................................................................................................................... 10
11 U.S.C. § 1129(a)(4) ................................................................................................................... 11
11 U.S.C. § 1129(a)(7) .............................................................................................................. 12, 13
11 U.S.C. § 1129(a)(9) .......................................................................................................... 14, 15, 16
11 U.S.C. § 1129(a)(10) ................................................................................................................. 16
11 U.S.C. § 1129(a)(11) ........................................................................................................... 16, 17
11 U.S.C. § 1129(a)(12) ................................................................................................................. 18
11 U.S.C. § 1129(a)(13) ................................................................................................................. 19
11 U.S.C. § 1129(b) ...................................................................................................................... 19

## Other Authorities

S. Rep. No. 95-989 ...................................................................................................................... 5, 9

## Treatises

Collier on Bankruptcy, ¶ 1129.03[1] (15th ed. rev. 2007)............................................................. 9

## I. INTRODUCTION

Neenah Enterprises, Inc. and each of its wholly-owned subsidiaries, the debtors and debtors in possession in the above-captioned jointly administered cases (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 3, 2010 (the "Petition Date"). The Debtors have proposed the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries, dated April 27, 2010 (as the same may be further amended, supplemented or modified, the "Plan")[2] [Docket No. 324]. The Confirmation Hearing is scheduled for July 6, 2010 at 11:30 a.m. (Eastern Time). In connection with the Confirmation Hearing, the Debtors submit this Memorandum of Law (the "Memorandum") in support of entry of the Confirmation Order. This Memorandum addresses the requirements set forth in the Bankruptcy Code for confirmation of the Plan. In support of this Memorandum and confirmation of the Plan, the Debtors are also filing concurrently herewith the affidavits of (i) Robert E. Ostendorf, Jr., the President and Chief Executive Officer of NEI (the "Ostendorf Affidavit"); (ii) Stephen J. Antinelli, a Managing Director of Rothschild Inc. (the "Antinelli Affidavit"); and (iii) Richard D. Caruso, a Managing Director of Huron Consulting Services LLC (the "Caruso Affidavit").

## II. OVERVIEW OF THE PLAN

In summary, the Plan provides that: (i) the Debtors' obligations under the Prepetition Credit Agreement, the DIP Revolving Facility Agreement, and the DIP Term Facility Agreement will be repaid in full in cash; (ii) the Secured Notes will be exchanged for (a) 97% of the New Common Stock to be issued by NEI (subject to dilution by the Management Equity Incentive Plan and the New Warrants to be issued pursuant to the Plan) and (b) $50 million in aggregate principal amount of New Secured Notes; (iii) the Subordinated Notes will be

---

[2] Capitalized terms used but not otherwise defined herein have the meaning assigned to such terms in the Plan.

exchanged for (a) 3% of the New Common Stock (subject to dilution by the Management Equity Incentive Plan and the New Warrants to be issued pursuant to the Plan) and (b) the New Warrants; (iv) the Allowed General Unsecured Claims will be paid in full in cash; and (v) the NEI Common Interests will be cancelled and extinguished on the Effective Date.  The Debtors believe that the Plan will substantially deleverage their consolidated balance sheets and reduce their cash interest expense to a level that is better aligned with their expected future cash flows.

### III. PLAN SOLICITATION AND VOTING

On April 27, 2010, following a hearing on the adequacy of the Disclosure Statement, the Court entered the Order: (I) Approving the Disclosure Statement, (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (III) Scheduling a Hearing to Consider Confirmation of the Plan and Establishing Notice and Objection Procedures in Respect Thereof, and (IV) Granting Related Relief [Docket No. 329] (as subsequently modified on May 14, 2010 [Docket No. 416], June 9, 2010 [Docket No. 500], and June 18, 2010 [Docket No. 547], the "Voting Procedures Order"), pursuant to which the Court, among other things, (i) approved the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, (ii) established procedures for the solicitation and tabulation of votes to accept or reject the Plan, and (iii) scheduled the Confirmation Hearing and established related deadlines.

In accordance with the Voting Procedures Order, on May 17, 2010 (the "Solicitation Commencement Date"), the Debtors commenced the solicitation of votes to accept or reject the Plan from the Holders of Claims in Classes 4, 5, and 6 (the "Voting Classes") who held such Claims as of April 30, 2010 (the "Record Date").  Also on or prior to May 17, 2010, the Debtors caused The Garden City Group, Inc. ("GCG"), the Claims and Noticing Agent in these Chapter 11 Cases, to transmit copies of: (i) the Disclosure Statement and exhibits annexed

thereto; (ii) the Plan; (iii) the Voting Procedures Order, excluding exhibits annexed thereto; (iv) notice of the confirmation hearing (the "Confirmation Hearing Notice"); (v) for parties entitled to vote on the Plan, an appropriate Ballot and/or Master Ballot with a return envelope; (iv) notices of non-voting status (for parties not entitled to vote on the Plan); and (vii) certain other approved solicitation materials (collectively, the "Solicitation Packages"). On May 26, 2010, Paul V. Kinealy of GCG executed (i) an affidavit of service (which GCG filed with the Court on May 26, 2010 [Docket No. 463]) regarding the mailing of notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and solicitation materials in respect of the Plan in accordance with the terms of the Voting Procedures Order (the "Solicitation Affidavit") and (ii) an affidavit of publication (which GCG filed with the Court on May 26, 2010 [Docket No. 455]), attesting that a version of the Confirmation Hearing Notice (which the Court approved pursuant to the Voting Procedures Order) was published in (a) The Wall Street Journal on May 20, 2010 and (b) the national edition of USA Today on May 20, 2010 (the "Publication Affidavit").

   The Debtors did not solicit votes on the Plan from the Holders of (i) Unclassified Claims, (ii) Claims or Interests in Classes 1, 2, 3, and 10, which are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, (iii) Intercompany Claims in Class 7; or (iv) Claims in Class 8 or Interests in Class 9, which are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

   As described in greater detail below, the Debtors believe that the Plan has been (or will be prior to the Confirmation Hearing) overwhelmingly accepted by all Voting Classes. See Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Preliminary Results of Voting with Respect to the Joint Plan of Reorganization for Neenah Enterprises Inc. and Its Subsidiaries (the "Voting Affidavit").

Because the Voting Affidavit is being filed prior to the Voting Deadline, it will be supplemented

prior to the Confirmation Hearing to reflect any additional votes that may be received.  The

Debtors expect that their creditors will overwhelmingly support the Plan.

### IV.  THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE.

Section 1129 of the Bankruptcy Code governs the confirmation of a plan of

reorganization and sets forth the requirements that must be satisfied in order for a plan to be

confirmed.  As the proponents of the Plan, the Debtors bear the burden of establishing that all

elements necessary for confirmation of the Plan under section 1129(a) of the Bankruptcy Code

have been met by a preponderance of the evidence.  See Heartland Fed'n Sav. & Loan Ass'n v.

