# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[1] | Case No. 10-10360 (MFW) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No.: 324** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE JOINT PLAN OF REORGANIZATION FOR NEENAH ENTERPRISES, INC. AND ITS SUBSIDIARIES

WHEREAS, Neenah Enterprises, Inc. and each of its wholly-owned subsidiaries, the debtors and debtors in possession in the above-captioned jointly administered cases (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 3, 2010 (the "Petition Date");

WHEREAS, the Debtors have proposed the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries, dated April 27, 2010 (as the same may be further amended, supplemented or modified, the "Plan")[2] [Docket No. 324];

WHEREAS, on April 27, 2010, following a hearing on the adequacy of the Disclosure Statement, the Court entered the Order: (I) Approving the Disclosure Statement, (II)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

[2] Capitalized terms and phrases used but not otherwise defined herein have the meaning assigned to such terms in the Plan. The rules of interpretation set forth in Article I.B of the Plan apply to this Confirmation Order. In addition, in accordance with Article 1.A of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. A copy of the Plan (without the Exhibits) is attached to this Confirmation Order as Exhibit A and is incorporated herein by reference.

Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Debtors' Joint Plan of Reorganization, (III) Scheduling a Hearing to Consider Confirmation of the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries and Establishing Notice and Objection Procedures in Respect Thereof, and (IV) Granting Related Relief [Docket No. 329] (as subsequently modified on May 14, 2010 [Docket No. 416], June 9, 2010 [Docket No. 500], and June 18, 2010 [Docket No. 547], the "Voting Procedures Order"), pursuant to which the Court, among other things, (i) approved the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code; (ii) established procedures for the solicitation and tabulation of votes to accept or reject the Plan; (iii) established July 2, 2010 at 4:00 p.m. (Eastern Time) as the Voting Deadline; (iv) established July 2, 2010 at 4:00 p.m. (Eastern Time) as the deadline by which all objections to confirmation of the Plan must have been filed with the Court and received by certain parties listed in the Voting Procedures Order (the "Plan Objection Deadline"); and (v) scheduled a hearing on July 6, 2010 at 11:30 a.m. (Eastern Time) (the "Confirmation Hearing") to consider confirmation of the Plan;

WHEREAS, on May 26, 2010, Paul V. Kinealy of The Garden City Group, Inc. ("GCG"), the Claims and Noticing Agent in these Chapter 11 Cases, executed (i) an affidavit of service (which GCG filed with the Court on May 26, 2010 [Docket No. 463]) regarding the mailing of notice of the Confirmation Hearing (the "Confirmation Hearing Notice") and solicitation materials in respect of the Plan in accordance with the terms of the Voting Procedures Order (the "Solicitation Affidavit") and (ii) an affidavit of publication (which GCG filed with the Court on May 26, 2010 [Docket No. 455]), attesting that a version of the Confirmation Hearing Notice (which the Court approved pursuant to the Voting Procedures

YCST01:9873338.2

069152.1001

Order) was published in (a) <u>The Wall Street Journal</u> on May 20, 2010 and (b) the national edition of <u>USA Today</u> on May 20, 2010 (the "<u>Publication Affidavit</u>");

WHEREAS, on June 23, 2010, the Court entered the Order Pursuant to 11 U.S.C. §§ 105(a), 363(b) and 503(b) Authorizing the Debtors to (I) Reimburse the Reasonable and Documented Fees and Expenses Incurred by the Exit Financing Lenders and (II) Provide Related Indemnities (the "<u>Expense Reimbursement Order</u>") [Docket No. 572], pursuant to which the Court authorized the Debtors to reimburse the reasonable and documented out-of-pocket fees, costs and expenses (including, without limitation, the reasonable fees and disbursements of counsel and other professionals) incurred by the Exit Lenders (as defined in the Expense Reimbursement Order) in connection with the preparation, negotiation, execution and delivery of the Exit Revolving Facility Documentation and the Exit Term Loan Facility Documentation;

WHEREAS, on June 23, 2010, the Court entered the Order Authorizing the Assumption of Executory Contracts and Unexpired Leases (the "<u>Assumption Order</u>") [Docket No. 572], pursuant to which the Court (i) authorized the Debtors to assume, as of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors is a party (except as otherwise specifically set forth in the Assumption Order) and (ii) fixed the cure amounts with respect to such executory contracts and unexpired leases;

WHEREAS, on June 25, 2010, the Debtors filed the Plan Supplement with the Court [Docket No. 578]. The Plan Supplement included the following Exhibits to the Plan and related materials: (i) the Amended and Restated Certificate of Incorporation; (ii) the Amended and Restated By-Laws; (iii) the New Secured Notes Indenture; (iv) the form of New Warrants; (v) the names of the initial directors of Reorganized NEI and the other Reorganized Debtors; (vi) the Restructuring Transactions; (vii) the fully-negotiated commitment letter and term sheet for

the Exit Revolving Facility Credit Agreement (the "Exit Revolving Facility Commitment Documents"; and (viii) the fully-negotiated commitment letter and term sheet for the Exit Term Loan Facility Credit Agreement (the "Exit Term Loan Facility Commitment Documents").

WHEREAS, on June 29, 2010, the Debtors filed the Motion of the Debtors for an Order Authorizing the Filing Under Seal of Certain Fee Letters Relating to the Proposed Exit Financing Facilities [Docket No. 588], seeking the authority to file under seal certain fee letters (collectively, the "Exit Facility Fee Letters") with respect to the fees payable under the Exit Revolving Facility and the Exit Term Loan Facility (collectively, the "Exit Facilities");

WHEREAS, on July 1, 2010, GCG filed the Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Preliminary Results of Voting with Respect to the Joint Plan of Reorganization for Neenah Enterprises Inc. and Its Subsidiaries (the "Voting Affidavit") [Docket No. 601];

WHEREAS, on July 1, 2010, the Debtors filed a memorandum of law in support of confirmation of the Plan (the "Memorandum of Law") [Docket No. 599];

WHEREAS, on July 1, 2010, the Debtors filed the affidavits of (i) Robert E. Ostendorf, Jr., the President and Chief Executive Officer of NEI (the "Ostendorf Affidavit") [Docket No. 597], (ii) Stephen J. Antinelli, a Managing Director of Rothschild Inc. ("Rothschild") (the "Antinelli Affidavit") [Docket No. 596], and (iii) Richard D. Caruso, a Managing Director of Huron Consulting Services LLC ("Huron") (the "Caruso Affidavit" and, collectively with the Ostendorf Affidavit, the Antinelli Affidavit and all exhibits thereto, the "Supporting Affidavits") [Docket No. 598] in support of confirmation of the Plan;

WHEREAS, on July 1, 2010, the Debtors filed the Notice of Filing of (A) the Proposed Settlement Agreement and General Release Between the Debtors and Robert E.

4

YCST01:9873338.2

069152.1001

Ostendorf Jr. and (B) the Proposed Separation Agreement and General Release Between the Debtors and Dale E. Parker [Docket No. 594], pursuant to which the Debtors notified the Court and certain parties in interest (including the Ad Hoc Committee of Secured Noteholders, the Subordinated Noteholders, and the Committee) that they would seek the authority, pursuant to the Confirmation Order, to enter into and perform their obligations under (i) the proposed Settlement Agreement and General Release between the Debtors and Robert E. Ostendorf Jr. ("Ostendorf"), the President and Chief Executive Officer of NEI, and (ii) the proposed Separation Agreement and General Release between the Debtors and Dale E. Parker ("Parker"), the Chief Financial Officer of NEI (collectively, the "Separation Agreements");

WHEREAS, an objection to confirmation of the Plan (the "Objection") was filed before the Plan Objection Deadline by the State of Michigan, Department of Treasury (the "Michigan Department of Treasury");

WHEREAS, on July 2, 2010, following the passage of the Voting Deadline, GCG filed the Supplemental Declaration of Jeffrey S. Stein of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Results of Voting with Respect to the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries (the "Supplemental Voting Affidavit") [Docket No. 606], certifying that, as of the Voting Deadline, all Impaired Classes of Claims entitled to vote on the Plan had voted to accept the Plan;

WHEREAS, the Court held the Confirmation Hearing on July 6, 2010;

WHEREAS, the Objection has been resolved on the terms set forth herein;

WHEREAS, the Court has reviewed the Plan, the Disclosure Statement, the Voting Procedures Order, the Solicitation Affidavit, the Publication Affidavit, the Plan Supplement (including, without limitation, the Exit Revolving Facility Commitment Documents

5

and the Exit Term Loan Facility Commitment Documents), the Exit Facility Fee Letters, the

Voting Affidavit, the Supplemental Voting Affidavit, the Objection, the Memorandum of Law,

the Supporting Affidavits, the Separation Agreements, and all other pleadings, statements and

comments submitted to the Court in connection with the Confirmation Hearing; and

WHEREAS, the Court has (i) considered the statements of counsel at the

Confirmation Hearing, (ii) considered all evidence proffered or adduced at the Confirmation

Hearing, and (iii) taken judicial notice of the entire record of these Chapter 11 Cases.

