**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------X

In re:                                                                Chapter 11


NEENAH ENTERPRISES, INC., et al.                 Case No. 10-10360 (MFW)

                                                                      (Jointly Administered)
                                        Debtors.

----------------------------------------------------------X Objection Period: September 7, 2010 at 4:00 pm (ET)


**FIFTH MONTHLY APPLICATION OF HURON CONSULTING SERVICES LLC**
**AS FINANCIAL ADVISORS TO THE DEBTORS FOR ALLOWANCE OF INTERIM**
**COMPENSATION AND FOR INTERIM REIMBURSMENT OF ALL ACTUAL AND**
**NECESSARY EXPENSES INCURRED FOR THE PERIOD**
**JUNE 1, 2010 THROUGH JUNE 30, 2010**

| | |
|---|---|
| Name of Application: | HURON CONSULTING GROUP |
| Authorized to Provide Professional Services to: | Neenah Enterprises, Inc., et al. |
| Date of Retention: | March 8, 2010 nunc pro tunc to February 3, 2010 |
| Period for which Compensation and Reimbursement is sought: | June 1, 2010 Through June 30, 2010 |
| Amount of compensation sought as actual, reasonable and necessary: | $390,492.50 |
| Amount of reimbursement sought as actual, reasonable and necessary: | $15,917.93 |

This is a  x  monthly          ____ final application

If this is not the first application filed, disclose the following for each prior application:

| DATE FILED | PERIOD COVERED | REQUESTED FEES/EXPENSES | APPROVED FEES/EXPENSES |
|---|---|---|---|
| 03/11/10 | February 3, 2010 through February 28, 2010 | $288,870.00/$11,678.99 | Received payment of 80% of fees and 100% of expenses |

- 1 -

| 04/22/10 | March 1, 2010 through March 31, 2010 | $495,568.75/$16,781.85 | Received payment of 80% of fees and 100% of expenses |
| 05/24/10 | April 1, 2010 through April 30, 2010 | $316,137.50/$13,302.15 | Received payment of 80% of fees and 100% of expenses |
| 06/28/10 | May 1, 2010 through May 31, 2010 | $274,728.75/$16,234.96 | Received payment of 80% of fees and 100% of expenses |

## COMPENSATION BY PROFESSIONAL

### NEENAH ENTERPRISES, INC., et al
(Case No. 10-10360 (MFW))

June 1, 2010 through June 30, 2010

| Professional | Title | Hours | Rate | Total |
|---|---|---|---|---|
| Richard D. Caruso | Managing Director | 175.4 hrs | $675.0 / hr | 118,395.00 |
| Sanford Edlein | Managing Director | 1.5 hrs | $675.0 / hr | 1,012.50 |
| Brent Johnson | Director | 200.6 hrs | $575.0 / hr | 115,345.00 |
| Fernando Pena-Alfaro | Director | 43.0 hrs | $575.0 / hr | 24,725.00 |
| Nick Zaccagnini | Manager | 21.0 hrs | $375.0 / hr | 7,875.00 |
| Brett Anderson | Manager | 228.7 hrs | $375.0 / hr | 85,762.50 |
| Omer Ozgozukara | Manager | 209.3 hrs | $375.0 / hr | 78,487.50 |
| Total Professional Charges | | 879.5 | | $431,602.50 |
| | | | Less: Travel Time Discount (50%): | $41,110.00 |
| | | | Total June Fees: | $390,492.50 |
| | | | Blended Hourly Rate: | $443.99 |

**COMPENSATION BY PROJECT CATEGORY**

NEENAH ENTERPRISES, INC., et al
(Case No. 10-10360 (MFW))

