## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

In re:                                                    Chapter 11

NEENAH ENTERPRISES, INC., et al.                          Case No. 10-10360 (MFW)

                                                          (Jointly Administered)
                                   Debtors.
                                                          **Objection Deadline for Interim and Final Application:**
                                                          **September 9, 2010**

-----------------------------------------------------------X

**SIXTH MONTHLY APPLICATION AND FINAL APPLICATION OF HURON
CONSULTING SERVICES LLC AS FINANCIAL ADVISORS TO THE DEBTORS
FOR ALLOWANCE OF COMPENSATION AND REIMBURSMENT OF ALL
ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE INTERIM PERIOD
FROM JULY 1, 2010 THROUGH JULY 29, 2010 AND FOR THE FINAL
PERIOD FROM FEBRUARY 3, 2010 THROUGH JULY 29, 2010**

| | |
|---|---|
| Name of Application: | HURON CONSULTING GROUP |
| Authorized to Provide Professional Services to: | Neenah Enterprises, Inc. et al. |
| Date of Retention: | March 8, 2010 nunc pro tunc to February 3, 2010 |
| Interim Period for which Compensation and Reimbursement is sought: | July 1, 2010 Through July 29, 2010 |
| Interim Amount of Compensation sought as actual, reasonable and necessary: | $424,407.50 |
| Interim Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $11,856.22 |
| Final Period for which Compensation and Reimbursement is sought: | February 3, 2010 Through July 29, 2010 |
| Final Amount of Compensation sought as actual, reasonable and necessary: | $2,190,205.00 |

Final Amount of Expense
Reimbursement sought as actual,
reasonable and necessary:        $85,772.10

This is a _x_ monthly                    _x_ final application

If this is not the first application filed, disclose the following for each prior application:

| DATE FILED | PERIOD COVERED | REQUESTED FEES/EXPENSES | APPROVED FEES/EXPENSES |
|---|---|---|---|
| 03/11/10 | February 3, 2010 through February 28, 2010 | $288,870.00/$11,678.99 | Received payment of 100% of fees and 100% of expenses |
| 04/22/10 | March 1, 2010 through March 31, 2010 | $495,568.75/$16,781.85 | Received payment of 100% of fees and 100% of expenses |
| 05/24/10 | April 1, 2010 through April 30, 2010 | $316,137.50/$13,302.15 | Received payment of 100% of fees and 100% of expenses |
| 06/28/10 | May 1, 2010 through May 31, 2010 | $274,728.75/$16,234.96 | Received payment of 80% of fees and 100% of expenses |
| 08/27/10 | June 1, 2010 through June 30, 2010 | $390,492.50/$15,917.93 | Pending |

# COMPENSATION BY PROFESSIONAL

## NEENAH ENTERPRISES, INC., et al
(Case No. 10-10360 (MFW))

### July 1, 2010 through July 29, 2010

| Professional | Title | Hours | Rate | Total |
|---|---|---|---|---|
| Richard D. Caruso | Managing Director | 192.8 hrs | $675.0 / hr | 130,140.00 |
| John DiDonato | Managing Director | 1.8 hrs | $675.0 / hr | 1,215.00 |
| Brent Johnson | Director | 256.0 hrs | $575.0 / hr | 147,200.00 |
| Fernando Pena-Alfaro | Director | 81.8 hrs | $575.0 / hr | 47,035.00 |
| Nick Zaccagnini | Manager | 156.6 hrs | $375.0 / hr | 58,725.00 |
| Brett Anderson | Manager | 186.2 hrs | $375.0 / hr | 69,825.00 |
| Omer Ozgozukara | Manager | 16.1 hrs | $375.0 / hr | 6,037.50 |
| Total Professional Charges | | 891.3 | | $460,177.50 |
| | | | Less: Travel Time Discount (50%): | $35,770.00 |
| | | | **Total July Fees:** | $424,407.50 |
| | | | Blended Hourly Rate: | $476.17 |

**COMPENSATION BY PROJECT CATEGORY**

NEENAH ENTERPRISES, INC., et al
(Case No. 10-10360 (MFW))

