# **EXHIBIT E**

**Claim 690**



| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | | | PROOF OF CLAIM |
|---|---|---|---|

Name of Debtor (Check Only One)    Case No
- Neenah Enterprises, Inc — 10-10360
- NI C Castings, Inc — 10-10361
- Neenah Foundry Company — 10-10362
- Cast Alloys, Inc — 10-10363
- Neenah Transport, Inc — 10-10364
- Advanced Cast Products, Inc — 10-10365

- Gregg Industries, Inc — 10-10366
- Mercer Forge Corporation — 10-10367
- Deeter Foundry, Inc — 10-10369
- Dalton Corporation — 10-10370
- Belcher Corporation — 10-10371
- Peerless Corporation — 10-10372
- A&M Specialties, Inc — 10-10373

- Dalton Corporation, Warsaw Manufacturing Facility — 10-10374
- Dalton Corporation, Ashland Manufacturing Facility — 10-10375
- Dalton Corporation, Kendallville Manufacturing Facility — 10-10376
- Dalton Corporation, Stryker Machining Facility Co — 10-10377
- Morgan's Welding, Inc — 10-10378

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see item #1) All other requests for payment of an administrative expense may be filed pursuant to 11 U S C § 503

Name of Creditor (the person or other entity to whom the debtor owes money or property) South Coast Air Quality Management District

Name and address where notices should be sent
South Coast AQMD          Werb & Sullivan
21865 Copley Drive        300 Delaware Ave , Ste 1300
Diamond Bar, CA 91765     Wilmington, DE 19899
Attn  Kurt Wiese, Esq     Attn  Duane Werb, Esq
      Barbara Baird, Esq        Matt Austria, Esq
Telephone number            Telephone  302 652 1100
909 396 2000
Email Address

Name and address where payment should be sent (if different from above)

**FILED - 00690**
**US BANKRUPTCY CT-DIST OF DELAWARE**
**NEENAH ENTERPRISES, INC., ET AL**
**10-10360 (MFW)**

Telephone number

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

THE GARDEN CITY GROUP, INC.
AUG - 6 2010

**Your Claim is Scheduled As Follows**

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form, EXCEPT AS FOLLOWS  If the amount shown is listed as any of DISPUTED UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1  Amount of Claim as of Date Case Filed**        $ Unliquidated

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4

If all or part of your claim is entitled to priority, complete item 5

☐ Check this box if any portion of the claim is based on the value of any goods received by the Debtor within 20 days before February 3, 2010, the date of commencement of the Debtor's chapter 11 case, which goods were sold to the Debtor in the ordinary course of the Debtor's business, and is therefore entitled to administrative expense priority pursuant to 11 U S C § 503(b)(9)  Please indicate amount entitled to administrative expense priority under 11 U S C § 503(b)(9) status and attach documentation supporting such a claim  $ _____

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim  See Attachments** _____
(See instruction #2 on reverse side )

**3  Last four digits of any number by which creditor identifies debtor** _____
   3a  Debtor may have scheduled account as _____
   (See instruction #3a on reverse side )

**4  Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe

Value of Property $ _____   Annual Interest Rate ___ %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any $ _____        Basis for perfection _____

Amount of Secured Claim $ _____      Amount of Unsecured Claim $ _____

**6  Credits**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain

**5  Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).**  If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)

**Amount entitled to priority**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

| Date 8/3/2010 | Signature  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any<br><br>Barbara Baird, Esq  - District Counsel  *Barbara Baird* | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

Modified B10 (GCG)

# EXHIBIT A

## TO PROOF OF CLAIM OF SOUTH COAST
## AIR QUALITY MANAGEMENT DISTRICT

SUMMARY OF BASIS FOR CLAIM

South Coast Air Quality Management District (the "District") is a political subdivision of the State of California created by the legislature to exercise responsibility for comprehensive air pollution control within the area of South Coast Air Basin Gregg Industries, Inc ("Gregg") operated a sand mold and iron casting foundry (the "Foundry") which consisted of multiple systems used to mix foundry sand and resin to make Molds The Gregg facility was within the District located at 10460 Hickson Street, El Monte, California 91731 Gregg held multiple District permits for foundry type equipment, including furnaces, a baghouse, sand-handling equipment and core ovens vented to an afterburner

As set forth in greater detail in the Recitals Section of the Settlement Agreement and Release dated November 5, 2008 attached hereto as Exhibit "B" (the "Settlement Agreement and Release"), the District issued 12 Notices of Violation to Gregg (the "Gregg Violations") for various violations including, but not limited to, public nuisance, operating a portable engine without a valid permit, failing to submit annual and semi-annual reports, and failing to submit a complete health risk assessment

Subsequent to the issuance of the Gregg Violations, various hearings were held relating to the violations as further detailed in the Settlement Agreement and Release Thereafter, the parties entered the Settlement Agreement and Release pursuant to which Gregg was obligated to, among other things, design and implement a Supplemental Environmental Project ("SEP") for the purpose of reducing odorous and other emissions from the Foundry The SEP and applicable timelines for completion are set forth in Attachment A to the Settlement Agreement and Release The SEP was valued at $4 7 million and Gregg was required under the Settlement Agreement and Release to provide quarterly status updates on the expenditures Additionally, the Settlement Agreement and Release obligated Gregg to propose additional projects equal to the difference between the actual amounts spent and the $4 7 million SEP if, at the end of the performance period, Gregg had not documented $4 7 million in expenditures on the projects identified in Attachments A and B to the Settlement Agreement and Release The Settlement Agreement and Release also provided, among other provisions, that the parties were to meet and agree to act in good faith to expeditiously reach an agreement on the nature of the alternative project(s) which would represent the remaining amount of the $4 7 million SEP to be expended

