**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEENAH ENTERPRISES, INC., et al.,[1] | Case No. 10-10360 (MFW) |
| Reorganized Debtors. | Jointly Administered |
| | **Related to Docket Nos. 757 and 763** |

## DEBTORS' OBJECTION TO THE MOTION OF EMPLOYERS INSURANCE COMPANY OF WAUSAU FOR ORDER COMPELLING PAYMENT

Neenah Enterprises, Inc. ("Neenah") and the other reorganized debtors in the above-captioned chapter 11 cases (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Motion of Employers Insurance Company of Wausau For Order Compelling Payment of Amounts Due* (the "Motion"), pursuant to which Employers Insurance Company of Wausau ("Wausau") seeks an order compelling Neenah to pay a post-emergence invoice in the amount of $2,502,168.09 for annual premium adjustments (the "Rating Plan Adjustment") which Wausau alleges are due in connection with certain workers' compensation insurance policies and related agreements issued by Wausau to the Debtors (collectively, the "Policies"). In support of the Objection, the Debtors rely on the Declaration of Brent E. Johnson, Acting Chief Financial Officer (the "Johnson Declaration"), attached hereto as Exhibit A. In further support of the Objection, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Neenah Enterprises, Inc. (8281); NFC Castings, Inc. (7913); Neenah Foundry Company (0331); Cast Alloys, Inc. (1223); Neenah Transport, Inc. (8433); Advanced Cast Products, Inc. (7691); Gregg Industries, Inc. (8664); Mercer Forge Corporation (1711); Deeter Foundry, Inc. (5148); Dalton Corporation (9770); Belcher Corporation (3193); Peerless Corporation (4462); A&M Specialties, Inc. (1756); Dalton Corporation, Warsaw Manufacturing Facility (4775); Dalton Corporation, Ashland Manufacturing Facility (3079); Dalton Corporation, Kendallville Manufacturing Facility (4777); Dalton Corporation, Stryker Machining Facility Co. (3080), and Morgan's Welding, Inc. (1300). The mailing address for each Debtor is 2121 Brooks Avenue, Neenah, WI 54957.

## **PRELIMINARY STATEMENT**

1. Although the coverage periods under the Policies have expired, the Debtors remain obligated to pay adjusted premiums to Wausau based on the actual claims asserted against the Policies.[2] As of the filing of these chapter 11 cases, the Debtors owed no payments to Wausau under the Policies. Nonetheless, Wausau filed 14 contingent and unliquidated proofs of claim against the Debtors' estates, each in the amount of $6,665,003.09. (*See* Motion ¶ 7.)

2. Two business days after the Effective Date, on August 3, 2010, Neenah received an invoice from Wausau in the amount of $2,502,168.09 on account of the annual Rating Plan Adjustment (discussed *infra* at ¶ 8-9). This Rating Plan Adjustment represents the first time in the last six consecutive years of retrospective adjustments that Neenah has been confronted with a payment (versus a refund) resulting from a retrospective rating adjustment. (*See* Johnson Declaration ¶ 6.) From the outset, given the significance of the amount of the invoice received from Wausau, Neenah requested additional time to review the underlying claim development activity to understand better the reasons for the substantial increase in the retroactive premium. (*See* Johnson Declaration ¶ 5.) Wausau agreed to extend the due date of the August 3 invoice from August 22, 2010 to September 22, 2010, and from September 22, 2010 through October 14, 2010. (*See* Motion ¶¶ 13-14.) In fact, up until the filing of the Motion, Neenah had been actively engaged in discussions with Wausau's representatives with

---

[2] The Debtors and Wausau negotiated a clause in the order confirming the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries (D.I. 610) (the "Confirmation Order") providing that the reorganized Debtors would perform the Debtors' obligations under the Policies, as determined under the Policies and any applicable non-bankruptcy law. *See* Confirmation Order ¶ 50. The Debtors advocated this approach to avoid complicated and fact-intensive estimation proceedings, and to permit the parties to maintain the status quo with respect to the Policies. Indeed, both the Plan and the Confirmation Order evidence an intention that following the July 29, 2010 effective date of the Debtors' plan of reorganization (the "Effective Date"), the obligations and liabilities of reorganized Neenah under the Policies will be resolved by the parties in the ordinary course of business and in accordance with applicable non-bankruptcy law.

respect to the resolution of amounts due by Neenah under the Rating Plan Adjustment. (*See* Johnson Declaration ¶ 5.) At this time, Neenah does not dispute that the Ratings Plan Adjustment is due and payable to the extent of the annual policy premium adjustments, but does dispute Wausau's imposition of a hold-back amount as additional security for future premiums due on account of the 2009 policy period (discussed *infra* at ¶ 9-10).