Briscoe Enters. Ltd. II (In re Briscoe Enters., Ltd. II), 994 F.2d 1160, 1165 (5th Cir. 1993)

(stating that the bankruptcy court must find that the Debtors have satisfied the provisions of

section 1129 by a preponderance of the evidence); In re Alta+Cast, LLC, 2004 Bankr. LEXIS

219, *6 (Bankr. D. Del. Mar. 2, 2004) (same).

As addressed in detail below, the Plan satisfies all of the applicable requirements

of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8) with respect to Classes

8 and 9.  Classes 8 and 9 (the "Deemed Rejecting Classes") are deemed to have rejected the Plan

pursuant to section 1126(g) of the Bankruptcy Code.  Pursuant to section 1129(b)(1) of the

Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the Deemed

Rejecting Classes have not accepted the Plan so long as the Plan is fair and equitable with

respect to, and does not unfairly discriminate against, the Deemed Rejecting Classes.

This Memorandum and the affidavits filed concurrently herewith demonstrate, by

a preponderance of the evidence, that (i) the Plan complies with the requirements of section

1129(a) of the Bankruptcy Code with respect to all classes of Claims or Interests, other than

section 1129(a)(8) with respect to the Deemed Rejecting Classes, and (ii) the Plan satisfies the

requirements of sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) of the Bankruptcy Code with

respect to the Deemed Rejecting Classes.  Accordingly, the Plan should be confirmed.

1.    **The Plan Complies with All Applicable Provisions of the Bankruptcy Code -
      11 U.S.C. § 1129(a)(1)**

Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a

plan of reorganization only if "[t]he plan complies with the applicable provisions of [the

Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).[3] As set forth below, the Plan complies with all

applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the

Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code.

a.  **The Classification of Claims and Interests in the Plan Satisfies the
    Requirements of Section 1122 of the Bankruptcy Code**

Section 1122(a) of the Bankruptcy Code provides that the claims or interests

within a given class must be "substantially similar." 11 U.S.C. § 1122(a).  Section 1122(a),

however, does not mandate that "substantially similar" claims be classified together.  See id.; see

also In re Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987) (agreeing that section 1122

permits the grouping of similar claims in different classes); In re Coram Healthcare Corp., 315

B.R. 321, 348 (Bankr. D. Del. 2004) (noting that "section 1122 . . . provides that claims that are

not 'substantially similar' may not be placed in the same class; it does not expressly prohibit

placing 'substantially similar' claims in separate classes").

Courts have generally permitted the separate classification of substantially similar

claims so long as the claims were not classified to "gerrymander" an accepting impaired class.

---

[3] The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections
1122 and 1123, which govern the classification of claims under the plan and the contents of the plan, respectively.
See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); see also In re Century Glove, Inc.,
1993 WL 239489, at *6 (D. Del. Feb. 10, 1993); In re Resorts Int'l, Inc., 145 B.R. 412, 446-47 (Bankr. D.N.J.
1990); In re Elsinore Shore Assocs., 91 B.R. 238, 256 (Bankr. D.N.J. 1988).

See In re Greystone III Joint Venture, 995 F.2d 1274, 1279 (5th Cir. 1991) ("Thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."); see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc., 987 F.2d 154, 158 (3d Cir. 1993).  While gerrymandering claims in order to create an impaired accepting class is not permissible, section 1122 provides debtors with a great degree of flexibility in classifying claims and interests and courts are offered broad discretion in approving a proponent's classification scheme and to properly consider the specific facts of each case before rendering a decision.  See In re Jersey City Med. Ctr., 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety of plans in light of the facts of each case"); Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co.), 800 F.2d 581, 586 (6th Cir. 1986 (noting the "broad discretion" of courts to determine proper classifications).

Article II of the Plan classifies ten (10) Classes of Claims against and Interests in the Debtors, which are described more fully in the Plan and the Disclosure Statement.  The Classes, with respect to each applicable Debtor, are designated as follows:  Priority Non-Tax Claims (Class 1); Other Secured Claims (Class 2); Prepetition Credit Agreement Claims (Class 3); Secured Notes Claims (Class 4); General Unsecured Claims (Class 5); Subordinated Notes Claims (Class 6); Intercompany Claims (Class 7); Section 510(b) Claims (Class 8); NEI Common Interests (Class 9); and Subsidiary Interests (Class 10). In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims against and Interests in the Debtors contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Valid business, factual and legal reasons exist for separately classifying the

various Classes of Claims against and Interests in the Debtors under the Plan.  Accordingly, the

Debtors submit that the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

> **b.  The Plan Satisfies the Requirements of Section 1123(a) of the Bankruptcy Code and Complies with Section 1123(b)(6) of the Bankruptcy Code**

The Plan also complies with section 1123(a) of the Bankruptcy Code, which sets

forth seven (7) requirements with which every plan of reorganization must comply.  11 U.S.C.

§ 1123(a).  As demonstrated below, the Plan complies with each such requirement.  In addition,

as required by section 1123(b)(6) of the Bankruptcy Code, the Plan does not contain any

discretionary provision that is inconsistent with applicable provisions of the Bankruptcy Code.

(i)    Section 1123(a)(1).  Article II of the Plan properly designates all

Claims and Interests that require classification, as required by section 1123(a)(1) of the

Bankruptcy Code.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative

Expense Claims, DIP Revolving Facility Claims, DIP Term Facility Claims, and Priority Tax

Claims are not required to be designated into Classes.

(ii)    Section 1123(a)(2).  In accordance with section 1123(a)(2) of the

Bankruptcy Code, Article II of the Plan specifies each Class of Claims or Interests that is

Unimpaired under the Plan.  In particular, Article II of the Plan provides that Class 1 (Priority

Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Prepetition Credit Agreement

Claims), and Class 10 (Subsidiary Interests) are Unimpaired under the Plan.

(iii)    Section 1123(a)(3).  In accordance with section 1123(a)(3) of the

Bankruptcy Code, Article III of the Plan specifies the treatment of each Class of Claims and each

Class of Interests that is Impaired under the Plan.  In particular, Article III of the Plan specifies

the treatment of Class 4 (Secured Notes Claims), Class 5 (General Unsecured Claims), Class 6

11

(Subordinated Notes Claims), Class 7 (Intercompany Claims), Class 8 (Section 510(b) Claims), and Class 9 (NEI Common Interests).

(iv)    Section 1123(a)(4).  In accordance with section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides the same treatment for each Claim or Interest in a given Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

(v)    Section 1123(a)(5).  In accordance with section 1123(a)(5) of the Bankruptcy Code, Article V of the Plan provides adequate means for the Plan's implementation. On the Effective Date of the Plan, the Reorganized Debtors will have sufficient Cash to make all payments required to be made on the Effective Date pursuant to the terms of the Plan. Moreover, Article V and various other provisions of the Plan specifically provide adequate and proper means for the Plan's implementation including, without limitation: (1) the continued corporate existence and vesting of assets in the Reorganized Debtors; (2) the adoption of the Amended and Restated Certificate of Incorporation and the Amended and Restated By-Laws; (3) the entry by the Reorganized Debtors into the Exit Revolving Facility Documentation and the Exit Term Loan Facility Documentation; (4) the issuance and distribution of the New Secured Notes, the New Common Stock and the New Warrants; (5) the cancellation of the Prepetition Credit Documents, the Secured Notes, the Subordinated Notes, and the NEI Common Interests; (6) the appointment of new directors of Reorganized NEI and other Reorganized Debtors; and (7) the Restructuring Transactions.