NOW, THEREFORE, after due deliberation and good cause appearing therefor,

the Court hereby makes and issues the following Confirmation Order:

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW [3]

A.     Jurisdiction and Venue.  On the Petition Date, the Debtors commenced

these Chapter 11 Cases in good faith by filing voluntary petitions for relief under chapter 11 of

the Bankruptcy Code.  The Debtors are (and were as of the Petition Date) qualified to be debtors

under section 109 of the Bankruptcy Code.  The Court has jurisdiction over the Chapter 11 Cases

pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

The Court has subject matter jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§

157(b)(1) and 1334.  Venue was proper as of the Petition Date and continues to be proper before

this Court as of the date hereof pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Technical Modifications to the Plan.  Any modifications to the Plan

described or set forth in this Confirmation Order or the Plan Supplement (collectively, the "Plan

Modifications") constitute technical or non-material changes and do not materially or adversely

---

[3] This Confirmation Order constitutes the Bankruptcy Court's findings of fact and conclusions of law under Federal
Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014.  Any and all findings of
fact herein shall constitute findings of fact even if stated as conclusions of law, and any and all conclusions of law
herein shall constitute conclusions of law even if stated as findings of fact.

affect or change the treatment of any Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Interests be afforded an opportunity to change any previously-cast acceptances or rejections of the Plan. The Plan Modifications are as follows:

(i)    Section 1.54 of the Plan shall be modified to read:

Exit Revolving Facility means a revolving credit facility in the aggregate principal amount of $100,000,000, to be entered into by the Reorganized Debtors on the Effective Date on such terms as are (i) consistent in all respects with the terms of the Exit Term Revolving Facility Commitment Documents and (ii) reasonably satisfactory to the Debtors and the Ad Hoc Committee of Secured Noteholders.

(ii)    Section 1.55 of the Plan shall be modified to read:

Exit Revolving Facility Credit Agreement means the definitive financing agreement for the Exit Revolving Facility, which shall be (i) consistent in all respects with the terms of the Exit Revolving Facility Commitment Documents and (ii) in form and substance reasonably satisfactory to the Debtors and the Ad Hoc Committee of Secured Noteholders.

(iii)    Section 1.57 of the Plan shall be modified to read:

Exit Term Loan Facility means a term loan facility in the aggregate principal amount of $60,000,000, to be entered into by the Reorganized Debtors on the Effective Date on such terms as are (i) consistent in all respects with the terms of the Exit Term Loan Facility Commitment Documents and (ii) reasonably satisfactory to the Debtors and the Ad Hoc Committee of Secured Noteholders.

(iv)    Section 1.58 of the Plan shall be modified to read:

Exit Term Loan Facility Credit Agreement means the definitive financing agreement for the Exit Term Loan Facility, which shall be (i) consistent in all respects with the terms of the Exit Term Loan Facility Commitment Documents and (ii) in form and substance reasonably satisfactory to the Debtors and the Ad Hoc Committee of Secured Noteholders.

(v)    Section 1.80 of the Plan shall be modified to read:

New Secured Notes means the new secured notes that will be issued by Reorganized Neenah on the Effective Date in the aggregate principal amount of

$50 million pursuant to the New Secured Notes Indenture and this Plan, the principal terms of which are described in the Plan Term Sheet and the Disclosure Statement, provided, however, that notwithstanding anything to the contrary in the Plan Term Sheet or the Disclosure Statement, the New Secured Notes shall be due on the fifth anniversary of the Effective Date.

(vi)     Article I of the Plan shall be modified to include the following definitions:

Exit Revolving Facility Commitment Documents means the fully-negotiated commitment letter and term sheet for the Exit Revolving Facility Credit Agreement, in substantially the form of Exhibit 6 to this Plan (to be filed with the Plan Supplement) and in form and substance reasonably satisfactory to the Debtors and the Ad Hoc Committee of Secured Noteholders.

Exit Term Loan Facility Commitment Documents means the fully-negotiated commitment letter and term sheet for the Exit Term Loan Facility Credit Agreement, in substantially the form of Exhibit 7 to this Plan (to be filed with the Plan Supplement) and in form and substance reasonably satisfactory to the Debtors and the Ad Hoc Committee of Secured Noteholders.

(vi)     The first sentence of Section 5.4(c) of the Plan shall be modified to read:

Subject to any requirement of Bankruptcy Court approval pursuant to Section 1129(a)(5) of the Bankruptcy Code, on the Effective Date, the initial directors of Reorganized NEI shall be the persons identified in Exhibit 5 to this Plan, which shall be filed with the Plan Supplement.

(vii)    The last sentence of Section 5.4(c) of the Plan shall be deleted.

(viii)   Section 9.1(e) of the Plan shall be modified to read:

The Confirmation Order shall have been entered not later than July 7, 2010, unless otherwise agreed by the Ad Hoc Committee of Secured Noteholders.

(ix)     Section 9.2(l) of the Plan shall be modified to read:

The Effective Date shall have occurred not later than August 2, 2010, unless otherwise agreed by the Ad Hoc Committee of Secured Noteholders.

(x)      Section 12.20 of the Plan shall read as follows:

Payment of Professional Fees of the Minority Holders.  The fees and expenses of Reed Smith LLP as counsel to the Minority Holders shall be paid by the Reorganized Debtors in cash, in an aggregate amount not to exceed $60,000, on or as soon as reasonably practicable after the Effective Date.

YCST01:9873338.2

069152.1001

C.    <u>Judicial Notice</u>.  The Court takes judicial notice of the dockets of these Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these Chapter 11 Cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.  The resolutions of any formal or informal objections to confirmation of the Plan, as explained on the record at the Confirmation Hearing, are incorporated herein by reference.

D.    <u>Burden of Proof</u>.  The Debtors, as proponents of the Plan, have the burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence and have met that burden as further found and determined herein.

E.    <u>Solicitation and Notice</u>.  To obtain the requisite acceptances of the Plan, on or about May 17, 2010, the Debtors distributed the Plan, the Disclosure Statement, the Ballots, the Confirmation Hearing Notice, and related materials (collectively, the "<u>Solicitation Packages</u>") in accordance with the terms of the Voting Procedures Order.  The Solicitation Packages were transmitted and served as set forth in the Solicitation Affidavit, and such transmittal and service of the Solicitation Packages constitutes due and sufficient notice of the Plan, the Confirmation Hearing, and the deadlines for submitting Ballots or filing objections to confirmation of the Plan.  Such notice was adequate and sufficient under the circumstances, was given in compliance with Bankruptcy Rules 2002, 3017 and 3020 and the Voting Procedures Order, and no other or further notice shall be required.  All parties in interest in the Chapter 11 Cases had a full and fair opportunity to appear and be heard at the Confirmation Hearing.

YCST01:9873338.2

069152.1001

F.     <u>Publication Notice</u>.  In accordance with Bankruptcy Rules 2002(1) and 3017(d) and the Voting Procedures Order, and as set forth in the Publication Affidavit, the Debtors caused a version of the Confirmation Hearing Notice to be published in (a) <u>The Wall Street Journal</u> on May 20, 2010 and (b) the national edition of <u>USA Today</u> on May 20, 2010.

G.     <u>Good Faith Solicitation</u>.  Votes to accept or reject the Plan were solicited fairly, in good faith, and in compliance with the Voting Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations.  Based on the record of these Chapter 11 Cases, the Debtors and the other Released Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with the solicitation of votes to accept the Plan.  Accordingly, the Released Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and Sections 10.2(a)-(c) of the Plan.

H.     <u>Acceptance of the Plan by Impaired Classes of Claims</u>.  As evidenced by the Voting Affidavit and the Supplemental Voting Affidavit, all Impaired Classes of Claims entitled to vote on the Plan have voted to accept the Plan.