June 1, 2010 through June 30, 2010

| Activity Code | Activity Code Description | Hours | Fees |
|---|---|---|---|
| 1 | Meeting / teleconference with Debtor Management, Board, or Counsel | 13.2 | 8,350.00 |
| 2 | Meeting / teleconference with Bank Group, Counsel or Advisors | 17.4 | 11,155.00 |
| 4 | Court Hearings/Preparation | 1.7 | 637.50 |
| 5 | Case Reporting: UST Rpts, Statements, & Schedules | 22.6 | 9,055.00 |
| 6 | Retention and Fee Applications | 24.3 | 10,712.50 |
| 8 | Business Plan & Analysis of Operations | 294.0 | 144,440.00 |
| 9 | Cash Flow Analysis and Reporting | 59.2 | 34,100.00 |
| 10 | DIP Financing, Exit Financing, Cash Collateral, Bank Issues | 80.6 | 47,165.00 |
| 16 | Unsecured Claim Analysis | 141.7 | 54,807.50 |
| 20 | Accounts Payable / Vendor Issues | 55.6 | 22,060.00 |
| 23 | Lease Issues | 6.3 | 2,362.50 |
| 24 | Case Administration | 8.1 | 4,537.50 |
| 26 | Travel Time | 154.8 | 82,220.00 |
| | **Totals:** | **879.5** | **$431,602.50** |
| | Less: Travel Time Discount (50%): | | $41,110.00 |
| | **Total June Fees:** | | **$390,492.50** |

**EXPENSE SUMMARY**

NEENAH ENTERPRISES, INC., <u>et al</u>
(Case No. 10-10360 (MFW))


June 1, 2010 through June 30, 2010


| Cost Type | Amount |
|---|---|
| Airfare | 5,427.07 |
| Conferencing (Audio, Video, Web, CATV) | 140.65 |
| Ground Transportation | 4,310.80 |
| Hotel/Lodging | 1,970.42 |
| Meals | 2,495.00 |
| Mileage | 107.11 |
| Other | 418.77 |
| Parking & Tolls | 373.50 |
| Rental Car | 616.31 |
| Research | 39.85 |
| Telecom | 18.45 |
| **Total Expenses** | **$15,917.93** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

In re:                                                Chapter 11


NEENAH ENTERPRISES, INC., et al.,[1]                  Case No. 10-10360 (MFW)

                                                      (Jointly Administered)

                             Debtors.

-----------------------------------------------------------X

**FIFTH MONTHLY APPLICATION OF HURON CONSULTING SERVICES LLC AS
FINANCIAL ADVISORS TO THE DEBTORS FOR ALLOWANCE OF INTERIM
COMPENSATION AND FOR INTERIM REIMBURSEMENT OF ALL ACTUAL
AND NECESSARY EXPENSES INCURRED FOR THE PERIOD
JUNE 1, 2010 THROUGH JUNE 30, 2010**

Huron Consulting Services LLC ("Huron Consulting Group" or "Huron"), financial

advisors to the Debtors in these chapter 11 cases *nunc pro tunc* to the Petition Date (as defined

below), submits this application (the "Application") for interim allowance of compensation for

professional services rendered by Huron to the Debtors for the period June 1, 2010 through

June 30, 2010 (the "Compensation Period") and reimbursement of actual and necessary

expenses incurred by Huron during the Compensation Period under sections 330 and 331 of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-2 of the Local Rules of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

Bankruptcy Practice and Procedure for the United States Bankruptcy Court of the District of

Delaware (the "Local Rules"), the United States Trustee's Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330,

effective January 30, 1996 (the "U.S. Trustee Guidelines") and the Order Under 11 U.S.C. §

105 (a) and 331, Fed. R. Bankr. P. 2016 and Del. Banker. L.R. 2016-2 Establishing Procedures

for Interim Compensation and Reimbursement of Fees and Expenses for Professionals (the

"Interim Compensation Procedures Order")[2].  In support of this Application, Huron represents

as follows:

## JURISDICTION

      1.     This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2).

Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief requested herein are sections 327(a) and 1107 of the Bankruptcy Code

and Bankruptcy Rule 2014(a).

## BACKGROUND

      2.     On February 3, 2010 (the "Petition Date"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On the Petition Date,

the Debtors also jointly filed motions or applications seeking certain typical "first day" relief.

On February 4, 2010 the Court entered an order consolidating the Debtors' chapter 11 cases

for procedural purposes only pursuant to Bankruptcy Rule 2015(b).