July 1, 2010 through July 29, 2010

| Activity Code | Activity Code Description | Hours | Fees |
|---|---|---|---|
| 1 | Meeting / Teleconference with Debtor Management, Board, or Counsel | 32.3 | 19,532.50 |
| 2 | Meeting / Teleconference with Bank Group, Counsel or Advisors | 8.8 | 5,940.00 |
| 4 | Court Hearings / Preparation | 2.9 | 1,957.50 |
| 5 | Case Reporting: UST Rpts, Statements, & Schedules | 11.8 | 4,725.00 |
| 6 | Retention and Fee Applications | 11.4 | 4,415.00 |
| 7 | Disclosure Statement / Plan of Reorganization | 1.1 | 412.50 |
| 8 | Business Plan & Analysis of Operations | 156.0 | 86,890.00 |
| 9 | Cash Flow Analysis and Reporting | 98.8 | 48,440.00 |
| 10 | DIP Financing, Exit Financing, Cash Collateral, Bank Issues | 288.7 | 156,492.50 |
| 11 | Asset Sale & Disposition Support | 3.5 | 2,362.50 |
| 16 | Unsecured Claim Analysis | 108.7 | 42,382.50 |
| 19 | Analysis of Accounting and Disclosure Matters | 2.9 | 1,587.50 |
| 20 | Accounts Payable / Vendor Issues | 23.0 | 8,925.00 |
| 23 | Lease Issues | 0.6 | 225.00 |
| 24 | Case Administration | 8.0 | 4,350.00 |
| 26 | Travel Time | 132.8 | 71,540.00 |
| | **Totals:** | **891.3** | **$460,177.50** |
| | Less: Travel Time Discount (50%): | | $35,770.00 |
| | **Total July Fees:** | | **$424,407.50** |

- 4 -

**EXPENSE SUMMARY**

NEENAH ENTERPRISES, INC., et al
(Case No. 10-10360 (MFW))

July 1, 2010 through July 29, 2010

| Cost Type | Amount |
|---|---|
| Airfare | 4,065.76 |
| Conferencing (Audio, Video, Web, CATV) | 118.93 |
| Ground Transportation | 546.29 |
| Hotel/Lodging | 2,228.75 |
| Meals | 1,659.83 |
| Mileage | 2,618.50 |
| Office Supplies | 15.05 |
| Parking & Tolls | 267.00 |
| Research | 336.11 |
| **Total Expenses** | **$11,856.22** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

In re:                                                    Chapter 11

NEENAH ENTERPRISES, INC., et al.,[1]          Case No. 10-10360 (MFW)

                                                          (Jointly Administered)

                                Debtors.

-----------------------------------------------------------X

**SIXTH MONTHLY APPLICATION AND FINAL APPLICATION OF HURON
CONSULTING SERVICES LLC AS FINANCIAL ADVISORS TO THE DEBTORS
FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF ALL
ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE INTERIM
PERIOD FROM JULY 1, 2010 THROUGH JULY 29, 2010 AND FOR THE
FINAL PERIOD FROM FEBRUARY 3, 2010 THROUGH JULY 29, 2010**

Huron Consulting Services LLC ("Huron Consulting Group" or "Huron"), financial

advisors to the Debtors in these chapter 11 cases *nunc pro tunc* to the Petition Date (as defined

below), submits this application (the "Application") for interim allowance of compensation for

professional services rendered by Huron to the Debtors and reimbursement of actual and

necessary expenses incurred by Huron for the period July 1, 2010 through July 29, 2010 (the

"Interim Compensation Period") and for the period February 3, 2010 through July 29, 2010

(the "Final Compensation Period") under sections 330 and 331 of title 11 of the United States

Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry
Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc.
(7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148);
Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties,
Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland
Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton
Corporation, Stryker Machining Facility Co. (3080); and Morgan's Welding, Inc. (1300). The mailing
address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

"Bankruptcy Rules"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for

the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), the United

States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement

of Expenses filed under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee

Guidelines") and the Order Under 11 U.S.C. § 105 (a) and 331, Fed. R. Bankr. P. 2016 and Del.