On April 2, 2009, the District and Gregg met to discuss the anticipated closure of Gregg's foundry in El Monte and the satisfaction of conditions set forth in Gregg's Settlement Agreement and SEP During this meeting, Gregg claimed it had spent over $3 million to satisfy the conditions of the $4 7 million SEP The District advised Gregg that

these claims were subject to review and requested that Gregg provide detailed records to justify these expenses against the performance of SEP conditions On April 28, 2009, Gregg supplied the District with records showing expenses claimed purportedly in satisfaction of the SEP through April 15, 2009

On June 3, 2009, counsel for Gregg, Judith Pratis, and counsel for the District which included, Elliott Sernel, Nancy Feldman and Linda Vogel met and discussed Gregg's compliance with the terms of the Settlement Agreement and SEP Gregg's counsel was informed that there was a shortfall between the amount that Gregg had claimed for compliance with the Settlement Agreement and SEP and what the District would allow

On June 16, 2009, Cher Snyder, PhD, the District's Senior Enforcement Manager, met with Gregg Representatives to further discuss the method utilized to arrive at the respective calculations In accordance with an agreement reached at the June 16, 2009 meeting, an updated accounting and supporting documentation was provided by Gregg through its counsel on June 30, 2009

Claims were organized by subcategory and reviewed by the District to determine whether sufficient justification had been provided to demonstrate a reasonable relationship to one or more conditions of the Settlement Agreement and/or SEP Where the relationship was unclear, the District requested additional information from Gregg in support of the expenses claimed

Gregg's counsel provided the District status updates which include documentation of expenditures Gregg contends should be applied towards compliance with the provisions of the Settlement Agreement and SEP No formal audit of the documentation has been completed However, on April 22, 2010, Dr Snyder prepared the AQMD Review of Expenses Claimed by Gregg Industries in Satisfaction of Settlement Agreement/SEP Conditions (the "AQMD Review of Expenses") A copy of the AQMD Review of Expenses is attached hereto as Exhibit "C" The AQMD Review of Expenses encompasses information provided to the District through November 23, 2009

As detailed on the AQMD Review of Expenses, Gregg provided the District with additional claims and claims justifications on July 1, 2009, August 21, 2009, and November 23, 2009 The final amount of expenses claimed by Gregg through November 23, 2009, is $4,298,558 00, as listed in a letter from Gregg's counsel dated November 23, 2009

Applying the criteria above to distinguish allowed claims from disallowed claims, the District concluded that of the $4,715,586 97[1] claimed by Gregg in satisfaction of the Settlement Agreement and SEP, only $2,094,235 22 could be allowed based on a

---

[1] A calculation of the itemized amounts claimed by Gregg was determined by the District to total $4,715,586 97 rather than the $4,298,558 00 amount referenced in the November 23, 2009 letter from Gregg's Counsel

reasonable showing that these claimed expenses directly or indirectly anticipated and/or satisfied one or more conditions on the Settlement Agreement and SEP

As of November 23, 2009, Gregg had a remaining obligation of $2,609,592 19 in expenditures towards satisfaction of the SEP Pursuant to the Settlement Agreement, Gregg was obligated to propose additional projects equal to the difference between the actual amounts spent towards satisfying the SEP and the $4 7 million SEP if, at the end of the performance period, Gregg had not documented $4 7 million in expenditures on the projects identified in Attachments A and B to the Settlement Agreement and Release The performance period had concluded prior to the Petition Date As of the Petition Date, Gregg had not satisfied the $4 7 million SEP and had not proposed additional projects equal to the difference between amounts spent towards satisfying the SEP, and the required $4 7 million expenditure under the Settlement Agreement and SEP

Based on the foregoing, the District files this unliquidated and contingent proof of claim for undetermined amounts owed to the District arising out of Gregg's prepetition breaches of the Settlement Agreement and Release The District reserves the right to supplement and/or amend this proof of claim should additional information become available

# EXHIBIT B

## TO PROOF OF CLAIM OF SOUTH COAST
## AIR QUALITY MANAGEMENT DISTRICT

SETTLEMENT AGREEMENT AND RELEASE



## SETTLEMENT AGREEMENT AND RELEASE

### RECITALS

This Settlement Agreement and Release, with its accompanying Attachments (collectively, the "Agreement"), is entered into by and among the South Coast Air Quality Management District (the "District"), and Gregg Industries, Inc. ("Gregg"), each individually referred to herein as a "Party" or collectively as the "Parties." This Agreement is entered into with respect to the following facts and circumstances:

A.     The District is a political subdivision of the State of California created by the legislature to exercise responsibility for comprehensive air pollution control within the area of the South Coast Air Basin, with its headquarters located at 21865 East Copley Drive, Diamond Bar, California 91765.