3. Under these circumstances, the Motion should be denied because it improperly seeks this Court's intervention in a post-emergence dispute that should be resolved by the parties in the ordinary course of business or, if such resolution is not possible, in a non-bankruptcy forum in accordance with applicable non-bankruptcy law. In the alternative, if the Ratings Plan Adjustment is interpreted as asserting a "claim" as defined by section 101(5) of the Bankruptcy Code, then the claim arose prepetition, and relief under section 503(b) of the Bankruptcy Code would be improper. In such case, the claim should be treated as a general unsecured claim that remains disputed and unliquidated, and not as an administrative priority claim. Either way, the amount payable to Wausau should be reduced by the full amount of any hold-back of premium refunds due to Neenah for any policy year in the Ratings Plan Adjustment, because the imposition of a hold-back amount is unreasonable under the circumstances where Wausau holds a sufficient security interest and the reorganized Debtors are able to meet all of their obligations under the Policies. In addition, Wausau's imposition of a hold-back of a premium refund is inconsistent with past practice.

## STATUS OF THE CASE

4. On February 3, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On February 4, 2010 the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only.

3

5. On July 6, 2010, the Court entered the Confirmation Order confirming the Joint Plan of Reorganization for Neenah Enterprises, Inc. and Its Subsidiaries (the "Plan"). The Effective Date of the Plan was July 29, 2010.

6. Paragraph 50 of the Confirmation Order provides:

> Insurance Policies Issued by Employers Insurance Company of Wausau. Nothing contained in the Plan or this Confirmation Order shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers with respect to any insurance policies and related agreements issued by Employers Insurance Company of Wausau and any of its affiliates (collectively, "Wausau") to or on behalf of the Debtors (collectively, the "Wausau Policies"). The rights and obligations of the insureds and insurers under the Wausau Policies shall be determined (i) under the Wausau Policies, as applicable, including the terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect and (ii) any applicable non-bankruptcy law. Regardless of whether the Wausau Policies are considered to be executory or not, the Reorganized Debtors will perform the Debtors' obligations (monetary or otherwise) under the Wausau Policies, including any that remain unperformed as of the Effective Date of the Plan.

## FACTUAL BACKGROUND TO THE OBJECTION

**A.    The Policies**

7. The Debtors maintained a fully-insured workers' compensation program with Wausau, an affiliate of Liberty Mutual Insurance Company, from approximately January 1, 2000 through January 1, 2010. (*See* Johnson Declaration ¶ 4.) As of the Petition Date, there were approximately 122 workers' compensation claims pending against the Debtors under the Policies. (*See* Wage Motion, D.I. 9 ¶ 66.)[3] All of the premium payments under the Policies were satisfied as of the Petition Date. (*Id.*) The Debtors maintain a $1,275,000 letter of credit issued

---

[3] The "Wage Motion" means the *Motion of the Debtors for an Order (I) Authorizing: (A) Payment of Prepetition Employee Wages Salaries, and Other Compensation; (B) Payment of Prepetition Compensation Owed to Independent Sales Reps and Temporary Workers; (C) Reimbursement of Prepetition Employee Business Expenses: (D) Payments For Which Prepetition Payroll and Tax Deductions Were Made; (E) Contributions to Prepetition Employee Benefit Programs and Continuation of Such Programs in the Ordinary Course; (F) Payment of Workers' Compensation Obligations; And (G) Payment to Third Parties of All Costs and Expenses Incident to the Foregoing Payments and Contributions; and (II) Authorizing and Directing Applicable Banks and Other Financial Institutions to Honor and Pay All Checks and Transfers Drawn on the Debtors' Payroll Accounts to Make the Foregoing Payments* (D.I. 9).

4

in favor of Wausau to support certain of their obligations under the Policies. (*Id.*; see also Motion ¶ 4.)