(vi)    Section 1123(a)(6).  In accordance with section 1123(a)(6) of the Bankruptcy Code, the Amended and Restated Certificate of Incorporation contains provisions prohibiting the issuance of nonvoting equity securities, provides for the appropriate distribution

of voting power among all classes of equity securities authorized for issuance, and otherwise

complies with the requirements of section 1123(a)(6) of the Bankruptcy Code.

       (vii)   Section 1123(a)(7).  In accordance with section 1123(a)(7) of the

Bankruptcy Code, the provisions of the Plan regarding the manner of selection of officers and

directors of the Reorganized Debtors are consistent with the interests of creditors and equity

security holders and with public policy, and no party in interest has suggested otherwise.

**2.      The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code – 11 U.S.C. § 1129(a)(2)**

Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a plan

comply "with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2).[4]  Whereas section

1129(a)(1) of the Bankruptcy Code focuses on the form and content of a plan itself, section

1129(a)(2) is concerned with the applicable activities of a plan proponent.  See 7 Collier on

Bankruptcy, ¶ 1129.03[1] (15th ed. rev. 2007).  In determining whether a plan proponent has

complied with this section, courts focus on whether the proponent has adhered to the disclosure

and solicitation requirements of sections 1125 and 1126.  See In re PWS Holding Corp., 228

F.3d 224, 248 (3d Cir. 2000); In re Resorts Int'l Inc., 145 B.R. 412, 468 (Bankr. D.N.J. 1990)

(applying section 1129(a)(2) only to disclosure requirements of Bankruptcy Code.

The Debtors, as the proponents of the Plan, have complied with all solicitation

and disclosure requirements set forth in the Bankruptcy Code, the Bankruptcy Rules, and the

Voting Procedures Order governing notice, disclosure, and solicitation in connection with the

Plan and the Disclosure Statement.  Among other things, as evidenced by the Solicitation

---

[4] The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126.  H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); see also In re Resorts Int'l, Inc., 145 B.R. 412, 468-69 (D.N.J. 1990); In re Elsinore Shore, 91 B.R. 238, 258 (D.N.J. 1988); In re River Village Assocs., 161 B.R. 127, 140 (Bankr. E.D. Pa. 1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995).

Affidavit, it is clear that the Debtors have complied with all previous orders of the Court

regarding solicitation of votes, including the Voting Procedures Order, and that the Debtors have

complied with the Bankruptcy Code, the Bankruptcy Rules, and other applicable law with

respect to the foregoing.  Accordingly, the requirements of section 1129(a)(2) have been

satisfied.  See In re Drexel Burnham Lambert Group Inc., 138 B.R. 723, 769 (Bankr. S.D.N.Y.

1992) (Section 1129(a)(2) satisfied where debtors complied with all provisions of Bankruptcy

Code and Bankruptcy Rules governing notice, disclosure and solicitation relating to Plan).

3.    **The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law – 11 U.S.C. § 1129(a)(3)**

Section 1129(a)(3) requires that a plan of reorganization be "proposed in good

faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  "The good faith

standard requires that the plan be 'proposed with honesty, good intentions and a basis for

expecting that a reorganization can be effected with results consistent with the objectives and

purposes of the Bankruptcy Code.'"  In re Coram Healthcare Corp., 271 B.R. 228, 234 (Bankr.

D. Del. 2001) (citations omitted).  In determining whether a plan has been proposed in good

faith, courts have recognized that they should avoid applying any hard and inflexible rules, but

should instead evaluate each case on its own merits.  In re Century Glove, 1993 WL 239489 at

*4 (good faith should be evaluated in light of the totality of the circumstances surrounding

confirmation); In re Cellular Info. Sys., Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) (same).

The Debtors have proposed the Plan in good faith and not by any means forbidden

by law.  Such good faith is evidenced by the consensual nature of the Plan and the overwhelming

support for its confirmation among the Debtors' creditors.  The Plan is the culmination of

significant arm's-length negotiations among the Debtors and their principal creditor

constituencies and reflects the results of these arm's length negotiations.  See Ostendorf Aff.

14

¶ 11. The Debtors submit that the Plan is fundamentally fair to all stakeholders and has been proposed with the legitimate purpose of reorganizing the affairs of each of the Debtors. Inasmuch as the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code, the Plan has been filed in good faith and satisfies the requirements of section 1129(a)(3).

4.    **The Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval – 11 U.S.C. § 1129(a)(4)**

Section 1129(a)(4) of the Bankruptcy Code provides that the Court shall confirm a plan only if "[a]ny payment made or to be made by the proponent, [or] by the debtor, . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4).  In other words, the debtor must disclose to the Court all professional fees and expenses, and such professional fees and expenses must be subject to Court approval.  See In re Texaco, Inc., 85 B.R. 934, 939 (Bankr. S.D.N.Y. 1988).

In accordance with section 1129(a)(4) of the Bankruptcy Code, no payment for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incidental to the Chapter 11 Cases, including Claims for professional fees, has been or will be made by the Debtors other than payments that have been authorized by order of the Bankruptcy Court.  (Ostendorf Aff. ¶ 12)  Section 3.1 of the Plan provides for the payment of various Administrative Expense Claims, including Claims for professional fees, which are subject to Bankruptcy Court approval and the standards of the Bankruptcy Code.  (Plan § 3.1.) Accordingly, the provisions of the Plan comply with section 1129(a)(4) of the Bankruptcy Code.

5.    **The Debtors Have Disclosed the Identity of Directors and Officers and the Nature of Compensation of Insiders – 11 U.S.C. § 1129(a)(5)**

Section 1129(a)(5) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if the proponent discloses the identity of those individuals who will serve

15

as management of the reorganized debtor, the identity of any insider to be employed or retained

by the reorganized debtor, and the compensation proposed to be paid to such insider.  In

addition, under section 1129(a)(5)(A)(ii), the appointment or continuation in office of existing

management must be consistent with the interests of creditors, equity security holders, and public

policy.  The Debtors have disclosed, or will disclose at the Confirmation Hearing, all necessary

information regarding the officers and directors of the Reorganized Debtors, including for those

directors and officers who may constitute insiders, and the compensation paid or to be paid as of

the Effective Date.  The appointment or continuance of the proposed directors and officers is

consistent with the interests of the Holders of Claims and Interests and with public policy.

Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

6.      **The Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission – 11 U.S.C. § 1129(a)(6)**

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory

commission having jurisdiction over the rates charged by the reorganized debtor in the operation

of its business approve any rate change under the plan.  The Plan does not provide for or

contemplate any rate changes because the Debtors' businesses do not involve the establishment

of rates over which any regulatory commission has jurisdiction or will have jurisdiction after

Confirmation.  Accordingly, section 1129(a)(6) is inapplicable to these Chapter 11 Cases.