I.     <u>Comprehensive Settlement of Claims and Controversies</u>.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a comprehensive, good faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest.  The entry of this Confirmation Order shall constitute the Court's approval, as of the Effective Date, of the

compromise or settlement of all such claims or controversies and the Court's finding that all such compromises or settlements are in the best interests of (x) the Debtors, the Reorganized Debtors and their respective Estates and property, and (y) the Holders of Claims against and Interests in the Debtors, and are fair, equitable and reasonable under the circumstances.

       J.      <u>Separation Agreements</u>. Pursuant to Bankruptcy Rule 9019 and in consideration for the payments, releases and other benefits provided thereunder, the provisions of the Separation Agreements constitute a good faith compromise and settlement. The entry of this Confirmation Order shall constitute the Court's finding that the Separation Agreements are in the best interests of the Debtors, the Reorganized Debtors and their respective Estates and property, and are fair, equitable and reasonable under the circumstances.

       K.      <u>Propriety of Various Agreements and Documents Relating to the Plan</u>. In light of all of the circumstances and the record in these Chapter 11 Cases, each transaction contemplated in connection with the Plan, as identified in Article V of the Plan, the Plan Supplement, or any other document or agreement that is necessary to implement the Plan, is integral to the terms, conditions and settlements set forth in the Plan and is critical to the implementation of the Plan. All contracts, instruments, releases, agreements and documents related to, or necessary to implement, effectuate and consummate the Plan, including each transaction contemplated in Article V of the Plan or the Plan Supplement, are valid, proper and reasonable under the circumstances and due and sufficient notice thereof has been provided in connection with approval of the Disclosure Statement and confirmation of the Plan.

       L.      <u>Releases, Discharges, Exculpations and Injunctions</u>. Based upon the facts and circumstances of these Chapter 11 Cases, the releases, discharges, exculpations, indemnifications and injunctions set forth in Article X of the Plan are supported by good and

valuable consideration, the adequacy of which is hereby confirmed, are fair, equitable, and reasonable, are supported by the record of these Chapter 11 Cases, and are in the best interests of the Debtors, the Estates, and the Holders of Claims against and Interests in the Debtors.

M.    Assumption of Executory Contracts and Unexpired Leases.  The assumption by the Debtors and assignment to the Reorganized Debtors, as of the Effective Date, of (i) all executory contracts and unexpired leases to which any of the Debtors is a party, (ii) all Collective Bargaining Agreements, (iii) all insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (to the extent that such insurance policies or agreements are considered to be executory contracts), (iv) all contracts, agreements and leases that the Debtors entered into or assumed after the Petition Date, and (v) the Pension Plans and other retiree benefit plans, satisfies the applicable provisions of the Bankruptcy Code, is supported by the Debtors' sound business judgment, and is in the best interests of the Debtors and their Estates.  Except as specifically set forth in the Assumption Order, no payments by the Debtors or the Reorganized Debtors shall be required to cure any defaults existing under such contracts, leases, policies, agreements or plans.  The assumption or rejection of any executory contract or unexpired lease pursuant to the Plan and the Assumption Order shall be legal, valid, and binding as of the Effective Date upon the applicable Debtor or Reorganized Debtor and all non-Debtor parties to such executory contract or unexpired lease.

N.    Exemption from Securities Laws.  The offer, issuance, distribution, transfer or exchange of (a) the New Secured Notes, the New Common Stock and the New Warrants and (b) any other stock, options, warrants, or other related rights that are issued, authorized or reserved under or in connection with the Plan shall be, and shall be deemed to be, exempt from registration under any applicable federal or state securities laws to the fullest extent

12

permissible under applicable non-bankruptcy law and under bankruptcy law, including, without limitation, section 1145(a) of the Bankruptcy Code.

O.    Exit Financing.  The terms and conditions of the Exit Revolving Facility and the Exit Term Loan Facility, as reflected in the Exit Revolving Facility Commitment Documents and the Exit Term Loan Facility Commitment Documents, respectively, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The Exit Revolving Facility Commitment Documents, the Exit Term Loan Facility Commitment Documents, and the Exit Facility Fee Letters have been negotiated in good faith and at arm's length among the Debtors, the Ad Hoc Committee of Secured Noteholders, and the Exit Lenders.

P.    Compliance with Requirements of Section 1129 of the Bankruptcy Code. The Plan satisfies all requirements for confirmation under section 1129 of the Bankruptcy Code.

(i)    Section 1129(a)(1) – Compliance with Applicable Provisions of the Bankruptcy Code.  The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code and Bankruptcy Rule 3016.

(ii)    Section 1122 – Classification of Claims and Interests.  The Plan constitutes a separate plan of reorganization for each of the Debtors.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims against and Interests in the Debtors contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims against and Interests in the Debtors under the Plan.

13

(iii)    <u>Section 1123(a) – Mandatory Provisions of the Plan</u>.  The Plan fully complies with each requirement of section 1123(a) of the Bankruptcy Code, as set forth below:

(a)    <u>Section 1123(a)(1)</u>.  Article II of the Plan properly designates all Claims and Interests that require classification, as required by section 1123(a)(1) of the Bankruptcy Code.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Revolving Facility Claims, DIP Term Facility Claims, and Priority Tax Claims are not required to be designated into Classes.

(b)    <u>Section 1123(a)(2)</u>.  In accordance with section 1123(a)(2) of the Bankruptcy Code, Article II of the Plan specifies each Class of Claims or Interests that is Unimpaired under the Plan.  In particular, Article II of the Plan provides that Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Prepetition Credit Agreement Claims), and Class 10 (Subsidiary Interests) are Unimpaired under the Plan.

(c)    <u>Section 1123(a)(3)</u>.  In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan specifies the treatment of each Class of Claims and each Class of Interests that is Impaired under the Plan.  In particular, Article III of the Plan specifies the treatment of Class 4 (Secured Notes Claims), Class 5 (General Unsecured Claims), Class 6 (Subordinated Notes Claims), Class 7 (Intercompany Claims), Class 8 (Section 510(b) Claims), and Class 9 (NEI Common Interests).

(d)    <u>Section 1123(a)(4)</u>.  In accordance with section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides the same treatment for each Claim or Interest in a given Class unless the Holder of such Claim or Interest agrees to less favorable treatment.

(e)     Section 1123(a)(5).  In accordance with section 1123(a)(5) of the

Bankruptcy Code, Article V of the Plan provides adequate means for the Plan's implementation.

On the Effective Date of the Plan, the Reorganized Debtors will have sufficient Cash to make all

payments required to be made on the Effective Date pursuant to the terms of the Plan.

Moreover, Article V and various other provisions of the Plan specifically provide adequate and

proper means for the Plan's implementation including, without limitation: (1) the continued

corporate existence and vesting of assets in the Reorganized Debtors; (2) the adoption of the

Amended and Restated Certificate of Incorporation and the Amended and Restated By-Laws; (3)

the entry by the Reorganized Debtors into the Exit Revolving Facility Documentation and the

Exit Term Loan Facility Documentation; (4) the issuance and distribution of the New Secured

Notes, the New Common Stock and the New Warrants; (5) the cancellation of the Prepetition

Credit Documents, the Secured Notes, the Subordinated Notes, and the NEI Common Interests;

(6) the appointment of new directors of Reorganized NEI and the other Reorganized Debtors;

and (7) the Restructuring Transactions.

(f)     Section 1123(a)(6).  In accordance with section 1123(a)(6) of the

Bankruptcy Code, the Amended and Restated Certificate of Incorporation contains provisions

prohibiting the issuance of nonvoting equity securities, provides for the appropriate distribution

of voting power among all classes of equity securities authorized for issuance, and otherwise

complies with the requirements of section 1123(a)(6) of the Bankruptcy Code.

(g)     Section 1123(a)(7).  In accordance with section 1123(a)(7) of the

Bankruptcy Code, the provisions of the Plan regarding the manner of selection of officers and

069152.1001

directors of the Reorganized Debtors are consistent with the interests of creditors and equity security holders and with public policy.

      (iv)    <u>Section 1123(b) – Discretionary Provisions of the Plan</u>. In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan does not contain any discretionary provision that is inconsistent with the applicable provisions of the Bankruptcy Code.