      3.     The Debtors continue in possession of their respective properties and

continue to operate and maintain their businesses as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]     Terms used but not otherwise defined herein have the meanings ascribed to them in the Interim Compensation Procedures Order.

4.      On February 17, 2010, the United States Trustee for the District of
Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the
"Committee").  No request has been made for the appointment of a trustee or examiner.

### HURON'S RETENTION

5.      The Debtors selected Huron to serve as their financial advisors.  On
March 8, 2010, this Court entered the Order Pursuant to 11 U.S.C. Sections 327 (a) and 1107
(b), Fed. R. Bankr. P. 2014 and 2016, and Del. Bankr. L.R. 2014-1 and 2016-1 Authorizing the
Employment and Retention of Huron Consulting Services LLC as Financial Advisors to the
Debtors, *Nunc Pro Tunc to February 3, 2010*.

### FEE PROCEDURES ORDER

6.      On March 8, 2010, the Court entered the Interim Compensation
Procedures Order, which sets forth the procedures for interim compensation and reimbursement
of expenses for all professionals in these cases.

7.      In particular, the Interim Compensation Procedures Order provides that
a Professional may file and serve a Monthly Fee Application with the Court no earlier than the
tenth day of each month following the month for which compensation is sought.  Provided that
no objections to such Monthly Fee Application are filed within the ten day Objection Deadline,
the Professional may file a certificate of no objection with the Court, after which the Debtors
are authorized to pay such Professional 80 percent of the fees and 100 percent of the expenses
requested in such Monthly Fee Application.  If an objection to a portion of the Monthly Fee
Application is filed and not resolved, the Debtors are authorized to pay 80 percent of the fees
and 100 percent of the expenses that are not subject to the objection.

### RELIEF REQUESTED

8.      Huron submits this Application (a) for allowance of reasonable
compensation for the actual, reasonable and necessary professional services that it has rendered

- 3 -

as financial advisors for the Debtors in these cases for the period from June 1, 2010 through

June 30, 2010, and (b) for reimbursement of actual, reasonable and necessary expenses incurred

in representing the Debtors during that same period.

        9.      During the period covered by this Application, Huron incurred fees in

the amount of $431,602.50 before reduction.  In accordance with Local Rules regarding travel

time being charged at 50%, net fees for the Compensation Period, after a reduction of

$41,110.00 for travel time, are $390,492.50.  For the same period, Huron incurred actual,

reasonable and necessary expenses totaling $15,917.93.  With respect to these amounts, as of

the date of this Application, Huron has received no payments.

        10.     Set forth on the foregoing "Compensation by Project Category" is a

summary by subject matter categories of the time expended by timekeepers billing time to these

cases.

        11.     During the Application Period, Huron professionals billed time incurred

in service to the Debtors to distinct service categories.  Below is a summary of the activities

performed by Huron professionals during the Compensation Period, organized by project

category code:

**Task Code 1 – Meeting/Teleconference with Debtor Management, Board, or Counsel**

      Huron prepared for and participated in meetings and discussions with Debtor

management, key personnel and Counsel during the Compensation Period.  Huron had weekly

conference calls with Debtor management, Counsel and Investment Bankers regarding case

status, strategy, certain business operations matters and upcoming deadlines and deliverables.

Huron also spent time meeting with Debtor management to discuss responses to questions from

the financial advisors to the Debtors' Lenders.  In addition, Huron participated in a Board of

Directors conference call meeting with representatives from Debtor management, Counsel and

Investment Bankers to discuss case status and the exit financing process.  Huron also spent

time meeting with Debtor management regarding the transition of responsibilities upon exit from Chapter 11.

Huron devoted <u>13.2</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$8,350.00</u> and a blended rate of <u>$633.</u>

**Task Code 2 – Meeting / teleconference with Bank Group, Counsel or Advisors**

During the Compensation Period, Huron prepared for and participated in weekly status update discussions with the DIP Lenders and their advisors regarding business operations, the business plan, exit financing and case status.  Additional time was spent conducting a series of introductory meetings between Debtor management and the Ad Hoc Committee members.