Banker. L.R. 2016-2 Establishing Procedures for Interim Compensation and Reimbursement of

Fees and Expenses for Professionals (the "Interim Compensation Procedures Order")[2].  In

support of this Application, Huron represents as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2).

Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory

predicates for the relief requested herein are sections 327(a) and 1107 of the Bankruptcy Code

and Bankruptcy Rule 2014(a).

### BACKGROUND

2.      On February 3, 2010 (the "Petition Date"), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On the Petition Date,

the Debtors also jointly filed motions or applications seeking certain typical "first day" relief.

On February 4, 2010 the Court entered an order consolidating the Debtors' chapter 11 cases

for procedural purposes only pursuant to Bankruptcy Rule 2015(b).

3.      On February 17, 2010, the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the

"Committee").  No request was made for the appointment of a trustee or examiner.

---

[2] Terms used but not otherwise defined herein have the meanings ascribed to them in the Interim Compensation
Procedures Order.

4.  On July 6, 2010, the Honorable Mary F. Walrath, United States Bankruptcy Judge, entered the Findings of Fact, Conclusions of Law, and Order Confirming the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries (the "Confirmation Order"). All conditions precedent to occurrence of the Effective Date of the Plan have been satisfied or waived. The Effective Date occurred on July 29, 2010.

### HURON'S RETENTION

5.  The Debtors selected Huron to serve as their financial advisors.  On March 8, 2010, this Court entered the Order Pursuant to 11 U.S.C. Sections 327 (a) and 1107 (b), Fed. R. Bankr. P. 2014 and 2016, and Del. Bankr. L.R. 2014-1 and 2016-1 Authorizing the Employment and Retention of Huron Consulting Services LLC as Financial Advisors to the Debtors, *Nunc Pro Tunc to February 3, 2010*.

### FEE PROCEDURES ORDER

6.  On March 8, 2010, the Court entered the Interim Compensation Procedures Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

7.  In particular, the Interim Compensation Procedures Order provides that a Professional may file and serve a Monthly Fee Application with the Court no earlier than the tenth day of each month following the month for which compensation is sought.  Provided that no objections to such Monthly Fee Application are filed within the ten day Objection Deadline, the Professional may file a certificate of no objection with the Court, after which the Debtors are authorized to pay such Professional 80 percent of the fees and 100 percent of the expenses requested in such Monthly Fee Application.  If an objection to a portion of the Monthly Fee Application is filed and not resolved, the Debtors are authorized to pay 80 percent of the fees and 100 percent of the expenses that are not subject to the objection.

### RELIEF REQUESTED

- 3 -

8.      Huron submits this Application (a) for allowance of reasonable compensation for the actual, reasonable and necessary professional services that it has rendered as financial advisors for the Debtors in these cases and (b) for reimbursement of actual, reasonable and necessary expenses incurred in representing the Debtors, during the Interim Compensation Period, and (c) for allowance of reasonable compensation for the actual, reasonable and necessary professional services that it has rendered as financial advisors for the Debtors in these cases and (d) for reimbursement of actual, reasonable and necessary expenses incurred in representing the Debtors, during the Final Compensation Period.

## INTERIM COMPENSATION PERIOD

9.      During the Interim Compensation Period covered by this Application, Huron incurred fees in the amount of $460,177.50 before reduction.  In accordance with Local Rules regarding travel time being charged at 50%, net fees for the Interim Compensation Period, after a reduction of $35,770.00 for travel time, are $424,407.50.  For the same period, Huron incurred actual, reasonable and necessary expenses totaling $11,856.22.  With respect to these amounts, as of the date of this Application, Huron has received no payments.

10.     Set forth on the foregoing "Compensation by Project Category" is a summary by subject matter categories of the time expended by timekeepers billing time to these cases during the Interim Compensation Period.