B      Gregg is a California corporation that operates a facility within the District, located at 10460 Hickson Street, El Monte, California  91731.

C.     Gregg operates a sand mold and iron casting foundry which consists of multiple systems used to mix foundry sand and resin to make molds. The molds are then used to cast metal parts, primarily automotive parts and water pumps   Gregg holds multiple District permits for foundry type equipment, including furnaces, a baghouse, sand-handling equipment and core ovens vented to an afterburner.

D.     The District has issued the following Notices of Violation ("NOV's") to Gregg

1     NOV P47802 which was issued to Gregg on October 21, 2005, for violation of District Rule 402 and Health & Safety Code §41700 on

October 20, 2005, wherein it is alleged that Gregg created burnt odors which resulted in public nuisance

2      NOV P47413 which was issued to Gregg on November 4, 2005, for violation of District Rule 402 and Health & Safety Code §41700 on November 3, 2005, wherein it is alleged that Gregg failed to control chemical odor discharges from the facility so as to cause a nuisance to a considerable number of persons.

3.     NOV P41788 which was issued to Gregg on July 25, 2006, for violation of District Rules 203(a) and 1110.2(d)(2)(B)(ii) on and after June 16, 2006, wherein it is alleged that Gregg operated a portable engine without a valid permit to operate and used the portable generator for primary or supplemental power to stationary equipment in the facility.

4      NOV P41796 which was issued to Gregg on December 6, 2006, for violation of District Rule 3002(c)(1) on and after March 2, 2006, wherein it is alleged that Gregg failed to submit its annual report due March 1, 2006 and the semi-annual report due August 31, 2006

5.     NOV P49662 which was issued to Gregg on February 16, 2007, for violation of District Rule 1402(d) on February 16, 2007, wherein it is alleged that Gregg failed to submit a complete health risk assessment by the agreed upon date which was 180 days (150 + 30) after the date of notification.

6    NOV P51302 which was issued to Gregg on June 22, 2007, for
     Gregg's violation on and after March 9, 2007, wherein it is alleged
     that Gregg did not comply with Hearing Board Case No. 5591-1,
     Condition No 7 of the Modified Order signed by the Chairman on
     March 14, 2007 requiring Gregg to maintain the hydrogen peroxide
     at a minimum dose of 600 ppm [dated 12/13/06; 1/10/07; 3/6,7
     & 13/07].

7    NOV P50563 which was issued to Gregg on October 12, 2007, for
     violation of District Rule 3002 (c)(1) on and after October 5, 2005,
     wherein it is alleged that Gregg failed to· (1) timely submit its
     annual report due March 1, 2007, and semi-annual reports due
     February 28, 2007, and August 31, 2007, per Gregg's Permit to
     Operation Conditions Nos  K23 and K24; (2) operate Gregg's
     core/mold making system M34294, per Permit to Operate
     Condition No. D4; (3) perform routine annual inspection on 14
     permitted units during equipment operation, per Gregg's Permit
     to Operate Condition Nos. D3 through D7; (4) conduct visible
     emission inspection at emission points of 31 permitted units
     during public visible emission complaints on October 19, 2006,
     December 05, 2006, and July 25, 2007, per Permit to Operate
     Condition Nos. D3 through D7, and (5) maintain Sonoperoxone
     scrubber flow meter to measure and ensure 2-3 gal/min flow of
     $H_2O_2$ scrubbing solution from October 7, 2005, through October
     12, 2007, per Permit to Operate Condition No. D5    NOV P50563

3

was also issued to Gregg for violation of District Rule 3002(a) wherein Gregg failed to secure a permit modification prior to operating a modified mixer on Gregg's sand handling system P42501.

8.     NOV P52210 which was issued to Gregg on March 20, 2008, for Gregg's violation of District Rule 3002(c)(1) on and after February 29, 2008, wherein it is alleged that Gregg operated four baghouse units contrary to Title V permit conditions.

9.     NOV P49797 which was issued to Gregg on April 15, 2008, for violation of District Rule 402 and Health & Safety Code §41700 on April 15, 2008, wherein it is alleged that Gregg created odors which resulted in public nuisance.

10     NOV P10402 which was issued to Gregg on May 14, 2008, for violation of District Rule 402 and Health & Safety Code §41700 on May 14, 2008, wherein it is alleged that Gregg created odors which resulted in public nuisance

11.    NOV P52215 which was issued to Gregg on June 4, 2008, for violation of District Rule 402 and Health & Safety Code §41700 on May 29, 2008, wherein it is alleged that Gregg created odors which resulted in public nuisance.

12.    NOV P53601 which was issued to Gregg on August 26, 2008, for Gregg's violation of District Rule 3002(c)(1) on and after August 22, 2008, wherein it is alleged that Gregg operated a baghouse unit contrary to Title V permit conditions.

E.    Based upon the initial public nuisance violations issued to Gregg, the District filed a petition for an Order for Abatement with the District Hearing Board on February 21, 2006, Hearing Board Case No 5591-1.

F.    The Hearing Board held hearings at the District's Diamond Bar Headquarters on March 29, 2006, and April 26, 2006, and on May 25, 2006 issued its Findings and Decision Re Stipulated Order For Abatement wherein 13 multi-part categories of conditions were imposed.