8. Certain of the Policies are retrospective loss policies, meaning that Neenah paid an initial premium at the beginning of each policy year based on actuarial assumptions concerning the amount of claims that would likely be paid. (*See* Johnson Declaration ¶ 4.) After the end of each policy year, the premiums are adjusted based on an audit of claims and actual losses experienced in the applicable prior period. (*Id.*) Thereafter, the premiums are adjusted annually even after the expiration of the applicable policy period, based on the actual amount paid out on claims. (*Id.*) The annual Rating Plan Adjustment may therefore result in an additional premium assessment or in a refund to Neenah of amounts previously paid to Wausau. (*Id. See also* Motion, Ex. A at 12 (reflecting current adjustments to Policies covering years 2000 through 2009)).

### B.   The Rating Plan Adjustment dated August 2, 2010

9. On August 3, 2010, Neenah received an invoice from Wausau dated August 2, 2010 in the amount of $2,502,168.09 on account of the annual Rating Plan Adjustment. (*See* Johnson Declaration ¶ 5; Motion, Ex. A.)[4] As noted above, for each of the last six consecutive years of retrospective adjustments, *i.e.*, each of the years of 2004 through 2009, inclusive, Neenah received a net refund from Wausau on the premiums paid by Neenah under the Policies. (*See* Johnson Declaration ¶ 6.) In addition, although Wausau calculated the premium adjustment for the policy year 2009 as resulting in a net refund due to Neenah of $675,764.00, Wausau held back a portion of the refund, $522,207.00, as additional security for future premium adjustments. (*See* Johnson Declaration ¶ 7.) A holdback was never imposed on any of the

---

[4] This amount represents a liability of $2,662,152 (*see* Motion, Ex. A at 12), less an audit credit in the aggregate amount of $159,983.91 (*see* Motion, Ex. A at 2-11). Although the audit results are dated March 2010, the Rating Plan Adjustment is calculated as of August 3, 2010 and thus represents a post-emergence liability.

refunds owed to Neenah in prior retrospective adjustments. (*See* Johnson Declaration ¶ 6.) Therefore, Wausau currently holds the $1,275,000 letter of credit as security for Neenah's obligations under the Policies, and requests $522,207 of the refund for policy year 2009 that would otherwise have been credited against the net premium payment due to Wausau under the Rating Plan Adjustment.

10. Based on Neenah's review and analysis of the Rating Plan Adjustment during the intervening period, Neenah has advised Wausau that it does not dispute the amount of the Rating Plan Adjustment, but that it believes that Wausau should credit the holdback amount of $522,207.00 on account of the premium adjustment for the 2009 policy period against the current invoice, for a total amount due of $1,979,961.09. (*See* Johnson Declaration ¶ 7.)

## ARGUMENT

**C.    Wausau is Not Entitled to Payment of the Invoice as an Administrative Expense**

11. The Motion states, without elaboration, that relief is being sought pursuant to sections 105, 503(b), and 507 of the Bankruptcy Code. (Motion ¶ 1.) Because no other grounds or authority for the relief requested are cited in the Motion, the Debtors assume that Wausau is seeking to have the invoice allowed as an administrative expense pursuant to section 503(b)(1)(A) of the Bankruptcy Code,[5] with attendant priority of payment under section 507(a)(2) of the Bankruptcy Code.[6] There is no independent basis under section 105(a) for the allowance of an administrative expense. *In re Women First Healthcare, Inc.*, 332 B.R. 115, 120

---

[5] Section 503(b)(1) of the Bankruptcy Code provides in pertinent part:
   After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
       (1)(A) the actual, necessary costs and expenses of preserving the estate...
       * * * * *
11 U.S.C. § 503(b).

[6] Section 507(a)(2) of the Bankruptcy Code provides for priority of payment for "administrative expenses allowed under section 503(b) of this title. . . ."

(Bankr. D. Del. 2005). The burden of proving an entitlement to an administrative expense claim is on the claimant. *See, e.g., In re SemCrude, L.P.*, 416 B.R. 399, 403 (Bankr. D. Del. 2009) (citing *In re Goody's Family Clothing, Inc.*, 401 B.R. 131, 137 n.2 (Bankr. D. Del. 2009)). Administrative expenses are, "as a rule, entitled to priority over prepetition unsecured claims." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 5 (2000) (citing 11 U.S.C. §§ 507(a)(1), 726(a)(1), 1129(a)(9)(A)). Accordingly, "[i]n order to hold administrative expenses to a minimum and maximize the value of the bankruptcy estate, section 503(b) is narrowly construed." *In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006). The burden of proof is by preponderance of the evidence. *Id.* Here, Wausau has not even attempted to meet its burden.