7.      **The Plan Is in the Best Interests of Creditors – 11 U.S.C. § 1129(a)(7)**

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best

interests of creditors and equity holders.  This "best interests" test focuses on individual

dissenting creditors rather than classes of claims.  See Bank of Am. Nat'l Trust & Sav. Ass'n v.

203 N. LaSalle St. P'ship, 526 U.S. 434, 441 n.13 (1999).  The best interests test requires that

each holder of a claim or equity interest either accept the plan or receive or retain under the plan

16

property having a present value, as of the effective date of the plan, not less than the amount such

holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy

Code. 11 U.S.C. § 1129(a)(7). If a class of claims or equity interests unanimously approves the

plan, the best interests test is deemed satisfied for all members of that class. In re Drexel

Burnham Lambert Group, Inc., 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992). Under the Plan,

Classes 4 through 9 are Impaired. The test therefore requires that each non-accepting Holder of

a Claim in Classes 4 through 9 must either accept the Plan or receive or retain under the Plan

property having a present value, as of the effective date of the Plan, not less than the amount that

such Holder would receive or retain if the Debtors were liquidated under chapter 7.

Based on the liquidation analysis annexed to the Disclosure Statement as Exhibit

E (the "Liquidation Analysis"), including the methodologies used and the assumptions made

therein, it is clear that the best interests test is satisfied as to each of the Impaired Classes under

the Plan, because a chapter 7 liquidation of the Debtors' estates would result in a substantial

diminution in the value to be realized by Holders of Claims in Classes 4 through 7, and would

provide no alternative or better recovery for the Holders of Claims and Interests in Classes 8 and

9 when compared to the proposed distributions under the Plan. (Caruso Aff. ¶ 5) Accordingly,

the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

8.    **The Plan Has Been Accepted by Each Impaired Voting Class –
      11 U.S.C. § 1129(a)(8)**

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims and

interests either has either accepted or is not impaired under the plan of reorganization. As

indicated in Article II of the Plan, Classes 1 through 3 and Class 10 are Unimpaired under the

Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code.[5] The Debtors anticipate that each Impaired Class of Claims entitled to vote to accept or reject the Plan will overwhelmingly vote to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code. Because the Plan provides that the Holders of Claims in Classes 8 and 9 will not receive any distributions or retain any property under the Plan, Classes 8 and 9 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors seek confirmation of the Plan despite the deemed rejection by Classes 8 and 9 pursuant to section 1129(b) of the Bankruptcy Code, as described below.

9.    **The Plan Provides for Payment in Full of All Allowed Priority Claims – 11 U.S.C. § 1129(a)(9)**

Section 1129(a)(9) of the Bankruptcy Code requires that all claims entitled to priority pursuant to sections 507(a)(2)-(8) of the Bankruptcy Code receive certain specified treatment. The Plan meets the requirements of section 1129(a)(9) of the Bankruptcy Code with respect to the Administrative Expense Claims, the Priority Tax Claims, and the Priority Non-Tax Claims. Section 3.1(a) of the Plan provides that, subject to certain conditions specified therein, each Holder of an Allowed Administration Expense Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Administrative Expense Claim, either (i) on the latest to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter), (b) the first Distribution Date after such Administrative Expense Claim becomes an Allowed Claim, and (c) such other date as agreed upon by the Debtors and the Holder of such Administrative Expense Claim, or (ii) on such other date as the Court may order, (a) Cash equal to the full unpaid amount of such Allowed Administrative Expense Claim, or (b) such other treatment as the Debtors and the Holder of Such

---

[5] The Debtors, as proponents of the Plan and Holders of Intercompany Claims in Class 7, are deemed to have accepted the Plan. Accordingly, votes to accept the Plan were not solicited from the Debtors in their capacities of Holders of Intercompany Claims in Class 7.

Administrative Expense Claim shall have agreed; provided, however, that (x) the Ad Hoc

Committee Advisor Claims and the Secured Notes Indenture Trustee Claims shall be paid in the

ordinary course of business on the Effective Date (or as soon as reasonably practicable

thereafter), and (y) all Administrative Expense Claims not yet due or that represent obligations

incurred by the Debtors in the ordinary course of their business during these Chapter 11 Cases,

or assumed by the Debtors during these Chapter 11 Cases, shall be paid or performed when due

in the ordinary course of business and in accordance with the terms and conditions of the

particular agreements governing such obligations.

      Section 3.1(d) of the Plan provides that, except to the extent that a Holder of an

Allowed Priority Tax Claim agrees to a less favorable treatment (in which event such other

agreement shall govern), each Holder of an Allowed Priority Tax Claim that is due and payable

on or before the Effective Date shall receive, on account of and in full and complete settlement,

release and discharge of, and in exchange for, such Allowed Priority Tax Claim, in the Debtors'

discretion, either (i) Cash equal to the amount of such Allowed Priority Tax Claim on the later of

the Initial Distribution Date (or as soon as is reasonably practicable thereafter) and the first

Distribution Date after such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter

as is reasonably practicable, or (ii) pursuant to Section 1129(a)(9)(C) of the Bankruptcy Code,

deferred Cash payments made on the first Business Day following each anniversary of the

Effective Date over a period not exceeding five (5) years after the Petition Date, with a total

value as of the Effective Date equal to the amount of such Allowed Priority Tax Claim.

      Section 3.2(a) of the Plan provides that each Holder of an Allowed Priority Non-

Tax Claim that is due and payable on or before the Effective Date shall receive, in full and

complete settlement, release and discharge of and in exchange for such Claim, at the election of

the Debtors, either (i) Cash equal to the amount of such Allowed Claim in accordance with Section 1129(a)(9) of the Bankruptcy Code, on the later of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the first Distribution Date after such Priority Non-Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable, or (ii) such other treatment required to render such Allowed Priority Non-Tax Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.  All Allowed Priority Non-Tax Claims which are not due and payable on or before the Effective Date shall be paid by the Reorganized Debtors in the ordinary course of business when such Claims become due and payable in accordance with the applicable non-bankruptcy law governing such Claims.

Accordingly, the Debtors submit that the Plan complies with section 1129(a)(9) of the Bankruptcy Code.

### 10. At Least One Impaired, Non-Insider Class Has Accepted the Plan – 11 U.S.C. § 1129(a)(10)

Section 1129(a)(10) of the Bankruptcy Code requires that at least one impaired class of claims must accept the plan, excluding the votes of insiders.  11 U.S.C. § 1129(a)(10); see In re Martin, 66 B.R. 921, 924 (Bankr. D. Mont. 1986) (holding that acceptance by three classes of impaired creditors, exclusive of insiders, satisfied requirement of section 1129(a)(10)).

The Debtors believe that at least one Impaired Class of Claims against each Debtor will accept the Plan, excluding the votes of insiders.  Accordingly, the Debtors believe that the Plan will satisfy the requirements of section 1129(a)(10) of the Bankruptcy Code.