      (v)    <u>Bankruptcy Rule 3016. Identification of the Plan; Conspicuous Injunction</u>. In accordance with Bankruptcy Rules 3016(a), the Plan is dated and identifies the entities submitting it as proponents. Other than conduct otherwise enjoined by the Bankruptcy Code, the Plan describes in specific and conspicuous language all acts to be enjoined and identifies the Entities subject to such injunction, in accordance with Bankruptcy Rule 3016(c).

      (vi)    <u>Section 1129(a)(2) – Compliance by the Debtors with Applicable Provisions of the Bankruptcy Code</u>. The Debtors, as the proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1123, 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019. The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted, and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and any and all other applicable rules, laws and regulations. Votes with respect to the Plan were solicited in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Voting Procedures Order, and all other applicable rules, laws and regulations.

      Based on the record before the Court, the Debtors, the Ad Hoc Committee of Secured Noteholders, the Secured Notes Indenture Trustee, the Subordinated Noteholders, the

Committee, and each of their current and former members, partners, equity holders, officers, directors, affiliates, employees, managers, stockholders, financial advisors, attorneys, accountants, investment bankers, consultants, agents, or other representatives have solicited votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Voting Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations and, accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X of the Plan.

(vii)   Section 1129(a)(3) – The Debtors Have Proposed the Plan in Good Faith. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Plan is designed to allow each of the Debtors to reorganize on a going concern basis while maximizing recoveries to their creditors. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of reorganizing the Debtors in order to maximize the value of their respective Estates.

(viii)   Section 1129(a)(4) – Court Approval of Certain Administrative Expense Payments. In accordance with section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtors or by any Person issuing securities or acquiring property under the Plan, for services rendered or expenses incurred in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to this Court.

The procedures set forth in the Plan for the Court's review and allowance of the fees and expenses to be paid by the Debtors satisfy the objectives of section 1129(a)(4) of the Bankruptcy Code. Accordingly, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

(ix)    Section 1129(a)(5) – Disclosure of Identity of Directors and Officers and the Compensation of Insiders. In accordance with section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed the identity and affiliations of the directors and officers of the Reorganized Debtors. The appointment to, or continuance in, such offices by such Persons is consistent with the interests of the Holders of Claims and Interests and with public policy. The Debtors have also disclosed the identity and affiliations of any insiders that will be employed or retained by the Reorganized Debtors and the nature of any compensation for such insiders.

(x)    Section 1129(a)(6) – Approval of Rate Changes. The Plan does not provide for any rate changes subject to the jurisdiction of any governmental regulatory commission. Accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

(xi)    Section 1129(a)(7) – Best Interests of Holders of Claims and Interests. The Plan satisfies the "best interests of creditors" test under section 1129(a)(7) of the Bankruptcy Code. With respect to each Impaired Class of Claims or Interests, each Holder of an Allowed Claim or an Allowed Interest in such Class has either accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain if the Debtors were liquidated on the Effective Date pursuant to chapter 7 of the Bankruptcy Code.

The liquidation analysis annexed to the Disclosure Statement as Exhibit E (the "Liquidation Analysis"), including the methodology used and estimations and assumptions made

therein, and the evidence related thereto that was proffered at the Confirmation Hearing, (a) are persuasive and credible as of the dates such evidence was prepared, presented or proffered, (b) either have not been controverted by other persuasive evidence or have not been challenged, (c) are based upon reasonable and sound assumptions, and (d) provide a reasonable estimate of the liquidation value of the Estates upon conversion of the Chapter 11 Cases to chapter 7. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

(xii)    Section 1129(a)(8) – Acceptance of the Plan by Each Impaired Voting Class.  As indicated in Article III of the Plan and as set forth in the Voting Affidavit and the Supplemental Voting Affidavit, Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (Prepetition Credit Agreement Claims), and Class 10 (Subsidiary Interests) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  As further set forth in the Voting Affidavit and the Supplemental Voting Affidavit, Class 4 (Secured Notes Claims), Class 5 (General Unsecured Claims), and Class 6 (Subordinated Notes Claims) are Impaired under the Plan and have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.  The Debtors did not solicit votes on the Plan from the Holders of Claims in Class 7 (Intercompany Claims) because the Debtors, as the proponents of the Plan and the Holders of such Claims, are deemed to have accepted the Plan.  Because the Plan provides that the Holders of Claims in Class 8 (Section 510(b) Claims) and Interests in Class 9 (NEI Common Interests) shall not receive or retain any property under the Plan on account thereof, such Classes are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

YCST01:9873338.2                                                                                              069152.1001

(xiii)   Section 1129(a)(9) – Treatment of Claims Entitled to Priority.  The Plan provides for the treatment of Claims entitled to priority pursuant to sections 507(a)(2)-(8) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

(xiv)   Section 1129(a)(10) – Acceptance by at Least One Impaired, Non-Insider Class.  In accordance with the requirements of section 1129(a)(10) of the Bankruptcy Code and as evidenced by the Voting Affidavit and the Supplemental Voting Affidavit, at least one Impaired Class of Claims against each Debtor has accepted the Plan, excluding the votes of insiders.  Accordingly, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

(xv)   Section 1129(a)(11) – Feasibility of the Plan.  The Plan is feasible.  The evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been contravened by other evidence, and (c) establishes that the Plan has a reasonable likelihood of success and that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors.  Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

(xvi)   Section 1129(a)(12) – Payment of Statutory Bankruptcy Fees.  In accordance with section 1129(a)(12) of the Bankruptcy Code, Section 12.9 of the Plan provides for payment, on the Effective Date, of the fees payable pursuant to 28 U.S.C. § 1930.  Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

(xvii)   Section 1129(a)(13) – Treatment of Retiree Benefits.  In accordance with section 1129(a)(13) of the Bankruptcy Code, Section 7.6 of the Plan provides for the continuation after the Effective Date of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code at any time prior to the Confirmation Date, for the duration of the

period (if any) that the Debtors are obligated to provide such benefits.  Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

(xviii)  <u>Sections 1129(a)(14)-(16) – Domestic Obligations, Individual Debtors, or Nonprofit Corporation or Trusts</u>.  None of the Debtors are (a) required to pay any domestic support obligations, (b) individuals, or (c) nonprofit corporations or trusts.  Accordingly, sections 1129(a)(14) through (16) of the Bankruptcy Code are not applicable to the Plan.

(xix)  <u>Section 1129(b) – Confirmation of the Plan Over the Non-Acceptance of an Impaired Class</u>.  The Plan satisfies all requirements of section 1129(b) of the Bankruptcy Code.  Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan is hereby confirmed even though, contrary to section 1129(a)(8) of the Bankruptcy Code, Class 8 (Section 510(b) Claims) and Class 9 (NEI Common Interests) are conclusively deemed to have rejected the Plan.  The Plan does not discriminate unfairly and is fair and equitable with respect to the Holders of Section 510(b) Claims and NEI Common Interests.  Specifically, (x) no Classes of Claims or Interests senior to Section 510(b) Claims or NEI Common Interests shall receive more than full payment on account of the Claims or Interests in such Classes, (y) no Holders of Claims or Interests junior to the Section 510(b) Claims or NEI Common Interests shall receive or retain any property under the Plan, and (z) the Holders of Section 510(b) Claims and NEI Common Interests would not receive or retain any property on account of such Claims or Interests in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.  Accordingly, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to the Holders of Section 510(b) Claims and NEI Common Interests.  Pursuant to section 1129(b) of the Bankruptcy Code, the Court therefore finds that the Plan is "fair and equitable" (within the meaning of section 1129(b) of the Bankruptcy Code) and does not discriminate unfairly with

YCST01:9873338.2

069152.1001

respect to the Holders of Section 510(b) Claims and NEI Common Interests. Accordingly, the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

(xix)    Section 1129(d) – Principal Purpose of the Plan. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (the "Securities Act"), and no party in interest has filed an objection alleging otherwise. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Q.    Satisfaction of Conditions Precedent. Each condition precedent to the confirmation of the Plan, as set forth in Section 9.1 of the Plan, has been satisfied or waived. Furthermore, each condition precedent to occurrence of the Effective Date, as set forth in Section 9.2 of the Plan, has been satisfied or waived or is reasonably likely to be satisfied.

## II.    ORDER

NOW THEREFORE, BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    Order. This Confirmation Order shall confirm the Plan in all respects.

2.    Objections. To the extent that any objections to confirmation of the Plan have not been withdrawn, waived or settled prior to entry of this Confirmation Order or otherwise resolved as stated on the record at the Confirmation Hearing, they are hereby overruled.