Huron devoted <u>17.4</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$11,155.00</u> and a blended rate of <u>$641.</u>

**Task Code 4 – Court Hearings/Preparation**

During the Compensation Period, Huron prepared a summary hypothetical liquidation analysis package that was used as supporting documentation for the Disclosure Statement Hearing.

Huron devoted <u>1.7</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$637.50</u> and a blended rate of <u>$375.</u>

**Task Code 5 – Case Reporting: UST Reports, Statements & Schedules**

Huron devoted time during the Compensation Period to satisfying the U.S. Trustee reporting requirements and preparing the monthly operating report.  Huron spent time preparing, reviewing and finalizing the May monthly operating report, including the drafting of supplemental notes and supporting schedules.  Huron worked with Debtor management to gather and analyze the information required to complete the monthly operating report. Additional time was spent reviewing drafts of the May monthly operating report prior to finalizing and filing with the Court.

Huron devoted <u>22.6</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$9,055.00</u> and a blended rate of <u>$401.</u>

**Task Code 6 – Retention and Fee Applications**

As the Debtors' financial advisors, Huron is required to adhere to the requirements of the Bankruptcy Code and related rules, and the U.S. Trustee guidelines with respect to the retention of professionals in bankruptcy cases. Huron spent time during the Compensation Period preparing, reviewing and finalizing Huron's May Monthly Fee Application and the related exhibits. Huron also spent time during the Compensation Period reviewing the draft time and expense detail exhibits for time incurred from June 1, 2010 through June 15, 2010 in preparation for the June Fee Application.

Huron devoted <u>24.3</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$10,712.50</u> and a blended rate of <u>$441.</u>

**Task Code 8 – Business Plan & Analysis of Operations**

During the Compensation Period, Huron spent time working with Debtor management and the financial advisors to the Debtors' DIP Term Lenders and Ad Hoc Committee to prepare a presentation for a meeting with certain holders of the Secured Notes. In addition, Huron created analyses throughout the Compensation Period on the Debtors' business operations in response to requests from the financial advisors to the Debtors' DIP Term Lenders and Ad Hoc Committee. Huron also spent time during the Compensation Period analyzing and tracking results of the Debtors' operations and addressing various inquiries received from certain customers.

In addition, Huron spent time working with Debtor management regarding a profitability analysis assignment, as requested by Debtor management. Huron met with key Debtor personnel to assess certain overhead costs and the allocation of those costs, additional accounting and financial information, the Debtors' estimating process, the various production

- 6 -

and productivity reports, material flows and the monthly budgets for certain plants. Additional time was spent revising and analyzing a financial model to assess profitability under various scenarios. Huron prepared a report with recommendations to improve profitability and performance measurements. Additional time was spent meeting with the Debtors' sales department and creating a report assessing the Debtors' sales procedures. In addition, Huron evaluated the performance of specific customers and provided Debtor management with recommendations for improving profitability. Huron also spent time preparing a presentation and presenting its findings related to the profitability analysis assignment to Debtor management.

Furthermore, Huron spent time addressing certain transitional matters and organizational structure issues.

Huron devoted <u>294.0</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$144,440.00</u> and a blended rate of <u>$491.</u>

## Task Code 9 – Cash Flow Analysis and Reporting

During the Compensation Period, Huron spent time preparing weekly updates to the DIP Budget model and updating the permitted variance test analysis within the DIP Budget model in order to meet certain covenant tests and reporting requirements of the DIP Loan agreements. Additional time was spent creating and reviewing weekly DIP Budget variance reports on the Debtors' cash flow performance versus the approved DIP Budget. In addition, Huron spent time preparing weekly updates to the DIP Budget model reflecting a June 2010 emergence, as requested by the financial advisors to the Debtors' Lenders. Huron delivered the DIP Budget variance reports to the required parties on a weekly basis and devoted time to discussing the reports and responding to questions. Huron spent time analyzing the results of various scenarios in the DIP Budget model to assess the impact on the long-term weekly cash flow forecast. Additional time was spent performing quality control reviews of the updates.