11.     During the Interim Compensation Period, Huron professionals billed time incurred in service to the Debtors to distinct service categories.  Below is a summary of the activities performed by Huron professionals during the Interim Compensation Period, organized by project category code:

**Task Code 1 – Meeting / Teleconference with Debtor Management, Board, or Counsel**

Huron prepared for and participated in meetings and discussions with Debtor management and key personnel and the Debtors' counsel, investment bankers and/or other

- 4 -

advisors during the Interim Compensation Period.  Huron had weekly conference calls with Debtor management, counsel and investment bankers regarding case status, strategy, certain business operations matters and upcoming deadlines and deliverables.  Huron also met with Debtor management and key personnel to prepare for and participate in meetings with certain customer representatives related to Huron's profitability analysis and cost study. Additionally, Huron spent time meeting with Debtor management regarding the transition of responsibilities upon exit from Chapter 11.

Huron devoted <u>32.3</u> hours to performing these services during the Interim Compensation Period, which resulted in fees of <u>$19,532.50</u> and a blended rate of <u>$605</u>.

### Task Code 2 – Meeting / Teleconference with Bank Group, Counsel or Advisors

During the Interim Compensation Period, Huron prepared for and participated in meetings with the Ad Hoc Committee of Secured Note Holders and their counsel and advisors to discuss various matters including business issues and post-emergence transition matters.

Huron devoted <u>8.8</u> hours to performing these services during the Interim Compensation Period, which resulted in fees of <u>$5,940.00</u> and a blended rate of <u>$675</u>.

### Task Code 4 – Court Hearings / Preparation

During the Interim Compensation Period, Huron prepared for and attended the Plan Confirmation Hearing and met with the Debtors' counsel and investment bankers prior to the hearing to discuss issues related to the Plan's confirmation.

Huron devoted <u>2.9</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$1,957.50</u> and a blended rate of <u>$675</u>.

### Task Code 5 – Case Reporting: UST Reports, Statements & Schedules

Huron devoted time during the Interim Compensation Period to satisfying the U.S. Trustee reporting requirements and preparing the monthly operating report.  Huron spent time preparing, reviewing and finalizing the June monthly operating report, including the drafting of

supplemental notes and supporting schedules.  Huron worked with Debtor management to gather and analyze the information required to complete the monthly operating report.  In addition, Huron spent time preparing reconciling adjustments to the balance sheet and income statement presented in the June monthly operating report and meeting with Debtor management to discuss the report.

Huron devoted 11.8 hours to performing these services during the Interim Compensation Period, which resulted in fees of $4,725.00 and a blended rate of $400.

**Task Code 6 – Retention and Fee Applications**

As the Debtors' financial advisors, Huron is required to adhere to the requirements of the Bankruptcy Code and related rules, and the U.S. Trustee guidelines with respect to the retention of professionals in bankruptcy cases.  Huron spent time during the Interim Compensation Period preparing and reviewing Huron's June Monthly Fee Application and the related exhibits.

Huron devoted 11.4 hours to performing these services during the Interim Compensation Period, which resulted in fees of $4,415.00 and a blended rate of $387.

**Task Code 7 – Disclosure Statement / Plan of Reorganization**

During the Interim Compensation Period, Huron spent time reviewing the Plan Confirmation Order in detail, primarily to determine the final resolution of certain matters including objections to the Plan and the treatment of certain creditors' claims and interests.

Huron devoted 1.1 hours to performing these services during the Interim Compensation Period, which resulted in fees of $412.50 and a blended rate of $375.

**Task Code 8 – Business Plan & Analysis of Operations**

During the Interim Compensation Period, Huron spent time reviewing operational data and financial information including daily shipment reports, order reports, average selling prices, preliminary monthly financial information and other metrics. In addition, Huron worked with

Debtor management to update financial projections based on cost inputs and other operational factors determined from Huron's profitability analysis.

Huron also reviewed certain operational matters in an effort to prepare for its post-emergence interim management role, including but not limited to: insurance coverage discussions and analysis, environmental liability discussions and analysis, leadership transition issues and technological improvement matters.

Additionally, Huron spent time working with Debtor management to prepare presentation materials for a post-emergence meeting with the new Board of Directors, including a preliminary capital expenditure plan.