G.    Gregg was in compliance with those provisions of the order with which it was required to perform.

H.    On June 20, 2006, the Hearing Board held a hearing to receive a status report and at that hearing made minor modifications to the order by extending compliance dates to complete proposed building and equipment changes from August 1, 2006, to October 1, 2006, and to extend the date for conducting the odor dispersion modeling from July 1, 2006, to October 1, 2006, and the submittal of the modeling study from July 15, 2006, to October 1, 2006

I.    On July 12, 2006, the Hearing Board held a modification hearing in the El Monte City Council Chambers to provide a convenient location to allow members of the public to testify regarding operations at Gregg's facility. At that hearing the Hearing Board again modified the order to extend the completion dates of the building and equipment changes and the odor dispersion modeling from October 1, 2006, to January 10, 2007

J.    On November 1, November 2 and November 6, 2006, the Hearing Board held a modification hearing at the District's Diamond Bar Headquarters

5

and modified the order by issuing on November 9, 2006 its Findings and Decision Re Order for Abatement that imposed 16 additional multi-part conditions which, among numerous other terms, limited the types of materials (sand) being used in certain of Gregg's operations.

K     Gregg was in compliance with those provisions of the order with which it was required to perform

L.    On December 13, 2006, the Hearing Board held a hearing in the El Monte City Council Chambers to take public testimony and made no further changes to the order.   The Hearing Board continued the matter to January 10, 2007, for further consideration of modifications to the order.

M.    On January 10, 2007, the Hearing Board held a hearing at the District's Diamond Bar Headquarters and suspended until the next hearing the condition requiring Gregg to conduct odor dispersion modeling, among other issues, until further information could be presented.

N.    On March 6, 2007, and March 7, 2007, the Hearing Board held further hearings at the District's Diamond Bar Headquarters to consider further modifications of the order and the Hearing Board continued the hearing to March 13, 2007.

O     On March 13, 2007, the Hearing Board completed the modification hearing commenced on December 13, 2006, and received testimony regarding the implementation of the increments required under the conditions imposed by the Hearing Board regarding the changing the

6

sand used in Gregg's operations and further investigating and implementing odor reduction methods throughout the facility

P      Gregg was in compliance with those provisions of the order with which it was required to perform, except for an alleged violation of Condition No 7 of the Modified Order signed by the Chairman on March 14, 2007, which required Gregg to maintain the hydrogen peroxide at a minimum dose of 600 ppm

Q      On August 29, 2007, the Hearing Board held a hearing at the District's Diamond Bar Headquarters to receive a status report and consider a further modification of the order.  After taking testimony the Hearing Board extended the expiration date of the order from September 15, 2007, to September 20, 2007, and scheduled a hearing to consider a further modification/extension of the order to September 19, 2007

R      On September 19, 2007, the Hearing Board held a hearing at the District's Diamond Bar Headquarters   After taking testimony, the Hearing Board took no further action and allowed the order to expire as of September 20, 2007   The District did not object to allowing the order to expire as of September 20, 2007

S.      On May 16, 2008, the District filed a second Petition for Order for Abatement against Gregg alleging violations of Health and Safety Code § 41700 and District Rules 402 and 203.  This matter currently pending before the Hearing Board is Case No. 5591-2.

T.      Hearings in this second matter have been held on August 5, 2008, August 6, 2008, August 12, 2008, and August 21, 2008, October 21, 2008,

7

October 22, 2008, and October 23, 2008    Additional hearings have been scheduled for various dates in October 2008, November 2008 and December 2008.

U.    The Parties enter into this Agreement with the intention of fully and finally resolving on the terms and conditions set forth in this Agreement all pending administrative actions and all of the NOVs issued by the District as of the Effective Date of this agreement against Gregg.    The Parties have agreed to settle their differences without admitting or conceding that the allegations or contentions of either Party are true or correct, thus, this Agreement and no part hereof is to be construed as an admission of liability.    The Parties anticipate cooperating in the future with respect to completing and processing applications Gregg submits in connection with operating its facilities in the South Coast Air Basin

## AGREEMENT

1.    **Effective Date.**  The Effective Date of this Agreement shall be the date upon which the final signatory signs this Agreement.

2.    **Scope of Agreement and Release.**

(a)    *District's Release of Monetary Claims Arising from Pending Notices of Violation.*  In consideration for, and subject to, the covenants set forth in this Agreement, the District fully discharges, covenants not to sue, and releases Gregg, its present or former officers, directors, agents, employees, servants, contractors, attorneys, shareholders, affiliates, successors-in-interest, predecessors-in-interest , subsidiaries, parents, and assigns from all *monetary* claims of any kind, such as civil

8

penalties, attorney's fees, damages of any kind or nature whatsoever, whether arising as liabilities, actions, suits, or demands in contract, tort, law or equity, under federal, state, or local laws, rules or regulations (collectively defined as "Monetary Claims"), with respect to violations existing on or before the Effective Date identified in any of the following NOVs as to the Facility or Facilities specifically referenced in the NOV: P47802, P47413, P41788, P41796, P49662, P51302, P50563, P52210, P49797, P10402, P52215, and P53601.