    12. For purposes of the Plan, an Administrative Expense Claim is defined as "a Claim for costs and expenses administration of the Chapter 11 Cases arising on or after the Petition Date and prior to the Effective Date under Sections 328, 330, 363, 364(c)(1), 365, 503(b), and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors from and after the Petition Date . . . ." (*See* Plan § 1.4.)

### 1. The "Claim" Did Not Arise From a Post-Petition Transaction with the Estate

    13. As a general principle, a claim will be afforded administrative expense treatment only if it arises from a transaction between the creditor and the debtor in possession in the operation of its business. *See generally Bernard Techs.*, 342 B.R. at 177 (citing *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532-33 (3d Cir. 1999)) ("For a claim in its entirety to be entitled to . . . priority under § 503(b)(1)(A)[i], the debt must arise from a transaction with the debtor-in-possession and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the

7

operation of the business."). *See also In re Hackney*, 351 B.R. 179, 195 (Bankr. N.D. Ala. 2006) (collecting approximately 114 concurring cases).

14. Wausau offers no fact or argument as to when the right to payment arose and thus cannot support a claim under section 503(b).[7] Assuming that the right to payment arose on August 3, 2010, the date Wausau issued the Rating Plan Adjustment, it is plainly a post-Effective Date obligation of reorganized Neenah and is not payable as an administrative expense. Indeed, Wausau has not filed a request for payment of an Administrative Expense Claim in accordance with the procedures set forth in paragraph 39 of the Confirmation Order.

15. Alternatively, solely to the extent that this Court concludes that the Wausau invoice represents a "claim" as defined by section 101(5) of the Bankruptcy Code, and not a post-Effective Date obligation, it should be treated as a prepetition general unsecured claim that remains disputed and unliquidated, and not as an administrative expense claim allowable under section 503(b). In determining administrative priority, courts look to when the acts giving rise to a liability took place, not when they accrued. *See, e.g., In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 828 (Bankr. D. Del. 2002) (citing *In re M Group, Inc.*, 268 B.R. 896, 901 (Bankr. D. Del. 2001)). The Policies giving rise to a contingent liability for future retrospective adjustments were entered into prepetition (and terminated by their terms prepetition) and both the conduct of the Debtors' employees giving rise to workers compensation claims and the resolution and/or payment by Wausau on account of those workers compensation claims pursuant to the Policies occurred prepetition. In short, the Rating Plan Adjustment, issued and payable post-emergence, was calculated based on prepetition events, pursuant to the terms of the prepetition Policies.

---

[7] Given that Wausau has taken no position on when the premium claim arose, the Debtors urge the Court to deny the Motion. The Debtors reserve their rights to supplement this Objection if necessary.

16. Treatment of the invoice as a prepetition claim, and not an administrative expense, is also more consistent with the positions taken by Wausau in this proceeding with respect to the proofs of claim, *i.e.*, Wausau's objection to the Debtors' inclusion of the proofs of claim on the Second Notice of Satisfied Claims, on the basis that "the $2,502,168.09 amount due under the Rating Plan Adjustment was outstanding." (Motion ¶ 10.) Wausau cannot have it both ways – the invoice cannot simultaneously pose a bar to resolving Wausau's prepetition claims via the Second Notice of Satisfied Claims and also be allowable as an administrative expense claim.

17. Several courts have concluded that premium payment due under a retrospectively-rated insurance policy that had terminated prior to the petition date and based on injuries suffered by employees prior to the petition date cannot be afforded administrative expense priority. *See, e.g., In re Firearms Import & Export Corp.*, 131 B.R. 1009 (Bankr. S.D. Fla. 1991); *In re Wheeling-Pittsburgh Steel Corp.*, 67 B.R. 620, 623 (W.D. Pa. 1986) (finding it "clear" that the claims in question do not qualify for administrative expense priority under section 503(b)(1)(A) because they were not necessary for the preservation of the bankrupt estate and they did not result from a post-petition transaction) (citing *In the Matter of Transamerica Freight Lines, Inc.*, 2 B.C.D. 1565 (E.D. Mich. 1976) and *In Re Penn Fruit*, 4 B.C.D. 84 (E.D. Pa. 1978), each decided under the prior Bankruptcy Act). For example, in the *Firearms Import* case, the debtor held occurrence-based, retrospectively-rated insurance policies. *Id* at 1012. Each of the policy periods had expired as of the petition date. *Id.* After determining that such policies were not executory contracts, the court analyzed whether the insurer was entitled to an administrative expense for amounts due under the debtors' self insured retention. *Id.* at 1015. The court found that to the extent the debtor may have had obligations to the insurer, such

obligations arose out of the parties' prepetition contractual relationship. There, as here, the insurer had not proved that any post-petition contractual relationship existed between the parties. *Id.* The court held that the fact that the payments were due postpetition "cannot in any way transform liability arising from a pre-petition contract into an administrative expense claim." *Id.* (rejecting contrary reasoning in *In re M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984), which itself has been overturned by *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010)).