### 11. The Plan Is Feasible – 11 U.S.C. § 1129(a)(11)

Pursuant to section 1129(a)(11) of the Bankruptcy Code, a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the

debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11

U.S.C. § 1129(a)(11).  To establish that a plan is feasible, it is not necessary that success be

guaranteed.  Rather, it need only be shown that there is a "reasonable assurance that the debtor

will remain commercially viable for a reasonable time." In re Sound Radio, Inc., 103 B.R. 521,

523 (D.N.J. 1989).  Indeed, "[u]nder 1129(a)(11), all that is required is a 'reasonable' prospect

for financial stability and success." Id. at 524; In re Johns-Manville Corp., 843 F.2d 636, 649

(2d Cir. 1988) ("As the Bankruptcy Court correctly stated, the feasibility standard is whether the

plan offers a reasonable assurance of success.  Success need not be guaranteed").

 While the debtor bears the burden of proving plan feasibility, the applicable

standard is by a preponderance of the evidence, which means presenting proof that a given fact is

"more likely than not." Heartland Fed'l Sav. & Loan Ass'n v. Briscoe Enters. Ltd. II (In re

Briscoe Enters., Ltd.), 994 F.2d 1160, 1164 (5th Cir. 1993).  See also In re T-H New Orleans

Ltd. P'ship, 116 F.3d 790, 801 (5th Cir. 1997); CoreStates Bank, N.A. v. United Chem Tech.,

Inc., 202 B.R. 33, 45 (E.D. Pa. 1996).  Further, a number of courts have held that this constitutes

a "relatively low threshold of proof." In re Mayer Pollack Steel Corp., 174 B.R. 414, 423

(Bankr. E.D. Pa. 1994) (stating that the debtors "have established that they meet the requisite low

threshold of support for the Plan as a viable undertaking . . . ").  The courts have fashioned a

series of factors to be considered in the determination of whether a debtor's plan is feasible.

These factors, while varying from case to case, traditionally include: (i) the adequacy of the

debtor's capital structure; (ii) the earning power of its business; (iii) economic conditions; (iv)

the ability of the debtor's management; (v) the probability of the continuation of the same

management; and (vi) other related matters affecting successful performance under the

provisions of the plan. See, e.g., In re Prussia Assocs., 322 B.R. 572, 584 (Bankr. E.D. Pa.

2005); In re Greate Bay Hotel & Casino, 251 B.R. at 226 (citing In re Temple Zion, 125 B.R. 910, 915 (Bankr. E.D. Pa. 1991). As demonstrated below, the Plan satisfies each of the factors courts consider in determining whether a plan of reorganization is feasible.

      The Debtors submit that the projected financial information attached to the Disclosure Statement as Exhibit D demonstrates that the Plan is feasible. These projections demonstrate that the Debtors will have sufficient cash flow to meet their obligations under the Plan. (Antinelli Aff. ¶ 12.) Although the Debtors operate in highly competitive industries and markets, and although it is impossible to predict with certainty the precise future profitability of the Debtors, confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or the Reorganized Debtors (Antinelli Aff. ¶ 13.) Indeed, the Plan has more than a reasonable likelihood of success because the transactions contemplated under the Plan will enable the Debtors to continue their current operations and will eliminate a substantial portion of debt from their balance sheets. The Plan provides for a workable scheme of reorganization, with more than a reasonable likelihood of success, and, therefore satisfies section 1129(a)(11) of the Bankruptcy Code.

**12.**    **All Statutory Fees Have or Will Be Paid – 11 U.S.C. § 1129(a)(12)**

      Section 1129(a)(12) of the Bankruptcy Code provides that a court may confirm a plan of reorganization only if "[a]ll fees payable under section 1930 of Title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). Section 12.9 of the Plan provides for the payment, on or before the Effective Date, of any fees due pursuant to section 1930 of title 28 of the United States Code or other statutory requirement. Therefore, the Plan meets the requirements of section 1129(a)(12) of the Bankruptcy Code.

13. **The Plan Appropriately Treats Retiree Benefits – 11 U.S.C. § 1129(a)(13)**

Section 1129(a)(13) of the Bankruptcy Code requires that a plan of reorganization provide for the continued payment of certain retiree benefits "for the duration of the period that the debtor has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13). Section 7.6 of the Plan provides that from and after the Effective Date, the Reorganized Debtors shall assume the obligation to and shall continue to make the payment of all retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) thereof at any time prior to the Confirmation Date, for the duration of the period (if any) that the Debtors are obligated to provide such benefits. In addition, on the Effective Date, the Pension Plans shall be sponsored by and become obligations of the Reorganized Debtors, with the Reorganized Debtors assuming all statutory obligations with respect to the Pension Plans, and shall otherwise be unaffected by confirmation of the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

14. **Sections 1129(a)(14)-(a)(16) of the Bankruptcy Code are Inapplicable**

None of the Debtors are (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts. Accordingly, the Debtors submit that sections 1129(a)(14) through (16) of the Bankruptcy Code are not applicable.

15. **The Plan Satisfies the Requirements for Confirmation Under Section 1129(b) of the Bankruptcy Code Over the Non-Acceptance of an Impaired Class**

Section 1129(b) of the Bankruptcy Code is implicated by the Plan solely with respect to Classes 8 and 9, which consist of the Holders of all Section 510(b) Claims and NEI Common Interests. The Plan satisfies all of the requirements of section 1129(b) of the Bankruptcy Code with respect to Classes 8 and 9. Therefore, pursuant to section 1129(b)(1) of

the Bankruptcy Code, the Plan should be confirmed notwithstanding the fact that Classes 8 and 9 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Section 1129(b) of the Bankruptcy Code provides that a plan shall be confirmed, notwithstanding that section 1129(a)(8) is not satisfied with respect to one or more classes, "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan. 11 U.S.C. § 1129(b)(1). Thus, to confirm a plan that has not been accepted by all impaired classes, the plan proponent must show that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes. See In re Zenith Elecs., 241 B.R. 92, 105 (Bankr. D. Del. 1999); see also John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs., 987 F.2d 154, 157 n.5 (3d Cir. 1993). The plan proponent bears the burden of proof by a preponderance of the evidence. In re Vencor, Inc., 2001 WL 34135323, at *2 (Bankr. D. Del. 2001).

The section 1129(b)(1) "unfair discrimination" standard does not prohibit all types of discrimination among holders of impaired, dissenting classes; it merely prohibits *unfair* discrimination. In re Leslie Fay Cos., Inc., 207 B.R. 764, 791 n.37 (Bankr. S.D.N.Y. 1997); In re Buttonwood Partners, Ltd., 111 B.R. 57, 62 (Bankr. S.D.N.Y. 1990). This requirement focuses on the treatment of such dissenting class relative to other classes consisting of similar legal rights. See H.R. Rep. No. 95-595, at 416-17 (1977) ("The plan may be confirmed. . . if the class is not unfairly discriminated against with respect to equal classes"). Section 1129(b)(2)(C) provides that a plan is fair and equitable with respect to a class of interests if the plan provides that "the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property." 11 U.S.C. § 1129(b)(2)(C). Particularly, under section 1129(b)(2)(C)(ii), a plan is fair and equitable with

respect to a dissenting class of interests as a matter of law if no class junior to such class receives

or retains any property under the plan on account of its prepetition interest. 11 U.S.C. §

1129(b)(2)(C)(ii). In addition, the retention of property by a junior interest is only retained "on

account of" the junior interest holder's prepetition interest if there is "a causal relationship

between holding the prior claim or interest and receiving or retaining property" under the plan.