3.    Confirmation. The Plan (a copy of which is attached hereto as Exhibit A) and the Plan Supplement, including all Exhibits included therein, and each of their respective provisions are hereby approved and confirmed in all respects pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, the Plan Supplement, and the Exhibits are incorporated

22

by reference into this Confirmation Order. The terms of the Plan, the Plan Supplement, and the Exhibits shall be effective and binding as of the Effective Date; provided, however, that the Exit Revolving Facility Commitment Documents, the Exit Term Loan Facility Commitment Documents, and the Exit Facility Fee Letters may be effective and binding prior to the Effective Date in accordance with the terms thereof. Notwithstanding the foregoing, if there is any inconsistency between the terms of the Plan or the Plan Supplement and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

4.     Plan Modifications. The Plan Modifications (i) do not materially or adversely change the treatment of any Holders of Claims or Interests under the Plan, (ii) do not require additional disclosure under section 1125 of the Bankruptcy Code or the re-solicitation of acceptances or rejections of the Plan under section 1126 of the Bankruptcy Code, (iii) do not require that Holders of Claims and Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan, and (iv) are hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019. The Exhibits included in the Plan Supplement may be amended or modified prior to the Effective Date with the consent of the Debtors and the Ad Hoc Committee of Secured Noteholders and without further Court approval.

5.     Plan Classification Controlling. The classification of Claims and Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan. The classifications included in the Ballots tendered to or returned by the Holders of Claims for purposes of voting on the Plan (a) were included in the Ballots solely for purposes of voting on the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classifications of

such Claims under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or on the Reorganized Debtors under any circumstances.

6.    Provisions of Plan and Confirmation Order Non-Severable and Mutually Dependent.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

7.    Solicitation of the Plan and Exemption from Securities Laws.  The Debtors, the Ad Hoc Committee of Secured Noteholders, the Secured Notes Indenture Trustee, the Subordinated Noteholders, the Committee, and each of their current and former members, partners, equity holders, officers, directors, affiliates, employees, managers, stockholders, financial advisors, attorneys, accountants, investment bankers, consultants, agents, or other representatives have solicited votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code in good faith, within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Voting Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws and regulations and, accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X of the Plan and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the distributions made pursuant to the Plan.  Specifically, pursuant to section 1125(e) of the Bankruptcy Code, none of the parties listed above that participated in (i) the transmittal of Solicitation Packages (including transmittal of the Plan and the Disclosure Statement), (ii) the solicitation of votes to accept or reject the Plan, or (iii) the offer, issuance, sale or purchase of any securities (including, without limitation, the New Secured Notes, the New Common Stock, and the New Warrants) offered or

sold under or in connection with the Plan, shall be liable, on account of such actions or such participation, for any violation of any applicable law, rule or regulation governing the solicitation of votes to accept or reject the Plan or the offer, issuance, sale or purchase of any securities. Pursuant to section 1145(a)(1) of the Bankruptcy Code, the offer, issuance and distribution by the Debtors, the Reorganized Debtors, or any Disbursing Agents of the New Secured Notes, the New Common Stock, or the New Warrants pursuant to the Plan shall be exempt from section 5 of the Securities Act and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security. Pursuant to and to the fullest extent permitted under section 1145 of the Bankruptcy Code, the issuance and distribution of the New Secured Notes, the New Common Stock and the New Warrants shall be deemed a public offering, and the resale of the New Secured Notes, the New Common Stock, or the New Warrants shall be exempt from section 5 of the Securities Act and any state or local law requiring registration prior to the offering, issuance, sale or distribution of securities.

8.  Authorization and Direction to Act. Pursuant to section 1142(b) of the Bankruptcy Code, no action of the stockholders, creditors or directors of the Debtors or the Reorganized Debtors shall be required to (i) authorize the Debtors and the Reorganized Debtors (or any of their respective officers, employees or agents acting on their behalf) to effectuate and carry out the Plan or any order of this Court relating thereto, (ii) consummate the transactions contemplated by the Plan, the Plan Supplement, the Disclosure Statement or any order of this Court, or (iii) take any other action contemplated by the Plan, the Plan Supplement, the Disclosure Statement, or any order of this Court as may be necessary or appropriate to implement the Plan, and all such actions are hereby authorized, approved, and to the extent taken

25

prior to the Effective Date, ratified in all respects as if they had been authorized or approved by the unanimous actions of the directors and stockholders of the Debtors and the Reorganized Debtors. This Confirmation Order shall constitute the Court's approval of the Plan and the transactions contemplated thereby, including, without limitation, those transactions contemplated under Article V of the Plan, the Plan Supplement, or this Confirmation Order.

9. <u>Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors</u>. On and after the Effective Date, after giving effect to each of the Restructuring Transactions contemplated under the Plan, as set forth in <u>Exhibit 8</u> to the Plan, each of the Reorganized Debtors shall continue to exist as separate corporate entities in accordance with the applicable law in the respective jurisdiction in which they are incorporated and pursuant to their respective certificates or articles of incorporation and by-laws in effect prior to the Effective Date, except to the extent such certificates or articles of incorporation and by-laws are to be amended pursuant to the terms of the Plan. Notwithstanding anything to the contrary in the Plan, the Reinstated Claims against or Interests in a particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or Reorganized Debtor following the Effective Date and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of the Plan, the Chapter 11 Cases, or otherwise. Except as otherwise provided in the Plan, on and after the Effective Date, all property of the Estates of the Debtors, including all claims, rights and causes of action and any property acquired by the Debtors or the Reorganized Debtors under or in connection with the Plan, shall vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests. On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and compromise or settle any Claims without supervision of or approval by the Court and free

and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or this Confirmation Order. Without limiting the foregoing, the Reorganized Debtors shall be authorized to pay the charges that they incur on or after the Effective Date for professionals' fees, disbursements, expenses or related support services without the need for any application to the Court.

10. <u>Cancellation of Notes, Instruments, Debentures, and NEI Common Interests</u>. On the Effective Date, after giving effect to the distributions to be made on the Effective Date pursuant to the Plan, and except as otherwise provided for in the Plan or this Confirmation Order, all (a) Prepetition Credit Documents, Secured Notes, Subordinated Notes, NEI Common Interests, and any other notes, bonds (with the exception of any surety bonds outstanding), indentures (including the Secured Notes Indenture), stockholders agreements, registration rights agreements, repurchase agreements and repurchase arrangements, subscription agreements, exchange agreements, warrant agreements or other instruments, documents, plans or agreements evidencing or creating any indebtedness or obligations of a Debtor that relate to Claims or Interests that are Impaired under the Plan, shall be cancelled, and (b) the obligations of the Debtors under any Prepetition Credit Documents, stockholders agreements, registration rights agreements, repurchase agreements and repurchase arrangements, subscription agreements, exchange agreements, warrant agreements, indentures (including the Secured Notes Indenture) or certificates of designation governing the Secured Notes, Subordinated Notes, NEI Common Interests, and any other notes, bonds, indentures, or other instruments, documents, plans or agreements evidencing or creating any Claims or Interests against a Debtor that relate to Claims or Interests that are Impaired under the Plan shall be discharged; <u>provided</u>, <u>however</u>, that (i) the Secured Notes Indenture shall continue in effect only to the extent necessary to allow the

Reorganized Debtors and the Secured Notes Indenture Trustee to make distributions pursuant to the Plan on account of Secured Notes Claims and to preserve the liens of the Secured Notes Indenture Trustee with respect to such distributions, but only to the extent that the Secured Notes Indenture Trustee Claims are not paid pursuant to Section 3.1(a) of the Plan, and (ii) Neenah's indemnification obligations under the Secured Notes Indenture, the Prepetition Credit Agreement, the DIP Revolving Facility Agreement, and the DIP Term Facility Agreement shall survive the confirmation of the Plan notwithstanding the cancellation of such agreements on the Effective Date. Furthermore, as of the Effective Date, all NEI Common Interests that have been authorized to be issued but that have not been issued shall be deemed cancelled and extinguished without any further action of any party.

      11.    <u>Cancellation of Liens</u>. Except as otherwise provided in the Plan, on the Effective Date, in consideration for the distributions to be made on the Effective Date pursuant to the Plan, (i) all Liens, charges, encumbrances and rights related to any Claim or Interest, including, without limitation, those existing under the Prepetition Credit Documents, shall be terminated, null and void and of no effect, and (ii) any Lien securing any Other Secured Claim (other than a Lien securing an Other Secured Claim that is Reinstated pursuant to the Plan) shall be deemed released and the Holder of such Other Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of such Lien, including the execution, delivery, and filing or recording of such release documents as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).