- 7 -

Huron devoted <u>59.2</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$34,100.00</u> and a blended rate of <u>$576.</u>

**Task Code 10 – DIP Financing, Exit Financing, Cash Collateral, Bank Issues**

During the Compensation Period, Huron spent time compiling documentation and certifications in response to the DIP Loan compliance reporting requirements.  Additional time was spent updating year-to-date financials and comparative information in support of the monthly compliance certificate required by the DIP Loan.  Huron also spent time addressing certain environmental issues and related insurance policies raised by the DIP Term Lenders' Counsel and responding to various disclosure requests.  In addition, Huron spent time preparing for and participating in the weekly status conference calls with the financial advisors to the DIP Lenders to discuss the DIP Loan compliance reporting, environmental issues and various other matters raised by the advisors.  Huron also spent time during the Compensation Period responding to questions from Counsel to the Debtors' Lenders regarding certain appraisal reports.

In addition, Huron spent time working with Debtor management, Counsel and Investment Bankers regarding the exit financing process.  Huron assisted in compiling analyses to respond to various due diligence inquiries received from the exit financing lender and participated in due diligence conference calls with the Debtors' exit financing lender, their financial advisors and the Debtors' management and Investment Bankers.  In addition, Huron spent time discussing the status and strategy of the exit financing process with Debtor management, Counsel and Investment Bankers.  Huron also prepared an estimated sources and uses of cash at emergence analysis and discussed with the financial advisors to the Debtors' exit financing lender.  Furthermore, Huron reviewed and provided comments on the initial drafts of the exit financing term loan documents.

- 8 -

Huron devoted <u>80.6</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$47,165.00</u> and a blended rate of <u>$585.</u>

**Task Code 16 – Unsecured Claim Analysis**

During the Compensation Period, Huron spent time working with Debtor management to coordinate and manage the claims resolution process with key Debtor personnel. Additional time was spent reviewing and analyzing the claims register data provided by the Debtors' Claims Agent. Huron updated claims resolution tools used to track claims matched to scheduled liabilities, claims matched to scheduled creditors with variances on the claimed amount, separate claims filed against individual Debtors and a summary level claims resolution tracking tool of filed, allowed and remaining disputed claims. Huron also created a reconciliation tool incorporating key claims data points including scheduled liabilities, current pre-petition accounts payable, claims data, cure payments, 503(b)9 claims and claim values for potential distribution on the Initial Distribution Date. Huron worked with the Debtors' Claims Agent to make any necessary adjustments to the claims register. Additional time was spent discussing the claims objection process with Debtor Counsel, reviewing claims identified for objection and modifying the claim category and objection status in the tracking tool. Huron prepared claims data for objection exhibits and worked with the Debtors' Counsel and Claims Agent to review and finalize the first omnibus claims objection. Huron also spent time during the Compensation Period reviewing newly filed claims, determining the resolution strategy and updating the claims resolution tracking tools.

Huron devoted <u>141.7</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$54,807.50</u> and a blended rate of <u>$387.</u>

**Task Code 20 – Accounts Payable/Vendor Issues**

During the Compensation Period, Huron spent time updating the accounts payable tracking scorecards of post-petition spending against restrictive caps contained in various Court

orders for each Debtor. Huron also spent time updating the master pre-petition payment tracking spreadsheet to track the pre-petition payments that are subject to a restrictive spending caps and analyzing the pre-petition payment forms received from Debtor management at each of the Debtors' plants.

Additional time was spent updating the ordinary course professional payments tracking spreadsheet and corresponding with the Debtors' Counsel. Huron also spent time assisting the Debtors in compiling and reviewing supporting documentation for the Debtors to pay certain interim bankruptcy professionals who had fee applications subject to certificates of no objection. In addition, Huron spent time addressing certain matters related to critical vendor payments and updating the critical vendor payments tracking spreadsheet. Furthermore, Huron spent time reviewing, analyzing and responding to various information requests from the Unsecured Creditors Committee's financial advisors.