Huron continued to spend time working with Debtor management regarding a profitability analysis assignment, as requested by Debtor management. Huron met with key Debtor personnel to assess certain overhead costs and the allocation of those costs, additional accounting and financial information, the Debtors' estimating process, the various production and productivity reports, material flows and the monthly budgets for certain plants. Additional time was spent revising and analyzing a financial model to assess profitability under various scenarios. Huron refined its report with recommendations to improve profitability and performance measurements. Additional time was spent meeting with the Debtors' sales department and creating a report assessing the Debtors' sales procedures. In addition, Huron evaluated the performance of specific customers and provided Debtor management with recommendations for improving profitability. Huron also spent time preparing a presentation and presenting its findings related to the profitability analysis assignment to Debtor management and a significant customer.

Huron devoted 156.0 hours to performing these services during the Interim Compensation Period, which resulted in fees of $86,890.00 and a blended rate of $557.

**Task Code 9 – Cash Flow Analysis and Reporting**

- 7 -

During the Interim Compensation Period, Huron spent time preparing weekly updates to the DIP Budget model and updating the permitted variance test analysis within the DIP Budget model in order to meet certain covenant tests and reporting requirements of the DIP Loan agreements.  Additional time was spent creating and reviewing weekly DIP Budget variance reports on the Debtors' cash flow performance versus the approved DIP Budget.  In addition, Huron spent time preparing weekly updates to the DIP Budget model reflecting a July 2010 emergence, as requested by the financial advisors to the DIP Lenders.  Huron delivered the DIP Budget variance reports to the required parties on a weekly basis and devoted time to discussing the reports and responding to questions.  Huron spent time analyzing the results of various scenarios in the DIP Budget model to assess the impact on the long-term weekly cash flow forecast.  Additional time was spent expanding the forecasts to fiscal year 2014 as requested for the DIP lenders' financial advisors and performing quality control review of the updates.

Huron devoted <u>98.8</u> hours to performing these services during the Interim Compensation Period, which resulted in fees of <u>$48,440.00</u> and a blended rate of <u>$490</u>.

**Task Code 10 – DIP Financing, Exit Financing, Cash Collateral, Bank Issues**

During the Interim Compensation Period, Huron spent time compiling documentation and certifications in response to the DIP Loan compliance reporting requirements.  Additional time was spent updating year-to-date financials and comparative information in support of the monthly compliance certificate required by the DIP Loan.

In addition, Huron spent time working with the Debtors' management, their counsel and their investment bankers regarding the exit financing process.  Huron professionals extensively reviewed each of the exit financing documents, related disclosure schedules / exhibits, and related ancillary documents necessary to close the exit loans, and assisted in compiling and preparing the information contained therein. Huron also negotiated, in

conjunction with Debtor management, the business issues with the exit Term Loan and exit Revolving Loan Lenders and their advisors. Huron also spent time preparing the funds flow memorandums for both the exit Term Loan Agent and the exit Revolving Loan Agent that directed the transfers of exit financing funds on the Effective Date, while working with the various interested parties including the Debtor, exit financing lenders, their agents, counsel, advisors and other professionals.  Additionally, Huron participated in numerous meetings regarding the status and timing of the exit financing documentation and conditions precedent to the Plan going effective.

Huron also spent time working on various financial analyses related to the DIP Budget and business plan models and the estimated revolver availability upon emergence, including forecasting through fiscal year 2014. Additionally, Huron spent time responding to various business and operational inquiries from the DIP and exit financing lenders and their counsel and advisors.

Huron devoted <u>288.7</u> hours to performing these services during the Interim Compensation Period, which resulted in fees of <u>$156,492.50</u> and a blended rate of <u>$542</u>.

**Task Code 11 – Asset Sale & Disposition Support**

During the Interim Compensation Period, Huron spent time reviewing, evaluating and discussing the potential sale of property at one of the Debtors' discontinued locations. Additionally, Huron reviewed and analyzed offer(s) received for the property and discussed the terms of the offer(s) and counter-offer(s) with Debtor management.

Huron devoted <u>3.5</u> hours to performing these services during the Interim Compensation Period, which resulted in fees of <u>$2,362.50</u> and a blended rate of <u>$675</u>.

**Task Code 16 – Unsecured Claim Analysis**

During the Interim Compensation Period, Huron spent time working with Debtor management to coordinate and manage the claims resolution process with key Debtor personnel.