(b)    *District's Dismissal of Abatement Proceeding*  The District agrees to dismiss its Abatement action, SCAQMD Hearing Board Case No 5591-2, within seven days of execution of this Agreement.

(c)    *Limitation of* Release   This Release shall not apply to any of Gregg's present or future obligations pursuant to any and all District Rules,

    i    This Release shall not apply to permit processing fees, and permit or plan application fees, and

    ii.    This Release shall not apply to the non-monetary consequences of any failure to pay permit fees, plan application fees or similar fees.

    iii.    None of the Releases or waivers in this section (b) shall release Gregg from any federal, state, local or District permitting requirements.

(d)    Gregg's *Release of the District*   In consideration for, and subject to, the covenants set forth in this Agreement, Gregg fully discharges,

9

covenants not to sue, and releases the District, its present or former officers, directors, agents, employees, and attorneys from any Monetary Claims related to or connected with the District's enforcement activities concerning Gregg to date regarding (i) any of the NOVs identified in paragraph 2(a) above, (ii) conduct of any District employees during any search of the Gregg Foundry (including any search of a contractor providing services to that facility), or (iii) any inspections, requests for information, or investigations covered by paragraph 2.

(e)    *Matters After Effective Date Not Released Unless Specifically Noted*  No matter continuing or arising after the Effective Date in this section 2 is released after the Effective Date.  Matters occurring on or before the Effective Date that are released above may not be the basis for a monetary action or claim filed by the District after the Effective Date.

3.    **Supplemental Environmental Projects.**  Gregg agrees to design and implement a Supplemental Environmental Project ("SEP") at Gregg whose purpose is to further reduce odorous and other emissions from the Foundry. The SEP and applicable timelines are set forth in Attachment A.  The value of the SEP is $4.7 million.  Gregg shall provide quarterly status updates on the expenditures under this Settlement Agreement and shall provide documentation of all costs.  If at the end of the performance period Gregg not been documented $4.7 million in expenditures on the projects identified in Attachments A and B, Gregg shall propose additional projects equal to the difference between the actual amounts spent and the $4.7

10

million SEP. The District shall approve any additional projects to be implemented by Gregg as well as timelines for completion of any projects proposed to and approved by the District. The parties shall meet and agree to act in good faith to expeditiously reach an agreement on the nature of the alternative project(s) which will represent the remaining amount of the $4 7 million SEP to be expended.

4.    **No Admission of Liability.** The agreements, statements, pleadings and actions stated in or taken pursuant to this Agreement are made for the purpose of compromising and settling these matters amicably, in the spirit of conciliation, and to avoid protracted and expensive litigation  Nothing contained in this Agreement shall constitute or be construed, considered, offered or admitted, in whole or in part, as evidence of an admission or evidence of fault, wrongdoing, liability or violative conduct by any Party or its respective present or former officers, directors, agents, employees, servants, affiliates, contractors, attorneys, shareholders, successors-in-interest, predecessors-in-interest, subsidiaries, parents, and assigns, in any administrative or judicial proceeding or litigation in any court, agency, or forum whatsoever.

5.    **Successors and Assigns.** This Agreement shall be deemed to obligate, extend to, and inure to the benefit of the Parties to the Agreement, and the legal successors, assigns, transferees, grantees, and heirs of each such Party, including those who may assume any or all of the above-described capacities after the Effective Date.

11

6    **Collateral Actions.**  The District agrees that it will not cause or encourage any other person or entity to commence, maintain, initiate or prosecute any action, suit, proceeding or claim before any court or other tribunal (whether state, federal or otherwise) against Gregg arising from, concerned with, or otherwise related to, in whole or in part, any of the matters released in paragraph 2.  This provision shall not restrict the District from providing information to persons or entities that lawfully seek information from the District.

7.    **Counterparts.**  This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.  The Parties agree and acknowledge that delivery of the signed counterparts may be accomplished by way of transmission by facsimile machine and that a facsimile signature of either Party shall be treated as if it were an original signature.

8.    **Governing Law.**  The validity, construction, and performance of this Agreement shall be governed by the laws of the State of California, regardless of the choice-of-law provisions of California or any other jurisdiction.

9.    **No *Contra-Proferentem*.**  This Agreement reflects contributions from all Parties and has been reviewed by numerous counsel for each Party; thus, it shall be construed as though it was jointly authored, with ambiguities resolved without reference to which Party authored or co-authored the provision at issue

12

10.  __Recital Incorporation.__  The Recitals are made a part of this Agreement as if they were fully written herein.

11.  __Entire Agreement.__  This Agreement contains the entire and only understanding between the Parties regarding its subject matter and shall supersede any and all earlier and/or contemporaneous oral or written negotiations, agreements, representations, and understandings  The Parties understand and agree that in entering into this Agreement, the Parties are not relying on any representations not expressly contained in this Agreement. The Parties also understand and agree that, pursuant to the integration provisions of the Stipulated Judgment, this Agreement shall be deemed integrated into the Stipulated Judgment and shall no longer have independent force and effect once the Stipulated Judgment becomes final and no longer subject to appeal.