### 2. The "Claim" is Not an Actual and Necessary Expense of Preserving the Estate

18.  The claimant bears the burden of proving its actions conferred a benefit upon the estate. *See, e.g., O'Brien Envtl.*, 181 F.3d at 533; *Women First Healthcare*, 332 B.R. at 121; *In re Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). Here, Wausau has offered no facts to suggest that the Rating Plan Adjustment was an actual and necessary expense of preserving the estate. Similar to the *Wheeling-Pittsburgh Steel* and *Firearms Import* cases discussed above, the Wausau Policies terminated by their terms prior to the Petition Date and are not executory contracts. There is accordingly no benefit to the estate from the additional premium payments asserted to be due under the expired Policies. These circumstances are distinguishable from cases allowing administrative priority claims for the pro rata share of an insurance premium that arose during the post-petition period during the time in which the debtor received benefits. *See, e.g., Potter v. CNA Ins. Co. (In re MEI Diversified, Inc.)*, 106 F.3d 829, 832 (8th Cir. 1997) (holding that retrospective premiums that accrue prepetition and continue to accrue post-petition, but which are adjusted and become payable post-petition, are given administrative expense status only to the extent of the premiums that are attributable to post-petition insurance coverage); *Metropolitan Life Ins. Co. v. Sharon Steel Corp.*

10

(*In re Sharon Steel Corp.*) (same), 161 B.R. 934, 937 (Bankr. W.D. Pa. 1994); *In re Gamma Fishing Co., Inc.*, 70 Bankr. 949 (Bankr. S.D. Cal. 1987) (same). Wausau has not carried its burden of demonstrating that the Rating Plan Adjustment is an actual and necessary expense of preserving the Debtors' estates, and the Motion should be denied.

3. **The $522,207 Holdback is Unreasonable and Should be Disallowed and Credited to the Debtors**

19. In addition, unreasonable expenses, while they may be actual costs, are not "necessary" costs to a bankruptcy estate. *In re Bake-Line Group, LLC*, 312 B.R. 48, 52 (Bankr. D. Del. 2004) (disallowing utility's claim based on a "last resort" rate, which, although permissible under the contract, was unreasonable under the circumstances). The $522,207 holdback amount asserted by Wausau as additional security for future premiums due under the 2009 policy period is unnecessary and unreasonable and should be disallowed and credited back to the Debtors, regardless of whether this Court entertains the Rating Plan Adjustment as a prepetition claim or as an administrative expense claim. (*See* Johnson Declaration ¶ 8.)

20. The Motion asserts, without more, that "Wausau is concerned that, notwithstanding the occurrence of the Effective Date, the Debtors lack the financial wherewithal to pay the amounts due and owing to Wausau under the Rating Plan Adjustment." (Motion ¶ 15.) This statement lacks any basis in fact. Since the outset of these chapter 11 cases, the Debtors have provided monthly financial operating reports to this Court, and filed their first post-confirmation quarterly report as recently as November 1, 2010 (D.I. 776). The reorganized Debtors emerged from bankruptcy with exit financing that management believes will enable the reorganized Debtors to satisfy all of their post-emergence obligations. (*See* Johnson Declaration ¶ 8.) In addition, prior to the filing of the Motion, Neenah's personnel discussed the company's financial position with Wausau's business personnel. (*Id.*) There is simply no justification for

Wausau to withhold funds otherwise due to Neenah as additional security, or to seek to compel any payment from Neenah based on a perceived insecurity.

## **CONCLUSION**

21. For the foregoing reasons, the relief requested in the Motion should be denied.

Dated: Wilmington, Delaware  
November 19, 2010

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady (No. 2847)  
Edmon L. Morton (No. 3856)  
Donald J. Bowman, Jr. (No. 4383)  
Kenneth J. Enos (No. 4544)  
The Brandywine Building  
1000 West Street, 17th Floor  
P.O. Box 391  
Wilmington, Delaware 19899-0391  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

ATTORNEYS FOR THE REORGANIZED DEBTORS