See Bank of Am. Nat'l Trust and Savings Assoc. v. 203 N. LaSalle St. P'ship (In re 203 N.

LaSalle), 526 U.S. 434, 451 (1998).

a.    **The Plan Does Not Discriminate Unfairly with Respect to the Holders of
      Claims and Interests in the Deemed Rejecting Classes**

As stated above, section 1129(b)(1) does not prohibit discrimination between

classes. Rather, it prohibits unfair discrimination amongst impaired dissenting classes. The

weight of judicial authority holds that a plan unfairly discriminates in violation of section

1129(b) of the Bankruptcy Code only if similar claims are treated differently without a

reasonable basis for the disparate treatment. See, e.g., In re Greate Bay Hotel & Casino, Inc.,

251 B.R. 213, 228 (Bankr. D.N.J. 2000); In re Kennedy, 158 B.R. 589, 599 (Bankr. D.N.J.

1993); In re Buttonwood Partners, Ltd., 111 B.R. 57 (Bankr. S.D.N.Y. 1990). Accordingly, as

between two classes of claims or two classes of interests, there is no unfair discrimination if,

taking into account the particular facts and circumstances of the case, there is a reasonable basis

for such disparate treatment. See, e.g., Buttonwood Partners, 111 B.R. at 63; In re Rivera

Echevarria, 129 B.R. 11, 13 (Bankr. D.P.R. 1991).

Based on the foregoing standards, the Plan does not discriminate unfairly with

respect to the Deemed Rejecting Classes. Class 8 consists of Section 510(b) claims and, as such,

has different legal entitlements than the other Classes or Claims and Interests under the Plan.

Class 9 consists of equity interests in NEI and, as such, has different legal entitlements than the

25

other Classes of Claims and Interests under the Plan. Therefore, the Plan does not discriminate

unfairly with respect to the Deemed Rejecting Classes.

> **b.    The Plan is Fair and Equitable with Respect to Holders of Claims and Interests in the Deemed Rejecting Class**

A plan is not "fair and equitable" if a junior unsecured creditor receives or retains

property through a plan on account of its prepetition claim. 11 U.S.C. § 1129(b)(2)(B)(ii). The

Plan is "fair and equitable" with respect to Classes 8 and 9 because: (x) no Classes of Claims or

Interests senior to Section 510(b) Claims or NEI Common Interests shall receive more than full

payment on account of the Claims or Interests in such Classes, (y) no Holders of Claims or

Interests junior to the Section 510(b) Claims or NEI Common Interests shall receive or retain any

property under the Plan, and (z) the Holders of Section 510(b) Claims or NEI Common Interests

would not receive or retain any property on account of such Claims or Interests in a liquidation

of the Debtors under chapter 7 of the Bankruptcy Code. (Ostendorf Aff. ¶ 22.) For this reason,

the Plan meets the fair and equitable requirements of section 1129(b) and should therefore be

confirmed.

> **16.    The Plan Is Not an Attempt to Avoid Tax Obligations – 11 U.S.C. § 1129(d)**

Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a

plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the

Securities Act of 1933 (the "Securities Act"). The Plan meets these requirements because the

principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of

the Securities Act, and no party in interest has filed an objection alleging otherwise.

Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## V. THE ASSUMPTION OF EXECUTORY AND UNEXPIRED LEASES UNDER THE PLAN SHOULD BE APPROVED

Pursuant to Article VII of the Plan, upon the occurrence of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors) (i) all executory contracts and unexpired leases to which any of the Debtors is a party, (ii) all Collective Bargaining Agreements, (iii) all insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (to the extent that such insurance policies or agreements are considered to be executory contracts), (iv) all contracts, agreements and leases that the Debtors entered into or assumed after the Petition Date, and (v) the Pension Plans and other retiree benefit plans. In addition, each executory contract and unexpired lease assumed pursuant to Article VII shall revest in and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, any order of the Court authorizing and providing for its assumption, or applicable federal law.

Section 365(a) provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp., 872 F.2d 36, 40 (3d Cir. 1989); In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) ("In determining whether a debtor may be permitted to reject an executory contract, courts usually apply the business judgment test") (internal citations omitted). Accordingly, courts will approve the debtor's assumption or rejection of an executory contract or unexpired lease unless evidence is presented that the debtor's decision to assume or reject "was so manifestly unreasonable that it could not be based on sound business judgment, but only on

27

bad faith, or whim or caprice." Lubrizol Enterprises, Inc. v. Richmond Metal Finishers (In re

Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1047 (4th Cir. 1985), cert. denied, 475 U.S.

1057 (1986).  Indeed, courts recognize that to impose more exacting scrutiny would slow a

debtor's reorganization, thereby increasing its cost and undermining the "Bankruptcy Code's

provisions for private control" of the estate's administration.  Richmond Leasing Co. v. Capital

Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1986).

       The assumption by the Debtors of (i) all executory contracts and unexpired leases

to which any of the Debtors is a party, (ii) all Collective Bargaining Agreements, (iii) all

insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the

Petition Date (to the extent that such insurance policies or agreements are considered to be

executory contracts), (iv) all contracts, agreements and leases that the Debtors entered into or

assumed after the Petition Date, and (v) the Pension Plans and other retiree benefit plans is both

beneficial and necessary to the Debtors' and the Reorganized Debtors' business operations.  The

assumption of such contracts and leases pursuant to section 365 of the Bankruptcy Code and the

Plan is a sound exercise of the Debtors' business judgment and is in the best interest of the

Debtors, their estates and their creditors.  The assumption by, assignment to, and revesting in,

each relevant Reorganized Debtor of the applicable contracts and leases (and the rights and

obligations thereunder) of each relevant Debtor, pursuant to section 365 of the Bankruptcy Code

and the terms of the Plan is a sound exercise of the Debtors' business judgment and is in the best

interest of the Debtors, their estates and their creditors.  Based upon, among other things, the

Reorganized Debtors' anticipated financial wherewithal after the Effective Date, including,

without limitation, the operating cash and liquidity available to the Reorganized Debtors, each

Reorganized Debtor that is assuming an executory contract or unexpired lease pursuant to the

28

Plan will be fully capable of performing under the terms and conditions of the respective contract or lease to be assumed or assumed and assigned on and after the Effective Date.