YCST01:9873338.2

069152.1001

12.    Issuance of New Securities and Related Matters.  On the Effective Date (or as soon as reasonably practicable thereafter), Reorganized NEI and the other Reorganized Debtors shall issue all securities and execute all instruments, certificates and other documents, including the New Secured Notes, the New Secured Notes Documents, the New Common Stock and the New Warrants, required to be issued or distributed pursuant to the Plan without further act or action under applicable law, regulation, order or rule.  The issuance of the New Secured Notes, the New Common Stock and the New Warrants and the distribution thereof under the Plan shall be exempt from registration under applicable securities laws pursuant to the applicable provisions of the Bankruptcy Code, including section 1145(a) of the Bankruptcy Code.  Without limiting the effect of section 1145 of the Bankruptcy Code, all documents, agreements and instruments entered into on or as of the Effective Date contemplated by or in furtherance of the Plan, including, without limitation, the Exit Revolving Facility Documentation, the Exit Term Loan Facility Documentation, the New Secured Notes Documents, the New Warrants, and any other agreement, document or instrument entered into in connection with the foregoing, shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto.

13.    Corporate Governance – Certificate of Incorporation and By-Laws.  On the Effective Date, the Amended and Restated Certificate of Incorporation and the Amended and Restated By-Laws, in substantially the forms of Exhibit 1 and Exhibit 2 to the Plan, respectively, shall be deemed approved and adopted by all necessary action on the part of NEI or Reorganized NEI.  After the Effective Date, Reorganized NEI and the other Reorganized Debtors shall be authorized to amend and restate their certificates or articles of incorporation and by-laws in accordance with applicable law, subject to the terms of Section 10.2(e) of the Plan.

29

14.     Approval of the Separation Agreements.  The Separation Agreements are hereby approved.  The Debtors (and, as of the Effective Date, the Reorganized Debtors) are hereby authorized and directed to enter into the Separation Agreements and to perform all of their obligations under the Separation Agreements without the need for any action by the stockholders, creditors or directors of the Debtors or the Reorganized Debtors.

15.     Acting Management of the Reorganized Debtors.  On the Effective Date, without the need for any action by the stockholders, creditors or directors of the Debtors or the Reorganized Debtors, (i) Richard D. Caruso of Huron shall be deemed to have been appointed as the Acting Chief Executive Officer of Reorganized NEI and (ii) Brent E. Johnson of Huron shall be deemed to have been appointed as the Acting Chief Financial Officer of Reorganized NEI and, pending further action by the board of directors of Reorganized NEI, shall serve in such capacities and be compensated for their services to the Reorganized Debtors in accordance with the terms of an engagement letter to be entered into between Reorganized NEI and Huron on the Effective Date.   Pursuant to Section 12.3 of the Plan, on the Effective Date, Reorganized NEI shall be authorized to enter into such engagement letter without further approval of this Court.

16.     Corporate Action.  On the Effective Date, the reincorporation of Reorganized Neenah as a Delaware corporation, the adoption of the Amended and Restated Certificate of Incorporation, the adoption of the Amended and Restated By-Laws, the adoption of amended certificates or articles of incorporation and by-laws of each Reorganized Debtor other than Reorganized NEI, the selection of directors and officers for Reorganized NEI and the other Reorganized Debtors (including any replacement officers), and all other corporate actions contemplated by the Plan, shall be authorized and approved in all respects, or shall have otherwise occurred (subject to the provisions of this Plan).  All matters provided for in this Plan

involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors. On the Effective Date, the appropriate officers of Reorganized NEI and/or the other Reorganized Debtors and members of the boards of directors of Reorganized NEI and/or the other Reorganized Debtors shall be authorized and directed to issue, execute, deliver, file and perform the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of Reorganized NEI and/or the other Reorganized Debtors.

      17.    <u>Exit Financing</u>. On the Confirmation Date, without any requirement of further action by security holders or directors of the Debtors or the Reorganized Debtors, the Reorganized Debtors shall be authorized and directed to enter into the Exit Revolving Facility Commitment Documents, the Exit Term Loan Facility Commitment Documents, and the Exit Facility Fee Letters and to perform all of their obligations thereunder. Furthermore, on the Effective Date, without any requirement of further action by security holders or directors of the Debtors or the Reorganized Debtors, the Reorganized Debtors shall be authorized and directed to (i) enter into the Exit Revolving Facility Documentation and the Exit Term Loan Facility Documentation (including, without limitation, the Exit Revolving Facility Credit Agreement and the Exit Term Loan Facility Credit Agreement), which are subject to continuing negotiation but shall be consistent with the terms and conditions of the Exit Revolving Facility Commitment Documents and the Exit Term Loan Facility Commitment Documents, respectively, and the Exit Facility Fee Letters, and (ii) execute all other necessary and appropriate documentation in connection with the Exit Revolving Facility and the Exit Term Loan Facility (including, without

limitation, all intercreditor agreements, security agreements, financing statements, and mortgages). Upon due execution and delivery by the Reorganized Debtors, the Exit Revolving Facility Documentation and the Exit Term Loan Facility Documentation shall constitute legal, valid and binding obligations of the Reorganized Debtors and shall be enforceable against each such Reorganized Debtor in accordance with the terms thereof. The guarantees, mortgages, pledges, liens and other security interests granted pursuant to the Exit Revolving Facility Documentation and the Exit Term Loan Facility Documentation shall be granted in good faith as an inducement to the Exit Lenders to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such liens and security interests shall be as set forth in the intercreditor agreements and other definitive documentation executed in connection with the Exit Facilities.

18. <u>Exit Financing – Effect of Reversal or Appeal</u>. Any and all credit extended by the Exit Lenders to Reorganized NEI and each of the other Reorganized Debtors under the Exit Revolving Facility Documentation and/or the Exit Term Loan Facility Documentation shall be, and hereby is, deemed to have been extended in good faith and any reversal or appeal of this Confirmation Order, or the provisions of this Confirmation Order approving the extension of credit under the Exit Revolving Facility Documentation and/or the Exit Term Loan Facility Documentation or the granting of liens to the Exit Lenders under the Exit Revolving Facility Documentation and/or the Exit Term Loan Facility Documentation, shall not affect the validity of any debt incurred by Reorganized NEI and the other Reorganized Debtors pursuant to this Confirmation Order, the Plan, the Exit Revolving Facility Documentation, and/or the Exit Term Loan Facility Documentation, or liens or security interests

granted pursuant to this Confirmation Order, the Plan, the Exit Revolving Facility Documentation and/or the Exit Term Loan Facility Documentation, unless the incurrence of such debt, or the granting of such lien or security interest, has been stayed pending appeal.

19.     Executory Contracts and Unexpired Leases. As set forth in Article VII of the Plan and in the Assumption Order, on the Effective Date, all executory contracts or unexpired leases of the Debtors shall be deemed assumed in accordance with, and subject to, the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, or (iii) is rejected by the Debtors prior to the Confirmation Date. Entry of the Confirmation Order shall constitute this Court's approval of such assumption pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to Article VII of the Plan or the Assumption Order shall revest in and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, any order of the Court authorizing and providing for its assumption, or applicable federal law.

20.     Post-Petition Contracts and Leases. All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date shall be deemed assigned by the Debtors to the Reorganized Debtors on the Effective Date.

21.     Distributions and Claims Reconciliation. The provisions of Article VI and Article VIII of the Plan regarding the distributions under the Plan and the reconciliation of Disputed Claims are hereby approved in all respects. From and after the Effective Date, the Reorganized Debtors shall have sole responsibility and authority for disputing, objecting to,

YCST01:9873338.2                                                                                       069152.1001

compromising and settling, or otherwise resolving and making distributions (if any) with respect to all Claims, including all Administrative Expense Claims.

22.     Binding Effect of the Plan.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder of a Claim or Interest has voted to accept the Plan.