Huron devoted 55.6 hours to performing these services during the Compensation Period, which resulted in fees of $22,060.00 and a blended rate of $397.

**Task Code 23 – Lease Issues**

Huron spent time during the Compensation Period reviewing and revising information included in the Exhibits to the Debtors' Motion to Assume Executory Contracts and Unexpired Leases. Huron worked with Debtor management and Counsel to review and finalize the Debtors' Motion to Assume Executory Contracts and Unexpired Leases.

In addition, Huron reviewed certain lease information provided by Counsel to the Ad Hoc Committee to determine the status of certain existing leases and expiration dates. Additional time was spent researching and discussing certain lease matters with Debtor management.

Huron devoted 6.3 hours to performing these services during the Compensation Period, which resulted in fees of $2,362.50 and a blended rate of $375.

**Task Code 24 – Case Administration**

During the Compensation Period, Huron devoted time to updating the work plan, reviewing recent filings on the court docket, discussing case status and performing other necessary matters related to engagement documentation and administration. Additional time was spent addressing the administrative requirements for post-emergence retention and the transition of certain responsibilities.

Huron devoted <u>8.1</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$4,537.50</u> and a blended rate of <u>$560.</u>

**Task Code 26 – Travel Time**

Whenever possible, Huron encourages its professionals to use travel time productively by reading documents, continuing analyses, etc. while in transit. However, with the increased use of smaller aircraft to service more cities, it is increasingly difficult to work on confidential material during travel time. In addition, several of the traveling members of our engagement team drive to and from their homes and the client site, which clearly reduces the ability to work and travel simultaneously. In compliance with the Local Rules, Huron has reduced its request for compensation for non-working travel by 50% of the amount incurred. Huron devoted 154.8 hours, which resulted in fees of $82,220.00, in regards to non-working travel time and this application reflects a reduction of $41,110.00 as required by the Local Rules.

Huron devoted <u>154.8</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$41,110.00</u> and a blended rate of <u>$266.</u>

12.    <u>Exhibit A</u> attached hereto contains logs, sorted by project category task code, which details the time recorded by Huron's professionals and descriptions of the services provided.

- 11 -

13.     Exhibit B attached hereto contains a breakdown of disbursements incurred by Huron during the Compensation period for which Huron seeks reimbursement in this application.

14.     Exhibit C attached hereto contains the invoice for services rendered for the Compensation Period.

15.     Huron has endeavored to represent the Debtors in the most expeditious and economical manner possible.  Huron ensured that all tasks were assigned so that work was performed by those professionals at Huron most familiar with the particular matter or task and by the lowest hourly rate professional appropriate for a particular matter.

16.     No agreement or understanding exists between Huron and any other person for the sharing of compensation received or to be received for services rendered in or in connection with these cases.

17.     The undersigned has reviewed the requirements of Local Rule 2016-2 and certifies to the best of his information, knowledge and belief that this Application complies with that Rule.

**WHEREFORE**, Huron respectfully requests that this Court: (a) allow Huron (i) interim compensation in the amount of $390,492.50 for actual, reasonable and necessary professional services rendered on behalf of the Debtors during the period June 1, 2010 through June 30, 2010, and (ii) interim reimbursement in the amount of $15,917.93 for actual, reasonable and necessary expenses incurred during the same period; (b) authorize and direct the Debtors to pay to Huron the amount of $312,394.00 which is equal to 80% of Huron's allowed interim compensation of $390,492.50 and 100% of Huron's allowed expense reimbursement of $15,917.93, for a total amount of $328,311.93; and (c) grant such other and further relief as is just.

- 12 -

Dated: August 27, 2010
New York, New York

HURON CONSULTING GROUP

Richard D. Caruso
Managing Director
Huron Consulting Group
1120 Avenue of the Americas, 8th Floor
New York, NY 10036-6700

Telephone: (412) 298-8675
Facsimile:  (212) 785-1313

Financial Advisors for
NEENAH ENTERPRISES, INC., et al