Additional time was spent reviewing and analyzing the claims register data provided by the Debtors' claims agent.  Huron updated its claims resolution tools used to track claims matched to scheduled liabilities, claims matched to scheduled creditors with variances on the claimed amount, separate claims filed against the specific Debtors and a summary level claims resolution tracking tool of filed, allowed and remaining disputed claims.  Huron also maintained a reconciliation tool incorporating key claims data points including scheduled liabilities, current pre-petition accounts payable, claims data, cure payments, 503(b)9 claims and claim values for potential distribution on the Initial Distribution Date.  Huron worked with the Debtors' claims agent to make any necessary adjustments to the claims register.  Additional time was spent discussing the claims objection process with Debtor counsel, reviewing claims identified for objection and updating the objection status in the tracking tool.  Huron prepared claims data for objection exhibits and worked with the Debtors' counsel and claims agent to review and finalize the second, third and fourth omnibus claims objections.  Huron also spent time during the Interim Compensation Period reviewing newly filed claims, determining the resolution strategy and updating the claims resolution tracking tools.

Huron devoted <u>108.7</u> hours to performing these services during the Interim Compensation Period, which resulted in fees of <u>$42,382.50</u> and a blended rate of <u>$390</u>.

**Task Code 19 – Analysis of Accounting and Disclosure Matters**

During the Interim Compensation Period, Huron spent time preparing for and discussing post-emergence accounting and financial reporting issues with Debtor management.

Huron devoted <u>2.9</u> hours to performing these services during the Interim Compensation Period, which resulted in fees of <u>$1,587.50</u> and a blended rate of <u>$547</u>.

**Task Code 20 – Accounts Payable / Vendor Issues**

During the Interim Compensation Period, Huron spent time updating the accounts payable tracking scorecards of post-petition spending and the master pre-petition payment

tracking spreadsheet to track any payments of pre-petition amounts against restrictive caps contained in various Court orders for each Debtor.

Additional time was spent updating the ordinary course professional payments tracking spreadsheet and corresponding with the Debtors' counsel. Huron also spent time assisting the Debtors in compiling and reviewing supporting documentation for the Debtors to pay certain professionals who had interim fee applications subject to the Interim Compensation Procedures Order. In addition, Huron spent time working with Debtor management and key personnel to address specific vendor issues as they arose. Huron also continually reconciled the pre-petition accounts payable detail of each debtor to its claims tracking tool in order to ensure the accuracy of the pre-petition trade payables.

Huron devoted 23.0 hours to performing these services during the Interim Compensation Period, which resulted in fees of $8,925.00 and a blended rate of $388.

**Task Code 23 – Lease Issues**

Huron spent time during the Interim Compensation Period reviewing and providing clarifying information requested by counsel to the Ad Hoc Committee of Secured Note Holders on the Debtors' real property leases.

Huron devoted 0.6 hours to performing these services during the Interim Compensation Period, which resulted in fees of $225 and a blended rate of $375.

**Task Code 24 – Case Administration**

During the Interim Compensation Period, Huron devoted time to updating the work plan, reviewing recent filings on the court docket, discussing case status and performing other necessary matters related to engagement documentation and administration. Additional time was spent addressing the administrative requirements for post-emergence retention and the transition of certain responsibilities.

- 11 -

Huron devoted <u>8.0</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$4,350.00</u> and a blended rate of <u>$544</u>.

**Task Code 26 – Travel Time**

Whenever possible, Huron encourages its professionals to use travel time productively by reading documents, continuing analyses, etc. while in transit. However, with the increased use of smaller aircraft to service more cities, it is increasingly difficult to work on confidential material during travel time. In addition, several of the traveling members of our engagement team drive to and from their homes and the client site, which clearly reduces the ability to work and travel simultaneously. In compliance with the Local Rules, Huron has reduced its request for compensation for non-working travel by 50% of the amount incurred. Huron devoted 132.8 hours, which resulted in fees of $71,540.00, in regards to non-working travel time and this application reflects a reduction of $35,770.00 as required by the Local Rules.