12   __Severability.__  If any provision of this Agreement is found by a court of competent jurisdiction to be illegal, invalid, unlawful, void or unenforceable, then such provision shall be enforced to the extent that it is not illegal, invalid, unlawful, void, or unenforceable, and the remainder of this Agreement shall continue in full force and effect

13    **Signature by the Parties.** Each signatory to this Agreement represents and

warrants that he possesses all necessary capacity and authority to sign and

deliver this Agreement on behalf of his respective Party.


GREGG INDUSTRIES, INC., a California corporation

By: _____    Date    5 NOV 2008

Robert E. Ostendorf, Jr., President


SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT

By. _____    Date:    11 5 08

Kurt Wiese, General Counsel


14

ATTACHMENT A

## SUPPLEMENTAL ENVIRONMENTAL PROJECT (SEP)
### November 5, 2008

**Warranty and Valuation of SEP:**  Gregg warrants that nothing in this SEP duplicates any projects required of Gregg by other governmental agencies, any requirements imposed by any Consent Decree, judicial order, or agreement, whether contemplated or final, and any requirements applicable to Gregg under federal, state, or local rules or regulations

The value of this SEP is $4 7 million

I.    **Environmental Observer:**  Within 30 days of the effective date of the Settlement Agreement and Release Gregg shall coordinate with the City of El Monte and the District to retain an independent environmental observer to conduct neighborhood surveillance and to track and document odor and smoke emissions, complaints, production and inspection and maintenance activities, and corrective actions taken to prevent and mitigate nuisance emissions  The environmental observer shall be on duty for at least four (4) hours per day during Gregg's operations and for a period of at least six (6) months

II.    **Environmental Engineer:**  Within 45 days of the effective date of the Settlement Agreement and Release, Gregg shall create and staff a full time on-site Environmental Engineer with a background in Environmental Engineering and a minimum of three (3) years professional work experience in a foundry or equivalent environment.  Duties shall include.

    (a)    Providing technical service to maintain compliance with applicable federal, state, and local environmental regulations, including evaluating and implementing odor, VOC and emission control strategies

    (b)    Coordinating and overseeing source testing for nickel and PM at Baghouse 16A

    (c)    Conducting and documenting daily inspections and implementing corrective action for deficiencies found

    (d)    On or before January 1, 2010, developing and implementing an Odor Management and Prevention Plan to identify and curtail odor excursions and to meet a goal of creating no further public nuisances

    (e)    Installing and maintaining signage referring complaint calls to the District's toll free 1 800 CUT SMOG number, in a form approved by the District and, at a minimum, meeting the requirements set forth in Attachment B

### III. Reduction in Use of Odorous Materials Containing Organic Resins

#### (a) General

1  The organic resin content of shell core and shell mold materials shall not exceed limits specified herein (to be verified by standard foundry practice procedures and LOI testing based on 95% CI methods)

2  Daily records of material use shall be kept in a District approved format and shall be provided to District on request

3  Gregg shall allow District Compliance Staff to collect samples of shell core and shell mold materials at any time to test and verify compliance with the foregoing requirements

#### (b) Shell Core Manufacturing

1  On or before July 1, 2009, Gregg shall purchase and install a second core machine which uses $CO_2$ or other low emission technology with organic resin content of no greater than 1% and train employees on its use, if a second core machine is required to meet the provisions of paragraph 3(c) below

2  On or before January 1, 2010, Gregg shall discontinue the use of materials with an organic resin content greater than 1% in any of its shell core machines, unless it demonstrates to the satisfaction of the District that it is not technically feasible to achieve this limit

#### (c) Shell Mold Manufacturing

Within 30 days of the effective date of the Settlement Agreement and Release, Gregg shall cease production of shell molds

#### (d) Sand System 1

1  On or before April 1, 2009, Gregg shall discontinue the use of all shell core and shell mold materials with an organic resin content greater than 1% in its Sand System 1 Operation

2  On or before July 1, 2009, Gregg shall cease operation of and remove from service its Sand System 1 cope and drag line

#### (e) Sand Systems 2 and 3

1  On or before July 1, 2009, Gregg shall discontinue the use of all shell core and shell mold materials with an organic resin content greater than 3% in Sand System 2 and 3 Operations

2  After July 1, 2009, at least 60% of the materials used in Sand System 2 and 3 Operations shall have an organic resin content less than 1%, and any remaining materials used in Sand System 2 and 3 operations shall have an organic resin content no greater than 2%

2

3  On or before January 1, 2010, Gregg shall discontinue the use of all shell core and shell mold materials with an organic resin content greater than 1% in its Sand System 2 and 3 Operations, unless it demonstrates to the satisfaction of the District that it is not technically feasible to achieve this limit

## IV.    Fume and dust collection system improvements

(a)    Within 45 days of the effective date of the Settlement Agreement and Release, Gregg shall evaluate and submit for District approval written recommendations for improvement or replacement of the following odor, fume, and/or dust collection systems

1    Emission collection system with new or modified hood design to increase collection efficiency of odorous compounds from shell core manufacturing operations

2    Emission collection system with new or modified hood design to increase the collection efficiency at the five melt furnaces

3    Emission collection system with new or modified hood design to increase the collection efficiency for the pouring and shake-out operations of Sand Systems 2 and 3