## VI.  THE DISCHARGE, INJUNCTION, RELEASE AND EXCULPATION PROVISIONS ARE PERMISSIBLE AND SHOULD BE APPROVED

Article X of the Plan contains comprehensive and customary discharge, release, injunction and exculpation provisions that are typically afforded to debtors, reorganized debtors and certain other parties.  As discussed in greater detail below, each of the discharges, releases, injunctions, and exculpations granted in Article X of the Plan are (1) integral to the terms, conditions and settlements contained in the Plan; (2) fair, equitable, reasonable and in the best interest of the Debtors; (3) appropriate in connection with the reorganization of the Debtors; and (4) supported by fair and reasonable consideration.  Accordingly, such discharge, release, injunction and exculpation provisions should be approved.

### 1.    The Discharge and Injunction Provisions Set Forth in Sections 10.2 and 10.4 of the Plan Comply With the Bankruptcy Code.

Section 10.2(f) of the Plan provides for the broad discharge that is contemplated by section 1141 of the Bankruptcy Code.  Section 10.4, in turn, provides for an injunction which permanently enjoins all Persons that have held, hold or may hold Claims against or Interest in the Debtors from taking any further actions on account of such Claims or Interests.

As evidenced, in part, by the overwhelming support for the Plan by their creditors, the Debtors respectfully submit that the discharge and injunction provisions contained in the Plan are reasonable and appropriate, consistent with the Bankruptcy Code, and should be approved.

### 2.    The Direct Releases by the Debtors in Section 10.2 of the Plan Satisfy the <u>Zenith</u> Factors.

Section 10.2(b) of the Plan provides for releases by each of the Debtors and Reorganized Debtors, as of the Effective date, of the Released Parties, including the present and

former officers and directors of the Debtors, from, among other things, any and all Claims and Causes of Action (including, without limitation, Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action, and liabilities of any nature whatsoever that are or may be based, in whole or in part, on any act or omission taking place or existing on or prior to the Effective Date (the "Debtor Releases").

In reviewing the contemplated release by a debtor of certain claims against non-debtor third parties, courts in this district have considered the following five factors: (i) an identity of interest between the debtor and non-debtor; (ii) a substantial contribution to the plan by the non-debtor; (iii) the necessity of the release to the reorganization; (iv) the overwhelming acceptance of the plan and release by creditors and interest holders; and (v) the payment of all or substantially all of the claims of the creditors and interest holders under the plan. See In re Zenith Elec. Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999).

Each of the Zenith factors have been satisfied in these Chapter 11 Cases. First, there is a clear identity of interest between the Debtors and the other Released Parties in connection with the negotiations, documentation, and implementation of the Plan, the Plan Supplement, and the other Plan-related documents and the successful reorganization of the Debtors. Second, each of the Released Parties has made substantial contributions to the Debtors' reorganization in formulating, negotiating at arm's length, preparing, disseminating, implementing, administering, soliciting, confirming, and/or consummating the Plan. Third, the discharges, injunctions, releases, and exculpations are of an integral nature to the Plan as a whole, the Debtors' reorganization efforts, and the continued success of the Reorganized Debtors. Fourth, the Debtors expect that their creditors will overwhelmingly accept the Plan. Fifth, the Plan provides for the payment of all or a substantial portion of the Claims of those

classes of creditors potentially affected by the discharges, injunctions, releases, and exculpations. Accordingly the Debtors believe that the Plan satisfies each of the <u>Zenith</u> factors.

        **3.**        **The Third Party Releases Set Forth in Section 10.2(c) of the Plan are Consensual and Therefore Should be Approved.**

Section 10.2(c) of the Plan provides for voluntary releases by Holders of Claims and Interests that are entitled to vote on the Plan of, among other things, any and all Claims, any and all other obligations, suits, judgments, damages, rights, remedies, causes of action and liabilities of any nature whatsoever existing on or prior to the Effective Date that such Holders of Claims or Interests may have against the Released Parties. The releases in Section 10.2(c) shall not apply to any Person that exercised its election in accordance with Section 10.2(c) of the Plan to withhold granting a release in favor of those Released Parties other than the Debtors, Reorganized Debtors and their respective predecessors, successors and assigns (whether by operation of law or otherwise) by checking the appropriate box on its respective Ballot, unless such Person was otherwise bound by the Lock-Up Agreement to grant such releases.

Courts have held that an "affirmative agreement" from an affected creditor will render a release consensual. <u>See</u> <u>In re Zenith Elecs. Corp.</u>, 241 B.R. 92, 111 (Bankr. D. Del. 1999). Although the parameters of what constitutes "affirmative agreement" are fact specific, courts have held that, by simply voting in favor of a plan with non-debtor releases, a creditor will be found to have affirmatively agreed to such releases. <u>See</u> <u>In re Coram Healthcare Corp.</u>, 315 B.R. 321, 336 (Bankr. D. Del. 2004) ("to the extent creditors or shareholders voted in favor of the Trustee's Plan, which provides for the release of claims they may have against Noteholders, they are bound by that"); <u>Zenith</u>, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in favor of plan); <u>In re West Coast Video Enter., Inc.</u>, 174 B.R. 906, 911 (Bankr. E.D.

Pa. 1994) (stating that "each creditor bound by the terms of the release must individually affirm same, either with a vote in favor of a plan including such a provision or otherwise").

As noted above, the Plan goes one step further and provides creditors with the express option of granting releases to non-Debtor parties. Indeed, as noted above, the release in Section 10.2(c) of the Plan does not apply to those creditors that received a Ballot but elected, in accordance with Section 10.2(c) of the Plan, to withhold granting a release in favor of those Released Parties other than the Debtors, Reorganized Debtors and their respective predecessors, successors and assigns, unless such creditor was otherwise bound by the Lock-Up Agreement to grant such releases. By checking the appropriate box, such creditor is deemed to preserve whatever direct (and therefore, non-derivative) claims it may have against the non-Debtor third parties under applicable law. Thus, under the terms of the Plan, only those creditors that received a Ballot and did not exercise the option to preserve any direct claims they may have against third parties are bound by the third party releases. Therefore, such releases are consensual. See, e.g., In re Monroe Well Service, Inc., 80 B.R. 324, 334-35 (Bankr. E.D. Pa. 1987) (noting that releases were consensual when creditors had the option of granting them).

However, to the extent the Court finds that the releases are not consensual, the release provisions provided in Section 10.2 of the Plan offer appropriate consideration to those parties who have substantially contributed, and who will substantially contribute, to the Debtors' Estates. The releases therefore comply with the standards for non-consensual releases and should be approved. A court may authorize a third party release if it provides for "[t]he hallmarks of permissible non-consensual releases – fairness, necessity to the reorganization, and specific factual findings to support these conclusions." In re Continental Airlines, 203 F.3d 203, 214 (3d Cir. 2000). In determining whether the hallmarks of permissible non-consensual

releases exist, courts in this district often examine whether the plan proponent can demonstrate (i) that the success of the debtors' reorganization bears a relationship to the release of the non-consensual parties and (ii) that the releasees have provided a substantial contribution to the debtors' plan. In re Genesis Health Ventures, Inc., 266 B.R. 591, 607 (Bankr. D. Del. 2001).[6] Moreover, the court in Zenith found that non-debtor parties need not make a monetary contribution to a plan in order to satisfy this factor. See In re Zenith Elecs. Corp., 241 B.R. 92, 110 (Bankr. D. Del. 1999) (finding that this factor was satisfied where released parties designed, implemented, and negotiated restructuring); see also In re Coram Healthcare Corp., 315 B.R. 321, 336 (Bankr. D. Del. 2004) (finding non-debtor had an identity of interest where it "share[d] a goal of achieving a reorganization of the Debtors").