23.     Exculpation.  From and after the Effective Date, except as otherwise expressly provided in the Plan, the Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing the Plan, the Disclosure Statement, the Restructuring Transactions, or any of the transactions contemplated under Article V of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the property to be distributed under the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases; provided, however, that the exculpation set forth in Section 10.2(a) of the Plan shall not apply to (x) obligations under, and the contracts, instruments, releases, agreements, and documents delivered, Reinstated or assumed under the Plan, and (y) any claims or causes of action arising out of willful misconduct or gross negligence as determined by a Final Order.  Any

34

of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

24.  **Releases by the Debtors.  Except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Reorganized Debtors on its own behalf and as a representative of its respective Estate, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims and Causes of Action (including, without limitation, Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors, their respective assets, property and Estates, the Chapter 11 Cases or the Plan, the Disclosure Statement, or the Restructuring Transactions that may be asserted by or on behalf of any of the Debtors, the Reorganized Debtors or their respective Estates against any of the Released Parties; provided, however, that nothing in Section 10.2(b) of the Plan or this Confirmation Order shall be construed to release any Released Party from willful misconduct or gross negligence as determined by a Final Order.**

YCST01:9873338.2

069152.1001

25. **Releases by Holders of Claims and Interests.** **Except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Holder of a Claim entitled to vote on the Plan that did not elect, by submitting a Ballot and checking the appropriate box thereon, not to grant the releases set forth in Section 10.2(c) of the Plan, unless otherwise bound by the Lock-Up Agreement to grant such releases with respect to Released Parties other than the Debtors, the Reorganized Debtors, and their respective successors and assigns (whether by operation or law or otherwise), shall be deemed to have completely and forever released, waived, and discharged unconditionally each and all of the Released Parties of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), and any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors or their respective assets, property and Estates, the Chapter 11 Cases or the Plan, the Disclosure Statement, or the Restructuring Transactions; provided, however, that nothing in Section 10.2(c) of the Plan or this Confirmation Order shall be construed to release any Released Party from willful misconduct or gross negligence as determined by a Final Order.**

YCST01:9873338.2

069152.1001

26. **Injunction Related to Exculpation and Releases. Except as provided in the Plan or this Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, or any Interest or other right of a Holder of an equity security or other ownership interest, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and Estates, that is released or enjoined pursuant to Section 10.2 of the Plan and (ii) all other parties in interest in the Chapter 11 Cases are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Interests or other rights of a Holder of an equity security or other ownership interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Section 10.2 of the Plan; and (v) commencing or continuing in any manner, in any place of**

YCST01:9873338.2

069152.1001

**any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or this Confirmation Order.**

      27.   <u>Survival of Indemnification Obligations</u>.  The obligations of the Debtors to indemnify any past and present directors, officers, agents, employees and representatives, pursuant to certificates or articles of incorporation, by-laws, contracts and/or applicable statutes, in respect of all actions, suits and proceedings against any of such officers, directors, agents, employees and representatives, based upon any act or omission related to service with or for or on behalf of the Debtors, shall not be discharged or Impaired by confirmation or consummation of the Plan and shall be assumed by the Reorganized Debtors.

      28.   <u>Discharge of Claims and Termination of Interests</u>.  Except as otherwise provided in the Plan or in this Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Interests (other than Unimpaired Claims that are Allowed) of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests.  On the Effective Date, the Debtors shall be deemed discharged and released under section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims and Interests (other than Unimpaired Claims that are Allowed), including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, and the NEI Common Interests, the Secured Notes, and the Subordinated Notes shall be terminated.

      As of the Effective Date, except as otherwise expressly provided in the Plan or this Confirmation Order, all Entities shall be precluded from asserting against the Debtors or the

38

Reorganized Debtors and their respective assets, property and Estates, any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all Interests or other rights of a Holder of an equity security or other ownership interest, relating to any of the Debtors or Reorganized Debtors or any of their respective assets, property and Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan or this Confirmation Order, this Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Interests or other rights of a Holder of an equity security or other ownership interest and termination of all rights of any equity security Holder in any of the Debtors and all Interests, including the NEI Common Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, or any of their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any equity security Holder in any of the Debtors or terminated Interest, including, without limitation, an NEI Common Interest.

Nothing in this Confirmation Order or the Plan discharges, releases, or precludes: (i) any environmental liability to a governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a Claim; (ii) any environmental Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any environmental liability to a Governmental Unit on the part of any entity as the owner or operator of real property after the Confirmation Date; or (iv) any environmental liability to a Governmental Unit on the part of any Person other

39

than the Debtors or Reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Notwithstanding any other provision in this Confirmation Order or the Plan, the Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by a Governmental Unit are discharged or otherwise barred by this Confirmation Order, the Plan, or the Bankruptcy Code.

Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or otherwise, any Claims related to Neenah's potential liability with respect to environmental contamination in the Fox River and in the *George A. Whiting* matters pending in the Eastern District of Wisconsin, Case Nos. 08-CV-16 and No. 09-C-692, shall be deemed Reinstated and shall not be subject to disallowance pursuant to section 502(e) of the Bankruptcy Code.

29. <u>Preservation of Litigation Claims</u>. Except as otherwise provided in the Plan, this Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors and their Estates shall retain the Litigation Claims. The Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Litigation Claims. The Debtors or the Reorganized Debtors have expressly reserved all rights to prosecute any and all Litigation Claims against any Person, except as otherwise expressly provided in the Plan, and no preclusion doctrine, including the doctrines of res judicata, issue preclusion, estoppel (judicial, collateral, equitable or otherwise), or laches, shall apply to such Litigation Claims upon, after, or as a consequence of the entry of the Confirmation Order or the occurrence of the Effective Date. Notwithstanding the foregoing, the Debtors and the Reorganized Debtors shall not file,

YCST01:9873338.2

069152.1001

commence or pursue any Claim, right or Cause of Action under section 547 of the Bankruptcy Code or seek to disallow any Claim to the extent it may be avoidable thereunder.

30.     **Injunction.  Except as otherwise provided in the Plan or this Confirmation Order, from and after the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors, shall be (i) permanently enjoined from taking any of the following actions against the Estate(s), or any of their property, on account of any such Claims or Interests and (ii) permanently enjoined from taking any of the following actions against any of the Debtors, the Reorganized Debtors or their property on account of such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff, subrogation or recoupment of any kind and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.  By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in Section 10.4 of the Plan.**

31.     Revesting of Assets.  Pursuant to section 1141(b) of the Bankruptcy Code, all property of the respective Estate of each Debtor, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall revest in the applicable Reorganized Debtor on the Effective Date (subject to the effects of the Restructuring Transactions).  Thereafter, the Reorganized Debtors may operate their businesses

41

and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules. As of the Effective Date, all property of each Reorganized Debtor shall be free and clear of all Liens, Claims and Interests, except as specifically provided in the Plan or the Confirmation Order. Without limiting the generality of the foregoing, each Reorganized Debtor may, without the need for any application to or approval by the Court, pay fees that it incurs after the Effective Date for professional services and expenses.

32. <u>Employee Compensation and Benefit Plans</u>. From and after the Effective Date, the Reorganized Debtors shall continue to perform their obligations (whether statutory or contractual) under all employment and severance contracts that are assumed by the Reorganized Debtors (subject to the terms and conditions of the Separation Agreements) and all Employee Benefit Plans applicable to their employees, retirees and non-employee directors, including the Pension Plans which shall be continued in accordance with Section 7.6 of the Plan.

33. <u>Governmental Approvals</u>. Each federal, state, commonwealth, local, foreign or other Governmental Unit is hereby directed and authorized to accept any and all documents, mortgages, deeds of trust, security filings, financing statements and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any Governmental Unit with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

34. <u>Term of Bankruptcy Injunction or Stays</u>. All injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

YCST01:9873338.2

069152.1001

35. <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under the Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, shall not be subject to any stamp tax or other similar tax.

36. <u>Surrender of Instruments</u>. As a condition to participation in distributions under this Plan, each Holder of a note, debenture or other evidence of indebtedness of the Debtors that desires to receive the property to be distributed on account of an Allowed Claim based on such note, debenture or other evidence of indebtedness shall surrender such note, debenture or other evidence of indebtedness to the Debtors, or their designee (unless such Allowed Claim will be Reinstated by the Plan, in which case such surrender shall not be required), and shall execute and deliver such other documents as are necessary to effectuate the Plan; <u>provided, however,</u> that if a claimant is a Holder of a note, debenture or other evidence of indebtedness for which no physical certificate was issued to the Holder but which instead is held in book-entry form pursuant to a global security held by DTC or other securities depositary or custodian thereof, then such Holder shall be deemed to have surrendered such Holder's note, debenture or other evidence of indebtedness upon surrender to the Reorganized Debtors of such global security by DTC or such other securities depositary or custodian thereof. Except as otherwise provided herein, if no surrender of a note, debenture or other evidence of indebtedness occurs and a claimant does not provide an affidavit and indemnification agreement, in form and substance satisfactory to the Debtors, that such note, debenture or other evidence of indebtedness

43

was lost, then no distribution may be made to any claimant whose Claim or Interest is based on such note, debenture or other evidence of indebtedness thereof. The Debtors shall make subsequent distributions only to the persons who surrender the securities for exchange (or their assignees) and the record holders of such securities shall be those holders of record as of the Effective Date. Except as otherwise provided herein, any indenture and stockholders agreement in effect prior to the Petition Date shall be rendered void as of the Effective Date.

37.    <u>Dissolution of the Committee</u>. The Committee shall continue in existence until the Effective Date. On the Effective Date, the appointment of the Committee shall terminate, and the Committee shall be dissolved, <u>provided</u>, <u>however</u>, that following the Effective Date, the Committee shall continue to have standing and a right to be heard solely with respect to: (i) applications for compensation by Professionals and requests for allowance of Administrative Expense Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (ii) any appeals of the Confirmation Order that remain pending as of the Effective Date; and (iii) any adversary proceedings or contested matter as of the Effective Date to which the Committee is a party. All reasonable fees and expenses incurred after the Effective Date by the Professionals retained by the Committee in connection with the matters set forth in the foregoing clauses (i) through (iii) shall be paid by the Reorganized Debtors without the requirement of any further order of the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, on the Effective Date, the Committee shall be dissolved and the members of the Committee shall be released and discharged of and from all duties, responsibilities and obligations related to or arising from or in connection with the Chapter 11 Cases.

38.    <u>Post-Confirmation Date Retention of Professionals</u>. On the Effective Date, any requirement that professionals employed by the Reorganized Debtors comply with

sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors shall be authorized to employ and compensate professionals in the ordinary course of business and without the need for this Court's approval.

39. <u>Bar Date for Certain Administrative Expense Claims</u>. All applications for final allowance of compensation or reimbursement of the expenses incurred by any Professional, and all other requests for the payment of Administrative Expense Claims, including all requests for the allowance of any Administrative Expense Claim pursuant to section 503(b)(3)(D) of the Bankruptcy Code for substantial contributions made in these Chapter 11 Cases (but expressly excluding all requests for the payment of obligations incurred by the Debtors in the ordinary course of their business operations after the Petition Date), must be filed with the Court and served on the Reorganized Debtors and their counsel at the addresses set forth in Section 12.14 of the Plan not later than thirty (30) days after the Effective Date, unless otherwise ordered by the Court. Any request for the payment of an Administrative Expense Claim that is not timely filed and served shall be discharged and forever barred and the Holder of such Administrative Expense Claim shall be enjoined from commencing or continuing any action, process, or act to collect, offset or recover such Claim. The Debtors and the Reorganized Debtors shall have sole responsibility for filing objections to and resolving all requests for the allowance of Administrative Expense Claims.

40. <u>Effectuating Documents and Further Transactions</u>. Each of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, certificates, notes, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the

terms and conditions of the Plan and any notes or securities issued pursuant to the Plan, including actions that the Secured Notes Indenture Trustee may reasonably request to further effect the terms of the Plan.

41.     Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, shall be paid by the Reorganized Debtors on the Effective Date.

42.     Retention of Jurisdiction.  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, exclusive jurisdiction for the purposes set forth in Article XI of the Plan.

43.     Reference to and Validity and Enforceability of Plan Provisions.  The failure to reference any particular provision of the Plan in this Confirmation Order shall have no effect on the binding effect, enforceability or legality of such provisions and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan. Each term and provision of the Plan is valid and enforceable pursuant to its terms and is specifically approved pursuant to this Confirmation Order even if not referenced herein.

44.     Substantial Consummation.  The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

45.     Notice of Entry of the Confirmation Order.  Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), no later than ten (10) Business Days after the entry of this Confirmation Order, the Debtors shall cause a notice of the entry of this Confirmation Order to be served on all

Holders of Claims or Interests and any other Persons on whom the Confirmation Hearing Notice was served. In addition, pursuant to Bankruptcy Rule 2002(l), the Debtors shall publish a notice of the entry of this Confirmation Order in <u>The Wall Street Journal</u> and the national edition of <u>USA Today</u> not later than ten (10) business days after the occurrence of the Effective Date. Such actual and publication notice of entry of the Confirmation Order shall have the effect of an order of the Court and shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), and no other or further notice of entry of this Confirmation Order need be given.

46.     <u>Reversal or Vacatur</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

47.     <u>Authorization to Consummate the Plan</u>. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof. The 10-day stay of this Confirmation Order under Bankruptcy Rule 3020(e) is hereby waived. The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to the satisfaction or waiver of the conditions precedent to occurrence of the Effective Date as set forth in Section 9.2 of the Plan.

47

48.    Resolution of the Objection of the Michigan Department of Taxation.

Notwithstanding anything in the Plan or this Confirmation Order to the contrary, to the extent

Michigan Department of Treasury holds an Allowed Priority Tax Claim that is due and payable

on or before the Effective Date and the Debtors elect to satisfy such Allowed Priority Tax Claim

with deferred Cash payments pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, the

Michigan Department of Treasury shall receive (i) deferred Cash payments made on the first

Business Day following each anniversary of the Effective Date over a period not exceeding five

(5) years after the Petition Date, with a total value as of the Effective Date equal to the amount of

such Allowed Priority Tax Claim and (ii) interest calculated at a rate determined under section

511 of the Bankruptcy Code.  Furthermore, nothing in the Plan or this Confirmation order shall,

or shall be deemed to, impair the right, if any, of the Michigan Department of Treasury to collect

tax liabilities from any Entities other than the Debtors or the Reorganized Debtors, subject to any

defenses such Entities may have under the applicable law and facts.  In addition, nothing in the

Plan or this Confirmation Order shall, or shall be deemed to, impair the right, if any, of the

Michigan Department of Treasury to assert any valid, enforceable setoff rights under applicable

law against the tax liabilities of any Entities, including the Debtors or the Reorganized Debtors,

subject to any defenses such Entities may have under the applicable law and facts.

49.    Claims of Central States Southeast and Southwest Areas Pension Fund.

Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Claims

Objection Deadline with respect to Claim Nos. 284 through 301 (inclusive) of Central States

Southeast and Southwest Areas Pension Fund ("Central States") is hereby extended for 90 days

after the Effective Date, and may be further extended by agreement of the Reorganized Debtors

and Central States.  Nothing contained in the Plan or this Confirmation Order shall in any way

operate to, or have the effect of, impairing in any respect the legal, equitable, or contractual rights and defenses of the Debtors or Central States with respect to the Claims of Central States. The rights and obligations of the Debtors and Central States with respect to Claims of Central States shall be determined under (i) the Bankruptcy Code; (ii) the applicable Central States pension plan and trust agreement; and (iii) any applicable non-bankruptcy law, including but not limited to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). For the avoidance of doubt, the time period prescribed by ERISA for the Debtors to seek review and redetermination of Central States' claim of liability is hereby tolled so that the 90-day period set forth in ERISA Section 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A), shall commence 90 days after the Effective Date, or as otherwise further extended by agreement of the Reorganized Debtors and Central States.

50.     Insurance Policies Issued by Employers Insurance Company of Wausau. Nothing contained in the Plan or this Confirmation Order shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers with respect to any insurance policies and related agreements issued by Employers Insurance Company of Wausau and any of its affiliates (collectively, "Wausau") to or on behalf of the Debtors (collectively, the "Wausau Policies"). The rights and obligations of the insureds and insurers under the Wausau Policies shall be determined (i) under the Wausau Policies, as applicable, including the terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect and (ii) any applicable non-bankruptcy law. Regardless of whether the Wausau Policies are considered to be executory or not, the Reorganized Debtors will

YCST01:9873338.2

069152.1001

perform the Debtors' obligations (monetary or otherwise) under the Wausau Policies, including

any that remain unperformed as of the Effective Date of the Plan.

Dated:    Wilmington, Delaware
          July 16, 2010

                                    HONORABLE MARY F. WALRATH
                                    UNITED STATES BANKRUPTCY JUDGE