Huron devoted <u>132.8</u> hours to performing these services during the Compensation Period, which resulted in fees of <u>$35,770.00</u> and a blended rate of <u>$269</u>.

12.     <u>Exhibit A</u> attached hereto contains logs, sorted by project category task code, which details the time recorded by Huron's professionals and descriptions of the services provided during the Interim Compensation Period.

13.     <u>Exhibit B</u> attached hereto contains a breakdown of disbursements incurred by Huron during the Interim Compensation Period for which Huron seeks reimbursement in this application.

14.     <u>Exhibit C</u> attached hereto contains the invoice for services rendered for the Interim Compensation Period.

<u>**FINAL COMPENSATION PERIOD**</u>

15.     This Application also covers the Final Compensation Period of February 3, 2010 through and including July 29, 2010. During the Final Compensation Period,

- 12 -

Huron performed necessary services and incurred out-of-pocket disbursements for the Debtors and their estates. As set forth in prior interim applications, in accordance with the factors enumerated in 11. U.S.C. § 330, approval of the fees requested for the Final Compensation Period is fair and reasonable given (a) the complexity of these cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title. In addition, the out-of-pocket disbursements for which reimbursement is sought were actual, reasonable and necessary costs (i) incurred while representing the Debtors and (ii) preserving the value of the Debtors' estates.

16.     During the Final Compensation Period, Huron professionals billed time incurred in service to the Debtors to distinct service categories. The service categories previously described for the Interim Compensation Period, in addition to the descriptions for the same categories and other service categories listed in prior interim applications, for which, as of the date hereof, no objections had been filed, summarize the activities performed by Huron professionals during the Final Compensation Period, organized by project category code.

17.     During the Final Compensation Period covered by this Application, Huron incurred fees in the amount of $2,405,687.50 before reduction. In accordance with Local Rules regarding travel time being charged at 50%, net fees for the Final Compensation Period, after a reduction of $215,482.50 for travel time, are $2,190,205.00. For the same period, Huron incurred actual, reasonable and necessary expenses totaling $85,772.10.

17.     Huron has and will continue to perform additional necessary services subsequent to July 29, 2010, for which Huron will bill the reorganized Debtors directly.

17.     Huron has endeavored to represent the Debtors in the most expeditious and economical manner possible. Huron ensured that all tasks were assigned so that work was performed by those professionals at Huron most familiar with the particular matter or task and by the lowest hourly rate professional appropriate for a particular matter.

- 13 -

18.    No agreement or understanding exists between Huron and any other person for the sharing of compensation received or to be received for services rendered in or in connection with these cases.

19.    The undersigned has reviewed the requirements of Local Rule 2016-2 and certifies to the best of his information, knowledge and belief that this Application complies with that Rule.

**WHEREFORE**, Huron respectfully requests that this Court: (a) allow Huron (i) interim compensation in the amount of $424,407.50 for actual, reasonable and necessary professional services rendered on behalf of the Debtors during the period July 1, 2010 through July 29, 2010, and (ii) interim reimbursement in the amount of $11,856.22 for actual, reasonable and necessary expenses incurred during the same period; (b) authorize and direct the Debtors to pay to Huron the amount of $339,526.00 which is equal to 80% of Huron's allowed interim compensation of $424,407.50 and 100% of Huron's allowed expense reimbursement of $11,856.22, for a total amount of $351,382.22; (c) allow Huron (iii) final compensation in the amount of $2,190,205.00 for actual, reasonable and necessary professional services rendered on behalf of the Debtors during the period February 3, 2010 through July 29, 2010, and (iv) final reimbursement in the amount of $85,772.10 for actual, reasonable and necessary expenses incurred during the same period; and (d) grant such other and further relief as is just.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

- 14 -

Dated:  August *30*, 2010
New York, New York

HURON CONSULTING GROUP

_Richard D. Caruso_
Richard D. Caruso
Managing Director
Huron Consulting Group
1120 Avenue of the Americas, 8th Floor
New York, NY 10036-6700

Telephone: (412) 298-8675
Facsimile:  (212) 785-1313


Financial Advisors for
NEENAH ENTERPRISES, INC., et al