4    Installation of two portable fume collection units to further control emissions from maintenance welding applications

(b)    Within 120 days of District approval of the report, Gregg shall complete installation/implementation of all District reviewed and approved improvements described above

## V.    Source Testing: Within 45 days of the effective date of the Settlement Agreement and Release Gregg shall submit a test protocol to the District for review and approval to test the inlet and outlet of Baghouse 16A for nickel and PM  Within 45 days of the District's approval Gregg shall complete the source testing for Baghouse 16A and submit a source test report to the District within 45 days of completion of the source testing

## VI.    Applications for Modification to Title V Permit: As soon as practicable, but not later than 120 days of the effective date of the Settlement Agreement and Release, Gregg shall submit all necessary applications to the District for revisions to the facility's Title V permit by adding conditions to implement all of the requirements specified in Section III of this SEP

3

**VII.** **Building Improvements:** Gregg shall undertake improvements to the integrity of its building structures and surrounding property, including, but not limited to the following:

    (a)    Within 180 days of the effective date of the Settlement Agreement and Release, install siding and roll-up doors to enclose building on the south side

    (b)    Within 60 days of the effective date of the Settlement Agreement and Release, Gregg shall close and seal all roof vents and openings. Gregg may, however, submit a written request to the District for additional time to comply with other regulatory and/or legal requirements, as necessary. In such case, the District shall grant Gregg a reasonable extension of time to comply with this requirement as appropriate

    (c)    Within 60 days of the effective date of the Settlement Agreement and Release, apply C30 roofing contract bond spray-over coating to the roof

    (d)    Within 30 days of the effective date of the Settlement Agreement and Release, inspect and replace all broken windows and seal all visible holes in all the buildings on the property

**VIII.** **Managing Work Standards and Practices:** Within 60 days of the effective date of this Settlement Agreement and Release, Gregg shall submit to the District for review and approval written procedures for addressing odor nuisance at the foundry and for conducting comprehensive compliance audit procedures, including performance of root cause analysis and implementation of corrective measures. Gregg shall implement procedures as approved by the District. Documentation shall be made available to the District upon request

**IX.** **Priority of Environmental Compliance:** Within 90 days of the effective date of this Settlement Agreement and Release, Gregg shall develop and submit to the District for approval procedures for handling odor complaints that are verifiable or result from odor release due to upset or breakdowns, including, but not limited to, possible shut down procedures to be implemented when odor complaints are received directly from the community, when the environmental observer identifies odors in the community during surveillance, when an upset or breakdown causes an odor release, or when discrepancies involving the use of odorous substances are identified by the environmental engineer or others during a daily compliance audit. Gregg shall employ failure analysis to determine the root cause of upsets, and of any, corrective actions to be implemented. Failure analysis documentation shall be made available to the District upon request

**X.** **EMS Training and Certification of Employees:** Within six months of the effective date of this Settlement Agreement and Release, an Environmental



4

Management System (EMS) consultant shall be hired to provide third party verification of environmental compliance and to train Gregg employees on EMS implementation and documentation    Within 30 months of the effective date of this Settlement Agreement and Release, the EMS implementation shall be complete

XI.    **Accounting:**  Commencing January 1, 2009, and every six months thereafter, Gregg shall submit an annual report to the District detailing the dollar amounts expended on this SEP.  In addition, within 60 days of completing the final project in this SEP, Gregg shall submit a final report detailing all dollar amounts expended pursuant to the SEP.  Gregg shall maintain purchase orders, purchase receipts and other documentation sufficient to substantiate all dollar amounts set forth in the annual and final reports and shall make such documentation available to the District upon request

# Attachment B

# Signage Requirements

|  | Lettering/Line Height |
|---|---|
|  | 2" |
| **Call South Coast** | 6" |
| **Air Quality Management District** | 6" |
| **(AQMD)** | 6" |
| **1.800.CUT.SMOG** | 8" |
| **(1.800.288.7664)** | 6" |
| **TO REPORT ODORS OR DUST FROM** | 6" |
| **GREGG INDUSTRIES** | 6" |
|  | 2" |

- A minimum of three (2) signs each shall be posted in English and Spanish along the northern fenceline of Gregg Industries
    - One sign each in English and in Spanish at property entrance
    - One sign each in English and in Spanish at fenceline across intersection of Hickson and Esto
- Sign dimensions shall be a minimum of 48" tall x "96" wide
- Text for each line shall be at the minimum height specified above
- Sign background shall be white
- Text shall be printed in a bold, black font that can be easily read from a distance (e g , Verdana, Arial)
- Lower edge of sign board shall be a minimum of 4 feet and a maximum of 8 feet above grade

# EXHIBIT C

## TO PROOF OF CLAIM OF SOUTH COAST
## AIR QUALITY MANAGEMENT DISTRICT

### AQMD REVIEW OF EXPENSES CLAIMED BY
### GREGG INDUSTRIES IN SATISFACTION OF
### SETTLEMENT/SEP CONDITIONS



## AQMD Review of Expenses Claimed by Gregg Industries
### in Satisfaction of Settlement Agreement/SEP Conditions

AQMD and Gregg Industries met April 2, 2009 to discuss the anticipated closure of Gregg's foundry in El Monte and the satisfaction of conditions set forth in Gregg's November 5, 2008 Settlement Agreement (SA)/Supplemental Environmental Project (SEP) with AQMD  During this meeting, Gregg claimed it had spent over $3 million to satisfy the conditions of the $4 7 million SEP.  AQMD advised Gregg that these claims were subject to review, and requested that Gregg provide detailed records to justify these expenses against the performance of SEP conditions  On April 28, 2009, Gregg supplied AQMD with records showing expenses claimed in satisfaction of SEP conditions through April 15, 2009

Based on an initial review, AQMD separated Gregg's expenses into two categories based on the type of expense claimed

- Claims were allowed upon a reasonable showing that that they directly or indirectly anticipated and/or satisfied one or more conditions of the SA/SEP

- Claims were disallowed where expenses were neither justified nor reasonably contemplated by the SA/SEP, including those incurred due to the closure of Gregg's foundry operations

Claims were organized by subcategory and reviewed by AQMD to determine whether sufficient justification had been provided to demonstrate a reasonable relationship to one or more conditions of the SA/SEP.  Where the relationship was unclear, AQMD requested additional information from Gregg in support of the expenses claimed.

Gregg provided AQMD with additional claims and claim justifications on July 1, 2009, August 21, 2009 and November 23, 2009  The final amount of expenses claimed through November 23, 2009, is $4,298,558  Applying the same criteria to distinguish allowed from disallowed expense claims, the final findings from AQMD's review of expensed claimed by Gregg in satisfaction of the Settlement Agreement and SEP Conditions appear in the table below

| ITEM | DETAIL | AMOUNT CLAIMED | AMOUNT ALLOWED | Δ 00 |
|------|--------|---------------|----------------|------|
| A | Environmental Observer | 34,567 50 | 34,567 50 | 0 00 |
| B | Signage | 2,110 88 | 2,110 88 | 0 00 |
| C | Building Repair/Modification | 37,091 32 | 25,331 76 | 0 00 |
| D | Source Tests (S/T) | 29,200 00 | 29,200 00 | 0 00 |
| E | Portable Dust Collectors | 11,490 17 | 11,490 17 | 0 00 |
| F | Consulting (excludes Legal Services)[1] | 212,961 99 | 98,746 71 | 114,215 28 |
| G | Travel Expenses[2] | 33,173 33 | 25,570 52 | 7602 81 |
| H | Salary and Overhead[3] | 1,269,147 79 | 634573 90 | 634573 89 |
| I | Hourly Labor and Overhead[4] | 296,935 86 | 148,467 93 | 148,467 93 |
| J | Production Relocation/Reassignment of Production/Technical Support[5] | 988,768 00 | 494,384 00 | 494,384 00 |
| K | Stay Bonus (aka Upgraded Worker Training & Production Process [odor control] incentives)[6] | 502,652 90 | 0 00 | 502,652 90 |
| L | Equipment Modification/ R&D Expenses | 49,360 02 | 38,803 47 | 10,556 55 |
| M | Incremental Cost for Enhanced Security[7] | 111,100 00 | 0 00 | 111,100 00 |
| N | Legal Services[8] | 29,474 27 | 0 00 | 29,474 27 |
| O | Tax[9] | 5,576 18 | 0 00 | 5,576 18 |
| P | Neenah SEP Travel Related Expenses[10] | 100,276 76 | 50,138 38 | 50,138 38 |
| Q | Neenah Salary/Fringe/Overhead[11] | 1,001,700 00 | 500,850 00 | 500,850 00 |
| | TOTALS | 4,715,586 97 | 2,094,235 22 | 2,609,592 49 |

Of the $4,715,586 97 in expenses claimed by Gregg in satisfaction of one or more conditions of the SA/SEP, AQMD finds that $2,094,235.22 can be allowed, based on a reasonable showing that these claimed expenses directly or indirectly anticipated and/or satisfied one or more conditions of the SA/SEP

---

[1] This category includes fees for professional services (i e , consulting fees) only  Expenses for transportation, meals, lodging, etc., are itemized separately under travel expenses

[2] Expenses claimed for transportation, travel, parking, lodging, meals, etc by non-Neenah employees & consultants

[3] Total = (hours worked x hourly pay rate x 1 38 fringe) + overhead (1 3 x (hours worked x hourly pay rate x 1 38 fringe))

[4] Total = (hours worked x hourly pay rate x 1 38 fringe) + overhead (1 3 x (hours worked x hourly pay rate x 1 38 fringe)) = $107,500 52 for 400AQM hourly employees + $189,435 24 for maintenance hourly employees = $296,935 86 for all hourly employees from 11/6/08 - 11/23/09

[5] 50% of claimed expenses allowed

[6] Stay Bonus not contemplated by Settlement Agreement

[7] Expenses claimed to cover incremental cost for enhanced security ($111,100 00) are disallowed  Gregg "voluntarily enhanced security at the facility" (see attachment to 4/30/09 letter from Judith Praitis to Elliott Semel) independent of the SEP

[8] Not contemplated by Settlement Agreement

[9] No justification, not contemplated by Settlement Agreement

[10] 50% of claimed expenses allowed

[11] 50% of claimed expenses allowed