The Released Parties are parties who were actively and integrally involved in these cases. The Released Parties all made, or will make, important contributions to these cases, including, among other things, (a) compromising claims and accepting diminished recoveries, (b) negotiating and supporting the Plan, and (c) in the case of officers and directors, (i) their efforts on behalf of the Debtors prior to and throughout the Chapter 11 Cases, and (ii) in many instances, their agreeing to continue employment with the Reorganized Debtors after Plan consummation. Without the releases as an incentive, many of the Released Parties would have been unwilling to contribute to the Plan, which would have reduced the enterprise value available for distribution to creditors and would have negatively impacted the reorganization of the Debtors. Therefore, there is ample basis for this Court to approve such releases.

---

[6] In addition, the court may also examine the Zenith factors discussed above. The Debtors posit that the test set forth in Genesis Health is a distillation of the Zenith factors and that the releases are warranted under either approach.

4.      **The Exculpation Provisions are Appropriate and Should be Approved.**

Section 10.2(a) of the Plan contains customary exculpation provisions which, with certain limitations, protect the Released Parties from liability related but not limited to the formulation, negotiation, and implementation of the Plan, the Disclosure Statement, the Restructuring Transactions, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the property to be distributed under the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases. (Plan, § 10.2(a).)

It is important to underscore the difference between the consensual third-party releases provided for in Section 10.2(c) and the Plan's exculpation provisions in Section 10.2(a). Unlike the third-party releases, the exculpation provisions do not affect the liability of third parties, but rather set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an exculpated party for acts arising out of the Debtors' restructuring.  See In re PWS Holding Corp., 228 F.3d 224, 245 (3d Cir. 2000) (holding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code."). As such, an exculpation provision represents a legal conclusion that flows inevitably from several different findings a bankruptcy court must reach in confirming a plan, which are undeniably core matters. See 28 U.S.C. § 157(b)(2)(L).  Once a good faith finding is made, it then becomes appropriate to set the standard of care of those involved in the formulation of that plan of reorganization for liability arising from the bankruptcy cases.  See PWS, 228 F.3d at 246-

247 (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties . . . .").

Exculpation clauses, therefore, appropriately prevent future collateral attacks against parties that have made substantial contributions to a case by contributing to a debtor's reorganization.  Recognizing this difference, customarily courts have approved exculpations in large Chapter 11 Cases.  See, e.g., In re Source Enters., Inc., 2007 WL 2903954, at *13 (Bankr. S.D.N.Y. Oct. 1, 2007) (approved exculpation provision because provision in the best interests on the debtors' estates and the creditors); In re Bally Total Fitness of Greater New York, Inc., 2007 WL 2779438, at *8 (Bankr. S.D.N.Y. Sept. 17, 2007) (finding that the exculpation, release, and injunction provisions appropriate because they were fair and equitable, necessary to successful reorganization, and integral to the plan); In re Spiegel, Inc., 2006 WL 2577825, at *7-8 (Bankr. S.D.N.Y. Aug. 16, 2006) (citations omitted) (holding that plan's exculpation, release, and injunction provisions were vital to the plan and necessary for successful administration of the estate).  The exculpation provisions in the Plan are likewise appropriate and vital because they provide protection to those parties who were essential to the restructuring process.

Here, the Debtors, working with their major creditor constituencies, formulated and negotiated the Plan in good faith.  The negotiations and compromises embodied in the Plan were necessary to the formulation of the Plan and likely could not have occurred without protection from liability for the constituents involved.  Under these circumstances, it is appropriate to offer protection to these particular parties in the form of exculpation.  See In re Worldcom, Inc., 2003 WL 23861928, at *28 (Bankr. S.D.N.Y. Oct. 31, 2003).  Indeed, the scope and identity of the Released Parties, which are the subject of, among other things, the exculpation and release provisions set forth in the Plan, is appropriate in light of, among other

35

things, the significant roles played by various of the Released Parties in connection with the

negotiation and execution of, among other relevant documents, the Lock-Up Agreement, the

Plan Term Sheets, the Disclosure Statement, the Plan, the Plan Supplement, each of the

documents and agreements attached as Exhibits to the Plan, and other agreements or documents

created in connection with the Plan, each of which are instrumental to the Plan's success.

The proposed exculpations are narrowly and appropriately crafted so as to

insulate those parties whose efforts have been instrumental in connection with the formulation

and development of the Plan as well as the overall success of these Chapter 11 Cases.

Accordingly, the exculpation provision in Section 10.2(a) of the Plan should be approved.

## VII. RESOLUTION OF THE PENDING OBJECTION

As of the filing of this Memorandum, only one creditor, The State of Michigan,

Department Of Treasury (the "Michigan Department of Treasury") has objected to confirmation

the Plan [Docket No. 456]. The Debtors have included the following language in the

Confirmation Order to address the concerns raised by the Michigan Department of Treasury:

> Notwithstanding anything in the Plan or this Confirmation Order to the contrary, to the extent Michigan Department of Treasury holds an Allowed Priority Tax Claim that is due and payable on or before the Effective Date and the Debtors elect to satisfy such Allowed Priority Tax Claim with deferred Cash payments pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, the Michigan Department of Treasury shall receive (i) deferred Cash payments made on the first Business Day following each anniversary of the Effective Date over a period not exceeding five (5) years after the Petition Date, with a total value as of the Effective Date equal to the amount of such Allowed Priority Tax Claim and (ii) interest calculated at a rate determined under section 511 of the Bankruptcy Code. Furthermore, nothing in the Plan or this Confirmation order shall, or shall be deemed to, impair the right, if any, of the Michigan Department of Treasury to collect tax liabilities from any Entities other than the Debtors or the Reorganized Debtors, subject to any defenses such Entities may have under the applicable law and facts.

The Debtors believe that with the inclusion of this language in the Confirmation Order, the objection filed by the Michigan Department of Treasury, to the extent not consensually withdrawn, should be overruled.

## VIII. CONCLUSION

For the reasons set forth in this Memorandum, the Debtors respectfully request that the Court enter an order confirming the Plan, in substantially the form of the proposed Confirmation Order the Debtors are filing concurrently herewith, at the earliest practicable time.

Dated: Wilmington, Delaware
      July 1, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
Larry J. Nyhan
Bojan Guzina
Kerriann S. Mills
Brett H. Myrick
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)
Edmon L. Morton (No. 3856)
Donald J. Bowman, Jr. (No. 4383)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession